# *EXHIBIT*

## *A*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                 Case No. 10-cr-20653

vs.                                HON. GERSHWIN A. DRAIN

DUANE BERRY, D-1,

       Defendant.

_____/

## ORDER DISMISSING THE THIRD SUPERSEDING INDICTMENT WITH PREJUDICE PURSUANT TO 18 U.S.C. § 3161(A)(2)

## I.    INTRODUCTION

On January 10, 2013, the grand jury filed a Third Superseding Indictment against Defendants, Duane Berry, David Marton and Sherill Dash. The Third Superseding Indictment charges Defendant, Duane Berry (hereinafter "Defendant"), with ten counts of bank fraud and one count of aiding and abetting bank fraud, all in violation of 18 U.S.C. § 1344, one count of obstruction of justice in violation of 18 U.S.C. § 1503, and one count of false statements in violation of 18 U.S.C § 1001.

Presently before the Court is Defendant's Motion to Dismiss Indictment for Violation of Speedy Trial Act (STA), filed on or about March 1, 2013. This matter is fully briefed[1] and a hearing

---

[1] The Court has reviewed the following: (1) Defendant's *pro se* Motion to Dismiss Indictment, filed on March 1, 2013 (Dkt. No. 101); (2) Government's Response to Order to

-1-

was held on March 27, 2013.[2]

## II.     BACKGROUND

In February of 2010, Defendant was charged in a criminal complaint in this Court and a warrant was issued for his arrest. On April 26, 2010, Defendant spoke with an FBI agent on the telephone and was informed of the warrant for his arrest. Defendant promised to turn himself in at the Detroit, FBI office that day, however he failed to appear as promised. Defendant was eventually arrested in Atlanta, Georgia in October of 2010.

On November 4, 2010, the grand jury charged Defendant in a two-count Indictment, charging him with obstruction of justice, in violation of 18 U.S.C. § 1503, and false statements, in violation of 18 U.S.C. § 1001, resulting from his failure to turn himself over to authorities after promising to do so on April 26, 2010. On November 16, 2010, Defendant was arraigned on the Indictment and detained pending trial. On November 29, 2010, the Government filed a Motion to Dismiss Complaint and the Court granted this motion on December 1, 2010.

On December 8, 2010, Defendant filed a Motion to Revoke Detention Order. On December 15, 2010, the Court entered a Stipulated Order Allowing Extension of Motion Cut-Off and Trial Dates which extended the motion cut-off date and trial date from January 5, 2011 to February 1,

---

Show Cause, filed on March 6, 2013 (Dkt. No. 104); (3) Stand-By Counsel's Reply to Government's Response to Show Cause Order, filed on March 8, 2013 (Dkt. No. 109); (4) Government's Consolidated Response to Order to Show Cause, filed on March 18, 2013 (Dkt. No. 124); (5) Government's Supplemental Consolidated Response to Order to Show Cause, filed on March 22, 2013 (Dkt. No. 125), (5) Stand-By Counsel's Memorandum Regarding Speedy Trial Act Prejudice, filed on March 22, 2013 (Dkt. No. 126) and (6) the Government's Declaration in Response to Show Cause Order, filed on March 26, 2013.

[2] The Court originally set this date to conduct an evidentiary hearing, however upon review of the parties' submissions, the Court finds that an evidentiary hearing will not aid in the resolution of this matter.

2011 and stated in relevant part, "[i]t is further stipulated and agreed by the respective parties that the delay occasioned by this adjournment is excludable delay under the provisions of Title 18 U.S.C. § 3161(h)(8)(A) in that the ends of justice served by this delay outweigh the best interest of the public and the defendant in a speedy trial." *See* Dkt. No. 14. On December 21, 2010, the Court conducted a hearing on Defendant's Motion to Revoke Detention Order and entered an Order denying the motion on that day. *See* Dkt. No. 17.

On January 5, 2011, counsel for Defendant, Penny Beardslee, filed a Motion to Withdraw as Counsel. On January 26, 2011, the Court conducted a hearing on Beardslee's Motion to Withdraw as Counsel and entered an Order Granting the Motion to Withdraw and appointed David Lee as counsel for Defendant on January 28, 2011. Also, on January 26, 2011, the Court set a trial date of March 29, 2011. After meeting with Defendant, Lee sought to withdraw as counsel. Therefore, on February 1, 2011, the Court entered a Second Order for Withdrawal of the Federal Defender Office and appointed new counsel, Christopher Seikaly, to represent Defendant. Seikaly filed a Notice of Appearance on February 3, 2011. Neither the January 28, 2011 Order nor the February 1, 2011 Order indicate that the Court granted a continuance excluding certain dates from the speedy trial clock to serve the "ends of justice."

On March 1, 2011, the Government met with Seikaly, along with the FBI, and discussed its desire to work out a plea agreement with Defendant. As a first step to any plea, the Government needed to conduct an interview of Defendant "about his multiple mortgage frauds and identity thefts." Seikaly agreed to consider this course of action for his client and counsel set up an interview for March 15, 2011. Defendant's interview occurred on March 15, 2011 and March 16, 2011. At the interview, Defendant consented to the FBI search of his cellular phones and provided access to his email accounts. The Government and Defendant agreed that upon the Government's

review of all of the information, it would propose a plea agreement. The FBI agent who attended the interview completed his report on March 22, 2011.

On March 24, 2011, in light of the ongoing plea negotiations, the Court entered a Stipulated Order to Continue Dates and for Finding of Excludable Delay Under Speedy Trial Act. *See* Dkt. No. 27. The March 24, 2011 Order continued the trial from March 29, 2011 until June 1, 2011 and stated in relevant part:

> The government has been discussing and will be discussing with defendant whether the case can be resolved via guilty plea. The parties accordingly agree that the time period from March 29, 2011 (the trial date), until May 31, 2011 (the proposed new trial date), is required because the defendant and the United States will be engaged in negotiations regarding the disposition of the case. Pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(1), the parties stipulate that such time period shall constitute a period of excludable delay as "other proceedings" regarding the defendant (*see United States v. Bowers*, 834 F.3d 607, 609-10 (6th Cir. 1987); *United States v. Dunbar*, 357 F.3d 582, 594 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1099 (2005).

*See* Dkt. No. 27. Thereafter, the Court entered another stipulated order to continue, setting the trial for August 9, 2011. *See* Dkt. No. 28.

On July 26, 2011, the Court entered a Stipulation to Continue Dates and for Finding of Excludable Delay under Speedy Trial Act excluding August 9, 2011 through October 11, 2011 from the STA clock and extending the trial date to October 11, 2011. *See* Dkt. No. 29. The Government has recently admitted that it did not actually have Seikaly's permission for a continuance and that Seikaly did not consent to the submission of this stipulation to the Court.

Defendant has submitted email correspondence from Friday, July 29, 2011, which reveals that Government counsel, Christopher Varner, wrote to Seikaly, "I'm out of the office now, and I can't return your call until after 08/09. I'm sorry about the stip–with a trial date of 08/09, we needed to move the date, and I thought we were in agreement. Once I am back, I can put together a Rule

11 Plea Agreement and get it to you by August 19." In response, Seikaly wrote:

> You keep giving me dates you will do this by and nothing has progressed. I am
> looking very bad in the eyes of my client who thinks I am not being truthful with
> him. My credibility is suffering. We were not in agreement to move the date because
> each time we have you have promised a rule 11 by a date and that has not happened.
> Now you tell me August 19. Is this really going to happen then???

Sometime in September of 2011, the Government provided Defendant with a proposed Rule 11 Plea Agreement and the Court set a plea hearing for October 17, 2011. Defendant ultimately rejected the Rule 11 Plea Agreement and the Government filed a Superseding Information on October 17, 2011 charging Defendant with one count of bank fraud in violation of 18 U.S.C. § 1344. The Court set trial for December 12, 2011. On November 10, 2011, David Burgess filed a Notice of Appearance on behalf of Defendant.

On December 8, 2011, the grand jury filed a Superseding Indictment against Defendant and co-defendant, David Marton, adding eight new counts of bank fraud, and including the false statements and obstruction of justice counts contained in the original Indictment. Both Defendant and Marton were arraigned on the Superseding Indictment and trial was set for February 28, 2012. On January 26, 2012, the grand jury filed a Second Superseding Indictment adding a defendant, Sherill Dash, and two additional counts of bank fraud against Defendant. After additional court approved continuances, and yet another hearing on counsel's (Burgess's) motion to withdraw, Defendant announced his intention to exercise his right to represent himself. Accordingly, stand-by counsel, S. Allen Early, filed an appearance on June 14, 2012.

On January 10, 2013, the grand jury filed the Third Superseding Indictment adding another count of bank fraud against Defendant. On January 17, 2013, after some nine continuances, the Court set the trial for March 5, 2013. This action was reassigned to the undersigned on February

21, 2013.

## III.    LAW & ANALYSIS

Defendant argues that the Third Superseding Indictment is subject to mandatory dismissal with prejudice under § 3162(a)(2) of the STA. The Government counters that the STA clock has not expired; but if any counts are subject to dismissal, only the counts in the original Indictment (now counts 11 and 12 of the Third Superseding Indictment) should be dismissed, and the dismissal should be without prejudice.

### A.    The Speedy Trial Act and its Exclusions

The Speedy Trial Act protects defendants' and the public's interest in timely criminal trials. *See United States v. Noone*, 913 F.2d 20, 28 (1st Cir. 1990), *cert. denied*, 500 U.S. 906 (1991). Section 3161(c)(1) of the Act requires that a defendant's trial commence within seventy days of the date he was indicted or the date he first appeared in court, whichever is later. *United States v. Tinson*, 23 F.3d 1010, 1012 (6th Cir. 1994). Section 3161(c) states:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate judge on a complaint, the trial shall commence within seventy days from the date of such consent.

18 U.S.C. § 3161(c)(1). "The Act provides the flexibility necessary to conduct fair criminal trials by excluding days from the seventy-day Speedy Trial clock for various pretrial proceedings." *United States v. Dunbar*, 357 F.3d 582, 591 (6th Cir. 2004) (citing 18 U.S.C. § 3161(h)(1)-(9)); *United States v. Mentz*, 840 F.2d 315, 325 (6th Cir. 1988)).

Such exclusions halt the STA clock from running. Some exclusions require explicit judicial findings, while others are "automatic" and require no finding, ruling or order. *Bloate v. United*

*States*, 130 S.Ct. 1345, 1351 (2010). The first five subsections of Section 3161(h) are "automatic" and require no judicial findings. The Act states in relevant part:

> (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> (1) Any period of delay resulting from *other proceedings concerning the defendant, including but not limited to*--
>
>> (A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;
>>
>>           \*          \*          \*
>>
>> (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of such motion[.]
>>
>>           \*          \*          \*
>>
>> (G) delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government;
>>
>>           \*          \*          \*
>>
>> (H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

18 U.S.C. § 3161(h)(1) (emphasis added). Thus, the time from the date a pretrial motion is filed until it is decided is excludable. 18 U.S.C. § 3161(h)(1)(f).

Additionally, the Sixth Circuit has held that delays involving plea negotiations may be considered excludable as "other proceedings" under section 3161(h)(1). *See Dunbar*, 357 F.3d at 594; *United States v. Bowers*, 834 F.2d 607, 609 (6th Cir. 1987); *United States v. Samonek*, No. 09-20225, 2010 WL 258995, *4 (E.D. Mich. Jan. 20, 2010) (stating that "although plea bargaining is not specifically listed as one of the proceedings in the statute [Section 3161(h)(1)(A) through (H)], the Sixth Circuit has stated that the plea bargaining process can qualify as one of the many other proceedings.")

There are also other delays subject to exclusion under the STA clock, such as delays resulting from a continuance when the "ends of justice" in granting such continuance outweigh the defendant's right to, and the public's interest in a speedy trial. 18 U.S.C. 3161(h)(7). Delays are properly excluded under this section if the Court makes certain findings, specifically:

> (7)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from the continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

>      \*                 \*                 \*

> (C) No continuance under subparagraph (A) of this paragraph shall be granted because of . . . lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government.

18 U.S.C. 3161(h)(7)(A) & (C). A district judge may enter his findings subsequent to granting the continuance, however the continuance must have actually been granted based on the district judge's findings. *See United States v. Crane*, 776 F.2d 600, 606 (6th Cir. 1985) ("[A] trial judge need not enter his findings at the same time he grants the continuance, but the decision to grant the continuance must have actually been based on the reasons set out in the judge's findings . . . ."). However, "[a] district judge cannot wipe out violations of the Speedy Trial Act after they have occurred by making findings that would have justified granting an excludable delay continuance before the delay occurred." *Id.*

    If more than seventy non-excludable days pass before the commencement of trial, the Act

mandates dismissal of the indictment upon motion by the defendant. 18 U.S.C. § 3162(a)(2). The

trial court has discretion to decide whether to dismiss the indictment with or without prejudice, but

in making that decision, the trial court must weigh and make written findings concerning various

statutorily prescribed factors including, but not limited to: "the seriousness of the offense; the facts

and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the

administration of this chapter . . . and on the administration of justice." 18 U.S.C. § 3162(a)(2).

When seeking to dismiss an Indictment, the Defendant must first establish a prima facie

violation of the STA. 18 U.S.C. § 3162(a)(2). Thereafter, the Government has the burden to prove

by a preponderance of the evidence that there are sufficient excludable days under § 3161(h) to

reduce the time between the initial appearance and trial to within the 70-day limit imposed by the

Act. *See United States v. Jenkins*, 92 F.3d 430, 438 (6th Cir. 1996).

### B.     The Parties' Arguments

Here, the Government argues that from November 17, 2010 through March 29, 2011, only

thirty-two (32) days had elapsed on the STA clock. Conversely, Defendant maintains that as of

March 29, 2011, eighty-seven (87) days elapsed on the STA clock. The parties appear to agree that

thirty-two (32) days elapsed on the STA clock as of February 3, 2011. Thus, the Court must

determine if February 3, 2011 through March 29, 2011 is properly excludable under the STA.

However, even if this Court finds that this time period is properly excludable under the STA, the

Court must also determine the effect of Government counsel filing a stipulation for continuance,

which resulted in sixty-three (63) days being excluded from the STA clock, without the consent of

Defendant or Defendant's counsel. Thus, this Court must also determine if August 9, 2011 through

October 11, 2011 is properly excludable under the STA.

Here, the grand jury filed the original Indictment on November 4, 2010. Berry made an

initial appearance on November 15, 2010 before Magistrate Judge R. Steven Whalen. On November

16, 2010, Berry was arraigned and detained pending trial. Thus, the speedy trial clock began to run

on November 17, 2010 as the date of arraignment is excludable as "other proceedings" pursuant to

the Act. *See Dunbar*, 357 F.3d at 593 (citing 18 U.S.C.§ 3161(h)(1)). On November 29, 2010, the

Government filed a Motion to Dismiss Complaint and the Court granted this motion on December

1, 2010. Thus, December 1, 2010 is excludable under the Act. *See* 18 U.S.C. § 3161(h)(1)(D)

(delay resulting from any pretrial motion, from the filing of the motion through the conclusion of

the hearing on, or other prompt disposition of, such motion" is excludable); *see also Coviello v.*

*United States*, No. 06-3675, 2008 U.S. App. LEXIS 16198 (6th Cir. July 29, 2008) ("We, however,

do not exclude the date of filing–unless the date was also the date an order was entered resolving

the motion.").

   The clock started again on December 2, 2010 and stopped again on December 9, 2010,

because Defendant filed a Motion to Revoke Detention Order on December 8, 2010. On December

15, 2010, the Court entered a Stipulated Order Allowing Extension of Motion Cut-Off and Trial

Dates which extended the motion cut-off date from January 5, 2011 to February 1, 2011 and stated

in relevant part, "[i]t is further stipulated and agreed by the respective parties that the delay

occasioned by this adjournment is excludable delay under the provisions of Title 18 U.S.C. §

3161(h)(8)(A) in that the ends of justice served by this delay outweigh the best interest of the public

and the defendant in a speedy trial." *See* Dkt. No. 14. On December 21, 2010, the Court conducted

a hearing on Defendant's Motion to Revoke Detention Order and entered an Order denying the

motion on that day. *See* Dkt. No. 17. Thus, the speedy trial clock commenced on December 22,

2010 and ran until January 5, 2011 when counsel for Defendant, Penny Beardslee, filed a Motion

to Withdraw as Counsel. Thus, as of January 5, 2011, thirty-two (32) days had run on the speedy

trial clock.

The Government contends that the period of March 1, 2011 through March 29, 2011 is excludable under 18 U.S.C. § 3161(h)(1) as "other proceedings concerning the defendant" based on purported plea negotiations between the parties. Specifically, the Government maintains that no later than March 1, 2011, Seikaly and the Government were considering resolving this matter via a plea agreement, and set up an interview with Defendant on March 15, 2011 and March 16, 2011. At the proffer, the parties agreed the Government would review the information provided by Defendant and make a plea agreement proposal. In light of these negotiations, the parties prepared, and the Court entered the Stipulated Order to Continue Dates and for Finding of Excludable Delay for the period of March 29, 2011 through May 31, 2011. *See* Dkt. No. 27. The Government also contends that the time period between August 9, 2011 through October 11, 2011 is excludable as "other proceedings concerning the defendant" under section 3161(h)(1) because the parties were still engaged in plea negotiations.

While the Government is correct that plea negotiations are excludable under the Speedy Trial Act, "the exclusion for plea bargaining proceedings . . . should not be viewed as unlimited, or otherwise abused." *United States v. Hill*, No. 97-6364, 1999 U.S. App. LEXIS 168, *8 n. 3 (6th Cir. Jan. 4, 1999). In *United States v. Bowers*, 834 F.2d 607 (1987), a case relied upon by the Government, the Sixth Circuit Court of Appeals concluded that the district court did not err in finding that the defendant's speedy trial rights had not been violated because the district court concluded that a "tentative plea agreement had resulted from negotiations between defense counsel and the government." *Id.* at 609-10; *see also Dunbar*, 357 F.3d at 593 (affirming the district court's finding that the parties were actively involved in plea negotiations and the time period involving such negotiations was properly excluded under the Act); *Samonek*, 2010 WL 258995, at *4 (finding

pre-indictment delay was the result of plea negotiations between the Government and the defendant and excludable under § 3161(h)(1)).

The *Bowers* court further held that while the plea negotiations could not qualify as excludable pursuant to § 3161(h)(1)(G) because the delay was not attributable to "consideration by the court of a proposed plea agreement[,]" such negotiations could qualify as delay "resulting from other proceedings concerning the defendant" under the Act. *Id.* at 610. Because the defendant in *Bowers* failed to communicate his rejection of the plea agreement to the Government in a timely fashion, the court concluded that the delay attributable to such negotiations should not be charged to the government. *Id.*

> Where the total period allowed for indictment is only thirty days, failure by the defendant during half that period to communicate to the government his rejection of a tentative plea agreement can be viewed as a delay resulting from proceedings concerning the defendant. The district court was justified in its stated belief that these circumstances constituted an 'extreme case,' since the matter could no longer then be presented to the grand jury within the thirty-day period.

*Id.*

However, the Sixth Circuit Court of Appeals has cautioned that: "[A]llowing the speedy trial clock to stop during plea bargaining may lead to otherwise unjustifiable delays in derogation of the Act's requirements[,] . . . . the exclusion for plea bargaining proceedings allowed under *Bowers* should not be viewed as unlimited, or otherwise abused . . . ."). *Hill*, 1999 U.S. App. LEXIS 168, at *8 n. 3.

Here, the evidence shows that as late as July of 2011, the Government had yet to prepare the Rule 11 plea agreement as it had promised to do on prior occasions. On July 29, 2011, Seikaly sent email correspondence to Varner stating: "You keep giving me dates . . . and nothing has progressed . . .[E]ach time you have promised a rule 11 by a date and that has not happened. Now you tell me

August 19. Is this really going to happen then???" There is nothing in the record to contradict the July 29, 2011 email correspondence between Seikaly and Varner. Further, despite informing Defendant during the March 2011 interview that a Rule 11 agreement was forthcoming, Defendant was not presented with the Government's plea offer until sometime in September of 2011.

In *Coviello v. United States*, No. 06-3675, 2008 U.S. App. LEXIS 16198 (6th Cir. July 29, 2008), the Sixth Circuit Court of Appeals concluded that the district court erred in finding that the parties were engaged in active plea negotiations sufficient to warrant excludable delay under the Act. *Coviello*, 2008 U.S. App. LEXIS 16198, at *15-18. In so concluding, the *Coviello* court relied on the fact that the district court failed to conduct a hearing, and accepted counsels' unsworn submissions even though they were contradictory as to the length of the plea negotiations. *Coviello*, 2008 U.S. App. LEXIS 16198, at *16-18. While expressing confidence that some plea negotiations had taken place, the court held that "the Speedy Trial Act demands a day-by-day accounting for excludablity." *Coviello*, 2008 U.S. App. LEXIS 16198, at *17. Thus, the *Coviello* court remanded the matter to the district court to make factual findings regarding the days engaged in active plea negotiations. *Coviello*, 2008 U.S. App. LEXIS 16198, at *18.

The Court cannot conclude that the period between March 1, 2011 through March 29, 2011 is excludable based on the parties' plea negotiations. A "day-by-day accounting" reveals that only four (4) days are properly attributable to active plea negotiations between the parties. *Coviello*, 2008 U.S. App. LEXIS 16198, at *17. Specifically, March 1, 2011 is excludable because counsel met on this date to discuss a possible resolution via a Rule 11 plea agreement. Further, March 15, 2011 and March 16, 2011 are both excludable pursuant to Defendant's interview. The Court also finds that March 22, 2011 is excludable as this is the date that the FBI agent completed his report on the March interview.

None of the other dates are excludable because the record establishes the parties were not in fact engaged in ongoing plea discussions during this time frame. Seikaly's July 29, 2011 email demonstrates his clear frustration with Government counsel based on counsel's repeated failures to provide a Rule 11 agreement even though he had promised to do so. *Coviello* requires that the prosecution demonstrate that ongoing negotiations were taking place during the time sought for the exclusion. A prosecutor can always state that the parties are engaged in plea negotiations, but whether genuine discussions are actually taking place is a separate and dispositive issue. The circumstances here are exactly the type of circumstances the Sixth Circuit has cautioned should not be allowed to unjustifiably delay the clock in derogation of the Act's requirements . . . ." *Hill*, 1999 U.S. App. LEXIS 168, at *8 n. 3.

Additionally, the Court cannot ignore the fact that the stipulation to continue relative to the time period of August 9, 2011 through October 11, 2011 was entered by the Court without the consent of Seikaly or Defendant. The Government argues that the stipulation for the continuance was the result of a miscommunication or misunderstanding between the attorneys. The Government insists that it was not improper for Seikaly to fail to correct the error since the parties were engaged in ongoing plea negotiations based on Defendant's interest in pleading guilty as opposed to proceeding to trial. Relying on *United States v. Howard*, 218 F.3d 556, 532 (6th Cir. 2000), the Government maintains that Defendant and his counsel ratified the new date by not seeking to void or correct it after it had been entered. The facts in *Howard* are distinguishable from the present matter because the defendant in *Howard* requested the continuance in order to conduct discovery, therefore the court held that "[b]ecause Howard requested this continuance, he is barred from arguing that it was not in the interests of justice." *Id*. Here, it is undisputed that Defendant never authorized or consented to the continuance, and after he asked two of his attorneys to file a motion

with the court to correct the error and each refused, he was forced to file an Affidavit for Judicial Notice *pro se* complaining of the fraud upon the Court.

Additionally, as already noted, the Government's contention that the parties were engaged in ongoing plea negotiations is belied by the record. Unlike *Dunbar*, where the court concluded that the parties were engaged in active plea negotiations, the Court cannot conclude that Defendant and the Government were engaged in active plea negotiations between August 9, 2011 through October 11, 2011. The circumstances before this Court are distinguishable from those present in *United States v. Samonek, supra,* a case relied upon by the Government. In *Samonek*, the defendant made an initial appearance on a criminal complaint, and within fourteen days the Government had prepared and sent a proposed Rule 11 Plea Agreement to defense counsel. *Samonek*, 2010 WL 258995, at * 1. When the Government had not heard back from defense counsel within two weeks, counsel sent email correspondence to defense counsel inquiring whether he had an opportunity to discuss the agreement with his client. *Samonek*, 2010 WL 258995, at *1-2. The parties thereafter agreed to extend the preliminary examination date to set up a debriefing with ATF agents. *Samonek*, 2010 WL 258995, at *2. Prior to the debriefing, the Government again sent correspondence to defense counsel with the proposed plea agreement attached. *Samonek*, 2010 WL 258995, at *2. The debriefing was rescheduled twice, and eventually it became apparent to the Government that the defendant was not seriously considering a plea agreement. *Samonek*, 2010 WL 258995, at *3. The court concluded that the pre-indictment delay was excludable under § 3161(h)(1) based on the parties' ongoing efforts to negotiate a plea deal. *Samonek*, 2010 WL 258995, at *6. In so finding, the *Samonek* court noted that the Government was prepared at all times to indict the defendant, had prepared a rule 11 plea agreement and actively followed up with defense counsel to determine whether the matter could be resolved via a plea agreement, thus the Government had not

-15-

neglected its case. *Samonek*, 2010 WL 258995, at *6. None of these facts are present here, thus theGovernment has likewise failed to meet its burden demonstrating that August 9, 2011 through October 11, 2011 is excludable as "other proceedings concerning the defendant" under section 3161(h)(1).

The Government also argues that the time period between February 3, 2011 through March 29, 2011 is properly excludable under the "ends of justice" provision of section 3161(h)(7)(A) because the continuances granted by Judge Duggan were necessitated by Defendant's conduct in failing to cooperate with his court appointed counsel, and the need for time to appoint new counsel. Even though Judge Duggan did not make ends of justices findings in the January 28, 2011 or the February 1, 2011 Orders, the Government maintains that it is "manifest from the record that the ends-of-justice required continuances." Further, the Government argues that Judge Duggan can still make the needed ends of justice findings and enter appropriate orders because the court "may articulate its reasons after the fact." *Dunbar*, 357 F.3d at 595 n.4; *Crane*, 776 F.3d at 606. Thus, the Government asks that it be permitted a further continuance to file a motion before Judge Duggan to enter orders excluding the STA clock between February 3, 2011 and March 29, 2011 under section 3161(h)(7)(A).

The Court declines to permit yet another continuance in this matter. In any event, even if Judge Duggan were to make express findings that the ends of justice warranted the extensions between February 3, 2011 through March 29, 2011, a violation of the STA clock has still occurred based on the sixty-three (63) days that elapsed between August 9, 2011 and October 11, 2011. The parties do not dispute that as of February 3, 2011, thirty two (32) days on the STA clock had elapsed. Thus, even if the time period between February 3, 2011 through March 29, 2011 is properly excludable under the STA, a violation has still occurred due to the Government's

submission of a stipulation without Defendant's consent, resulting in sixty-three (63) days elapsing on the STA clock, in addition to the thirty-two (32) days that had already elapsed. Therefore, it would be improper for the Court to wipe out the period between February 3, 2011 through March 29, 2011 by entering an order excluding this period based on the "ends of justice" when a STA violation has already occurred. *Crane*, 776 F.3d at 606 ("A district judge cannot wipe out violations of the Speedy Trial Act after they have occurred by making findings that would have justified granting an excludable delay continuance before the delay occurred.").

Lastly, the Court rejects the Government's argument that the time period between August 9, 2011 and October 11, 2011 is also properly excludable pursuant to the "ends of justice" exclusion set forth in section 3161(h)(7)(A) based on the parties's stipulation to continue so that the parties could continue the plea negotiations. As previously noted, the parties were not in agreement to enter the stipulation for the continuance, nor were the parties actively engaged in plea negotiations.

Therefore, the Court concludes that as of October 11, 2011, one hundred and forty-five (145) days elapsed on Defendant's STA clock, with thirty-two (32) days running from the date of arraignment until February 3, 2011; fifty (50) days elapsing between February 3, 2011 and March 29, 2011, and sixty-three (63) days elapsing between August 9, 2011 through October 11, 2011.

The Government also argues that even if there was a STA violation, it relates only to the original two counts, thus the remedy should be dismissal of counts 11 and 12 of the Third Superseding Indictment. The Government maintains that all of the charges in the Third Superseding Indictment rest upon an independent basis and therefore supplant the previously filed original Indictment, which was the operative Indictment when the STA violation occurred. Thus, the only counts subject to dismissal are counts 11 and 12 of the Third Superseding Indictment.

The Government relies on *United States v. May*, 771 F.2d 980, 982 (6th cir. 1985), which

held that the STA "allows latitude to the prosecutor to re-institute prosecution of a criminal defendant whose case has previously been dismissed on non-speedy trial grounds without having to comply with the time limits imposed by the filing of the earlier complaint." *Id*. However, *May* is distinguishable because the STA clock had not expired prior to the filing of the superseding indictment in *May*. *Id*. Here, the STA clock had already run under the original Indictment when the Superseding Indictment was filed in December of 2011. Further, the Government never moved to dismiss the original Indictment prior to filing the Superseding Indictment. Thus, the Third Superseding Indictment must be dismissed pursuant to § 3162(a)(2) of the STA.

### C.    Dismissal With or Without Prejudice

"The Speedy Trial Act does not specify whether dismissal should be with or without prejudice, nor does it contain a default presumption one way or the other." *United States v. Robinson*, 389 F.3d 582, 586 (6th Cir. 2004) (citing 18 U.S.C. § 3161(a)(2)). When making this determination, the district court is obligated to make findings concerning the following three factors: (1) seriousness of the offense, (2) the facts and circumstances of the case which led to the dismissal, and (3) the impact of a reprosecution on the administration of [the STA] and on the administration of justice. *United States v. Taylor*, 487 U.S. 326, 334 (1988). The *Taylor* court discussed the importance of this analysis:

> Where, as here, Congress has declared that a decision will be governed by consideration of particular factors, a district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review. Only then can an appellate court ascertain whether a district court has ignored or slighted a factor that Congress deemed pertinent to the choice of remedy, thereby failing to act within the limits prescribed by Congress.

*Id*. at 336-37.

Under the STA, dismissal of charges with prejudice is an extremely high burden for the

Defendant to meet. Dismissal with prejudice requires a showing of a "truly neglectful attitude," "bad faith," a "pattern of neglect, or other serious misconduct, as well as prejudice to the defendant." *Samonek*, 2010 WL 258995, at *7 n.1. The Government must have committed more than "an isolated unwitting violation." *United States v. Wells*, 893 F.2d 535, 539 (2d Cir. 1990).

### 1.    *Seriousness of Offense*

The Government argues that the crimes for which Defendant has been charged are very serious–causing more than $1 million in losses to lenders and destroying the credit of his "straw buyers." Additionally, Defendant engaged in obstructing the administration of justice by failing to appear as promised and absconding to Atlanta, Georgia. The Third Superseding Indictment charges Defendant with ten counts of bank fraud, carrying up to 30 years in prison for each count, and up to $1 million in fines. *See Howard*, 218 F.3d at 561 (looking to the length of the sentence to determine the seriousness of the offense for STA analysis). Further, Defendant has an extensive criminal history. *See United States v. Gross*, 432 Fed. Appx. 490, 493 (6th Cir. 2011) (finding in favor of the government on this factor because the defendant faced a possession charge, had an extensive criminal history and qualified for a fifteen mandatory minimum sentence if convicted).

Defendant does not contest that the offenses for which he is charged are serious. This factor weighs in favor of dismissal without prejudice.

### 2.    *Facts and Circumstances of Delay*

The Government argues that Defendant has failed to show a pattern of negligence or bad faith on the part of the prosecutors. Any delay here was insubstantial to warrant dismissal. Defendant counters that the Government's conduct in allowing a fraudulent stipulation to stand uncorrected for so long weighs heavily in favor of dismissal with prejudice.

The Court agrees with Defendant. The prejudice is severe in this case and the Government must be deterred to ensure future compliance with the Act as required by *United States v. Robinson*, 389 F.3d 582 (6th Cir. 2004); *see also United States v. Anders*, 14 F.3d 602 (6th Cir. 1993); *United States v. Koory*, 20 F.3d 844, 848 (8th Cir. 1994) ("Where a violation of the Act is substantial, the government's negligent failure to comply with the Act may justify dismissal with prejudice."); *Taylor*, 487 U.S. at 339 ("[A] truly neglectful attitude on the part of the Government reasonably could be factored against it in a court's consideration of this issue. . . ."). Contrary to the Government's arguments, the Government has demonstrated a pattern of bad faith in this matter. The Government has known for more than a year and a half that a fraudulent "ends of justice" stipulation was submitted resulting in a continuance by the Court. Further, the STA violation is clearly attributable to the conduct of the Government, unlike the cases of *Bowers*, *Dunbar* and *Samonek*. The record demonstrates that the Government entered a stipulation without the consent of defense counsel and that the Government did so because it needed more time to prepare a Rule 11 plea agreement. It took the Government roughly six months to provide Defendant with a Rule 11 plea offer, such a delay, therefore, is attributable to the Government. This factor weighs in favor of dismissal with prejudice.

### 3. <u>Impact on Reprosecution on the Administration of Justice</u>

The Government asserts that Defendant fails to specify how he has been prejudiced by the delay. "The main considerations that the courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." *Robinson*, 389 F.3d at 589. In regard to the issue of prejudice, the *Taylor* court held that:

> We have observed in prior cases that unreasonable delay between formal accusation

> and trial threatens to produce more than one sort of harm, including oppressive
> pretrial incarceration, anxiety and concern of the accused, and the possibility that
> the accused's defense will be impaired by dimming memories and loss of
> exculpatory evidence.

*Taylor*, 505 U.S. at 653 (internal quotations omitted). Further, as to the issue of prosecutorial

misconduct, the *Taylor* court held that "[a]lthough negligence is obviously to be weighed more

lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the

divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has

begun." *Id.* at 657. The weight to be assigned "to official negligence compounds over time as the

presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely

with its protractedness and consequent threat to the fairness of the accused's trial." *Id.*

Here, the conduct of the Government in submitting a false stipulation for continuance could

be considered negligent. However, the fact that the Government waited nearly twenty months to

inform the Court that the stipulation was not in fact consented to demonstrates more than mere

negligence or an isolated unwitting violation on the part of the Government, rather it establishes

egregious bad faith conduct. Additionally, the Government's failure to prepare a Rule 11 agreement

despite promises to do so between March of 2011 through August of 2011 amounts to inexcusable

delay. Here, there is evidence of bad faith and a pattern of neglect on the part of the Government,

coupled with the presumptive prejudice resulting from Defendant's unlawful detention for a year

and half since the STA violation occurred.

Further, the Court would be remiss to ignore the fact that Defendant has been detained

pending trial for nearly two and a half years. This length of pretrial detention, along with the

Government's demonstrated bad faith in bringing this matter to a resolution, strongly suggests a

likely due process violation has occurred. To determine whether a term of pretrial detention has

become constitutionally infirm, the Court must consider certain factors, including, but not limited to, the length of the detention and the extent of the prosecution's responsibility for the delay of the trial. *See United States v. Watson*, No. 11-2338, 2012 U.S. App. LEXIS 7502, *9 (6th Cir. April 13, 2012) (citing *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000). The above consideration therefore compel this Court to conclude that this factor likewise favors dismissal with prejudice.

## IV.    CONCLUSION

Accordingly, based on the above analysis, the Third Superseding Indictment is DISMISSED with prejudice.

SO ORDERED.

Dated: March 27, 2013

/s/ Gershwin A Drain
GERSHWIN A. DRAIN
United States District Judge

-22-