1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
2                         SOUTHERN DIVISION

3

4    **UNITED STATES OF AMERICA,**

5                    Government,
                                        **HONORABLE GEORGE CARAM STEEH**
6         v.
                                        **No. 15-20652**
7    **D-3 EUGENE FISHER,**
     **D-4 COREY BAILEY,**
8    **D-6 ROBERT BROWN,**
     **D-13 ARLANDIS SHY,**
9    **D-19 KEITHON PORTER,**

10                   Defendants.
     _____/
11
                              **JURY TRIAL**
12
                       **Thursday, August 2, 2018**
13
                              -    -    -
14
     APPEARANCES:
15
     For the Government:          JULIE FINOCCHIARO, ESQ.
16                                JUSTIN WECHSLER, ESQ.
                                  TARE WIGOD, ESQ.
17                                MARK BILKOVIC,ESQ.
                                  Assistant U.S. Attorneys
18

19   For the Defendants:         HENRY M. SCHARG, ESQ.
                                  On behalf of Eugene Fisher
20
                                  CRAIG DALY, ESQ.
21                                KEITH SPIELFOGEL, ESQ.
                                  On behalf of Corey Bailey
22
                                  JAMES FEINBERG, ESQ.
23                                On behalf of Robert Brown

24
                                  MARK MAGIDSON, ESQ.
25                                JOHN THEIS, ESQ.
                                  On behalf of Arlandis Shy

1

2                                    STEVEN SCHARG, ESQ.
                                     On behalf of Keithon Porter

3

4                               -     -     -

5

6              *To Obtain Certified Transcript, Contact:*
           *Ronald A. DiBartolomeo, Official Court Reporter*
             *Theodore Levin United States Courthouse*

7              *231 West Lafayette Boulevard, Room 1067*
                     *Detroit, Michigan  48226*

8                        *(313) 962-1234*

9              *Proceedings recorded by mechanical stenography.*
           *Transcript produced by computer-aided transcription.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                        I   N   D   E   X

2  _____ Page

3  **VICENTE RUIZ**
   Direct examination cont. by Ms. Finocchiaro          5
4  Cross examination by Mr. Feinberg                   106
   Cross examination by Mr. S. Scharg                  125
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                *15-20652; USA v. EUGENE FISHER, ET AL*

```
 1                    E  X  H  B  I  T  S

 2   Identification_____  Offered   Received

 3   Government Exhibit Nos. 34, 35              7         7

 4   Government Exhibit Nos. 15C, D, J          75        75

 5   Government Exhibit No. 15K-N               82        82

 6   Government Exhibit No. 543                 88        88

 7   Government Exhibit No. 544                 89        89

 8   Government Exhibit No. 545                 89        90

 9   Government Exhibit No. 546                 92        92

10   Government Exhibit No. 11                  93        93

11   Government Exhibit No. 12                  94        94

12   Government Exhibit No. 13                  95        95

13   Government Exhibit No. 14                  95        95

14   Government Exhibit Nos. 15, 15A-B          96        96

15   Government Exhibit Nos. 19-25              98        98

16   Government Exhibit No. 466                 98        99

17   Government Exhibit No. 511                 99        99

18   Government Exhibit No. 512                100       101

19   Government Exhibit No. 513                101       101

20   Government Exhibit No. 516                101       101

21   Government Exhibit No. 517                102       102

22

23

24

25


              15-20652; USA v. EUGENE FISHER, ET AL
```

```
 1                              Detroit, Michigan
 2                              Thursday, August 2, 2018
 3                              At 8:42 a.m.
 4                               -   -   -
 5                  (Proceedings held with jury.)
 6
 7           THE COURT:  All right, folks.  You can take
 8    seat.
 9           Ms. Finocchiaro?
10           MS. FINOCCHIARO:  Thank you.
11           The government recalls Special Agent Ruiz.
12
13              V I C E N T E   R U I Z
14
15    being first duly sworn by the Court to tell the truth, was
16    examined and testified upon his oath as follows:
17
18           THE COURT:  State your name for the record.
19           THE WITNESS:  Vicente Ruiz.  V-i-c-e-n-t-e,
20    R-u-i-z.
21           THE COURT:  You may proceed.
22           MS. FINOCCHIARO:  Thank you.
23
24              DIRECT EXAMINATION CONT.
25
```

                *15-20652; USA v. EUGENE FISHER, ET AL*

1    **BY MS. FINOCCHIARO:**

2

3      **Q.**  Special Agent Ruiz?

4      **A.**  Yes.

5      **Q.**  I want to talk a few minutes about some of the

6    information that you gave to Special Agent Jensen in

7    orders to create that CAST report that we saw.

8      **A.**  Okay.

9      **Q.**  Before we get there, there are a few numbers that I

10   want to go over with you.

11            Were you able to determine a phone number for

12   Quincy Graham?

13     **A.**  Yes, there were several numbers for Quincy Graham.

14     **Q.**  What was the number that you got for Quincy Graham?

15     **A.**  One of the numbers was (313)912-6642.

16     **Q.**  Okay.  And did you get subscriber information from

17   the phone company for that specific phone number?

18     **A.**  Yes, I did.

19     **Q.**  Let me show you what's been marked as Government

20   Exhibits 34 and 35.  Can you explain to the jury what

21   Government Exhibit 35 is?

22     **A.**  These are the call detail records returned by

23   Verizon Wireless for phone number (313)912-6642,

24   subscriber name, Quincy Graham.

25     **Q.**  And which exhibit is that?

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **A.** Exhibits 35.

2    **Q.** And then is 34 the full CDR phone records for that

3    number?

4    **A.** Yes.

5         **MS. FINOCCHIARO:** Move for the admission of

6    Government Exhibits 34 and 35.

7         **THE COURT:** Any objection? The Court will

8    receive those items.

9

10   **BY MS. FINOCCHIARO:**

11   **Q.** Now you said that there was more than one number for

12   Mr. Graham. What was another number that you associated

13   with Mr. Graham?

14   **A.** That number would be (205)475-7432.

15   **Q.** And how did you associate that number with Mr.

16   Graham?

17   **A.** That was a number that was stored in Billy Arnold's

18   contact list. I believe it was either Life or Life Dub,

19   something like that. Dub Life.

20   **Q.** And how about for Devon McClure? Were you able to

21   associate a number for the time period of May 2015?

22   **A.** I can't tell you the exact time frame that the

23   number would have been tied to Devon McClure, but I was

24   able to associate the number (734)636-6402.

25   **Q.** And how were you able to associate that number to

*15-20652; USA v. EUGENE FISHER, ET AL*

1    Mr. McClure?

2    **A.**   That number was saved in Steve Arthur's contact list

3    in his cell phone.

4    **Q.**   Steve Arthur's contact list and Billy Arthur's (sic)

5    contact list came out of the phones that were recovered on

6    9-26-15 from that car chase, is that right?

7    **A.**   You said Steve Arthur and Billy Arthur.

8    **Q.**   Billy Arnold.

9    **A.**   Yes, it came from that night.

10   **Q.**   Okay.  And how about Jerome Gooch.  Do you have a

11   number for Jerome Gooch?

12   **A.**   I got a few numbers for him.  The one that is

13   relevant to this is going to be (313)920-7194, and that

14   number was saved in Billy Arnold's contact list.

15   **Q.**   Okay.  And how about Diondre Fitzpatrick?

16   **A.**   The number that I have for him is (313)753-4589.

17   **Q.**   How did you associate that to Mr. Fitzpatrick?

18   **A.**   A couple of different ways, through Andrew Thomas'

19   contact list and Billy Arnold's contact list, and that

20   phone was actually seized at the time of his arrest.

21   **Q.**   Mr. Fitzpatrick's arrest?

22   **A.**   Yes.

23   **Q.**   I would like to to go to the CAST report for a few

24   minutes.  Go to Exhibit 36, Page 5.

25          So this page deals with activities on July 14,

*15-20652; USA v. EUGENE FISHER, ET AL*

1      2014.   Remind the jury what's the significance of that

2      date.

3          **A.**   This was the date that Djuan Page, Michael Davis,

4      Martez Davis and Corey Crawford went to the parole office.

5      It's also the same date that Billy Arnold had a parole

6      office visit, and Djuan Page was later shot, and so was

7      Michael Davis.

8          **Q.**   And approximately what time did they arrive at the

9      hospital, Michael Davis and Djuan Page?

10         **A.**   The emergency room report stated that the time was

11     12:17 p.m.

12         **Q.**   So the time that we're seeing here for the phone

13     records is between 9:59 and 11:59 a.m.?

14         **A.**   Correct.

15         **Q.**   And you provided that information to Special Agent

16     Jensen so he could create this report?

17         **A.**   That's correct.

18         **Q.**   And why did you choose that time frame?

19         **A.**   It would have been the time frame that was covering

20     both of their visits to the parole office, as well as the

21     likely time that this crime would have occurred.

22         **Q.**   So what we're looking at here in this report, as

23     Special Agent Jensen said, is looking for billable events

24     associated with the number ending in 8378, is that right?

25         **A.**   Yes.

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **Q.**  That number 8378, which I believe you testified to

2    before, is associated with Billy Arnold?

3    **A.**  Yes, it is.

4    **Q.**  Now did you review the billable events that we see

5    listed in the different boxes?

6    **A.**  I did.

7    **Q.**  And did you find any events of interest of relevance

8    in this case?

9    **A.**  Yes, I did.

10   **Q.**  Can you go through them with the jury?

11   **A.**  So reviewing the call detail records for

12   (313)424-8378, I recognize that there was numbers that

13   were being contacted, both incoming and outgoing, to

14   friends, associates of Billy Arnold.

15           The first one that I noticed was at 10:05:41.

16   It's an incoming contact from the number (313)920-7194,

17   which is attributed to Jerome Gooch.

18   **Q.**  We're seeing that here on the third box?

19   **A.**  It's in the box indicated by the Tower CID 572-1.

20   It's the second in the row there, (313)424-8378 at

21   10:05:41.

22   **Q.**  Was there any other calls of significance that we

23   saw?

24   **A.**  There were.

25   **Q.**  Billable events, excuse me.

*15-20652; USA v. EUGENE FISHER, ET AL*

1        **A.**  There were two outgoing contacts, 10:29:34  and

2    10:29:41, both to the number (313)784-6729, which is

3    attributed to Corey Bailey.

4        **Q.**  Corey Bailey?

5        **A.**  Yes.

6        **Q.**  That's what we're seeing here?

7        **A.**  Yes.

8        **Q.**  And what was the other one?

9        **A.**  10:29:41.

10       **Q.**  And we see this in here on the box?

11       **A.**  Bottom box.

12       **Q.**  This one?

13       **A.**  Yes, ma'am.

14       **Q.**  Okay.  And you said those were attributed to

15    Mr. Bailey?

16       **A.**  Yes.

17       **Q.**  Okay.  And these are in the standard times, 10:29:41

18    a.m.?

19       **A.**  Yes, Eastern Standard Time.

20            The next one is at 10:42:11.

21       **Q.**  Okay.

22       **A.**  That's an outgoing contact with Robert Brown, number

23    (313)320-3075.

24       **Q.**  Okay.  And that's what we're seeing here.  On these

25    billable events, we're just seeing Billy Arnold's number

*15-20652; USA v. EUGENE FISHER, ET AL*

1    each time.  When you look at the records, you're actually

2    able to see who he was communicating with at the time?

3        **A.**   That's correct.

4        **Q.**   Okay?

5        **A.**   The next number of interest or event of interest is

6    10:48:24.

7        **Q.**   Okay.  Bottom line.  Who is that with?

8        **A.**   Outgoing to Corey Bailey,(313)784-6729.

9        **Q.**   Okay.

10       **A.**   After that at 10:50:16, outgoing to Jerome Gooch,

11   (313)920-7194.

12       **Q.**   And that again, is going to the bottom box here.

13   That's the time right there?

14       **A.**   Correct.

15       **Q.**   Okay.

16       **A.**   Next one is at 10:54:21, outgoing contact with

17   (313)912-6642, Quincy Graham.

18       **Q.**   Okay.  This one above here, right?

19       **A.**   Right.

20       **Q.**   You see that?

21       **A.**   Yes.  And the one just below that at 10:55:58,

22   outgoing contact with Devon McClure, cell phone number

23   (734)636-6402.

24       **Q.**   Okay.  The next one?

25       **A.**   At 10:58:40, we have incoming from Quincy Graham

*15-20652; USA v. EUGENE FISHER, ET AL*

1    (313)912-6642.

2        Q.   That's at the top, the fourth one down that we're

3    talking about?

4        A.   Correct.

5        Q.   What's the next event of interest?

6        A.   At 11:11:35, incoming from Quincy Graham

7    (313)912-6642.

8        Q.   What time was that?

9        A.   11:11:35.

10        Q.   That's in the second row?

11        A.   Yes.

12        Q.   Okay.

13        A.   Then at 11:12, there's outgoing to Corey Bailey,

14    (313)784-6729.  Then again at 11:12:36, (313)784-6729.

15        Q.   Okay.  So the first one is in the top box, and the

16    second one is at the bottom box, is that right?

17        A.   Yes.

18        Q.   Okay.

19        A.   The next event is outgoing to (313)784-6729 at

20    11:35:06, which is the second from the bottom in the

21    middle row of the top box.

22        Q.   Who was that with?

23        A.   Corey Bailey.  Then at 11:39:03, there's incoming

24    from Corey Bailey (313)784-6729.

25        Q.   11:39:03?

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    **A.**   Yes.

2    **Q.**   Okay.  At top of that top box there?

3    **A.**   That's correct.

4    **Q.**   Okay.

5    **A.**   Those are all the numbers of relevance to this

6    investigation.

7    **Q.**   Okay.  Let's move on to the next event.  Let's go to

8    Page 9 Exhibit 36.

9            So this event happened on May 1, 2015.  Can you

10   remind the jury what the significance of that date is?

11   **A.**   That was the day that Raphael Carter was shot at the

12   corner of Troester and Queen.

13           In addition, there was a victim, Mr. Marshall,

14   who was sitting on his porch about three blocks down the

15   street on Troester, who was shot in the ankle, and when

16   his brother came home, he took him to the hospital.

17   **Q.**   Approximately when did this shooting occur?

18   **A.**   At approximately 7:07 p.m.

19   **Q.**   So the time frame that we see here on this chart is

20   from 6:37 p.m. to 8:29 p.m.  Why did you choose this time

21   frame for that event?

22   **A.**   That surrounds the time of the crime, and wanted to

23   demonstrate as well the movement of the phones both in and

24   out of the area of the crime.

25   **Q.**   And for the two phone numbers that we see at the

*15-20652; USA v. EUGENE FISHER, ET AL*

1   top, can you remind the jury, the number ending in 8378 is

2   Billy Arnold?

3   **A.**   That's correct.

4   **Q.**   And the second number ending O837 is who?

5   **A.**   Keithon Porter.

6   **MR. S. SCHARG:**   Objection, your Honor.   There

7   is no foundation that the phone actually belonged to

8   Keithon Porter.   Based on the evidence that was presented

9   in the trial, there's nothing to show that that number is

10   subscribed to Mr. Porter.   All that we know is that an

11   officer testified from the city of Warren that when he

12   arrested Mr. Porter, he was in contact with that number.

13   That phone was destroyed.

14   **THE COURT:**   So to avoid a speaking objection,

15   you're asking to bar the evidence because of the lack of

16   foundation?

17   **MR. S. SCHARG:**   Yes.   I have no objection

18   saying that he had contact with that phone number, but I

19   have an objection that it is Keithon Porter's phone at

20   this point.

21   **THE COURT:**   Ms. Finocchiaro?

22   **MS. FINOCCHIARO:**   The government would argue

23   that it is associated with Keithon Porter, given that

24   around time this occurred, he was using that number to

25   engage in an undercover buy with the Detroit Police

*15-20652; USA v. EUGENE FISHER, ET AL*

1  Department on two separate occasions, on both occasions

2  him showing up after communicating with that number.  The

3  government feels there is a proper foundation for his tie

4  to that number.

5  　　　　　　THE COURT:  All right.

6  　　　　　　MR. S. SCHARG:  There's been no evidence that

7  Mr. Porter was -- no police officer ever recovered a phone

8  from Mr. Porter for his arrest in Warren.

9  　　　　　　MS. FINOCCHIARO:  Your Honor, also --

10  　　　　　　MR. S. SCHARG:  To say that it was his phone,

11  I think that's speculation at this point.  There's been no

12  evidence of that.

13  　　　　　　MS. FINOCCHIARO:  Just to add, there has been

14  testimony that there's been contact in people's contact

15  list with KP or lower p, Capital K with the number as

16  well.  So not only was he found with that number dealing

17  with the police, but also it's listed as KP in people's

18  contact list, which is relevant to the time frame, as well

19  as the contact between SMB associates and members.

20  　　　　　　THE COURT:  All right.  So if you refer to it

21  as his phone, you have reason to believe that he is

22  connected with the number?

23  　　　　　　MS. FINOCCHIARO:  Yes, that he was utilizing

24  that number.

25  　　　　　　THE COURT:  So you want to try to phrase your

*15-20652; USA v. EUGENE FISHER, ET AL*

1    questions in that fashion.  The Court will otherwise

2    overrule the objection, and you'll have both cross

3    examination and argument to present.

4        You may proceed.

5        **MS. FINOCCHIARO:**  Thank you, your Honor.

6

7    **BY MS. FINOCCHIARO:**

8    **Q.**  So we have two numbers that we're looking at in this

9    chart.  As with the first one when we're dealing with

10   July 14, 2014, did you have an opportunity to review the

11   numbers -- or the billable events on this chart to look

12   for events of interest?

13   **A.**  Yes, I did.

14   **Q.**  Explain to the jury what it is that you found.

15   **A.**  I found that Billy Arnold was in contact with people

16   of interest in this investigation, people that may have

17   been involved in this investigation.

18   **Q.**  Okay.  What's the significant calls that we see

19   here -- or events that we see here?

20   **A.**  The first one is going to be at 7:02:06.  It's

21   incoming contact from (205)475-7432, which is the number

22   associated with Quincy Graham.

23   **Q.**  And that's what we see right here, this box listed

24   here as 19:02:06, but you said 7:02?

25   **A.**  That's just military time versus common time.

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **Q.**  This is military time and the other was Eastern

2    Standard?

3    **A.**  Correct.

4    **Q.**  Okay.

5    **A.**  Just to be clear, my records are actually in UTC.

6    So I'm subtracting four hours to get to the time.

7    **Q.**  So what you're actually looking at are the records

8    themselves in UTC?

9    **A.**  That's correct.

10   **Q.**  So are there some other events that we see here?

11   **A.**  At 19:05:18, there's both outgoing and incoming

12   contact with number (313)728-0167.  That number is

13   attributed to Eugene Fisher.

14   **Q.**  That's what we see here at 7:05.  We see two events

15   with Eugene Fisher, and we have the approximate time of

16   the crime at 7:07 p.m.?

17   **A.**  That's correct.

18   **Q.**  Okay.

19   **A.**  Then at 19:05:24, there's outgoing contact from

20   Billy Arnold to Eugene Fisher, again at (313)728-0167.

21   **Q.**  At 19:05:24?

22   **A.**  Yes.

23   **Q.**  That was the one right below it?

24   **A.**  Yes, in that box.

25   **Q.**  Same box?

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **A.**   Yes.

2    **Q.**   Okay.

3    **A.**   Then there is incoming contact at 19:17:58, and

4    that's from Eugene Fisher, (313)728-0167.

5    **Q.**   That's what we see at this top box here.  So this

6    time now is 7:17:58.  So this is right after the crime

7    occurred at 7:07?

8    **A.**   That's correct.

9    **Q.**   Okay.

10   **A.**   Then at 19:18:O7, we see outgoing contact to Robert

11   Brown on number (313)320-3075.

12   **Q.**   Okay.  That's right underneath there, and again,

13   this was right after the event, the shooting?

14   **A.**   That's correct.

15   **Q.**   Okay.

16   **A.**   At 19:18:56, there's outgoing contact with

17   (205)475-7432, which is Quincy Graham.

18   **Q.**   That's in the middle of the box right here?

19   **A.**   Yes.  The very next one at 19:24:37, is another

20   outgoing contact to Robert Brown, (313)320-3075.

21   **Q.**   Okay.  We see that here.

22   **A.**   Then at 19:25:17, there's an outgoing contact to

23   Eugene Fisher at (313)728-0167.

24   **Q.**   Okay.  These calls are right after the shooting

25   happened at 7:07?

*15-20652; USA v. EUGENE FISHER, ET AL*

1      **A.**   That's correct.

2      **Q.**   Or these contacts.  Is there anything else that we

3    see on the map?

4      **A.**   Yes.  At 20:04:40, we see outgoing contact to Robert

5    Brown, (313)320-3075.

6      **Q.**   20:04:40?

7      **A.**   Yes.  Then the next one, 20:05:50, is an outgoing

8    contact to Diondre Fitzpatrick, (313)753-4589.

9      **Q.**   This is at 8:04 and 8:05 p.m.?

10     **A.**   Correct.  At 20:06:33, there's outgoing contact to

11   James Robinson at (313)948-8079.

12     **Q.**   That was James Robinson?

13     **A.**   Yes.  The next call, next contact was at 20:06:50.

14   That is also outgoing to James Robinson at (313)948-8079.

15     **Q.**   Okay.

16     **A.**   And then at 20:07:44, there's an outgoing contact to

17   Quincy Graham at (205)475-7432, and then again at

18   20:08:22, there's outgoing contact to Quincy Graham,

19   (205)475-7432.

20     **Q.**   That's what we see here?

21     **A.**   Yes.

22     **Q.**   So on the chart we're seeing contact with various

23   SMB and associates both before and after the shooting of

24   Raphael Carter?

25     **A.**   That's correct.

                *15-20652; USA v. EUGENE FISHER, ET AL*

**Q.**  Please go to Page 13 of the same exhibit.

So this is the CAST chart that we saw for May 8, 2015, and recall for the jury what's the significance of that date.

**A.**  On May 8, 2015, there was a shooting at the corner of Duchess and Craft that occurred at approximately 6:46 p.m. Devonte Roberts was killed during the shooting. Darrio Roberts was shot in the head area, and Marquis Wicker was shot multiple times in the chest and arm area, and Jesse Ritchie was the driver of that red Gran Prix, but avoided being hit with any rounds that day.

**Q.**  And you said that the crime occurred at approximately 6:46 p.m.  So we see a time frame here from 6:41 to 6:46, is that right?

**A.**  Yes.

**Q.**  What made you go with that time frame for this event?

**A.**  I actually gave him a longer time frame, but again, I was trying to get the time immediately before the crime and after the crime to show where the phones of interest would have moved from to get to the area of the crime, and then where they moved after the crime occurred.

**Q.**  Then for this event on May 8, 2015, we see the phones utilized 8378, associated with Billy Arnold, and O837, associated with Keithon Porter?

*15-20652; USA v. EUGENE FISHER, ET AL*

1          **MR. S. SCHARG:**  Can we approach the bench,

2     sidebar?

3          **THE COURT:**  All right.

4

5          (Sidebar conference held on the record.)

6

7          **MR. S. SCHARG:**  I'm sorry to take up your

8     time.  I just want a continued objection.  I just don't

9     want to keep -- my client wants me to object.  They never

10    recovered a phone off of him.  That number that he's --

11    that number is not associated other than with the arrest

12    that he had in Warren after this incident happened.

13         Again, we don't object to the government using

14    that number, but referencing it Mr. Arnold.  That's

15    objection, and we just want to continue the objection.

16         **THE COURT:**  She did indicate that it is

17    connected with Keithon Porter.  You will have a continued

18    objection.

19         **MR. S. SCHARG:**  Okay.  Thank you.

20         **MS. FINOCCHIARO:**  Can I say associated with?

21         **THE COURT:**  Yes.

22         **MR. S. SCHARG:**  Okay.

23

24         (Sidebar conference concluded.)

25

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1              **MS. FINOCCHIARO:**  Going back to the exhibit,

2      did you review the billable events that we see associated

3      in these boxes for this 5-15, shooting?

4          **A.**  Yes, I did.

5

6      BY MS. FINOCCHIARO:

7          **Q.**  What, if anything, did you find of interest?

8          **A.**  The first event of interest was at 17:38:45.  It was

9      an outgoing contact to (313)806-0837.  That number is

10     associated with Keithon Porter.

11         **Q.**  At 17:38?

12         **A.**  Yes, ma'am.

13         **Q.**  We don't see that on this specific chart, is that

14     right?

15         **A.**  That would show it on Slide 10.

16         **Q.**  Slide 10?

17         **A.**  Yes.

18         **Q.**  Go to Slide 10.  So if you can say again, the time

19     of that billable event?

20         **A.**  17:38:45.

21         **Q.**  Right here?

22         **A.**  Yes.

23         **Q.**  And again, what was the billable event?

24         **A.**  Outgoing contact.

25         **Q.**  Between who?

*15-20652; USA v. EUGENE FISHER, ET AL*

1   **A.**   Billy Arnold and Keithon Porter.

2   **Q.**   Okay.  And what else do we see?

3   **A.**   At 17:40:31, we've got incoming contact from

4   (313)806-0837.

5   **Q.**   That's right below there.  That's incoming from the

6   number associated with Keithon Porter?

7   **A.**   Correct.

8   **Q.**   Okay.

9   **A.**   Then the next one is outgoing at 17:45:04.

10  **Q.**   Okay.  What is that?

11  **A.**   Outgoing contact with Keithon Porter, (313)806-0837.

12  **Q.**   Okay.

13  **A.**   Then at 17:58:37, outgoing contact with

14  (313)806-0837, Keithon Porter.

15  **Q.**   That's what we see in this box at the top?

16  **A.**   That's correct.  Then --

17  **Q.**   I'm sorry.  Again, the crime occurred at 6:46 p.m.?

18  **A.**   That's correct.

19  **Q.**   This is prior to the crime?

20  **A.**   This is prior, and it's in the area of 7211 Meadow.

21  **Q.**   What was the significance of that address?

22  **A.**   That was address is attributed to Robert Brown.

23  **Q.**   What else do we see?

24  **A.**   Did I do 18:06:14 yet?

25  **Q.**   I don't believe so.

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **A.**  That's outgoing contact with (313)806-0837, Keithon

2    Porter.

3         **Q.**  I'm sorry.  Can you say that one more time again?

4         **A.**  18:06:14.

5         **Q.**  That's down in the green box?

6         **A.**  That's correct.

7         **Q.**  You said that was outgoing?

8         **A.**  Yes.

9         **Q.**  The number associated with Keithon Porter?

10        **A.**  That's correct.

11        **Q.**  Again, this is prior to the time of the crime?

12        **A.**  Correct.

13        **Q.**  Okay.

14        **A.**  Next one is 18:14:57, which is, I think, the next

15   slide.

16        **Q.**  Okay.  Go to the next slide.

17        **A.**  This is an incoming call from (313)320-3075.

18        **Q.**  That's this right here?

19        **A.**  Yes.  That's a number associated with Robert Brown.

20        **Q.**  Okay.  So is 6:14 getting closer in time to the time

21   of the crime?

22        **A.**  That's correct.  And you can see that the cell phone

23   device has moved out of the area of 7211 Meadow.

24        **Q.**  And where is it moving closer to?

25        **A.**  Closer to the area of the address 20304 Dresden.

*15-20652; USA v. EUGENE FISHER, ET AL*

1      **Q.**   Who is that address associated with?

2      **A.**   Keithon Porter.

3      **Q.**   Okay.  Is there another event that we see on this

4      slide?

5      **A.**   Yes.

6      **Q.**   Okay.

7      **A.**   At 18:15:54, there's an outgoing call to Keithon

8      Porter at (313)806-0837.

9      **Q.**   Okay.

10     **A.**   Then at 18:17:33, there's an outgoing call placed to

11     Keithon Porter at (313)806-0837.

12     **Q.**   Okay.

13     **A.**   Then at 18:32:36, there's --

14     **Q.**   Is that on the next slide?  Go to Page 12.

15     **A.**   No, it's not on Slide 12.

16     **Q.**   Okay.

17     **A.**   That's okay.

18     **Q.**   Page 13.

19     **A.**   At 18:32:36, there was incoming contact from

20     (313)806-0837.

21     **Q.**   Okay.  That's again associated with Keithon Porter?

22     **A.**   Correct.  And then 18:33:01, there was outgoing

23     contact to (313)806-0837.

24     **Q.**   Okay.  This is now at 6:33 p.m., and the crime

25     occurred at 6:46 p.m.?

*15-20652; USA v. EUGENE FISHER, ET AL*

1      **A.**   That's correct.  We're getting closer.

2      **Q.**   Okay.

3      **A.**   Then at 18:41:29, there's outgoing contact with

4      Keithon Porter, (313)806-0837.

5      **Q.**   Okay.  That's what we see in this box?

6      **A.**   In fact, all the contact between 18:41:29 and

7      18:51:32 is outgoing with Keithon Porter at (313)806-0837.

8      **Q.**   So what we see in this box, you're saying is

9      outgoing to Keithon Porter here at 6:41, again at 6:41:42,

10     6:42:17, is that right?

11     **A.**   Is that correct.

12     **Q.**   And that is between numbers associated with Billy

13     Arnold and Keithon Porter?

14     **A.**   Yes.

15     **Q.**   And going to this box right here, you said that

16     these are again from Billy Arnold to associated with

17     Keithon Porter at 6:42, and then at 6:46?

18     **A.**   So in Special Agent Jensen's presentation here, on

19     the left you have Billy Arnold's call activity, and on the

20     right you have Keithon Porter's call activity.  They

21     actually reflect the same activity between the two of

22     them.

23     **Q.**   We have activity up to the time of the shooting

24     which occurred at 6:46 p.m.?

25     **A.**   That's correct.  So when we look at Billy Arnold's

*15-20652; USA v. EUGENE FISHER, ET AL*

1    records, we see outgoing contact, and when we looked at

2    Keithon Porter's activity, we see incoming contact from

3    the Billy Arnold's number.

4        Q.   And when we look at the two red boxes on either side

5    for the contact where it is occurring, what is that

6    address there?

7        A.   The red box is the area of the intersection of Craft

8    and Duchess.

9        Q.   Where the shooting outside occurred?

10       A.   That's correct.

11       Q.   This contact is occurring in this area at the time

12   that the shooting is occurring?

13       A.   That's correct.

14       Q.   So is there anything else for this specific date?

15       A.   Yes.  At 19:13:19, we have incoming contact from

16   (313)806-0837, Keithon Porter.

17       Q.   Okay.  This is after 7:13 p.m.?

18       A.   That's correct.

19       Q.   Okay.

20       A.   Then later at 20:20:12, we see both incoming and

21   outgoing contact to (313)671-6022, which is the number

22   attributed to Arlandis Shy.

23       Q.   Give it to me one more time.

24       A.   20:20:12.

25       Q.   20:20:12?

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    **A.**  So 8:20:12.

2    **Q.**  Do we see that here?

3    **A.**  Yes.

4    **Q.**  You said that was between Billy Arnold and Arlandis

5    Shy?

6    **A.**  That's correct.

7    **Q.**  The times before that, because we didn't have the

8    slide up, was 19:13 right here in this box.  Those are the

9    ones that you just looked up?

10   **A.**  I think it was prior to that time.

11   **Q.**  I apologize.  Anything else that we see on this

12   slide?

13   **A.**  No.

14   **Q.**  At this time when these calls are happening, what is

15   the location of the center again?

16   **A.**  That's the address of 7211 Meadow, which is the

17   address associated with Robert Brown.

18   **Q.**  This is after the time of the shooting, the calls --

19   or the activity occurring in the area of where Robert

20   Brown's address -- that's he associated with?

21   **A.**  Yes.  It appears that the phones that were in the

22   area of the crime have moved out of the area, and moved to

23   the area of 7211 Meadow.

24              **MR. MAGIDSON:**  Objection, your Honor, to

25   reference to the phones that were in the crime area now

*15-20652; USA v. EUGENE FISHER, ET AL*

1      moving to another location.  Mr. Shy's phone was not at

2      the crime area.  I object to that.

3                  **THE COURT:**  I don't think that I caught

4      everything that you said, but Ms. Finocchiaro?

5                  **MS. FINOCCHIARO:**  The government would

6      withdraw the last question.

7                  **THE COURT:**  All right.

8

9      **BY MS. FINOCCHIARO:**

10         **Q.**  Anything else for 5-8-15?

11         **A.**  No.

12         **Q.**  Let's move on to the next event, which is Page 15,

13     and we see this is for activity on May 10, 2015.

14                  What occurred on May 10, 2015?

15         **A.**  This was the shooting that occurred at the

16     intersection of State Fair and Hoover at approximately

17     1:40 p.m.  The victims in the car were Darnell Canady,

18     Jason Gaskin and Derrick Peterson.  Derrick Peterson was

19     shot in the foot area.

20         **Q.**  And what are the phone numbers -- 8378, again, is

21     associated with Billy Arnold?

22         **A.**  That's correct.

23         **Q.**  0837 is associated with Keithon Porter?

24         **A.**  Correct.

25         **Q.**  And the blue number 3075, is associated with Robert

*15-20652; USA v. EUGENE FISHER, ET AL*

1    Brown?

2        **A.**  That's correct.

3        **Q.**  And again, looking at time period of 1:05 to

4    1:59 p.m., did you give Joe Jensen -- Agent Jensen that

5    time frame?

6        **A.**  Yes.

7        **Q.**  Why did you choose that time frame?

8        **A.**  To see the activity of the phones both prior to,

9    during the crime, and after the crime.

10       **Q.**  Did you review these billable events depicted here

11   to pick out ones of interest -- to see ones of interest?

12       **A.**  Yes.

13       **Q.**  Explain to the jury what those were.

14       **A.**  Looking specifically at the call detail records for

15   (313)424-8378, the first call of interest occurred at

16   12:52:49.  It was an outgoing contact to (313)806-0837,

17   Keithon Porter.

18       **Q.**  Okay.

19       **A.**  Next was at 13:37:38.  It was an incoming contact

20   from (313)806-0837.

21       **Q.**  Okay.  That's what we're seeing on here.  Okay.

22       **A.**  Okay.  The next was an outgoing contact at 13:40:04

23   to (313)806-0837.

24       **Q.**  So again, the last two that we're seeing between the

25   numbers associated with Billy Arnold and Keithon Porter

*15-20652; USA v. EUGENE FISHER, ET AL*

1    are happening at 1:37 and 1:40, is that right?

2       A.   That's correct.  And you will also see that activity

3    if looking at the other boxes that indicate the activity

4    for number (313)806-0837.

5       Q.   That's the activity indicated on both Billy Arnold's

6    number and --

7       A.   That's correct.

8       Q.   These are happening right before and right at the

9    time of the shooting, is that right?

10      A.   That's correct.

11      Q.   And what area do we see in the red box that these

12   billable events are occurring there?

13      A.   The intersection of Hoover and State Fair.

14      Q.   Is that where the shooting occurred on Mother's Day?

15      A.   Yes, it is.

16      Q.   Is there other events -- relevant events that you

17   found?

18      A.   The next outgoing call at 13:46 is to (313)728-0167,

19   which is Eugene Fisher's number.

20      Q.   Okay.  At 1:46?

21      A.   That's correct.

22      Q.   Okay.  This is just a few minutes -- six minutes

23   after the crime occurred?

24      A.   Approximately.

25      Q.   Approximately.  Okay.

                   *15-20652; USA v. EUGENE FISHER, ET AL*

1    **A.**   Then at 13:48:07, there's outgoing contact to with

2    (313)806-0837.

3    **Q.**   So this is at approximately 1:40, which is right

4    after the time of the shooting?

5    **A.**   Correct.

6    **Q.**   So we're seeing contact with Billy Arnold and this

7    number for Keithon Porter, both before and after of the

8    time of the shooting?

9    **A.**   That's correct.

10   **Q.**   Okay.  Continue with the other events.

11   **A.**   Then at 13:48:36, there's outgoing contact to

12   Arlandis Shy, (313)671-6022.

13   **Q.**   That's what we see here.

14   **A.**   And then the next call, this is at 13:52:48, an

15   outgoing to (313)728-0167, Eugene Fisher.

16   **Q.**   Right after the time of the shooting, you're seeing

17   calls with -- or contact with Arlandis Shy and Eugene

18   Fisher?

19   **A.**   That's correct.

20   **Q.**   All right.  Anything else of billable entries on

21   this chart?

22   **A.**   Yes.  So analyzing the call detail records for

23   (313)806-0837, we see similar contact, in that there is

24   incoming contact from Billy Arnold at 13 -- I'm sorry --

25   yes, 13:39:59.

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **Q.**  You said that these are from the records of O837.

2    So we see that at 1:39:59?

3    **A.**  Correct.

4    **Q.**  Okay.

5    **A.**  Then at 13:48:O8, there's incoming from Billy Arnold

6    (313)424-8378.

7    **Q.**  Okay.

8    **A.**  Then at 13:53:14, there's an incoming call from

9    Robert Brown, (313)320-3075.

10   **Q.**  There is a call between Robert Brown to the number

11   associated with Mr. Porter?

12   **A.**  That's correct.

13   **Q.**  This is shortly thereafter the time of the crime

14   occurring?

15   **A.**  That's correct.

16   **Q.**  Anything else that we see from this chart?

17   **A.**  No, ma'am.

18           **MS. FINOCCHIARO:**  Just one moment.

19

20   **BY MS. FINOCCHIARO:**

21   **Q.**  We're going to move on from -- now we heard I

22   believe it was yesterday or day before about a search that

23   occurred on Westphalia?

24   **A.**  That's correct.

25   **Q.**  Were you present at the time of the search?

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **A.**  Yes, I was.

2    **Q.**  And when did the search occur?

3    **A.**  It was in June of 2015.  The exact date escapes me.

4    **Q.**  And who was present in the house at the time of the

5    search?

6    **A.**  Keithon Porter, a female -- I can't remember her

7    name -- and we learned that James Robinson had run and

8    ended up -- was located two doors down and subsequently

9    arrested.

10   **Q.**  Later in your review of the text message from Billy

11   Arnold's phone, did you see any references to that search

12   on Westphalia?

13   **A.**  There were text messages that indicated that he was

14   there prior to the raid, and that he had alluded police

15   that day.

16   **Q.**  If we could go to Government Exhibit 20K, and going

17   from bottom up, given that's how the time goes, what do we

18   see here?

19   **A.**  We're seeing contact from Billy Arnold to

20   (313)740-5732, the contact name is Whitney, which is the

21   mother of his child, Whitney Miller.

22   **Q.**  Okay.

23   **A.**  June 18, 2015 at 1:47, he sends a text just to her

24   saying:  Just ran from raid team on Westphalia.

25   **Q.**  Did you have a team of individuals with you when you

*15-20652; USA v. EUGENE FISHER, ET AL*

1    searched the home on Westphalia?

2      **A.**  Yes, quite a few of us.

3      **Q.**  Okay.  Read up the conversation between Whitney and

4    Mr. Arnold.

5      **A.**  She responds:  WtF you need to stay away from them

6    hot ass niggas! Wya?

7           And he responds:  I'm in da alley.

8      **Q.**  Does the conversation continue?

9      **A.**  She responds at 2:09:  Well my mama got to pick up j

10   do you u need me to cum get u wen she get bak?

11          He responds:  Y wouldn't u cone get me how could

12   you leave me like this.

13          And she replies:  I will, he gotta a be picked

14   up frm skool she cnt be late.

15     **Q.**  Go to the next page of this exhibit.  Same

16   conversation continues.

17     **A.**  At 2:51 Billy sends a text:  Where are you.

18          And then he sends another one:  Since ur not

19   gonna ans atleast let me knw u ok -- I'm sorry.  These are

20   message from Whitney to Billy.

21     **Q.**  Okay?

22     **A.**  She asked:  Where are you.

23          And then she sends:  Since ur not gonna ans

24   atleast let me knw u ok.

25          Then she sends a third text message:  Jus rode

*15-20652; USA v. EUGENE FISHER, ET AL*

 1    down westphaila.

 2              Billy responds:  I'm good.

 3              And Whitney responds:  Ok.

 4    **Q.**  In further review of Billy Arnold's text, did you

 5    find texts after June 2015 with SMB associates and members

 6    between Billy Arnold?

 7    **A.**  Yes.

 8    **Q.**  If we could go to Exhibit 20H?

 9              **MR. FEINBERG:**  Which number?

10              **MS. FINOCCHIARO:**  20H.  What do we see here?

11    **A.**  This is a text conversation between Billy Arnold and

12    a contact person as Sos 2, (313)433-6659, which is Devon

13    Patterson.

14

15    **BY MS. FINOCCHIARO:**

16    **Q.**  What's the conversation here?

17    **A.**  Billy Arnold sends a text to Patterson on July 2,

18    5:43 p.m. and says:  Wya.

19              Patterson responds:  We on manning.

20              Billy sends a text:  Need one of them hammers I

21    got lominel.

22              Patterson responds:  Come on.

23    **Q.**  And the name Lominel, as part of the investigation,

24    we heard that before.  Who does that refer to?

25    **A.**  Lominel Jackson, a Six Mile guy.

*15-20652; USA v. EUGENE FISHER, ET AL*

38

1    **Q.**  As part of your investigation, have you heard the

2    term "hammers" before?

3    **A.**  Yes.

4    **Q.**  Go to 20G.  And what do we see on July 10, 2015?

5    **A.**  This is a text exchange between Billy Arnold and the

6    contact is Pat Ju, (313)330-6367.  This person is Julian

7    Patterson, Devon Patterson's brother.

8            The first text comes from Julian Patterson.  It

9    says:  Tha police here in front of tha crib.

10            Billy responds:  Ok.

11            Then Julian sends another text:  It wasn't tha

12    ops tho it was some random shit.

13    **Q.**  We heard references to ops as opposition or being

14    rivals?

15    **A.**  Correct.

16    **Q.**  And what do we see here?

17    **A.**  After those text exchanges with Julian Patterson,

18    Billy Arnold sends a text to Robert Brown, and it says:

19    No ops some one got into it.

20            Robert Brown responds:  At capers that shit all

21    on the net.

22    **Q.**  This again is July 10, 2015 right after the

23    conversation with Julian Patterson?

24    **A.**  That's correct.

25    **Q.**  Go to 22A, and just what kind of information are we

                *15-20652; USA v. EUGENE FISHER, ET AL*

1    seeing off of Billy Arnold's phone?

2        **A.**   This is a photo that was actually -- it appears to

3    have been taken using this phone.  It says that this photo

4    was created on July 20, 2015 at 11:28:46.

5        **Q.**   Created by the phone itself?

6        **A.**   Correct.  It's got the camera that took this photo,

7    being Samsung SM-G386T1.  It has the capture time, the

8    pixel resolution, and then the make and model of the

9    phone.

10       **Q.**   Looking at the photo, what do we see in the photo?

11       **A.**   We see a hand holding a semi-automatic pistol with

12   an extended magazine.

13       **Q.**   And go to 22B, again from Mr. Arnold's phone.  What

14   do we see here?

15       **A.**   This is another photo that was captured on this cell

16   phone device.  This one was captured or created on

17   July 23, 2015 at 4:32:39.

18       **Q.**   Okay.  And what's in this photo?

19       **A.**   It's two semi-automatic pistols, both with extended

20   magazines.

21       **Q.**   And go to 22C.  And what do we see here?

22       **A.**   This is the information associated with this photo

23   that was saved on this phone, saying that it was created

24   on July 26, 2015 at 9:24.

25       **Q.**   What do see in this photo?

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **A.**  I know this to be Billy Arnold, even though we can't

2    see his face.  That's Billy Arnold with two pistols in his

3    hands with extended magazines.

4    **Q.**  Go to 20AA.  Now at August 3, 2015, what do we see

5    here?

6    **A.**  This is a text message from Jeffrey Adams.  This is

7    (989)325-5492.  It's received by Billy Arnold on August 3,

8    2015 at 10:24 p.m.  The message is:  Tryna drop a 4.

9    **Q.**  This is Jeffrey Adams reaching out to Billy Arnold?

10   **A.**  That's correct.

11   **Q.**  Go to 23C.

12                **MR. FEINBERG:**  What number?

13                **MS. FINOCCHIARO:**  23C.

14

15   **BY MS. FINOCCHIARO:**

16   **Q.**  What do we see here on August 10, 2015?

17   **A.**  We see this is a multimedia message coming from

18   Matleah Scott, cell phone number (313)645-8854.  There's

19   no text associated with this message, only a photo.

20   **Q.**  Okay.  Go to the photo.  What do we see here?

21   **A.**  This is a screen capture from Instagram account

22   keyia_blessed.  She posted a photo of two individuals with

23   pistols.  It's kind of a blurry photo.

24   **Q.**  Okay?

25   **A.**  And then she wrote:  My real killers real niggas

*15-20652; USA v. EUGENE FISHER, ET AL*

1    hold up fake niggas fold up dumb ass, emojis, @jay_doublle

2    @6mile_riptae.

3    **Q.**  This person is tagging Six Mile members in the

4    photo?

5    **A.**  At least one.

6    **Q.**  And this is a screen shot from Matleah Scott to

7    Billy Arnold?

8    **A.**  That's correct.

9    **Q.**  And go to 20C.  This is August 27, 2015.  What do we

10   see here?

11   **A.**  This is a text message that was sent from Billy

12   Arnold to Keithon Porter, number (313)806-0837.

13   **Q.**  What does it say?

14   **A.**  I don't know what yall niggaz doing on that

15   situation I ain't in the middle of shit I'm getting thus

16   money shit together I ain't on that bum shit but this what

17   I did I told them niggaz u got they shit which is true u

18   trying to take they shit so u going Deal with that shit

19   I'm grown ass hell so like I told them they gotta get it

20   in blood they know where u at so they on what they on I

21   ain't stopping shit I'm grown ass hell it is what it is

22   real rap.

23   **Q.**  Go to the next page.  Same date.  What do we see

24   here?

25   **A.**  Reading from bottom to the top, we see a message

*15-20652; USA v. EUGENE FISHER, ET AL*

1    from Keithon Porter to Billy Arnold:  Bro why u texting me
2    all that bullshit nigga I ain't worried about nobody at
3    all I dnt give a fuck who is dawg u on some bullshit my
4    nigga fuck u mean get it in blood so I guess I gotta get
5    my AR in blood to I mean be real I ain't no Hoe bro u
6    could've called me I dnt wnt that weak ass shit they got
7    cum on now I know where nigga at to so wat u saying dawg.
8       Q.  So the text messages that we're seeing the number
9    0837 associated with Keithon Porter saying to Billy
10   Arnold, getting the AR in blood?
11      A.  That's correct.
12      Q.  And what is the text above that?
13      A.  Right after that is from Billy Arnold to Keithon
14   Porter.  It says:  You right.
15      Q.  Continuing on here now we go September 10, 2015.
16   What do we see here?
17      A.  Billy Arnold and Keithon Porter having a text
18   exchange.  The first is from Billy Arnold to Keithon
19   Porter.  It says:  So niggas talking wreckless.
20           Keithon responds:  U tell me.
21           And Billy says:  I don't want no smoke.
22      Q.  Go back a page.  I believe I skipped over a
23   conversation up here.  So going back to the conversation
24   that happened on August 27, 2015, what do we see here?
25      A.  You see another text exchange between Billy Arnold

*15-20652; USA v. EUGENE FISHER, ET AL*

1    and Keithon Porter.  First is from Keithon.  It says:  Was

2    up with my ar bro.

3              Right after Billy responds:  U said what you

4    said alright.

5              Keithon responds: yeah alright.

6    Q.  Just to be clear, the number associated with Keithon

7    Porter saying to Billy Arnold what's was up with AR?

8    A.  That's correct.

9    Q.  Go to 23B.  This is Billy Arnold.  What do we see

10   here?

11   A.  On September 15, 2015, we got two multimedia

12   messages that arrived on his phone without any text

13   messages, but there were two photos sent to him, one was

14   from Matleah Scott, and other one was from Devon McClure's

15   sister.

16   Q.  Go to the photo.  What do we see here?

17   A.  This is an advertisement for a celebration of sorts

18   called Block Day.  The dates of that celebration was going

19   to be Friday, September 25th at the Crazy Horse, which is

20   located at 8140 Michigan Avenue, Detroit.

21   Q.  This is the night and location that we heard about

22   the investigation and arrests occurred with Billy Arnold

23   Steven Arthur, Arlandis Shy and others?

24   A.  That's correct, and on this advertisement is an

25   actual photograph of Devon McClure.

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **Q.**  Go to 20A.  Now we are on the night of the Crazy

2    Horse party, September 25, 2015.  What are we seeing here?

3    **A.**  This is a text from Billy Arnold to Eugene Fisher at

4    (313)728-0167.  It is September 25th at about 11:22 p.m.

5    It says:  I'm coming to grab something be close.

6    **Q.**  Billy is saying this to Eugene Fisher?

7    **A.**  That's right.

8    **Q.**  And what do we see here?

9    **A.**  At 11:26, Eugene Fisher responds to Billy:  At

10   crazyhorse.

11         Then at 11:27, Billy sends a text message:  I

12   need to get in yo crib and grab my hook ups.

13   **Q.**  So Billy is saying to Eugene Fisher he needs to go

14   to his house to grab his hookups?

15   **A.**  That's correct.

16   **Q.**  And as you've testified before, hookups along with

17   hammers, you've seen this as part of your investigation?

18   **A.**  That's correct.

19   **Q.**  And what do we see here?

20   **A.**  At 11:30 Billy sends another text message to Eugene

21   Fisher.  It says:  Dawg what up I'm on da move I can't be

22   half texting what up.

23   **Q.**  This is at 11:30 p.m.?

24   **A.**  That's correct.

25   **Q.**  Between Billy and Eugene Fisher?

*15-20652; USA v. EUGENE FISHER, ET AL*

1      **A.**   That's correct.

2      **Q.**   Let's talk about the night of 9-25-15 into 9-26-15.

3   Were you part of that investigation?

4      **A.**   Yes, I was.

5      **Q.**   Can you describe the investigation that occurred

6   that night into the early morning hours?

7      **A.**   Absolutely.  We were aware that this party was going

8   to occur through social media monitoring, and saw it as an

9   opportunity to potentially do traffic stops on subjects

10   that were likely to have guns and or drugs in their

11   possession.  So we coordinated with Michigan State Police,

12   Detroit Police Department Tactical Response Unit, Detroit

13   Police Department Gang Intelligence Unit, our Violent Gang

14   Task Force was part of it, our Violent Crime Task Force

15   was part of it.  We had canine access available to us.  We

16   had air access available to us.  We conducted both fixed

17   and dynamic surveillance in the area of the Crazy Horse.

18      **Q.**   Let me stop you there for a second.  You said canine

19   as well as air access.  So you had dogs available as well

20   as helicopters or planes?

21      **A.**   Correct.  We had -- I think the Michigan State

22   Police Air Unit, helicopter units.

23      **Q.**   So this was a pretty big operation?

24      **A.**   Yes, it was.

25      **Q.**   Both fix and dynamic surveillance.  What do you mean

*15-20652; USA v. EUGENE FISHER, ET AL*

1    by that?

2        A.   Fixed surveillance is where a person is observing

3    without moving.  I happened to be one of those people that

4    night.  Dynamic surveillance would be someone that's in a

5    vehicle moving through the area, so that way as a target

6    vehicle left the location, that person that's doing

7    dynamic surveillance could follow that target vehicle out

8    of the area.

9        Q.   So what was the plan that night?  You were in charge

10   of this operation, is that right?

11       A.   Yes, I was.

12       Q.   What was the plan?  What was to occur?

13       A.   The plan was we had identified some people that we

14   thought might be likely to carry guns that night, and to

15   traffic stop those.  Essentially, the Detroit Police

16   Department and Michigan State Police units would be

17   responsible for the traffic stop portion, and our units

18   would be responsible for the surveillance portion of the

19   operation.

20       Q.   And that night after we heard about the individuals

21   being arrested, were you there when they were brought back

22   to be processed?

23       A.   I was.

24       Q.   Who was it that was arrested the night of 9-25 into

25   9-26-15?

*15-20652; USA v. EUGENE FISHER, ET AL*

1        A.   Quite a few individuals were arrested that night

2   related to this investigation.  There was a Chevy

3   Trailblazer that was involved in high speed police chase

4   that you heard about.  In that vehicle was Billy Arnold

5   and Steve Arthur.  Both were arrested that night.  There

6   was a vehicle --

7        Q.   Let me stop you.  They were arrested with the AR-15,

8   is that right?

9        A.   That's correct.  The AR-15 was located in that

10  vehicle, as well as cell phones belonging to Billy Arnold

11  and Steve Arthur.

12       Q.   And that was the AR-15 that we heard Rebecca Smith

13  testify about yesterday matching to the shootings that we

14  have discussed?

15       A.   That's correct.

16       Q.   Please continue.  Who were the other people that

17  were arrest?

18       A.   There was another vehicle that was stopped in which

19  Andrew Thomas had thrown a pistol from the passenger side

20  window.  In that vehicle you had Arlandis Shy driving, you

21  had Andrew Thomas, Jeffaun Adams and Marcus Smith.  All

22  four of them were taken to the Detroit Detention Center.

23  And then there was a third vehicle that was stopped, in

24  which Devon Patterson and Willie McCall were arrested and

25  taken to the Detroit Detention Center.  And there was --

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    my investigation had revealed there was a fourth car with

2    individuals that were in attendance at the party that had

3    been stopped, but at the time of all the activity -- there

4    was a lot chaos stopping this many vehicles -- the

5    Michigan State Police believed that they had the wrong

6    vehicle and let that vehicle go, but there were actually

7    people in that vehicle that were of interest to us to

8    include Derrick Kennedy.

9    **Q.**  So in your review of the cell phone data, as well as

10   the social media data, did you see references to the party

11   at Crazy Horse as well as the aftermath that occurred with

12   the arrest?

13   **A.**  Yes.

14   **Q.**  Go to Exhibit 15, Eugene Fisher cell's phone, Page

15   21.  What do we see here?  Is this the same flier that we

16   saw on Billy Arnold's phone?

17   **A.**  Yes.

18   **Q.**  Announcing the party that was happening that day?

19   **A.**  Yes.

20   **Q.**  Go to Page 12.  We saw the conversation on Billy

21   Arnold's phone.  Is that the same conversation that we see

22   on Eugene Fisher's phone?

23   **A.**  Yes.

24   **Q.**  Relating to him to grab the hookups from Eugene

25   Fisher's house?

1      **A.**   That's correct.

2      **Q.**   Go to Arlandis Shy's Facebook page, Exhibit 56, Page

3      9O, the very top.  Here we see uploaded 9-26-15, is that

4      correct?

5      **A.**   Yes.

6      **Q.**   At 5:23 UTC.  Approximately what time would that be?

7      **A.**   1:23.

8      **Q.**   And then we see -- it looks like another video being

9      uploaded.  What is the description of the video?

10     **A.**   It says crazy horse right now #LongLifeBigBlock.

11     **Q.**   When was this uploaded?

12     **A.**   Appears it was --

13     **Q.**   At the very bottom?

14     **A.**   On September 26, 2015 at 12:52 Eastern Standard

15     Time.

16     **Q.**   Go to the video, Exhibit 56F.  I want to play it

17     through it once, and point out afterwards when we play

18     through it again who is in the video?

19     **A.**   Okay.

20            (Video played.)

21     **Q.**   You can stop it right there.  All right.  This time

22     we will play it without sound.  I'll have you step down

23     and take the microphone, and let us know when to stop it.

24     **A.**   Sure.

25     **Q.**   Who do we see in the video?

*15-20652; USA v. EUGENE FISHER, ET AL*

1     **A.**  Let's pause it there.

2     **Q.**  Oh, I have the pause.  I forgot it is right here.

3     **A.**  The person in the Red Wing hat, red shirt, this is

4     Derrick Kennedy.

5     **Q.**  Okay.

6     **A.**  You'll see him better.  Stop.  Go back a just a

7     little.  Right there.  This person is Andrew Thomas.  He's

8     wearing all red.

9     **Q.**  Known as Chino?

10    **A.**  Yes.

11    **Q.**  Okay.

12    **A.**  Pause.  The person in that white golf shirt, that

13    was Devon Patterson.  You'll see a better photo of him.

14    Pause.  This person is Arlandis Shy.

15    **Q.**  He is doing hand signals in this video?

16    **A.**  He is.  Back to Derrick Kennedy.  Pause.  This is

17    Willie McCall with the Squad T-shirt.  He goes by Ill

18    Will.

19    **Q.**  Okay.  He was in the car with Devon Patterson you

20    said?

21    **A.**  Yes, he was.

22    **Q.**  What are they doing here?

23    **A.**  Putting their money on ice.  Derrick Kennedy.  Devon

24    Patterson.  This is much clearer, and you see Andrew

25    Thomas comes into the frame right here.  Right there is

*15-20652; USA v. EUGENE FISHER, ET AL*

1      Andrew Thomas.

2         Q.   Andrew Thomas was in the car with Arlandis Shy?

3         A.   Yes.   Pause.   This is Jeffaun Adams.   Jeffaun Adams

4      and Andrew Thomas were in the car with Arlandis Shy that

5      night.

6         Q.   Go to 56G.   Again, I will play it once through.

7              (Video played.)

8              So now I'll play it without sound, and you can

9      point out who we see in the video?

10        A.   Sure.   Pause.   This is Arlandis Shy, Derrick

11     Kennedy.

12        Q.   Okay.

13        A.   Pause.   This is Billy Arnold right here behind

14     Arlandis Shy.

15        Q.   You recognize the T-shirt?

16        A.   I do.   It's a T-shirt that says "Plead the Fifth."

17     He was wearing it at the time of his arrest.   Derrick

18     Kennedy.   This is Devon Patterson walking up.   Willie

19     McCall.   Andrew Thomas in the red hoodie.   Pause.   That

20     person there looks like Weez, Michael Gray.   Pause.   This

21     is Marcus Smith.

22        Q.   Marcus Smith was in one of the vehicles?

23        A.   With Arlandis Shy, Jeffaun Adams and Andrew Thomas.

24        Q.   Okay.

25        A.   Willie McCall.   Pause.   This is Raymond Sellers,

1    King Ray, Fat Ray, Hardwork Rookie.  That's Arlandis Shy.

2        Q.  Okay.  Let's go to Eugene Fisher's Facebook, Exhibit

3    44, Page 6.  What do we see in this post from Eugene

4    Fisher's page?

5        A.  This is a post on September 27, 2015.  It's actually

6    at 3:15 Eastern Standard Time.  It says:  I almost lost

7    two year's out my life there weekend!  God is, emojis,

8    FREE MY SQUAD!

9        Q.  This was -- the party went into the 26th.  So this

10   is the day after that this is posted?

11       A.  Correct.

12       Q.  Was Eugene Fisher arrested that night?

13       A.  He was not.

14       Q.  Go to Page 35.  We start down here to just get the

15   time.  When was this message sent?

16       A.  This is sent from Hardwork Rookie or Raymond Sellers

17   to Eugene Fisher, September 26 -- well, actually it would

18   have been September 25th at about 8:41 p.m.

19       Q.  And go to the conversation.  What do we see here?

20       A.  He asks:  Are going to the party.

21       Q.  And it looks like Mr. Fisher replies with an image?

22       A.  That's correct.

23       Q.  And the conversation continues.  What do we see

24   here?

25       A.  So Eugene Fisher sends Raymond Sellers his cell

*15-20652; USA v. EUGENE FISHER, ET AL*

1    phone number, (313)728-0167.

2      Q.   All right.

3      A.   And then sends another message.  It says:  Hmu.

4      Q.   What do we see here?

5      A.   This actually would be September 26th at about

6    11:00 p.m. at night.

7      Q.   Okay.

8      A.   It's a message from Raymond Sellers to Eugene

9    Fisher.  It says:  So did dawg & bro get jammed.

10     Q.   And what did Mr. Fisher reply to that question?

11     A.   Everybody but y'all.

12     Q.   So Raymond Sellers, was he arrested that night?

13     A.   He was not.  He was in the vehicle that got away

14   from the Michigan State Police.

15     Q.   And the conversation continues.  What does Raymond

16   Sellers say back?

17     A.   He says:  Damn.

18     Q.   All right.  Next page.  And what do we see here?

19     A.   Next message was:  I'll will just popped up at my

20   crib.  It was suppose to be Ill Will.

21     Q.   Okay.

22     A.   Then the next message is from Eugene Fisher to

23   Raymond saying:  Will.

24          And then there's another message from Raymond to

25   Eugene:  Thats wassup what he talkn bout.

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    **Q.**  Just to be clear, the message where he says he just

2    pop up at my crib, that's from Eugene Fisher to Raymond

3    Sellers?

4    **A.**  That's correct.

5    **Q.**  Now after it says what's he talking about, what do

6    we see here?

7    **A.**  Eugene responds to Raymond:  Dip.

8              And then Raymond says:  Call me.

9    **Q.**  Dip refers to Derrick Kennedy?

10   **A.**  That's correct.

11   **Q.**  Go next to Page 41.  What date are we seeing --

12   first off who is this a photo of?

13   **A.**  The person seated at the table is Eugene Fisher, and

14   it appears to be holding an AK style rifle in his right

15   hand.  I can't see the face of the person just to his left

16   holding an AR.

17   **Q.**  What's the message that we see here?

18   **A.**  On October 2, 2015 at 12:45 Eastern Standard Time,

19   Eugene Fisher sends a message to Love Honey:  The Feds

20   just took my ar that my bro holding.

21   **Q.**  A few days after the party, Eugene Fisher is saying

22   the feds took his AR?

23   **A.**  That's correct.

24   **Q.**  And the AR was recovered from the car chase of Billy

25   Arnold and Steve Arthur on night of 9-26-15?

*15-20652; USA v. EUGENE FISHER, ET AL*

1       **A.**  That's correct.

2       **Q.**  Go to down to the next page.  So we have a

3   conversation here.  Who do we see in the conversation

4   between here and what date?

5       **A.**  This is a conversation between Eugene Fisher and

6   Gogetter Brown.

7           The first is from Eugene Fisher:  How you doing?

8           Gogetter Brown responds:  Im doing go and u.

9           Eugene responds: Tight fight right now.

10      **Q.**  This is on 9-30-15?

11      **A.**  That's correct.

12      **Q.**  Continue down with this conversation, carrying over

13  to the next page from Gogetter Brown and Eugene Fisher.

14  We see -- what's the response there?

15      **A.**  Gogetter Brown says:  Why u say that?

16          Eugene says:  Everybody doing bad.

17      **Q.**  How does the conversation continue?

18      **A.**  Gogetter Brown responds with question mark, and

19  Eugene responds:  Feds on my niggas.

20      **Q.**  And again, this was after everyone was arrested on

21  9-26-15?

22      **A.**  That's correct.

23      **Q.**  Looking at the next day, what do we see on

24  October 1, 2015?

25      **A.**  Gogetter Brown sends a message:  Damn somebody

*15-20652; USA v. EUGENE FISHER, ET AL*

1    snitching again smh i didnt know chino and b man in jail

2    smh.

3    **Q.**  Chino is Andrew Thomas?

4    **A.**  That's correct.

5    **Q.**  And B-Man is Billy Arnold?

6    **A.**  That's correct.

7    **Q.**  Looks like the conversation picks up down here.

8    What do you we see on October 1st?

9    **A.**  We see a message from Charles Lee to Eugene Fisher.

10   The message is:  So is it true bro Stevo telling on bro.

11   **Q.**  And Steve-O, who does that refer to?

12   **A.**  That's in reference to Steve Arthur.

13   **Q.**  Steve Arthur was in the car with Billy Arnold on the

14   night of 9-26-15?

15   **A.**  Yes.

16   **Q.**  What does Eugene Fisher says?

17   **A.**  He responds:  Fuck yeah, you got any warrants?

18   **Q.**  So he's telling Charles Lee that Steve-O is telling

19   on bro?

20   **A.**  Yes.

21   **Q.**  The conversation continues between Charles Lee and

22   Eugene Fisher.

23   **A.**  So Eugene says to Charles Lee:  I need someone to go

24   to they court date tomorrow.

25            Charles Lee responds:  I got traffic tickets

                 *15-20652; USA v. EUGENE FISHER, ET AL*

1   warrants.

2      **Q.**  It says court date tomorrow.  Was there a court date

3   on 10-2?

4      **A.**  I believe there was.

5      **Q.**  He says that he's got traffic tickets.  What's the

6   response?

7      **A.**  Eugene responds:  They will lock you up.

8      **Q.**  What does Charles Lee respond in return?

9      **A.**  Charles Lee responds:  Damn for real I heard they

10  lock Deezy up.

11     **Q.**  Do you know what this is in reference to as part of

12  your investigation?

13     **A.**  I do.

14     **Q.**  What's that?

15     **A.**  On the date of their initial appearance, I

16  recognized Deezy is Devon Fitzpatrick, brother of Diondre

17  Fitzpatrick.  I recognized him in the courtroom at duty

18  court.  I was also aware that he had outstanding warrants.

19  So before he left the courthouse I arrested him in the

20  hallway.

21     **Q.**  What do we see here between Charles Lee and Eugene

22  Fisher?

23     **A.**  Eugene Fisher sends a message to Charles Lee:  I'm

24  worried he might tell on me.

25             Charles Lee responds:  Damn bro that nigga know

*15-20652; USA v. EUGENE FISHER, ET AL*

1      to much man I done heard shit about Grimey too.

2      **Q.** Grymee referring to who?

3      **A.** Arlandis Shy.

4      **Q.** And how does the conversation continue?

5      **A.** Charles Lee sends to Eugene Fisher: Like he

6      telling.

7          Eugene responds: Idk yet.

8      **Q.** Have you seen idk before?

9      **A.** Yes.

10      **Q.** Do you know what that refers to?

11      **A.** I don't know. That's what idk stands for. I do

12      what idk stands for.

13      **Q.** And what does Eugene Fisher reply to Charles Lee?

14      **A.** Eugene Fisher responds: But I wouldn't doubt it.

15      **Q.** That's referring to the previous text about Grymee?

16      **A.** That's correct.

17      **Q.** And the conversation continues.

18      **A.** Charles Lee sends a message to Eugene: Yeah me

19      either I hope not doe shit I heard they was saying they

20      have more than one informant in they case.

21          Eugene responds: They do.

22          Charles Lee responds back: Yeah, that's what I

23      heard shit crazy bro.

24      **Q.** So go to Fisher's iPad, which is 15B, Page 7, and

25      what do we see here?

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **A.**  This is a video that was created on Septembers 27,

2    2015 at 8:24 a.m.

3    **Q.**  Okay.  Just so we don't come to this page, the next

4    one as well.  What do we see here?

5    **A.**  This is another video that was created on

6    September 29, 2015 at 6:O8 p.m.

7    **Q.**  Go to the video for the first one that was on 9-27,

8    if we could go to 15C for now.

9              We will have to fix that on the break.

10              Go to 15D, which is video from 9-29-15 from

11    Mr. Fisher's iPad.

12                    (Video played.)

13              Who do we see in the video?

14    **A.**  Eugene Fisher.

15    **Q.**  Now at some point part of the arrest that we heard

16    about, were there charges brought against some of the

17    people that we've heard, and what was the date?  When was

18    the indictment?

19    **A.**  Yes.  There were charges.  The date escape me right

20    now.

21    **Q.**  Was it around the time of the 9-26-15?

22    **A.**  Yes.  So initially after Billy Arnold and Steve

23    Arthur and Andrew Thomas were arrested that night, we

24    adopted that case federally.  We complaint to them, which

25    is our charging document, and then subsequently indicted

*15-20652; USA v. EUGENE FISHER, ET AL*

1    them.

2    **Q.**  So looking at these phones and social media, did you

3    see references to different -- to the indictment as well

4    as the investigation that was ongoing at this point?

5    **A.**  Yes, I did.

6    **Q.**  Okay.  Go to Arlandis Shy's phone, Exhibit 12, Page

7    61.

8    **A.**  I think the indictment was February 16, 2016.

9    **Q.**  Okay.  Off of Mr. Shy's phone, what are the dates

10    that we're seeing for these images that we will see in a

11    second?

12    **A.**  January 16, 2016.

13    **Q.**  Let's go to the actual images themselves.

14    So what are we seeing here on Mr. Shy's phone

15    from January 16th?

16    **A.**  These are screen captures of a news article done by

17    WXYZ here in Detroit.

18    **Q.**  What do we see?  Can you read what the article is

19    that he has on his phone?

20    **A.**  It says:  The FBI, along with about law enforcement

21    partners have nabbed a leader of one of Detroit's

22    deadliest gang, says US Attorney Barbara McQuade.

23    Its part of the feds' ongoing effort to

24    dismantle that gang and others wreaking havoc on the city.

25    McQuade announced a handful of indictments,

*15-20652; USA v. EUGENE FISHER, ET AL*

1    after a sweep, months in the making.  One of --

2        **Q.**  Read onto the next page.

3        **A.**  One of the leaders of the Seven Mile Bloods was

4    stopped.

5                    **MR. DALY:**  Judge, could we have a sidebar for

6    a second?

7

8                    (Sidebar conference on the record.)

9

10                   **MR. DALY:**  Judge, this is a press release

11   from the U.S. Attorney's Office.  It is prejudicial.  This

12   is their theory.

13                   **THE COURT:**  Is this an exhibit?

14                   **MS. FINOCCHIARO:**  Yes, it is.  He saved it on

15   his phone.  He saved that article on the phone, and later

16   conversations with people, text messages relating to the

17   investigation, to the indictment.

18           So we're not offering it for the truth as to

19   what's in that article.  The fact that it is information

20   that he's saving, it's important to him to talk about it

21   later.

22                   **MR. SPIELFOGEL:**  This is the exact kind of

23   think that we did a jury questionnaire on about media

24   coverage, and now you're reading in an article that was

25   in -- or a press release that was in, what, the media.

*15-20652; USA v. EUGENE FISHER, ET AL*

1     That's exactly what we talked about not having in evidence

2     in this case.  It should have been removed before we began

3     the trial on this.

4              MS. FINOCCHIARO:  It is part of the exhibit,

5     Exhibit 12.

6              MR. THEIS:  If she's stating that it's not

7     being admitted for the truth of the matter assorted, we

8     would ask for a jury instruction.

9          First of all, we object to it being read at all,

10    but if they are going introduce press releases from the

11    U.S. Attorney Office, that's really a slippery slope.  We

12    can go on forever on that, but I would like a jury

13    instruction saying that is not be admitted for the truth

14    of any of these things.

15             MR. SPIELFOGEL:  And Judge, our position is

16    that it really does not cure anything.  I mean, we already

17    heard a few sentences of it already, and it's -- I mean,

18    you hear what this is.  This is highly prejudicial.  It is

19    exactly what we want to keep out.  What the U.S. Attorney

20    had to say about bringing an indictment is wholly

21    irrelevant and prejudicial, and shouldn't be in.

22             MS. FINOCCHIARO:  I will not read anymore

23    from the article.

24             MR. H. SCHARG:  The horse is out of the barn.

25             THE COURT:  Not entirely.  I'm sure there's

*15-20652; USA v. EUGENE FISHER, ET AL*

1    more to be heard.

2              **MS. FINOCCHIARO:**  Right, there is more, but

3    we won't read anymore of it.  You can have a jury

4    instruction that it was not offered for the truth, and

5    there's another one, another article that we won't read.

6    We'll just say there's another article that references the

7    investigation.

8              **MR. DALY:**  That's fine.

9              **THE COURT:**  You want me to give that

10   instruction right now?

11             **MR. THEIS:**  Yes.

12             **MR. FEINBERG:**  What was already admitted is

13   very, very dangerous.

14             **MR. SPIELFOGEL:**  There is nothing that we can

15   do to undo that.

16             **MR. H. SCHARG:**  I have another wish.

17             **THE COURT:**  I'll take a break so you can

18   ensure that we're in agreement with the curative

19   instruction.

20             **MR. H. SCHARG:**  I also have an objection as

21   to the cumulative nature of the agent's testimony.  He

22   was -- he has been testifying piecemeal, and right now

23   he's going back into evidence that he testified to earlier

24   in the trial regarding Eugene Fisher's Facebook account,

25   text messages, that he has already testified to.  Now he's

*15-20652; USA v. EUGENE FISHER, ET AL*

1   being brought back in to reiterate again, and it is

2   cumulative testimony.

3   **MS. FINOCCHIARO:**  The only one to my

4   understanding was right before -- was the one of him

5   pointing the gun.  That was brought in before when we were

6   showing the pictures of the gun.  This, he's reading it

7   now because it's in context of what has happened, heard

8   about the investigation, about the 9-26-15 party, the car

9   stopped where the gun is recovered.  That is a direct

10  reference to that gun.  The video has not been played

11  before, and that's what we're doing now.  They haven't

12  been played prior to this, and I tried very hard not to

13  have anything cumulative.

14  **THE COURT:**  As to that objection, the Court

15  will overrule it, and we'll take our break.

16  **MR. H. SCHARG:**  Is the Court saying that it

17  will allow cumulative evidence in the future?

18  **THE COURT:**  It is not cumulative.

19  **MR. H. SCHARG:**  At this time?

20  **THE COURT:**  At this time.

21

22  (Sidebar conference concluded.)

23

24  **THE COURT:**  We're going to take our break.

25

*15-20652; USA v. EUGENE FISHER, ET AL*

```
 1                    (Jurors excused at 10:25 a.m.)

 2

 3          THE COURT:  Okay.  You can write out the

 4   instruction.

 5          MR. SPIELFOGEL:  We're working on it, Judge.

 6          THE COURT:  Okay.  We'll take our break.

 7   We'll make this a full break so the defendants can use the

 8   facilities.

 9

10                    (Recess taken at 10:26 a.m.)

11

12         (Proceedings held without jury at 1:00 a.m.)

13

14          THE COURT:  Before the jury comes in, the

15   Court has a proposed instruction that was received from

16   Defense counsel after consulting with the Government.

17          MS. FINOCCHIARO:  That's correct, your Honor.

18          THE COURT:  And I have just a couple of minor

19   little adjustments here.  It will read:  "Members of the

20   jury, you have heard testimony of a report of a press

21   release from the United States Attorney's office.  This

22   was not offered to prove the truth of anything that was

23   said in the press release, instead, it was offered solely

24   to show Mr. Shy's reaction to the article" and I might

25   even add in "your consideration of the matter should be
```

```
 1    limited to that purpose."
 2              MR. SPIELFOGEL:  Absolutely.
 3              MR. DALY:  That's fine.
 4              MR. FEINBERG:  Judge, I do have something on
 5    behalf of Mr. Brown -- well, nobody wants to retry this
 6    case again.  Mr. Brown and I would like to move for a
 7    mistrial arguing that the Government should have known
 8    that this was exactly the type of information that we
 9    intended to keep from the jury during the voir dire and
10    the questionnaire, and while I'm not attributing an
11    intentional misconduct on behalf of the Government, they
12    should have known that this -- that we would react in the
13    way that we did upon Barbara McQuade making the pretty
14    outrageous statements that the SMBs were the most
15    dangerous gang in the city of Detroit, and I'm not sure
16    that the curative instruction -- I don't think it cures
17    anything -- is sufficient.  So we would move for a
18    mistrial and a dismissal on the basis that it was
19    prosecutorial misconduct.
20              THE COURT:  All right.  Thank you.
21              MR. H. SCHARG:  Join in on behalf of
22    Mr. Fisher.
23              MR. SPIELFOGEL:  And, your Honor, based on
24    the sidebar and on our agreement to limit it to the points
25    that we have limited to, and on our request for the
```

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    cautionary instruction that's being given, we are not

2    going to join in this motion.

3            THE COURT:  All right.  Thank you.  The Court

4    recognized, and I think mentioned at sidebar or may not

5    have, but certainly there was some probative value in the

6    evidence that was received.  The question would have come

7    down to a balancing of 403 and the probative value of the

8    testimony in deciding whether or not to admit it.

9    Frankly, I think this was a happy disposition of the

10   claim, that it is testimony that -- with the curative

11   instruction, that would affect the rights of the parties,

12   and again, you start out recognizing that it is probative

13   of the Defendant's reaction to the story, the fact that he

14   saved it suggests some significant interest in the story

15   by Mr. Shy, and the Court quite probably would have ended

16   up in the same place as that, which the attorneys

17   ultimately agreed upon.

18           So the Court will deny the motion as joined in by

19   Mr. Scharg, I think, on behalf of his client.

20           So we'll bring the jury in.

21               (Jury in 11:02 a.m.)

22           THE COURT:  All right.  Folks, you can take a

23   seat, and before we resume the testimony:  Members of the

24   jury, you have heard testimony of a report of a press

25   release from the United States Attorney's office.  This

                 *15-20652; USA v. EUGENE FISHER, ET AL*

1    was not offered to prove the truth of anything that was

2    said in the press release.  Instead, it was offered solely

3    to show Mr. Shy's reaction to the article and your

4    consideration of this evidence should be limited to this

5    purpose only.

6              So with that, you may continue.

7              MS. FINOCCHIARO:   Thank you, your Honor.

8    BY MS. FINOCCHIARO:

9         Q    Special Agent Ruiz, we discussed a phone over the

10   last couple hours that you have said is associated with

11   Keithon Porter, but your testimony is solely based on

12   evidence presented at this trial; is that right?

13        A    That's correct.

14        Q    Okay.  So it's actually up to the jury to decide if

15   that phone number was in fact used by Keithon Porter; is

16   that correct?

17        A    That is correct.

18              MS. FINOCCHIARO:   Moving on from the exhibit

19   we were at before, if we could go back to Arlandis Shy's

20   phone, Exhibit 12, Page 101.

21   BY MS. FINOCCHIARO:

22        Q    And what do we see here?

23        A    This is a photo that's saved on the phone that was

24   created February 18th, 2016 at approximately 2:17.

25              MS. FINOCCHIARO:   Okay.  And we'll go to the

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1       actual photo itself.

2  BY MS. FINOCCHIARO:

3       Q    What do we see here?

4       A    We see an image of a person, above that says "Secret

5  Indictment, the United States versus SMB Gry Mee-A" and

6  then in the background it says, "Proof Proof Proof."

7       Q    This was February 2016 you said this was saved on

8  the phone?

9       A    That's correct.

10            MS. FINOCCHIARO:  Still with Mr. Shy's phone

11  to Page 53.

12  BY MS. FINOCCHIARO:

13       Q    We're not going to read the whole thing, just start

14  at Line 302, and what are we seeing here?

15       A    This is a text exchange with telephone number

16  (586)745-5630.  It's saved as Jenn.  The exchange is on

17  February 26th, 2016 at approximately 11:18.

18       Q    Okay.  And what do we see here?

19       A    Three messages from Jenn.  The first is, "I just

20  want u to get it together man."

21            The second is, "We both need to be out here

22  getting our life together but u don't wanna work."

23            The third, "That street shit Wack u will be the

24  per guy."

25       Q    Okay.  Does the conversation continue on?

            *15-20652; USA v. EUGENE FISHER, ET AL*

1       **A**   Yes.  The next message from Jenn is, "I have shit
2   work on to."

3       **Q**   What's the next message?

4       **A**   There's a response back to Jenn and it says, "I
5   understand that but u you knew who I was & what I'm about
6   before you met me, my street life don't have nothing to do
7   wit us.  I keep that shit totally separate, all u need to
8   do is ride wit me thru thick & thin."

9       **Q**   And this is Mr. Shy's phone to Jenn?

10      **A**   That's correct.

11      **Q**   Okay.  And what's the next message?

12      **A**   Jenn responds, "I'm saying tho if we was going have
13  a bby how would u provide?"

14      **Q**   What are we seeing here?

15      **A**   Arlandis responds, "Ima make it happen, u crazy,
16  it's funny that u really think I'm really broke like zero
17  dollars never."

18              She responds, "Ok well what u do to get it?"

19      **Q**   The next part of the conversation, what do we see
20  here?

21      **A**   Shy responds he "I move how I can, u act like my
22  team ain't under fed investigation, I'm tryna move rite, I
23  get off papers in may, trust I'm never down for to long,
24  that's just how the street s go, u either gon ride or not,
25  u suppose to ride wit yo man hard times and good times."

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **Q**   Okay.  And what is the response from Jenn?

2    **A**   Jenn responds, "Why can't u just get a job and move

3    on with life?"

4    **Q**   And what is the response back?

5    **A**   Arlandis responds, "I'm in too, baby you'll Neva

6    understand."

7         She responds, "Smh don't have no kid then wish u

8    the best."

9    **Q**   What do we see here?

10   **A**   Arlandis responds, "Alr ma."

11   **Q**   Okay.

12   **A**   And she says, "I'm serious u a dumb as bitch and

13   going end up dead like nvm bye."

14   **Q**   And does the conversation continue?

15   **A**   She sends, "Or in jail for little bit change."

16        Next text, "Should of got swallowed."

17        Next one, "Worthless."

18   **Q**   And what is the response?

19   **A**   "Peace & blessings upon you Jenn love you bae."

20   **Q**   And it looks here this is the next day, February 27,

21   2016?

22   **A**   This is February 27, 2016.

23   **Q**   Okay.  And what do we see here?

24   **A**   Arlandis Shy sends a text to Jenn, "I ain't got that

25   long to be out here I'm sorry ily hope u find somebody dat

 1    treat you rite Jen real shit."

 2              She responds "Smh I hate u I really do."

 3    **Q**   When we see "Smh," have you ever encountered Smh in

 4    your investigation?

 5    **A**   I have.  Smh usually is an acronym for shaking my

 6    head.

 7    **Q**   What do we see here?

 8    **A**   The conversation continues, Arlandis Shy sends a

 9    text, "Dats fine Jen but I'm so stressed & depressed after

10    hearing that mannnnn u just don't know lady."

11              She says, "Hearing what."

12    **Q**   Okay.  And what is the answer to that?

13    **A**   Arlandis Shy sends a text, "Feds told my jrs, we

14    already got the indictments sealed for y'all big homies."

15              Jenn asks, "U to?"

16              Arlandis Shy responds, "All the big homies."

17              **MS. FINOCCHIARO:**  If we could next go to

18    Robert Brown's Facebook, Exhibit 46, Page 117.

19    **BY MS. FINOCCHIARO:**

20    **Q**   So what do we see here from Robert Brown's Facebook?

21    **A**   These are a couple of posts from December 26th,

22    2015.  The first one that I can read here is "#Freesonny."

23              The next one just a minute later "#Freekilla."

24    **Q**   And well, have you seen Sonny before?

25    **A**   Yes.

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    **Q**   What does that name refer or what is that name

2    associated with that?

3                    **MR. SPIELFOGEL:**  We'll stipulate that Sonny

4    is Corey Bailey.

5                    **THE COURT:**  All right.  Thank you.  Go ahead.

6    BY MS. FINOCCHIARO:

7    **Q**   Okay.  And how about Killa?

8    **A**   Killa is the street name for Billy Arnold.

9    **Q**   This is December 26th of 2015, and this is after

10   Billy's arrest on 9-26-15; is that right?

11   **A**   Yes, it is.

12   **Q**   Looks like there's another post here from

13   December 26th what is the status?

14   **A**   This one says, "Woke up thinking about dropping a 4

15   in this pop and dropping a 4 for oblock rest up

16   #bigblood."

17                   **MS. FINOCCHIARO:**  Go to Page 3 of the same

18   exhibit.

19   BY MS. FINOCCHIARO:

20   **Q**   What do we see here on Mr. Brown's Facebook?

21   **A**   On February 21st, 2016 there's a post, "Free killer

22   B.man."

23   **Q**   So this is a couple months later after the last post

24   we saw?

25   **A**   That's correct.

*15-20652; USA v. EUGENE FISHER, ET AL*

1          **MS. FINOCCHIARO:**  If we go to Jeffrey Adams

2     Facebook, Exhibit 43, Page 2.

3   BY MS. FINOCCHIARO:

4     **Q**   What do we see here?

5     **A**   On November 5th, 2015, there's a post that says

6     "Free Rox Dbo Zo," emojis,

7     "#HearNoEvilSeeNoEvilSpeakNoEvil #gang" emojis.

8     **Q**   And what was the response to that post?

9     **A**   Eugene Fisher commented, "#GANG."

10    **Q**   We see "Rox" there, we see reference to Rock or Rox?

11    **A**   Yeah.  So Rock or Rocco the Don was Jeffaun Adams.

12    **Q**   And was he arrested at this time?

13    **A**   He was arrested on September 26th, 2015.

14    **Q**   How about DBo, have you seen DBo?

15    **A**   Yeah, DBo is Devon Andrews.  I don't recall -- he

16    was not arrested on September 26th, 2015 as part of that

17    operation at the Crazy Horse.

18    **Q**   And the name Zo or Zo?

19    **A**   Zo is short for Berenzo, who was Billy Arnold.

20         **MS. FINOCCHIARO:**  And if we go to

21    Mr. Fisher's Samsung, Exhibit 15, Page 14.

22   BY MS. FINOCCHIARO:

23    **Q**   What is the information we see here?

24    **A**   This is a video that's saved on here that was

25    created on October 3rd, 2015.

*15-20652; USA v. EUGENE FISHER, ET AL*

1          **MS. FINOCCHIARO:**  And if we could go to the

2    video, Exhibit 15J.  Before we play that, your Honor, just

3    to the extent it has already been admitted as part of

4    Exhibit 15, I move for the admission of videos 15C, 15D

5    and 15J.

6          **THE COURT:**  Any objection?  Hearing none, the

7    Court will receive the items.

8          **MS. FINOCCHIARO:**  Going back to 15J, and go

9    ahead and play this video.

10         (Video played for the jury.)

11         **THE COURT:**  I wasn't able to really hear

12   that.  Did you intend to have the audio considered?

13         **MS. FINOCCHIARO:**  Yes.  Is it all right if we

14   play it again?

15         **THE COURT:**  Yes.

16         (Video played for the jury.)

17   BY MS. FINOCCHIARO:

18     **Q**   And who was in that video, do you recognize the

19   person?

20     **A**   That was Eugene Fisher.

21         **MR. H. SCHARG:**  That was 15?

22         **MS. FINOCCHIARO:**  That was 15J.  Go back to

23   15C which we tried to play earlier and see if it works

24   this time.

25         (Video played for the jury.)

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **BY MS. FINOCCHIARO:**

2       **Q**   Now, this video, as we heard before, is from

3    9-27-15.   Who do we see in this video?

4       **A**   That's Ill Will, Billy McCall wearing the Squad

5    T-shirt.

6       **Q**   Is that the Squad T-shirt or similar to the one we

7    saw in the previous video of the night of the Crazy Horse?

8       **A**   That's correct.

9       **Q**   And we heard reference before in the Fisher text

10   about "two years," that "he just saved two years."

11              Are you aware of the penalty in the state of

12   Michigan for felony firearm?

13      **A**   Yes, I am.

14      **Q**   And what is the penalty for felony firearm charge?

15      **A**   Two years.

16              **MS. FINOCCHIARO:**   If we could go to Exhibit

17   103B.   This was previously admitted.

18   **BY MS. FINOCCHIARO:**

19      **Q**   We also saw in the Facebook of Mr. Fisher earlier, a

20   photo of him and another guy with a gun.   Do you recognize

21   what we see in this photo?

22      **A**   I sure do.   This is rooms at 18803 Lamont.   This is

23   like the living room and dining room area and you can see

24   kind of into the hall to the back there.

25      **Q**   And Lamont was --

*15-20652; USA v. EUGENE FISHER, ET AL*

1     **A**    That was a residence of Eugene Fisher.

2     **Q**    Now, we've heard some things about snitching and

3     snitches, we've heard about Devon McClure's trial in the

4     fall of 2014; is that right?

5     **A**    We did.

6     **Q**    And have you seen any texts or posts about --

7     relating to that incident with Devon McClure?

8     **A**    Yes, yes, I have.

9               **MS. FINOCCHIARO:**  Okay.  If we go to

10    Mr. Fisher's Exhibit 44, Page 54.

11    **BY MS. FINOCCHIARO:**

12    **Q**    And so what do we see here?

13    **A**    This is a post on January 30th, 2015.

14    **Q**    And what do we see?

15    **A**    It says, "My nigga BLOCK beat his case 2 day!  I hit

16    the snitching ass lil nigga in his mouth and almost went 2

17    jail at Frank Murphy.  The lil nigga was still trying 2

18    snitch after I hit him in his shit, some niggas never

19    learn!  Guess he got it honest from his snitching ass

20    momma lol.  You shouldve saw the look on their phrase

21    faces when the jury said not guilty true."

22    **Q**    Are you aware of what the verdict was in that case

23    of Devon McClure?

24    **A**    It was not guilty.

25    **Q**    Who was involved in the incident at Frank Murphy?

*15-20652; USA v. EUGENE FISHER, ET AL*

1      **A**    The fight?

2      **Q**    The fight.

3      **A**    Eugene Fisher and Derrick Kennedy.

4               **MS. FINOCCHIARO:**  Go down to the next page

5      here.

6      **BY MS. FINOCCHIARO:**

7      **Q**    Is there comment to that post?

8      **A**    Yes, from NO Scales Brick, which is an account

9      associated with Jeffrey Adams, it says, "#Gang," and then

10     from Makaveli Stevo, which is an account associated with

11     Steve Arthur, he posted some emojis.

12     **Q**    What do we see here?

13     **A**    A post from Eugene Fisher.  It says, "Dip went 2

14     jail on some bullshit can! FREE MY LIL HOMIE."

15     **Q**    And then going down to this post down here on

16     Mr. Fisher's page, what do we see?

17     **A**    Eugene posted, "Snitches get stitches," from

18     January 29th, 2015.

19     **Q**    Is there a response to that?

20     **A**    Yes.  Steve Arthur responds, "For talking like

21     bitches."

22              **MS. FINOCCHIARO:**  If we could go to Page 60

23     of Mr. Fisher's account.

24     **BY MS. FINOCCHIARO:**

25     **Q**    And what are we seeing here?

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    **A**    A photo that's got some text on it that says, "FEDS

2    AIN'T WATCHING NIGGAS IS TELLING."

3    **Q**    And when was this uploaded?

4    **A**    It was uploaded on July 13th, 2015.

5            **MS. FINOCCHIARO:**   And if we go now to Jeffrey

6    Adams' page, Exhibit 43, Page 47.

7    **BY MS. FINOCCHIARO:**

8    **Q**    And just to get -- what do we see here?

9    **A**    We see a message sent from Jeffrey Adams to Octavius

10   Washington.

11   **Q**    Okay.  And when was this sent?

12   **A**    It was sent on October 23rd, 2014.

13   **Q**    And what is the body of that message?

14   **A**    "Aye bro i need you 2 hoe dis nigga eric rip tone

15   dis nigga snitch on block i can't do it on my page im

16   ridin? ? rite now tryna catch sumthin."

17   **Q**    And what do we see here?

18   **A**    Washington responds, "Snodat, wtf blood snichin on

19   anyway."

20   **Q**    And what is the response from NO Scales Brick?

21   **A**    Adams responds, "He got on stand 2day and said block

22   try 2 kill him an talkin shit 2 him moms bro ain't been

23   doing shit da nigga liein on sum scared."

24   **Q**    And what else do we see in that conversation?

25   **A**    Washington sends him a message, "Damn blood

*15-20652; USA v. EUGENE FISHER, ET AL*

1    snitching that's fucked up my guy."

2        **Q**    We saw reference to Eric.  Does that have any

3    significance as part of the investigation?

4        **A**    Eric Bester was the complainant in the case.

5        **Q**    In the case against Devon McClure?

6        **A**    Yes, and he's the one that got into the fight with

7    Derrick Kennedy and Eugene Fisher.

8        **Q**    Okay.  And have you seen posts about Steven Arthur

9    or Stevo?

10       **A**    Yes, I have.

11               **MS. FINOCCHIARO:**  Before we even go there

12   let's go to Steven Arthur's page, which is Exhibit 45,

13   Page 9.

14   **BY MS. FINOCCHIARO:**

15       **Q**    So what do we see here?

16       **A**    This is a photo that was posted.  It's got a person

17   on the top with a rifle in his hand.  It says, "ON DA

18   STREET," and below that, there's a person pointing a

19   finger and it says, "IN COURT."

20       **Q**    And when was this posted on Mr. Arthur's page?

21       **A**    Looks like that's August 26th, 2015.

22               **MS. FINOCCHIARO:**  If we could now go to Page

23   2 of Mr. Arthur's page.

24   **BY MS. FINOCCHIARO:**

25       **Q**    So what do we see in this photo?

                    *15-20652; USA v. EUGENE FISHER, ET AL*

 1       **A**    This is a photo of Billy Arnold sitting in the

 2    passenger seat of a vehicle and Steve Arthur sitting in

 3    the driver's seat of the vehicle.

 4       **Q**    Are the outfits of any significance to you, have you

 5    seen them before?

 6       **A**    Yeah.  That appears to be the clothing they were

 7    wearing the night of our operation on September 25th, 2015

 8    going into September 26th, 2015.

 9               **MS. FINOCCHIARO:**  Okay.  Go down to when this

10    was posted and the information associated.

11    **BY MS. FINOCCHIARO:**

12       **Q**    When was this uploaded, this photo to Mr. Arthur's

13    page?

14       **A**    It would have been uploaded September 26th, 2015 at

15    12:00, 12:14 Eastern standard time, and it says, "Wit suge

16    knight feeling like PAC before the Vegas fight," emojis.

17       **Q**    And is there later comments -- we'll do a couple.  I

18    cut it off here.

19               What are the comments to this photo in this

20    post?

21       **A**    On September 30th, 2015, Eugene Fisher posts, "This

22    a real bitch nigga snitching on his the same nigga he in a

23    picture with."

24               And there's another post, "crying in court

25    telling, you a hoe nigga."

*15-20652; USA v. EUGENE FISHER, ET AL*

1      **Q**   And what do the other posts say?

2      **A**   User Michael Smith asks, "Who?"

3              Eugene Fisher responds, "@MakaveliSteveo hoe

4      ass."

5              And then Michael Smith posts, "damn when?"

6      **Q**   And what is the response?

7      **A**   Eugene Fisher responds, "Today."

8              And then, "All y'all like this picture and this

9      bitch ass nigga snitched on Killa that same night! Free

10     Killa fuck good snitching ass @Makaveli Stevo."

11     **Q**   This is posted on what is the time here?

12     **A**   This was October 1st, 2015, which in actuality would

13     have been the day before September 30th.

14              **MS. FINOCCHIARO:**  Okay.  Now, if we go to the

15     Fisher iPad, which is 15B, Page 7.

16     **BY MS. FINOCCHIARO:**

17     **Q**   And what do we see here on these two postings?

18     **A**   We've got two videos.  One was created on

19     September 30th, 2015 and 9:37 p.m.  The next was created

20     on September 30th, 2015 at 9:38 p.m.

21              **MS. FINOCCHIARO:**  If we can go to 15M.

22              The Government was intending to play four videos,

23     which would be 15K, 15L, 15M, 15N.  So I'll move for the

24     admission of those from Mr. Fisher's iPad.

25              **THE COURT:**  Any objection?  The Court will

*15-20652; USA v. EUGENE FISHER, ET AL*

1    receive the items.

2             **MS. FINOCCHIARO:**  The people will move on

3    from this, and maybe we can get it working.

4             In the meantime, if we could actually go to

5    Mr. Adams Facebook, which is Exhibit 43, Page 3, and just

6    going to go to the very top here.

7    **BY MS. FINOCCHIARO:**

8        **Q**    What do we see this post here?

9        **A**    This is posted October 2nd, 2015, it says, "Stephen

10   romell Arthur," emojis, "federal informant."

11       **Q**    And during the course of the investigation in this

12   trial, we've heard references to Bleek; is that right?

13       **A**    That's correct.

14       **Q**    And do you know anyone who goes by the name of

15   Bleek?

16       **A**    Jonathan Murphy.

17             **MS. FINOCCHIARO:**  If we go to Robert Brown's

18   Facebook, Exhibit 46, Page 16.

19   **BY MS. FINOCCHIARO:**

20       **Q**    What do we see here this?

21       **A**    This appears to be the artwork for a CD entitled "RO

22   DA GREAT, Betrayal, STOP BLEEKIN, T H E   M I X T A P E."

23       **Q**    And what do we see in the next page here, Page 17?

24       **A**    We see a photo of Robert Brown wearing a T-shirt

25   with that same artwork, the title of this photo is, "I'm

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    out no (BLEEKING) over here."

2      Q    When was this uploaded?

3      A    That was uploaded April 13th, 2015.

4             MS. FINOCCHIARO:   If we go to Page 99 of the

5    same exhibit.

6    BY MS. FINOCCHIARO:

7      Q    What do we see here?

8      A    We see a photo of a couple different individuals.

9    One of them has their face blacked out, all way to the

10   left.

11            Next to him is Michael Grey.

12            Can't make out the person behind Michael Grey.

13            The person in the center with a champagne bottle

14   and a white shirt on and glasses is Robert Brown.

15            Next to him is Willie McCall, and in the brown

16   leather jacket with maybe a Pistons jersey underneath it.

17            In front of him with a red shirt and a red ball

18   cap is Quincy Graham.

19            And lower than him with a red shirt with a white

20   jacket on is Devon Patterson.

21     Q    Okay.  And when was this posted to Mr. Brown's

22   social media account?

23     A    That was posted on December 10th, 2015.

24     Q    What's the title?

25     A    "TBT Holiday Hall."

                *15-20652; USA v. EUGENE FISHER, ET AL*

1      **Q**   And if we go down, are there any comments here to

2    that picture?

3      **A**   User John Powell posted, "Lmao the black out face."

4      **Q**   And is there another one as well?

5      **A**   Devon Patterson, "lol u Sno it."

6              **MS. FINOCCHIARO:**   And if we go to Page 2 of

7    the same exhibit.

8    **BY MS. FINOCCHIARO:**

9      **Q**   And during the course of your investigation in other

10   locations, have you seen people's faces blacked out?

11     **A**   Yes.

12     **Q**   And what do we see here?

13     **A**   This is a post on December 23rd, 2016.  The first is

14   at -- it would be 6:13.  It says, "My brother oblock Fyg

15   #Fuckyogang #Saynomore #Bigblood."

16            The next post is at 9:52, same date, "Squad!!!!!

17   If u don't like me delete me no fakes on my page

18   (Bleeking) ass niggas."

19     **Q**   Switching gears now back to the search warrants that

20   we've heard about over the last couple days.

21            Were you present for the search warrant that

22   occurred on Charest?

23     **A**   Yes, I was.

24     **Q**   And do you remember the address for that search?

25     **A**   19940 Charest.

1    **Q**    And was anyone present in the home when you executed

2    the search warrant?

3    **A**    I believe there was three people in the house,

4    Keithon Porter, his mother and a female -- another female.

5    **Q**    For the Lamont search warrant, were you present for

6    that one?

7    **A**    Yes, I was.

8    **Q**    And what was the address of that search warrant?

9    **A**    18803 Lamont.

10   **Q**    And was anyone present during that search warrant in

11   the home?

12   **A**    Eugene Fisher was.

13   **Q**    Now, we heard about -- you were present when we

14   discussed the search of the home associated with Robert

15   Brown; is that right?

16   **A**    Yes.

17   **Q**    And Defense counsel asked about Government Exhibit

18   118 being a family photo album; is that right?

19   **A**    That's correct.

20   **Q**    I'm going to hand you Government Exhibit 118.

21   Actually I'm going to have you step down and come to the

22   Elmo.

23            Did you have a chance to review Government

24   Exhibit 118?

25   **A**    Yes, I did.

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **Q**   Were you able to identify individuals in the photos
2    throughout the album?
3    **A**   Yes, I was.
4    **Q**   You don't have to go through each one, but if you
5    could show who you could identify.
6    **A**   That's the photo of the dog.
7              **MR. H. SCHARG:**   What's the dog's name?
8              **THE WITNESS:**   I don't know the name of the
9    dog.
10             The person in here is Devon McClure.
11             I don't know if there's a way to zoom in.   That's
12   a little bit better.
13             That's Devon McClure.
14             The person facing away from the camera is Corey
15   Bailey.
16   **BY MS. FINOCCHIARO:**
17   **Q**   Okay.  Let's go to the next page.
18   **A**   There's a photo of Corey Bailey.  This is another
19   photo of Corey and Devon McClure.  Here's another photo of
20   Corey.
21   **Q**   We don't have to go through all of them.  We'll just
22   go through a couple more.
23   **A**   This is a photo of Robert Brown and Prentis Graham,
24   Quincy Graham's brother.
25             This is a photo of Andrew Thomas, Chino, and

*15-20652; USA v. EUGENE FISHER, ET AL*

1    Darnell Hendrix, Jake.

2              This is a photo of Diondre Fitzpatrick, B Nice.

3              This is a photo Jerome Gooch, Rome, Dada.

4    **Q**    There are other photos of SMB associates in there;

5    is that right?

6    **A**    Yes.

7    **Q**    And in at least one of the photos, did you see any

8    writing that indicated SMB?

9    **A**    Yes, I did, on the back of them.

10   **Q**    Now, I want to jump a little farther back to West

11   Virginia.  We've heard a lot of testimony about arrests

12   that occurred in West Virginia, but before I do that I'm

13   going to show you two pictures, see if you recognize...

14   **A**    I recognize both of these individuals.  Exhibit 543

15   is a photo of Kenyoda Holmes.  They call him Yada.

16   **Q**    Hold on.  Let's stop there for a second.  So

17   Government Exhibit 543 you said is Kenyoda Holmes.

18              **MS. FINOCCHIARO:**  I move for the admission of

19   Government Exhibit 543.

20              **THE COURT:**  Any objection?  Hearing none, the

21   Court will receive the item.

22   **BY MS. FINOCCHIARO:**

23   **Q**    This is who you were just referring to; is that

24   right?

25   **A**    That's correct.

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **Q**   And how about Government Exhibit 544?

2    **A**   544 is a photo of Brandon Bush also known as Bobans.

3            **MS. FINOCCHIARO:**  Move for the admission of

4    Government Exhibit 544.

5              **THE COURT:**  Any objection?  Hearing none, the

6    Court will receive it.

7    **BY MS. FINOCCHIARO:**

8    **Q**   Is he referred to as Bobans?

9    **A**   Yes.

10   **Q**   We've heard of a lot of arrests.  Were you able to

11   look and plot these on a map showing where the arrests

12   occurred?

13   **A**   They were plotted on a map for the West Virginia

14   arrests.

15   **Q**   Did you review the map where they were plotted to

16   show the accuracy of where the different locations

17   occurred?

18   **A**   I did.

19   **Q**   I'm going to show you what's been marked as

20   Government's Exhibit 545.  What is that?

21   **A**   This is that exhibit that shows the different

22   arrests in Charleston, West Virginia area and the

23   individuals that were present or arrested.

24            **MS. FINOCCHIARO:**  I move for the admission of

25   Government Exhibit 545.

*15-20652; USA v. EUGENE FISHER, ET AL*

1          **THE COURT:**  Any objection?  All right.  The
2     Court will receive the item.
3  **BY MS. FINOCCHIARO:**
4     **Q**   I'm going to have you come down with the laser
5     pointer.
6               The ones at the top here, what are we seeing
7     here?
8     **A**   Each blue bubble with the number in it represents
9     law enforcement encounters I'll say.  Each number
10    corresponds with an address.
11              For example, this is 601 Park.  The individuals
12    involved with that particular incident were Arlandis Shy
13    and Kenyoda Holmes.
14              Incident two is 1 Virginia Street West, which is
15    this bubble here.  The individuals involved were Jeffrey
16    Adams, Kenyoda Holmes, Robert Brown and Brandon Bush.
17              Incident three occurred at 402 Bream Street,
18    which is right here.  The individuals involved were
19    Kenyoda Holmes, Robert Brown and Brandon Bush.
20    **Q**   Okay.  And for four, we'll go down this way.
21    **A**   Four is at 300 Reynolds Street, which is the bus
22    station down in Charleston, West Virginia.  There were two
23    separate incidents there.  You heard about an incident
24    where Corey Bailey and Devon McClure were both in the car
25    and had an encounter with law enforcement, and then there

                 *15-20652; USA v. EUGENE FISHER, ET AL*

1    was another one where Arlandis Shy was being picked up by

2    a female in which he was supposed be to meet Anthony

3    Lovejoy.

4         The fifth is at 853 Westminster, which that was

5    an encounter with Corey Bailey.

6         The sixth is at 808 Park, which is over here in

7    Dunbar.  That's Devon Patterson.  That's when I think it

8    was the TEC-9 was found in the nightstand.

9         Seven actually has the wrong photo here, 128 7th

10   Street.  It's a photo of Quincy Graham.

11   Q    But it was Jerome Gooch who was there?

12   A    That's correct.

13        Number eight up here, that was an encounter

14   at -- I can't read the address here.

15   Q    I'm sorry.

16   A    27 Hambrick Road in which Corey Bailey was

17   encountered.

18        Then incident nine, we've got the names flip

19   flopped or the photos flip flopped.  It occurred at 1721

20   Claire Street.  Quincy Graham and Jerome Gooch were both

21   there.

22   Q    In your investigation, these individuals are from

23   where?  Are they from West Virginia?

24   A    No.  They're from Detroit, Michigan.

25   Q    And just to get a sense of where this area of

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    Charleston, West Virginia is compared to Detroit, I'm

2    going to show you Government's Exhibit 546, and what are

3    we seeing in 546?

4        A    This is a map.  It shows a larger portion of the

5    United States to include Michigan, Indiana, Illinois,

6    Ohio, Pennsylvania, Kentucky, West Virginia, Virginia and

7    Maryland, Delaware, New Jersey, New York.

8        Q    Are there two things circled on this map?

9        A    Yes.  So the city of Detroit and the city of

10   Charleston are both circled on this map to give you

11   references to the distance.

12            **MS. FINOCCHIARO:**  I move for the admission of

13   Government Exhibit 546.

14            **THE COURT:**  Any objection?  The Court will

15   receive the item.

16   **BY MS. FINOCCHIARO:**

17       Q    Can you explain to the members of the jury what we

18   are seeing here?

19       A    This is the map that depicts this region of the U.S.

20    The top circle there is around Detroit, Michigan and the

21   bottom red circle is the city of Charleston, West

22   Virginia.

23       Q    Have you traveled from Detroit to Charleston?

24       A    I have.

25       Q    And is it a close or short drive?

                *15-20652; USA v. EUGENE FISHER, ET AL*

1      **A**   No, it's not short.  It's probably even longer by

2   bus.

3      **Q**   Since we're wrapping up here a little bit.  We've

4   talked a lot about phones and phone's extraction.

5           During the searches, we saw phones collected

6   from the different locations; is that correct?

7      **A**   That's correct.

8      **Q**   And some of those phones were the phones that

9   were -- the information was extracted that we've reviewed

10  over the last several weeks?

11     **A**   Yes, to include text messages, contact lists,

12  photos, videos, et cetera.

13     **Q**   All right.  Just to confirm for the record, I'm

14  going to show you a phone, Exhibit 337, and an extraction

15  from that.  What do we have here?

16     **A**   This document is a cell phone extraction report for

17  an LG MS770 cell phone.  That extraction was completed on

18  February 23rd of 2018.

19     **Q**   Okay.  And this phone, is this the phone that that

20  extraction came from, it's Exhibit 337?

21     **A**   Yes, it is.

22          **MS. FINOCCHIARO:**  To the extent that the

23  exhibit was conditionally admitted, I move for the full

24  admission of Government Exhibit 11.

25          **THE COURT:**  Any objection?  All right.  The

*15-20652; USA v. EUGENE FISHER, ET AL*

1    Court will receive the item.

2    BY MS. FINOCCHIARO:

3       Q    And this phone, 337, was recovered from Mr. Bailey;

4    is that right, or Mr. Bailey's property?

5       A    It was recovered from his property at the time of

6    his arrest in July 22nd, 2014.

7       Q    I'm going to show you what's been previously marked

8    as Government Exhibit 12C, the actual phone, and Exhibit

9    12, the download.

10          MR. FEINBERG:  I'm sorry?

11          MS. FINOCCHIARO:  Exhibit 12 and Exhibit 12C.

12   BY MS. FINOCCHIARO:

13      Q    So what do we see here?

14      A    Exhibit 12 is a cell phone extraction report for an

15   LG LS665.  It was a cell phone that belonged to Arlandis

16   Shy.

17      Q    And Exhibit 12C?

18      A    This is the cell phone.

19          MS. FINOCCHIARO:  To the extent that it

20   hasn't admitted conditionally previously, I move for the

21   admission of Government Exhibit 12.

22          THE COURT:  Any objection?  All right.  The

23   Court will receive the items.

24   BY MS. FINOCCHIARO:

25      Q    I'm going to hand you what's been marked as

                    15-20652; USA v. EUGENE FISHER, ET AL

1    Government Exhibit 13 is the extraction, and Government

2    Exhibit 85 is the actual phone.  What are we seeing here?

3        **A**   Government Exhibit 13 is a cell phone extraction for

4    an LG LS620 cell phone, and this is the cell phone that

5    was seized from 14518 Manning.  This is the phone

6    associated to Devon Patterson.

7              **MS. FINOCCHIARO:**  At this time, I move for

8    the admission of Government Exhibit 13.

9              **THE COURT:**  Any objection?  All right.  The

10   Court will receive the item.

11   **BY MS. FINOCCHIARO:**

12       **Q**   For Government Exhibit 14, the extraction, and I'll

13   hand you Government Exhibit 474, the phone.

14       **A**   Exhibit 14 is a cell phone extraction for a Samsung

15   SM-G386T1 and this is the Samsung SM-G386T1 cell phone.

16       **Q**   And where was this recovered from?

17       **A**   I believe this is -- yeah, this is James Robinson's

18   cell phone.  It was recovered at 15715 Coram.

19              **MS. FINOCCHIARO:**  I move for the admission of

20   Government Exhibit 14.

21              **THE COURT:**  Any objection?  The Court will

22   receive this item of evidence.

23   **BY MS. FINOCCHIARO:**

24       **Q**   I'm going to show you Government Exhibit 15, 15A and

25   15B and the extractions from 103, 104 and 105.

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **A**   So 15 is an extraction of an LG MS345.

2              15A is a cell phone extraction for a Samsung

3    GT-P3113TS.

4              And 15B is an extraction for an iPad Air 2.

5    **Q**   And I'm handing you the phones 103, 104 and 105

6    recovered from Lamont.  What do we see there?

7    **A**   Exhibit 103 is an LG MS345 cell phone, corresponds

8    to Exhibit 15.

9              This is a Samsung tablet which is that Samsung

10   GT-P3113TS.

11   **Q**   And that corresponds to 15A?

12   **A**   Yes, Government Exhibit 15A.

13             Exhibit 105 is an iPad Air 2 and that

14   corresponds to Government Exhibit 15B.

15             **MS. FINOCCHIARO:**  At this time, I move for

16   the admission of Government's 15, 15A and 15B.

17             **THE COURT:**  Any objection?  All right.  The

18   Court will receive these items of evidence.

19   **BY MS. FINOCCHIARO:**

20   **Q**   I'm going to show you what's been marked as

21   Government's Exhibit 16 and 119.

22   **A**   Exhibit 16 is an extraction for an LG C395 cell

23   phone.

24             And this is an LG C395 cell phone.  That's

25   Government Exhibit 119.

*15-20652; USA v. EUGENE FISHER, ET AL*

1     **Q**   We previously heard testimony that 119 came from

2     Robert Brown's --

3                   **MR. FEINBERG:**  I'm sorry, I can't hear you.

4     **BY MS. FINOCCHIARO:**

5     **Q**   Where did the Government Exhibit 119 come from?

6     **A**   This was seized at 6824 Lozier, Warren, Michigan, on

7     March 1st, 2016.

8     **Q**   Okay.  And Lozier is whose address?

9     **A**   It was an address that Robert Brown was at.

10    **Q**   I'm going to show you Government Exhibit 454, 455

11    and 458, which corresponds -- well, and I'll show you

12    Exhibits 19, 20 through 24 and 25.

13    **A**   Okay.

14    **Q**   Starting with Exhibit 25, I'm going to hand you

15    what's been marked as Government Exhibit 458.

16    **A**   Government Exhibit 25 is a cell phone extraction of

17    an Apple iPhone.

18                   Government Exhibit 458 is the Apple iPhone.

19                   This was recovered at the time of Billy Arnold

20    and Steve Arthur's arrest.

21    **Q**   Okay.  Government's Exhibits 20 through 24.  I'll

22    scroll down.  I'm going to hand you Government Exhibit

23    455.

24    **A**   Government Exhibit 455 is a Samsung SMG386T1.  This

25    was also seized at the time of Billy Arnold and Steve

*15-20652; USA v. EUGENE FISHER, ET AL*

1   Arthur's arrest on September 26, 2015.

2      Q    Okay.  And last I'm going to hand you Exhibit 454.

3      A    Government Exhibit 454 is a Samsung SMG900V cell

4   phone.  This was also seized at the time of arrest of

5   Billy Arnold and Steve Arthur.

6      Q    And those phones correspond to the extractions that

7   we just saw?

8      A    That's correct.

9          MS. FINOCCHIARO:  At this time, I move for

10   the admission of Government Exhibits 19 through 25.

11          THE COURT:  Any objection?  The items are

12   admitted.

13   BY MS. FINOCCHIARO:

14      Q    And the last phone is Government Exhibit 468, which

15   is the phone, and Government Exhibit 466, which is the

16   extraction?

17      A    Government Exhibit 468 is an LG MS323 cell phone,

18   and Government Exhibit 466 is the corresponding cell phone

19   extraction report.

20      Q    And where was this phone recovered?

21      A    I think this is the Andrew Thomas cell phone that

22   was seized at the time of his arrest on September 26th,

23   2015.

24          MS. FINOCCHIARO:  At this time, I move for

25   the admission of Government Exhibit 466.

*15-20652; USA v. EUGENE FISHER, ET AL*

1          **THE COURT:**  Any objection?  The Court will

2     admit the item.

3  **BY MS. FINOCCHIARO:**

4     **Q**   So while I'm up here -- since I have my box -- as

5     part of your investigation, did you get some tax records

6     for certain of the individuals that we have here today?

7     **A**   Yes.

8     **Q**   Okay.  I'm going to show you what's been marked as

9     Government Exhibit 511.  What is Government Exhibit 511?

10    **A**   This is a letter from the state of Michigan

11    Department of Treasury in Lansing.  It's a certification

12    of treasury records.

13    **Q**   And does it state what the records are for?

14    **A**   It does.  It's for Corey Bailey.

15          **MS. FINOCCHIARO:**  At this time, I move for

16    the admission of Government Exhibit 511.

17          **THE COURT:**  Any objection?  The Court will

18    receive the item.

19          **MS. FINOCCHIARO:**  I'm just going to publish

20    the first page of Government Exhibit 511.

21  **BY MS. FINOCCHIARO:**

22    **Q**   Agent Ruiz, can you explain what we're seeing here?

23    **A**   Yes.  So there is a certified record from the

24    treasury -- the State of Michigan Department of Treasury,

25    that says -- this is the tax records for Corey Bailey,

*15-20652; USA v. EUGENE FISHER, ET AL*

1    filed taxes in 2011.  However, for the years of 2004

2    through 2010 and 2012 through 2015, there were no taxes

3    filed for Corey Bailey with the state of Michigan.

4        Q   Next I'm showing you Exhibit 512.  What is 512?

5        A   Exhibit 512 is a similar certified record from the

6    State of Michigan Department of Treasury.  This one is for

7    Robert Brown.

8            **MS. FINOCCHIARO:**  At this time I move for the

9    admission of Government Exhibit 512.

10           **THE COURT:**  Any objection?  The Court will

11   admit the item.

12   **BY MS. FINOCCHIARO:**

13       Q   Agent Ruiz, what are we seeing here?

14       A   So in this particular letter, this reveals that

15   Robert Brown had submitted taxes or tax returns to the

16   state of Michigan in 2005 and in 2012.  However, for the

17   years 2004, 2006 through 2011 and 2013 through 2015,

18   Robert Brown did not file any taxes with the state of

19   Michigan during those years.

20       Q   Showing you what's been marked as Government Exhibit

21   513.  What do we see there?

22       A   This is a similar letter for Eugene Fisher.

23       Q   Okay.  From the Michigan -- is it a certified letter

24   from the Department of Treasury?

25       A   That's correct, for the state of Michigan.

*15-20652; USA v. EUGENE FISHER, ET AL*

1          **MS. FINOCCHIARO:**  I move for the admission of

2     Government Exhibit 513.

3          **THE COURT:**  Any objection?  All right.  The

4     Court will admit the item of evidence.

5  **BY MS. FINOCCHIARO:**

6     **Q**   And what are we seeing here?

7     **A**   This letter reveals that Eugene Fisher filed taxes

8     in the years 2007 and 2012.  However, for the years 2004

9     through '6 and 2008 through '11 and 2013 through 2015, he

10    did not file any taxes with the state of Michigan.

11    **Q**   I'm going to show you what's been marked as Exhibit

12    516.  What do we see here?

13    **A**   This is another certification of treasury records

14    from the State of Michigan Department of Treasury.  These

15    are for Keithon Porter.

16         **MS. FINOCCHIARO:**  Move for the admission of

17    Government Exhibit 516.

18         **THE COURT:**  Any objection?  The Court will

19    admit the item into evidence.

20  **BY MS. FINOCCHIARO:**

21    **Q**   And what are we seeing here?

22    **A**   This reveals that in 2007, Keithon Porter filed

23    taxes with the state of Michigan.  However, the years 2004

24    through 2006 and 2008 through 2015, he did not file any

25    taxes with the state of Michigan.

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **Q**   I'm going to show you what's been marked as

2    Government Exhibit 517.  What do we see here?

3    **A**   This is another certification of treasury records

4    from the state of Michigan Department of Treasury.  This

5    is for Arlandis Shy.

6              **MS. FINOCCHIARO:**  I move for the admission of

7    Government Exhibit 517.

8              **THE COURT:**  Any objection?  The Court will

9    admit the item into evidence.

10   **BY MS. FINOCCHIARO:**

11   **Q**   And what are we seeing here?

12   **A**   This reveals that in 2014, Arlandis Shy filed tax

13   paperwork for the state of Michigan.  However, for the

14   years of 2004 through 2013, and then for 2015 and 2016, no

15   taxes were filed with the state of Michigan by Arlandis

16   Shy.

17             **MS. FINOCCHIARO:**  I think we can get the

18   videos up.

19             **THE COURT:**  Pardon me?

20             **MS. FINOCCHIARO:**  I think we can now play

21   videos.  We're going to try one more time.

22             **THE COURT:**  All right.

23             **MS. FINOCCHIARO:**  So if we could go to video

24   K, L, M and N -- sorry 15K, L, M and N.

25                  (Video played for the jury.)


                 *15-20652; USA v. EUGENE FISHER, ET AL*

1          **MS. FINOCCHIARO:**  Let's try 15L.

2          (Video played for the jury.)

3   **BY MS. FINOCCHIARO:**

4     **Q**   Agent Ruiz, who are we seeing in that video, do you

5   recognize the person?

6     **A**   I recognize that person as Eugene Fisher.

7          **MS. FINOCCHIARO:**  Okay.  If we could play

8   15M.

9          (Video played for the jury.)

10  **BY MS. FINOCCHIARO:**

11    **Q**   And do you recognize the voice in that video?

12    **A**   That was Eugene Fisher's voice.

13         **MS. FINOCCHIARO:**  And if we could play 15N.

14         (Video played for the jury.)

15  **BY MS. FINOCCHIARO:**

16    **Q**   And do you recognize the voice in that video?

17    **A**   That's Eugene Fisher's voice.

18    **Q**   And those videos, as we've seen before, are off of

19  Exhibit 15B, the iPad of Eugene Fisher?

20    **A**   That's correct.

21         **MS. FINOCCHIARO:**  And there's one more from

22  before from the iPad.  This is 15C, another video.  This

23  is from 9-27-15.

24         (Video played for the jury.)

25         **MR. H. SCHARG:**  Didn't we already play this?

*15-20652; USA v. EUGENE FISHER, ET AL*

1          **MS. FINOCCHIARO:**  We already played this.

2    I'm sorry.

3          **MR. H. SCHARG:**  How many times do you want to

4    play it?

5          **MS. FINOCCHIARO:**  I apologize.  I'm trying to

6    go back to the ones we missed.

7          **MR. H. SCHARG:**  I'm sorry, your Honor, that

8    was really an objection for you as to the cumulative

9    nature of some of this evidence.  We're only trying to

10   involve you when we have to.

11         **THE COURT:**  Thank you.

12         **MS. FINOCCHIARO:**  Just one moment, your

13   Honor.

14   **BY MS. FINOCCHIARO:**

15      **Q**   Just to switch back to one more Facebook post from

16   Jeffrey Adams.  Exhibit 43, Page 60, and from Mr. Adams

17   Facebook page, what do we see here?

18      **A**   This is a post on October 24th of 2012.  It says,

19   "ORG S.M.B..... STR8DROP.

20         **MS. FINOCCHIARO:**  No further questions, your

21   Honor.

22         **THE COURT:**  All right.

23         **MR. H. SCHARG:**  Judge, can we have a meeting

24   with everyone regarding scheduling?

25         **THE COURT:**  All right.  Sorry?

                *15-20652; USA v. EUGENE FISHER, ET AL*

```
 1              MR. H. SCHARG:  Can we have a sidebar with

 2    you for one minute?

 3              THE COURT:  Concerning the schedule?

 4              MR. H. SCHARG:  Yes.

 5              THE COURT:  Do you want to wait until after

 6    we end the day?

 7              MR. H. SCHARG:  That's one of the issues is

 8    when we're going to end today.

 9                   (The following sidebar conference was

10                    held outside the hearing of the jury

11                    12:12 p.m.):

12              MR. H. SCHARG:  We all thought the Government

13    would be done with -- we thought it would be an hour half,

14    two hours.  How are we going -- we're not going to finish

15    today.  I don't think we're going to finish today.  You're

16    not going to go past 1:00?

17              THE COURT:  Right.

18              MS. FINOCCHIARO:  Do you guys think you'll go

19    much past 1:00?

20              MR. H. SCHARG:  I think someone has home

21    issues, child care issues.  So I don't know if we can.

22              MR. THEIS:  I don't know what the Court's

23    schedule is.  Would you be willing to ask the jurors if we

24    run over a little, does it cause a problem for them, as

25    opposed to coming back tomorrow morning, or if the Court
```

*15-20652; USA v. EUGENE FISHER, ET AL*

1    has a problem.  We don't.

2                   **MR. FEINBERG:**  We're going to go more than 45

3    minutes.

4                   **MR. THEIS:**  Okay.  All right.

5                   **MR. H. SCHARG:**  Can we meet over here?

6                   **MS. FINOCCHIARO:**  Not with me, right?

7                   (Sidebar concluded 12:14 p.m.)

8                   **THE COURT:**  We're going to stay until 1:00.

9          Does anybody else need to use the facilities,

10   you're welcome to.

11                  (Brief delay.)

12                  **THE COURT:**  Okay.  Mr. Feinberg, you may

13   proceed.

14                        **CROSS EXAMINATION**

15   **BY MR. FEINBERG:**

16     **Q**    In your initial testimony you stated that one of the

17   things that --

18                  **THE COURT:**  Talk right into the microphone

19   also.

20   **BY MR. FEINBERG:**

21     **Q**    You indicated that one of the things that you were

22   responsible for was to investigate homicides and nonfatal

23   shootings, correct?

24     **A**    Yes, that's correct.

25     **Q**    Did you have occasion to investigate the Cleo

                *15-20652; USA v. EUGENE FISHER, ET AL*

1    McDougal homicide?

2        **A**    I sure did.

3        **Q**    And during your investigation, did you become aware

4    that Elroy Lucky Jones was tried and convicted two times

5    for the murder of Cleo McDougal?

6        **A**    I became aware of that, yes.

7        **Q**    And did you become aware that Cleo McDougal's

8    brother --

9                **MS. FINOCCHIARO:**   Your Honor, may we approach

10   at sidebar?

11               (The following sidebar conference was

12               held outside the hearing of the jury at

13               12:18 p.m.):

14               **MS. FINOCCHIARO:**   I would just state that

15   counsel was going to go down a line of questioning about

16   what Mr. McDougal's brother said in identifying Mr. Jones

17   in the first two trials.  We would object to that as being

18   hearsay testimony, and if you want to bring in his brother

19   to testify about what he did in the first two trials,

20   that's fine, but this witness should not be testifying

21   about what someone said in a court proceeding that he

22   wasn't at.

23               **MR. FEINBERG:**   It's public record.

24               **MR. BILKOVIC:**   Whether or not, it's still

25   hearsay.

*15-20652; USA v. EUGENE FISHER, ET AL*

1              **MS. FINOCCHIARO:**  Right.

2              **MR. BILKOVIC:**  You can't bring in the

3    testimony of somebody else that we were not part of.  We

4    were not part of that case.  It's hearsay.  If you want to

5    get it out from him, you've got to call him and bring him

6    in and put him on the stand and have him testify so we can

7    cross examine him.

8              **MR. FEINBERG:**  It was public record --

9              **MR. BILKOVIC:**  It doesn't matter.  There's no

10   such thing in the hearsay rules --

11             **MR. FEINBERG:**  Can I finish my statement?

12             **MR. BILKOVIC:**  Go ahead.

13             **MR. FEINBERG:**  It's public record.  It was

14   transcribed.  It became a certificate of conviction, that

15   Cleo McDougal's brother testified, identified Lucky Jones

16   as the killer and he knew Lucky Jones from the past.

17             **MR. BILKOVIC:**  Part of the reason that case

18   was reversed is because when he was initially interviewed,

19   he said he'd never seen these people before, and years

20   later, people realized he was crazy.  So if they want to

21   bring him in, they can bring him in, but what he is

22   stating about it's a public record, it's been transcribed,

23   that doesn't get over the hearsay objection.  There's no

24   such exception if it's a public record and it's

25   transcribed it's admissible.  That's not a valid reason.

*15-20652; USA v. EUGENE FISHER, ET AL*

1              **MR. FEINBERG:**  There's no public record that

2    Cleo McDougal's brother is crazy.  His testimony was

3    believed by two juries and it became public record.

4              **MR. BILKOVIC:**  Well, actually, the testimony

5    in this case is public record and there's been sufficient

6    testimony in this case that he's crazy.

7              **THE COURT:**  I will sustain the objection as

8    to hearsay.

9              **MR. FEINBERG:**  Okay.

10             (Sidebar concluded 12:20 p.m.)

11   BY MR. FEINBERG:

12   **Q**   So during your investigation, you did find that

13   Elroy Lucky Jones was in fact convicted two times in front

14   of two different juries at the Wayne County Circuit Court

15   criminal division; is that correct?

16   **A**   That is correct.

17   **Q**   Okay.  A lot of the Facebook and text messages you

18   testified about with -- concerning Mr. Brown have to do

19   with him feeling bad that certain people got killed, rest

20   in peace certain people; is that correct?

21   **A**   I think I saw some of those posts on his Facebook,

22   yes.

23   **Q**   RIP means rest in peace?

24   **A**   That's correct.

25   **Q**   Okay.  And some of the texts or Facebook had to do

1    with free certain people that had been arrested; is that

2    correct?

3        A    That's correct.

4        Q    And he was hoping that the people who got arrested

5    would ultimately be set free; is that correct?

6        A    Based on the posts, I would assume that's what he

7    meant.

8        Q    Its not unusual for people who have friends or

9    family members who get arrested hope that they're set

10   free, I would assume that you know that?

11       A    Well, I don't know what's usual or unusual.  Me,

12   personally, I might be a little embarrassed by it.

13       Q    Well, if you believed that someone was arrested

14   improperly, would you certainly -- you would certainly

15   hope that they would be set free, correct?

16       A    I probably would, but I don't know that I'd post it

17   on social media.

18       Q    No, but you might, or you might tell your family and

19   friends, "God, I hope my friend or my relative gets set

20   free"?

21       A    Okay.

22       Q    Is that correct?

23       A    Sure.

24       Q    Okay.  Are you a tech person?  Do you use Facebook

25   or text messages to communicate with friends or

*15-20652; USA v. EUGENE FISHER, ET AL*

1    associates?

2       **A**    I would consider myself familiar, yes.

3       **Q**    Okay.  It doesn't make you a bad person?

4       **A**    Not at all, I hope not.

5       **Q**    One of the incidents involving Mr. Brown was the

6    Eastland Mall incident; is that correct?

7       **A**    Yes, that's correct.

8       **Q**    Part of your investigation was to look into that

9    incident, correct?

10      **A**    To be clear, there were several incidents that

11   occurred at Eastland Mall that I looked into.

12      **Q**    The one involving Mr. Brown.

13      **A**    Are you talking about the fight that occurred that

14   we saw a video of?

15      **Q**    That's the one I'm talking about.

16      **A**    Yes.

17      **Q**    Okay.  And you're aware that he was arrested?

18      **A**    Yes.

19      **Q**    And that the court disposition was that he plead

20   guilty to simple assault and battery, which is a

21   misdemeanor and that there were no theft or convictions

22   involving that incident; is that correct?

23      **A**    Without having the court documentation in front of

24   me, I'm not certain.

25      **Q**    To the best of your recollection?

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **A**   If you're suggesting that it is.

2    **Q**   Let me show you what's been marked as Defendant's --

3    that's been admitted as Defendant Exhibit 24.

4                    **MR. FEINBERG:**  May I approach?

5                    **THE COURT:**  Yes, you may.

6    BY MR. FEINBERG:

7    **Q**   Is this the court record for the incident that we

8    were talking about?

9    **A**   This is the court record for the Elroy Jones

10   incident.

11                   **MR. FEINBERG:**  I'm sorry, your Honor.  I'll

12   find it later, your Honor.

13   BY MR. FEINBERG:

14   **Q**   To the best of your recollection, do you remember

15   that he was only convicted of a simple assault and

16   battery?

17   **A**   No, I don't remember.  I don't.

18   **Q**   Okay.  Do you have records of that somewhere?

19   **A**   Likely in the file but not here today.

20   **Q**   Okay.  So if we go beyond today, you'd be able to

21   find it?

22   **A**   I can certainly print out a criminal history report.

23   **Q**   Okay.  Thank you.  Were you aware that Mr. Brown had

24   a medical marijuana card?

25   **A**   I'm not aware.

                 *15-20652; USA v. EUGENE FISHER, ET AL*

1    **Q**   When he was arrested I think March 1st, 2016 at his
2    home?
3    **A**   Okay.
4    **Q**   You were present?
5    **A**   I was not present.
6    **Q**   Okay.  Did you see any identification or information
7    from Mr. Brown concerning that date and that arrest?
8    **A**   Oh, yeah, absolutely.
9    **Q**   And did he have a medical marijuana card and a
10   caregiver card?
11   **A**   If he did, I don't -- I don't know it on the top of
12   my head right now.
13   **Q**   That's also something else you can check?
14   **A**   If we seized that as part of the evidence.
15   **Q**   Or someone saw it, it may be in someone's report?
16   **A**   Okay.
17   **Q**   Is that correct?
18   **A**   If it's in somebody's report.
19   **Q**   Okay.  You went through a bunch of photographs I
20   guess concerning Exhibit 46?
21   **A**   We went through a lot of exhibits, sir.  I don't
22   recall exactly what 46 is.
23   **Q**   Okay.  Do you know who took any or all those photos?
24   Did you make a notation?
25   **A**   What photos are we talking about, sir?

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **Q**   Any of the photos?

2    **A**   I'm not sure what exhibit you're referring to.

3    There's exhibits from different Facebook accounts,

4    Instagram accounts, cell phones --

5    **Q**   Exhibit 46 --

6    **A**   I don't --

7    **Q**   Exhibit 46 I believe is --

8    **A**   Is that the photo album, maybe.

9    **Q**   The Facebook account.

10   **A**   Okay.  Whose Facebook account?

11   **Q**   Mr. Brown.

12   **A**   Okay.

13   **Q**   And there's a bunch of photos in the exhibit,

14   correct?

15   **A**   That's correct.

16   **Q**   Do you know who posts or who took the photos?

17   **A**   No, sir.

18   **Q**   In a lot of the Facebook accounts where there's

19   photos, people post them and send them to various people;

20   is that correct?

21   **A**   That's one possibility.

22   **Q**   And sometimes a person may take the photo whose

23   account it is --

24   **A**   That's also a possibility.

25   **Q**   -- and send it to one person and that person may

*15-20652; USA v. EUGENE FISHER, ET AL*

1      send it to a multitude of people?

2          A    That's also a possibility, yes.

3          Q    Did you ever check on the photos that you testified

4      to?

5          A    Some of them, certainly.  Yeah, we can attribute

6      them to certain individuals' phones.

7          Q    Sure, friends, acquaintances?

8          A    Sure.

9          Q    Okay.  Nothing concerning -- necessarily concerning

10     any criminal activity?

11         A    I wouldn't go that far.  Photos of a convicted felon

12     posting photos of him or herself with a gun would be

13     criminal activity.

14         Q    I see.  Have you made a determination that Mr. Brown

15     is a convicted felon?

16         A    I'm just giving you an example, a hypothetical

17     situation.

18         Q    Well, hypothetically; let's go to certainty.

19              You are aware that Mr. Brown has no felony

20     convictions; isn't that correct?

21         A    I believe that is the case with Robert Brown.

22         Q    Well, that's all we're talking about.

23         A    Okay.

24         Q    You check everywhere, state, federal, West Virginia,

25     anywhere, that has a database, correct?

*15-20652; USA v. EUGENE FISHER, ET AL*

1      **A**   Yes.

2      **Q**   When two people are talking on the either Facebook

3      or text, what does it mean, other than they're

4      communicating?  I'll go -- I'll withdraw that.

5            In going through all of Mr. Brown's texts and

6      Facebook messages, did you ever see Mr. Brown saying "I am

7      going to" or "I have committed any crime"?

8      **A**   I can't think of a specific text right now, but I'm

9      thinking, yes.  There were text messages with Billy

10     Arnold, if I remember correctly, in which he's talking

11     about doing deals or another example that comes to my mind

12     is Billy Arnold was talking about a shooting that he had

13     gotten into in which he said "Dub left me" and he's like

14     "He gotta go."  I mean that's subject to interpretation, I

15     suppose, but could be evidence of criminal activity.

16     **Q**   Right.  Your communication.  Other than --

17     **A**   No, that's not my communication.  That was their

18     communication.

19     **Q**   Your interpretation of the communication?

20     **A**   Well, what else does "he gotta go" mean?

21     **Q**   Well, someone did something wrong, get rid of him,

22     you know, send him to jail, something like that?

23     **A**   Yeah, I suppose that's another interpretation.

24     **Q**   Okay.  And your communications [sic.] are usually in

25     favor of law enforcement rather than --

*15-20652; USA v. EUGENE FISHER, ET AL*

1      **A**    My personal communications?

2      **Q**    Innocent communications.

3      **A**    My personal communications?

4      **Q**    No.  Your interpretation of Mr. Brown's

5      communications is in favor of law enforcement rather than

6      innocent communications in favor of Mr. Brown?

7      **A**    Sir, you asked me if there were any communications

8      in those exchanges, and I just thought of one in

9      particular.

10     **Q**    Okay.  One out of thousands that you have gone

11     through; is that right?

12     **A**    We could certainly go through the rest of the

13     exhibit if you'd like, sir.

14     **Q**    You only had two and a half years to go through all

15     that?

16     **A**    And I'm supposed to remember every thousand text

17     messages that he sent?

18     **Q**    Absolutely.

19     **A**    Seems a little, don't know, farfetched to me.

20     **Q**    I would assume that you would think that.

21            Let's go into Mr. Jensen's testimony about the

22     cell towers.  Do you remember that?

23     **A**    I do.

24     **Q**    Okay.  And I believe that you testified today

25     concerning certain cell towers?

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **A**    Okay.

2    **Q**    Involving Mr. Brown and his address in Warren?

3    **A**    Okay.

4    **Q**    Is that correct?

5    **A**    I did.

6    **Q**    Okay.  During that testimony, you indicated that

7    certain calls were close to or in some proximity to

8    Mr. Brown's house.  Do you remember that?

9    **A**    I think I did, yes.

10   **Q**    Okay.  Did you determine who else lived -- now,

11   these communications were not involving Mr. Brown,

12   correct, they were involving other people in close

13   proximity to where you said Mr. Brown lived?

14   **A**    Let me review my documents.

15   **Q**    Sure.

16           The shooting that was involved on Craft and

17   Duchess.

18   **A**    That one in particular, May 8th?

19   **Q**    Yes.

20   **A**    There was contact with Mr. Brown on that particular

21   day.

22   **Q**    And what time was that in relation to when the

23   incident took place?

24   **A**    Oh, that would have been 6:14:57, and the incident

25   itself...

*15-20652; USA v. EUGENE FISHER, ET AL*

1     **Q**   Was when?

2     **A**   It occurred at approximately 6:46.  So about a half

3     hour later.

4     **Q**   Okay.  So 30 minutes before the incident there's

5     information Mr. Brown and Mr. Arnold had some

6     communication?

7     **A**   That's correct.

8     **Q**   Okay.  Not close to 6:46 and not after 6:46; is that

9     correct?

10    **A**   I think close is a relative term.  A half hour.

11    **Q**   Are you and I close, to this?

12    **A**   I think we're close.

13    **Q**   Okay.

14    **A**   But that's close in distance.  I think we're talking

15    about close in time.

16    **Q**   Okay.  Are we closer?

17    **A**   We are closer now.

18    **Q**   So close in time is relative?

19    **A**   Absolutely.

20    **Q**   Thirty minutes?

21    **A**   I think that's close.

22    **Q**   It could be not close, depending on interpretation,

23    correct?

24    **A**   I suppose.

25    **Q**   Not as close as some of the other communication that

*15-20652; USA v. EUGENE FISHER, ET AL*

1    Mr. Arnold had?

2        **A**    Certainly, there was other communication closer.

3        **Q**    Did you make a determination who else lived the area

4    of 7211 Meadow?

5        **A**    I only looked at 7211 Meadow.  I didn't look at any

6    other addresses in that area.

7        **Q**    Did you know where Mr. Kennedy lived at that time?

8        **A**    No, no, I didn't.

9        **Q**    Were you aware that Mr. Kennedy lived close to the

10   area of Craft and Duchess?

11       **A**    No, I'm not aware of that.

12       **Q**    Did you ever make a determination where Mr. Kennedy

13   lived during that period of time?

14       **A**    A lot of different places.

15       **Q**    I'm talking about at that time.

16       **A**    Even at that time, he had several mothers of his

17   children, girls that he frequented their houses.  He had a

18   house on Coram.  I mean there were lots of different

19   addresses.

20       **Q**    So he's not -- Mr. Brown is not the only person who

21   lived in, quote, proximity to that area that may have had

22   contact with?

23       **A**    Are we talking about Mr. Kennedy living near Duchess

24   and Craft or are we talking about Mr. Brown living at 7211

25   Meadow?

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **Q**   Mr. Kennedy living in close -- somewhat close

2    proximity of Craft and Duchess on May 8th or had

3    connection with people who lived in that area.

4    **A**   Sir, I don't know where all of those women or other

5    individuals he might have stayed with lived.

6    **Q**   Okay.  What about Billy Arnold's girlfriend or one

7    of his girlfriends, were you aware that she lived in that

8    area?

9    **A**   Which girlfriend?

10   **Q**   Any girlfriend that he had on May 8th.

11   **A**   Well, Whitney lived -- I think it was Tacoma.

12   Capresha lived up -- I think it was in St. Clair Shores,

13   and I know he had quite a few girlfriends as well, from

14   his text messages, but I wasn't able to determine where

15   all of them lived.  There was the girlfriend that he went

16   to the house in Warren when there was a police case with

17   Warren and DPD and -- but I don't know where all of the

18   girls lived.

19   **Q**   Were you aware that one of Mr. Kennedy's locations

20   where he lived was on Meadow in Warren?

21   **A**   On March 1st, 2016, as part of this operation, there

22   was a mother of Derrick Kennedy's child that we executed a

23   search warrant on her house in an attempt to find Derrick

24   Kennedy that morning.  He was not at that location, and

25   that may have been on Meadow.  I don't recall the exact

*15-20652; USA v. EUGENE FISHER, ET AL*

1    numbers of that address.

2    **Q**    So at one time you had information that he had

3    connection with -- to a residence on Meadow in Warren?

4    **A**    Certainly.  Well, like I said, it may have been on

5    Meadow.  I don't recall specifics.

6    **Q**    To the best of your recollection, it was, right?

7    **A**    Sure.

8    **Q**    And also were you aware that one of Mr. Arnold's

9    girlfriends also lived on Meadow in Warren?

10    **A**    No, I'm not familiar with what girlfriend that would

11    have been.

12    **Q**    Because he had so many?

13    **A**    He had a few.

14    **Q**    The search warrant that was executed at Mr. Brown's

15    house, other than medication that was prescribed by a

16    doctor, was any other -- was any SMB paraphernalia or

17    clothes found and seized from his house?

18    **A**    There were photos -- there was a photo album we went

19    through earlier --

20    **Q**    Sir, I asked you if any clothes were found.

21    **A**    You said paraphernalia, SMB paraphernalia.  There

22    were photos of individuals that had, you know, SMB writing

23    on them.

24    **Q**    Okay.  I'll phrase it better.

25          Were any clothes seized from his house during

*15-20652; USA v. EUGENE FISHER, ET AL*

1    the raid that indicated SMB, 55, Hob Squad, anything like

2    that?

3        **A**   There may have been.  We've executed a lot of search

4    warrants as part of this investigation.  Some of those

5    houses, we had t-shirts that indicated --

6        **Q**   Sir -- sir, I'm asking specifically Mr. Brown, not

7    other places, not other searches.

8        **A**   I'm suggesting that it could have been out of Mr.

9    Brown's house.

10       **Q**   I'm not asking you to suggest anything.  I'm asking

11   you to tell us, during your investigation and hearing

12   Agent Shirley's testimony, was any clothing that depicted

13   SMB, Hob Squad, 55 found at his house and seized?

14       **A**   It's a possibility.

15       **Q**   Have you seen any from his house during that raid?

16       **A**   I've reviewed so much evidence from this case, I

17   want to say there was a red bandanna that was seized at

18   that address, but I'm not 100 percent certain.

19       **Q**   Was it seized, is it in evidence?

20       **A**   Yes, yes.

21       **Q**   From his house --

22       **A**   Like I said, I'm not 100 percent certain because

23   I've reviewed the search warrant evidence to different

24   locations.  I don't want to say the wrong thing here.

25       **Q**   I would never want you to say the wrong thing.

*15-20652; USA v. EUGENE FISHER, ET AL*

```
 1              Any jewelry seized, I mean you heard --

 2    A    From Robert Brown's residence?

 3    Q    Yes.

 4    A    I don't recall.  I don't think so.

 5    Q    What about money, any money seized?

 6    A    I don't recall.

 7    Q    Any cars?

 8    A    No, we didn't seize any cars.

 9    Q    Any assets that could be used for forfeiture?

10    A    From Robert Brown?

11    Q    Yes.

12    A    No, sir.

13    Q    In your phone, I assume you have a contact list?

14    A    I certainly do.

15    Q    A folder?

16    A    Yes, I do.

17    Q    And friends, relatives?

18    A    Friends, relatives, coworkers, acquaintances,

19    attorneys, professional contacts.

20    Q    Is mine in there?

21    A    No, yours is not in there, Mr. Feinberg, I'm sorry

22    to say.

23    Q    Maybe some day.

24    A    Maybe.

25    Q    Other than -- approximately how many contact numbers
```

*15-20652; USA v. EUGENE FISHER, ET AL*

1    were in Mr. Brown's cell phone that was seized?

2        **A**    I have no idea.

3        **Q**    More than just people that you felt was relevant to

4    this investigation?

5        **A**    Oh, certainly.  Certainly.  There was definitely,

6    you know, contacts that I didn't think had any connection

7    to this.

8        **Q**    The same thing for text messages, there were many

9    text messages that you saw that had nothing to do with

10   this investigation?

11       **A**    I would say that's --

12       **Q**    Same thing with photos?

13       **A**    Sure.

14               **MR. FEINBERG:**  I have no further questions.

15               **THE COURT:**  All right.  Thank you,

16   Mr. Feinberg.  Any other cross examination?

17                   **CROSS EXAMINATION**

18   BY MR. S. SCHARG:

19       **Q**    Good afternoon, Agent Ruiz.

20       **A**    Good afternoon, sir.

21       **Q**    Just a few questions, sir, going back to the first

22   time you testified in this case.

23       **A**    Okay.

24       **Q**    We got into the (313)806-0837 number.

25       **A**    Okay.

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **Q**   And the first time you testified, it came out that

2    you testified at a prior hearing on February 12th, 2018

3    that the number (313)806-0837 was Eugene Fisher's phone,

4    correct?

5    **A**   Yes.

6    **Q**   And then you told us in this trial that it was a

7    mistake that was given, and you didn't realize that until

8    you got off the stand at that prior hearing and told the

9    U.S. Attorney Christopher Graveline at the time, that it

10   was a mistake or he told you that you were mistaken?

11   **A**   He revealed to me that I was mistaken.

12   **Q**   And it's fair to say that on that same day of

13   February 12th, 2018, Assistant U.S. Attorney Julie

14   Finocchiaro was there as well during the trial?

15   **A**   Yes, she was there during the trial.

16   **Q**   And we -- you admitted that at no time after you got

17   off the stand was that number or that error ever

18   corrected, correct?

19   **A**   No, that's not what I admitted.

20   **Q**   It was corrected?

21   **A**   I believe it was, because after I got off the stand,

22   Chris said, "Don't worry about it, we'll correct it."

23   **Q**   And as far as you know, you never got back on the

24   stand and corrected that?

25   **A**   No, I'm not saying that.

*15-20652; USA v. EUGENE FISHER, ET AL*

1      **Q**    Okay.

2      **A**    I'm assuming that we did get back on and corrected

3    it.

4      **Q**    And it's fair to say you testified more than one

5    time, like you did in this trial, correct?

6      **A**    I did multiple times.

7      **Q**    And there was a date of February 26, 2018, which was

8    two weeks after you stated that it was Eugene Fisher's

9    phone.  Did you have a chance to review that transcript to

10    see if you made that correction?

11      **A**    I read a lot of transcripts.  I don't know if I read

12    that one specifically.

13      **Q**    Do you want to refresh your memory to see if that

14    was ever corrected in that transcript?

15           Or would the Government agree that it wasn't

16    corrected?  Can we stipulate it wasn't corrected on that

17    date on February 26th, 2018?

18           **MS. FINOCCHIARO:**  We'll stipulate.

19           **MR. S. SCHARG:**  The Government will stipulate

20    it was not corrected on that date.

21           **THE COURT:**  All right.  Thank you.

22    BY MR. S. SCHARG:

23      **Q**    Investigator Ruiz, you also testified on March 8th,

24    2018, which was almost a month later.  Do you recall

25    testifying on that date as well?

*15-20652; USA v. EUGENE FISHER, ET AL*

1    **A**   Not the specific date, but I recall testifying

2    multiple times in that trial.

3    **Q**   And would you agree with me on that date that that

4    error was not corrected as well?

5            Would the Government agree to that?

6            **MS. FINOCCHIARO:**  We'll agree.

7            **MR. S. SCHARG:**  The Government will stipulate

8    to that, that it was not corrected on that date, your

9    Honor.

10           **THE COURT:**  All right.  Thank you.

11   BY MR. S. SCHARG:

12   **Q**   And lastly, is it fair to say that at no time during

13   the last entire hearing before Judge Steeh that error was

14   never corrected, sir?

15   **A**   You're saying it never got corrected, maybe it

16   didn't.

17   **Q**   Thank you.  And Investigator Ruiz, would you agree

18   with me that the (313)806-0837, which was a Sprint number,

19   was subscribed to a person by the name of Biljana

20   Silvotaski (ph.)?

21   **A**   On the records I reviewed, I never got any

22   subscriber information on it.

23   **Q**   And you also indicated the last time you testified

24   in this case that no cell phone was taken off of

25   Mr. Porter's possession, meaning off his person, other

*15-20652; USA v. EUGENE FISHER, ET AL*

1    than when he was arrested by this Police Officer Toth from

2    the city of Warren back on November of 2015; is that fair

3    to say?

4    **A**   That's fair to say.

5    **Q**   And as Officer Toth told us, and as you're the

6    officer in charge of this case, the phone that was

7    confiscated with Officer Toth in November of 2015 is no

8    longer with us, it was destroyed somehow?

9    **A**   I don't believe it was Officer Toth.  That was a

10   different officer.

11   **Q**   Okay.  But an officer from Warren that testified

12   earlier in this trial?

13   **A**   Regarding that narcotics transaction?

14   **Q**   Yes, correct.

15   **A**   There were -- if I remember correctly, there were

16   some phones that were returned and then some phones that

17   had been forfeited.

18   **Q**   Investigator Ruiz, I'm showing you what's been

19   marked as Government's Exhibit 537.

20   **A**   I think it's 547.

21   **Q**   547.  I'm sorry.  And we saw earlier -- or you went

22   over earlier with the Government that there were some text

23   messages that was presented by the Government regarding

24   messages that came from Billy Arnold's phone to phone

25   number (313)806-0837, correct, which was Exhibit 20C?

*15-20652; USA v. EUGENE FISHER, ET AL*

1      **A**    I remember the text messages.  I just don't remember

2      the exhibit number.

3      **Q**    Okay.  And let me just show you to see if this

4      refreshes your memory -- may I approach the witness, your

5      Honor?

6                    **THE COURT:**  Yes, you may.

7                    **THE WITNESS:**  Yes, I remember these text

8      messages.

9  **BY MR. S. SCHARG:**

10     **Q**    And would you state the date that those messages

11     were transferred from Mr. Arnold's phone to the 806-0837

12     phone and vice versa?

13     **A**    You said transferred --

14     **Q**    The communication.

15     **A**    The communication occurred, the particular one you

16     have highlighted here is August 27th, 2015 at 9:18 Eastern

17     standard time.

18     **Q**    Okay.  And the date again was what date?

19     **A**    August 27.

20     **Q**    Which is, in the timeline of all these instances

21     that took place during this conspiracy, it's three months

22     or more later than when all this took place, correct?

23     **A**    It is.

24     **Q**    And you would agree with me that the same thing

25     when -- I think it's on another page, where there was a

*15-20652; USA v. EUGENE FISHER, ET AL*

1    message on September 10th, 2015?

2        **A**   I see those messages.

3        **Q**   And those are the ones you addressed earlier with

4    the Government on direct examination?

5        **A**   That's correct.

6        **Q**   And they were on September 10th, 2015, which was at

7    least three or four months after this occurred; is that

8    correct?

9        **A**   That is correct.

10       **Q**   Okay.  Thank you.  Investigator Ruiz, during your

11   investigation of this matter, since 2003 up until the

12   present date, were there any tracking devices that you had

13   on any vehicles that tied Robert Brown and Keithon Porter

14   together?

15       **A**   I don't believe so.

16       **Q**   And what about any traffic devices that could put

17   Corey Bailey and Keithon Porter together?

18       **A**   No, I don't believe so.

19       **Q**   Investigator Ruiz, I'm showing the same Exhibit 20C

20   that I asked you about with regard to the date?

21       **A**   Yes, sir, I see that.

22       **Q**   I see on the first line up here at the top, it says

23   going to cell phone number (313)806-0837.  In that text

24   message, there's no contact name under that number

25   (313)806-0837; is that fair to say?

*15-20652; USA v. EUGENE FISHER, ET AL*

1     **A**    You are correct.  This number was not saved as a

2    contact in that phone.

3     **Q**    So in other words, on that number, it doesn't state

4    who that number is going to, it's just a number, no name?

5     **A**    It's just a number, no -- yeah, no name.

6     **Q**    No contact name.  Okay.  Thank you.

7          Going down to the next page under I believe it's

8    number eight where it's from (313)806-0837 and the person

9    says "yeah alright" still there's no contact number name

10   under that number?

11    **A**    No name, you are correct.

12    **Q**    And that goes the same for the next couple ones

13   down; is that fair to say?

14    **A**    Every time you see that number appear in this

15   report, it's not going to show a name.

16    **Q**    No contact name.  Okay.

17          Investigator Ruiz, you would agree with me

18   during your investigation you became very familiar with

19   the Red Zone as they say, correct?

20    **A**    Yes, sir, I did.

21    **Q**    And all the streets that go along with it in that

22   area pretty much?

23    **A**    I would say most of the streets, not all.

24    **Q**    Okay.  And as you indicated and testified numerous

25   times throughout this trial, you became familiar with a

*15-20652; USA v. EUGENE FISHER, ET AL*

1   street called Westphalia, correct?

2   **A**   Yes.

3   **Q**   And Dresden?

4   **A**   Yes.

5   **Q**   Coram?

6   **A**   Yes.

7   **Q**   And you would also agree that all those streets are

8   very close together in that area, such as in the exhibit

9   that was used by the Government earlier on Dresden Street,

10  they're all pretty close together?

11  **A**   Correct.

12          **MS. FINOCCHIARO:**  Your Honor, if we could

13  briefly approach.

14          **THE COURT:**  Well, we'll approach after we

15  excuse the jurors for the day.

16          (Jury out 1:00 p.m.)

17          **THE COURT:**  Did you work it out?

18          **MS. FINOCCHIARO:**  We worked it out.

19          **THE COURT:**  They worked it out.

20      All right.  So we did talk briefly about a

21  schedule for the submission of proposed jury instructions,

22  and what I was hoping would happen is either Thursday or

23  Friday of this coming week you get together and outline

24  the areas of disagreement, at least for the benefit of the

25  Court, so I can be looking at the manner in which the

*15-20652; USA v. EUGENE FISHER, ET AL*

1    Court will resolve the differences if you can't agree

2    among yourselves.

3         I think for the purposes of working on these

4    instructions, Thursday will probably work better.  I

5    understand that one or two of you would not be available

6    but your colleagues --

7         **MR. H. SCHARG:**  Your Honor, Defense counsel

8    met last night, but we were not -- we were unproductive in

9    that we really need to get the Government's proposed jury

10   instructions to review before we meet with them.  We've

11   been in communication and we've been informed that they'll

12   have the proposed set of -- proposed set of instructions

13   to us on Wednesday, and the Court knows from the previous

14   trial, that they're very lengthy, and I believe that

15   there's going to be some disputes, at least in the RICO

16   conspiracy instructions.

17        So if we get them on Wednesday, we really need at

18   least 24 hours or longer to at least meet in person or by

19   conference call before we can sit down and meet with them.

20   So realistically, if we get them on Wednesday, we won't

21   even -- we won't be prepared to meet with the Government

22   until Friday.

23        So --

24        **MR. SPIELFOGEL:**  It will be Tuesday we'll get

25   them.

*15-20652; USA v. EUGENE FISHER, ET AL*

1           **MR. H. SCHARG:**  They say Tuesday now.

2           **MR. WIGOD:**  Your Honor, I informed Defense

3    counsel we could have them to them on Tuesday.

4           **MR. H. SCHARG:**  Okay, Tuesday.  So we will

5    need a couple days to review them.  So my suggestion is

6    that we meet -- maybe meet with the Government on Friday

7    morning and then meet with the Court on Friday afternoon

8    or least some --

9           **MR. WIGOD:**  Your Honor, I don't know that a

10   Friday morning and Friday afternoon time frame would work.

11          **THE COURT:**  We have Mr. Spielfogel, you'll be

12   going home?

13          **MR. SPIELFOGEL:**  Yes, I will, Judge.

14          **THE COURT:**  So Mr. Daly, you'd be available

15   Thursday or Friday?

16       That's a yes?

17          **MR. DALY:**  Yes.

18          **MR. THEIS:**  Both Judge.  Mr. Spielfogel and I

19   intended not to be in Detroit, but we will be available.

20   Certainly, Mr. Magidson and Mr. Daly will be available in

21   person and we will be available for our positions by

22   phone.

23          **THE COURT:**  So, you know, I think it's

24   unlikely that we're going to be at the point of beginning

25   the arguments until Tuesday at the earliest.  Do you agree

*15-20652; USA v. EUGENE FISHER, ET AL*

1    with that?

2             **MR. WIGOD:**  We haven't been given a firm list

3    of witnesses for the Defendants yet.

4             **THE COURT:**  So I guess if I get your proposed

5    instructions from the Prosecution side, some kind of a

6    response by the Defense counsel, I think we just get your

7    competing positions in place by Friday, then we -- I mean

8    we're not going to -- we're not even going to come close I

9    think by Tuesday of the following week.  Competing

10   positions, well, hopefully there aren't too many that are

11   going to fit in that category.

12            **MR. S. SCHARG:**  They won't be competing.

13            **MR. THEIS:**  Your Honor, it's also my

14   understanding that the Government is going to complete

15   their witnesses tomorrow.  I think they wish to rest on

16   Monday -- the Monday that we return from our hiatus, and

17   do you have --

18            **THE COURT:**  What about Monday when you

19   return?

20            **MR. THEIS:**  Pardon me?

21            **THE COURT:**  What about Monday?

22            **MR. THEIS:**  That they'll rest formally on

23   Monday.

24            **MR. WIGOD:**  Your Honor, we just prefer to

25   have the break to make sure all our exhibits and evidence

*15-20652; USA v. EUGENE FISHER, ET AL*

1    are properly admitted.

2                    **THE COURT:**  All right.

3                    **MR. WIGOD:**  And we need to put on the

4    stipulations before we rest.  So we would just prefer to

5    have the break to make sure everything is in order so

6    there's no issues down the road.

7                    **THE COURT:**  Even if we are otherwise done

8    with the testimony tomorrow?

9                    **MR. WIGOD:**  Correct.

10                    **THE COURT:**  You still want to wait until

11   Monday?

12                    **MR. MAGIDSON:**  Judge, I have a witness that

13   was writted out of the Michigan Department of Corrections

14   that I had been debating whether to call, but in

15   consultation with my client, he wants him called.  He's at

16   the Wayne County jail and I think we're on the tail end of

17   the agent here, and I thought if there was still time

18   tomorrow, I was going to just bring him in for -- I have

19   about five minutes of direct.

20                    **MR. WIGOD:**  Judge, I don't -- we can

21   conditionally rest, if everybody's comfortable with that,

22   in order to move things along.

23                    **THE COURT:**  Or we just indicate that we're

24   allowing the Defense counsel to bring this out of order.

25                    **MR. WIGOD:**  Right.


                    *15-20652; USA v. EUGENE FISHER, ET AL*

1          THE COURT:  And so if you're not -- if you

2   don't object, we'll have that person brought in.

3          MR. H. SCHARG:  And I prefer not to give my

4   opening statement until the Government rests on Monday.

5          THE COURT:  Yes.  Well, again, this witness

6   is the last witness?

7          MR. WIGOD:  Yes, your Honor.

8          THE COURT:  So has there been a response from

9   Mr. Spielfogel and Mr. Daly to this e-mail that I read

10  about the stipulation that you have worked out?

11         MR. SPIELFOGEL:  We agree.

12         MR. DALY:  We have not formally responded,

13  but the answer is yes, we agree.

14         THE COURT:  Okay.  All right.  So we don't

15  have to worry about that.  And so what's the problem with

16  a conditional -- allowing the Government to conditionally

17  rest?

18         MR. H. SCHARG:  There is none.

19         MR. THEIS:  No.  We would have no problem

20  with that or not object if they ask to reopen, however we

21  need to do it, that's not a problem.  We won't stand on

22  the formality.

23         THE COURT:  You agree, Mr. Scharg?

24         MR. H. SCHARG:  Yes.

25         THE COURT:  Because then you'll be up for

*15-20652; USA v. EUGENE FISHER, ET AL*

1    your opening.

2            MR. H. SCHARG:  You want me to give my

3    opening tomorrow?

4            THE COURT:  Well, potentially I guess.  It

5    sounds like we could be there, yeah.  That would be great,

6    because you need to do your opening before the -- before

7    we hear any of the Defense evidence, unless you -- unless,

8    again, you work it out with your colleagues.  I don't know

9    how the Government would feel about allowing Defense

10   counsel who has evidence to present to get into that and

11   then hear the opening statement by Mr. Scharg.  It's a

12   little clumsy.

13           MR. WIGOD:  Your Honor, I don't think we have

14   a preference one way or the other whether Mr. Scharg gives

15   opening and then the witness is called or whether the

16   witness is called and Mr. Scharg gives opening.  I don't

17   know that it matters to us.

18           THE COURT:  Okay.  So if you feel like you

19   need more time and your colleagues agree, because we're

20   talking about evidence that they have to line up as well.

21           MR. H. SCHARG:  I prefer to give it Monday

22   when we return, and then I have a witness to call at that

23   time.

24           THE COURT:  Would we otherwise be finishing

25   tomorrow if we just go -- if we --

            *15-20652; USA v. EUGENE FISHER, ET AL*

1              **MS. FINOCCHIARO:**  Yes, your Honor.

2              **THE COURT:**  I think you better get your

3    opening -- closing ready.

4              **MR. H. SCHARG:**  Opening.

5              **THE COURT:**  And your witness, because if we

6    can wrap it all up tomorrow.

7              **MR. H. SCHARG:**  I can't.  I have an expert

8    witness who could not --

9              **MR. WIGOD:**  Just your opening.

10             **MR. H. SCHARG:**  The opening.  Okay.  The

11   opening then, but I have a firearms identification expert

12   who will be testifying and he's available on the Monday

13   that we return.

14             **THE COURT:**  All right.

15             **MR. WIGOD:**  Judge, if I could digress for

16   just a moment.  Going back to jury instructions, just a

17   question for counsel:  Are we going to be getting a set of

18   instructions from you or is it a mutual exchange or are we

19   just giving you a set and you're going to comment on them?

20             **MR. DALY:**  I think it would be best if you

21   send us our -- yours.  Send us yours and then we'll

22   respond to them, the ones we object to and we will propose

23   the instructions that we want.

24             **MR. WIGOD:**  It just may be shorter, since

25   we're somewhat on a time crunch, if we just mutually

                *15-20652; USA v. EUGENE FISHER, ET AL*

1   exchange the ones we anticipate are going to be disputed.

2              MR. SPIELFOGEL:  Well, we don't know until we

3   actually see your instructions, and generally speaking, we

4   work off the Government instructions first and -- I mean

5   we try --

6              THE COURT:  I think that is the simplest way

7   of approaching it is to work from one set, in this case,

8   the Government set, and --

9              MR. WIGOD:  The next issue is Mr. Magidson

10  needs to confirm with the marshals that this witness will

11  be brought in tomorrow.

12             MR. MAGIDSON:  We've had that discussion.  I

13  tendered the name and we just want to be sure what day,

14  and now we know.

15             THE COURT:  Do you know if he's here now in

16  the Wayne County jail?

17             MR. MAGIDSON:  Yes.  I spoke with him

18  yesterday.

19             THE COURT:  All right.  So, yeah, you make

20  sure you coordinate with the marshals getting him brought

21  over.

22             MR. MAGIDSON:  I just didn't want him to wait

23  for another week at the Wayne County jail.

24             THE COURT:  Right.  Right.

25             MR. MAGIDSON:  And have an unhappy person.

*15-20652; USA v. EUGENE FISHER, ET AL*

1              **THE COURT:**  Yes.  So do we know?

2              **DEPUTY MARSHAL:**  We'll make arrangements,

3      your Honor.

4              **THE COURT:**  All right.  Okay.  So see the

5      marshals.

6            What else?

7              **MR. FEINBERG:**  Have we set a date and a time

8      for us to meet with you to go over it --

9              **THE COURT:**  Probably do that Monday afternoon

10     after the -- after everything else is done.

11             **MS. FINOCCHIARO:**  That works, your Honor.

12             **MR. THEIS:**  We may not even fill up the time

13     until 1:00 on that date, especially if we use our -- if we

14     get our witness up tomorrow, then we just have the one --

15     well, unless there are other witnesses that I don't know

16     about, we might even be able to start a little earlier on

17     that Monday with the instruction evidence.

18             **THE COURT:**  All right.  We have a lot to get

19     done before argument on Tuesday.  You need your

20     instructions to incorporate into your argument.

21             **MR. FEINBERG:**  Right.

22             **THE COURT:**  So hopefully Friday we get a

23     better sense of what arguments or disputes might be out

24     there on Friday.

25             **MR. THEIS:**  I really anticipate, Judge, the

*15-20652; USA v. EUGENE FISHER, ET AL*

143

1    disputes are just going to be -- I mean I don't want to

2    speak for everybody else, but there aren't going to be a

3    lot of disagreement about most of them, but as you know,

4    the racketeering conspiracy instructions are complicated,

5    to say the least, and we also have related to that the

6    substantive counts that also refer to that, and we spent a

7    lot of time with it yesterday, and just I think -- but it

8    will all be in that general area, I believe.

9              **THE COURT:**  Okay.  All right.  Thanks.  See

10   you tomorrow.

11             (Proceedings concluded 1:16 p.m.)

12                        -  -  -

13             **C E R T I F I C A T I O N**

14                                           We, Ronald

15   DiBartolomeo and Andrea E. Wabeke, official court reporters for

16   the United States District Court, Eastern District of Michigan,

17   Southern Division, appointed pursuant to the provisions of

18   Title 28, United States Code, Section 753, do hereby certify

19   that the foregoing is a correct transcript of the proceedings

20   in the above-entitled cause on the date hereinbefore set forth.

21   We do further certify that the foregoing transcript has been

22   prepared by us.

23   /s/Andrea E. Wabeke, 8/2/2018
     Official Court Reporter
24   /s/Ronald DiBartolomeo, 8/2/2018
     Official Court Reporter
25                        -  -  -


                 *15-20652; USA v. EUGENE FISHER, ET AL*