UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

*Vs*.                                          Case No. 15-cr-20652
                                            Hon. George Caram Steeh

(D-13)  ARLANDIS SHY, II,

        Defendant.
_____

## DEFENDANT (D-13) SHY'S MOTION FOR A *REMMER* HEARING

Defendant (D-13) Shy moves this Honorable Court for a *Remmer* hearing under *Remmer v. United States*, 347 U.S. 227, 98 L. Ed. 654, 74 S. Ct. 450 (1954).

                                        Respectfully submitted,

Date: September 3, 2018

| | |
|---|---|
| By: s/*Mark H. Magidson*<br>MARK H. MAGIDSON (P25581)<br>Attorney for Defendant Shy (D-13)<br>815 Griswold, Suite 810<br>Detroit, MI 48226<br>313-963-4311<br>313-995-9146  fax<br>mmag100@aol.com | By: s/*John T. Theis*<br>JOHN T. THEIS<br>Attorney for Defendant Shy (D-13)<br>190 South LaSalle St., Suite 520<br>Chicago, IL 60603<br>(312) 782-1121 |

## BRIEF IN SUPPORT OF
## DEFENDANT (D-13) SHY'S MOTION FOR A *REMMER* HEARING

### FACTS

Before trial began in this complex mega case involving six codefendants, potential jurors were given a questionnaire to assist voir dire. The questions informed the jurors that this case involved murder, assaults, shootings, and members of the Seven Mile Blood (SMB) gang.

At some time before or during trial, Deputy U.S. Marshal Mike Jordan, who was in charge of this case, gave the jurors his cell phone number "in case they were late, had car troubles, received threats, etc." (Exhibit A – Filed Rpt. of SDUSM Nidiffer).

On August 21, 2018, after the close of all evidence and during the jury's deliberations, a juror, unknown to any of the defense counselors, sent the following text message to Jordan:

> If we think there maybe some conspiracy with in the group how do we voice that without being singled out?  We don't know for sure but it's really bothering some of us. [Ex. A.]

Special Deputy U.S. Marshal Jody Nidiffer interviewed that juror to investigate any potential outside interference with the jury's deliberations. The unnamed juror told Nidiffer that the jury believed "that two of the jurors were

'conspiring' to hold up the deliberations and it is causing frustration and arguments within the deliberations." (Ex. A). The juror also allegedly stated that no one outside the jury had approached or threatened the jury. *Id*.

Nidiffer reported her opinion to the trial Judge, Hon. George Caram Steeh, that she believed the incident was jury in-fighting, and that no tampering had occurred. *Id*. The trial Court agreed, and the jury was allowed to continue its deliberations.

The information about the juror's text to Jordan and later interview by Nidiffer were not disclosed to the parties until August 23, 2018, during deliberations. The jury reached its verdict on August 27, 2018.

## ARGUMENT

The U.S. Supreme Court has addressed the type of jury incident that occurred in this case and created the following rule:

> In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant. [*Remmer v. United States*, 347 U.S. 227, 229, 74 S. Ct. 450, 451 (1954)(citation omitted).]

In *Remmer*, after the jury had returned its verdict, the defendant learned for the first time that during the trial a person unnamed told a certain juror that he could profit by bringing in a verdict favorable to the defendant. *Id*. at 228. The juror reported the incident to the judge, who informed the prosecuting attorneys. *Id*. As a result, the FBI investigated and its report was considered by the judge and prosecutors alone. *Id*. They concluded that the statement to the juror was made in jest, and nothing further was done or said about the matter. *Id*. The defendant and his counsel first learned of the matter by reading of it in the newspapers after the verdict. *Id*.

The defendant in *Remmer* made a motion for a new trial, arguing that the defendant was substantially prejudiced, denied a fair trial, and he requested a hearing to determine the circumstances surrounding the incident and its effect on the jury. *Id*. The trial court denied the motion, and the Supreme Court reversed and remanded for a hearing, stating that

> [w]e do not know from this record, nor does the petitioner know, what actually transpired, or whether the incidents that may have occurred were harmful or harmless. The sending of an F. B. I. agent in the midst of a trial to investigate a juror as to his conduct is bound to impress the juror and is very apt to do so unduly. A juror must feel free to exercise his functions without the F. B. I. or anyone else looking over his shoulder. The integrity of jury proceedings must not be jeopardized by unauthorized invasions. The trial court should not decide and take final action ex parte on information such as was received in this case, but should determine the circumstances, the

impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate. [*Remmer*, 347 U.S. at 229-30.]

The U.S. Sixth Circuit court of Appeals has held that *Remmer* "controls the question of how the district court should proceed where such allegations are made, i.e., **a hearing must be held during which the defendant is entitled to be heard**." (Emphasis added.) *United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984). "This court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215, 71 L. Ed. 2d 78, 102 S. Ct. 940 (1982).

In this case, Defendant was not given a hearing to determine whether or not the incident affected the jury's impartiality or bias. Just as in *Remmer*, Defendant was not made aware of the incident until two days after it had occurred. A hearing was not held because the trial Court reached the *ex parte* conclusion that no tampering had occurred, simply jury in-fighting, relying on an investigation performed by an agent of the Plaintiff Government and without participation by any defense counsel. And just as in *Remmer*, "[w]e do not know from this record, nor does the petitioner know, what actually transpired, or whether the incidents that may have occurred were harmful or harmless." *Remmer*, 347 U.S. at 229-30.

What Defendant and counsel know now is that Deputy Marshal Jordan gave

his cell phone number to the jurors, in part, in case they "received threats." (Ex. A). That was itself an outside act, extraneous to the jury, creating a bias and impartial atmosphere for the jury, that is, the jury was made aware that it could be the victim of the violence alleged in the indictments.

The Sixth Circuit Court has defined "an extraneous influence on a juror [as] one derived from specific knowledge about or a relationship with either the parties or their witnesses." *United States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998). Examples of extraneous influence include "prior business dealings with the defendant, applying to work for the local district attorney, conducting an out of court experiment, and discussing the trial with an employee." *United States v. Owens*, 426 F.3d 800, 805 (6th Cir. 2005).

In *United States v. Davis*, 177 F.3d 552 (6th Cir. 1999), one of the jurors (Juror Estes) sent a note to the judge asking to be excused from further service. *Id.* at 556. Estes based his fear in part on the fact that he lived in the same area as the defendants, that he had previously done business with some of the defendants, and that one of his employees told him during trial "that members of the community were already aware of Estes's jury service and were discussing his role in the proceedings." *Id.* The Sixth Circuit remanded for a *Remmer* hearing, stating the following:

> Given the fact that Estes was clearly motivated by fear of retaliation from the defendants, their families, and their acquaintances, the fact that the

> information that prompted the fear was provided by an extraneous source, and the fact that a number of jury members openly agreed that a person in Estes's predicament should seek to be removed from the panel, such further inquiry seems not only appropriate, but necessary to ensure the impartiality of the jury. [*Davis*, 177 F.3d at 557.]

In this case, Deputy Marshal Jordan's message to the jury that they could call him if they received threats was an extraneous influence under *Davis*, along with the jurors' concern about two jurors conspiring during deliberations. The problem is that without the hearing, the extent of the unnamed juror's knowledge is unknown. The unnamed juror may not have had personal knowledge of additional outside influences, but the entire jury knew that a conspiracy existed.

The unnamed juror who reported the incident thought it was serious enough to report to Jordan and that it met the criteria for sending him a text message. Also, the juror was fearful of being exposed for having reported the incident, which indicates its seriousness and negative affect on the jury.

The fact that the incident occurred during deliberations also means it had a greater affect on the verdict, and the information reported by the unnamed juror to Deputy Marshal Nidiffer during the interview indicates that the "conspiracy" affected the whole jury because they were all aware of it.

WHEREFORE, Defendant (D-13) Shy moves this Honorable Court for a *Remmer* hearing with all of the jurors and DUSM Mike Jordan and SDUSM Jody Nidiffer as witness available for examination and testimony.

Respectfully submitted,

Date: September 3, 2018

| | |
|---|---|
| By: s/*Mark H. Magidson*<br>MARK H. MAGIDSON (P25581)<br>Attorney for Defendant Shy (D-13)<br>815 Griswold, Suite 810<br>Detroit, MI 48226<br>313-963-4311<br>313-995-9146  fax<br>mmag100@aol.com | By: *s/John T. Theis*<br>JOHN T. THEIS<br>Attorney for Defendant Shy (D-13)<br>190 South LaSalle St., Suite 520<br>Chicago, IL 60603<br>(312) 782-1121 |

**CERTIFICATE OF SERVICE**

I certify that on September 3, 2018, I electronically filed the above *Motion* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record.

By: s/*Mark H. Magidson*
MARK H. MAGIDSON (P25581)
Attorney for Defendant Shy (D-13)