# Ewing v. Horton

United States Court of Appeals for the Sixth Circuit

October 2, 2018, Argued; February 5, 2019, Decided; February 5, 2019, Filed

File Name: 19a0015p.06

No. 17-2485

**Reporter**

2019 U.S. App. LEXIS 3528 *; 2019 FED App. 0015P (6th Cir.) **; __ F.3d __; 2019 WL 438813

DARRELL RASHARD EWING, Petitioner-Appellee, v. CONNIE HORTON, Warden, Respondent-Appellant.

**Prior History:** [*1] Appeal from the United States District Court for the Eastern District of Michigan at Detroit. No. 2:15-cv-10523—Denise Page Hood, Chief District Judge.

Ewing v. Horton, 2017 U.S. Dist. LEXIS 191023 ( E.D. Mich., Nov. 20, 2017)

**Counsel:** ARGUED: Linus Banghart-Linn, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant.

Phillip D. Comorski, Detroit, Michigan, for Appellee.

ON BRIEF: Andrea M. Christensen-Brown, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant.

Phillip D. Comorski, Detroit, Michigan, for Appellee.

**Judges:** Before: SILER, MOORE, and ROGERS, Circuit Judges. ROGERS, J., delivered the opinion of the court in which SILER, J., joined. MOORE, J., delivered a separate dissenting opinion.

**Opinion by:** ROGERS

## Opinion

 [**2]  ROGERS, Circuit Judge. Two months after Darrell Ewing was convicted of murder, a juror filed an affidavit accusing two fellow jurors of conducting after-hours internet research about the case and discussing their findings during deliberations. Without holding an evidentiary hearing to determine what, if any, prejudicial impact that extracurricular fact-finding had on the jury, the state trial and appellate courts considered the information duplicative of the evidence at trial and the incident harmless. That was constitutional error, [*2]  as everyone now agrees. The question is how best to remedy that constitutional injury on habeas review. The district court conditionally granted Ewing's release from prison unless the State acts within ninety days to afford him a new trial. The appropriate remedy in such a case, however, is generally to order release unless the State provides—instead of a new trial—a hearing to consider whether a new trial is warranted. Such an order should have been entered by the district court in this case.

In October 2010, Ewing stood trial for first-degree murder and other charges arising from an apparently gang-related shooting at a Detroit intersection. J.B. Watson and three others were waiting at a red light at the intersection of Harper and Van Dyke when Derrico Searcy drove up a few car lengths behind them and pulled over to the curb. With the light still red, Ewing allegedly exited Searcy's car with his gun drawn, walked the rest of the way to the intersection, and fired several shots into the back of the van before retreating to his getaway car and speeding off in the other direction. One passenger was injured after taking a bullet to the hand, and Watson was killed. Watson and two other [*3]  passengers were members of a gang

known as the Knock Out Boys; Searcy and Ewing allegedly belonged to the rival Hustle Boys.

The prosecution framed the shooting as part of an ongoing feud between the Knock Out Boys and the Hustle Boys, and relied on witness testimony identifying Ewing as the shooter. Ewing's defense was that they had the wrong guy—that he was attending a funeral when the shooting happened and that the real shooter was another Hustle Boy, Tyree Washington. Ewing put on alibi witnesses and even a jailhouse informant who testified that Washington had confessed to the shooting—and had bragged about it to other inmates—while Washington and [**3] the informant were in jail on federal carjacking charges. On the second day of deliberations, the jury asked the court to declare that the jury was deadlocked, but the court refused and charged them to press on. On the fourth day of deliberations the jury returned a verdict against Ewing of guilty on all counts, including first-degree murder, which carried a mandatory life sentence.

About two months after the verdict, Kathleen Frances Byrnes (Juror #4) filed an affidavit stating that two fellow jurors had "brought up information that was [*4] not part of the evidence introduced into court." Byrnes swore the following:

> 5. [Juror #13] discussed Facebook look up information during deliberations. [Juror #13] brought up information regarding Mr. Ewing's and Mr. Searcy's past. [Juror #13] said she saw on Facebook a picture of Mr. Ewing and a girl with the caption "Mr. and Mrs. Nasty" and had brought to the juror's attention that she had read an [sic] eulogy online for J.B. Watson.
> 6. [Juror #5] bought up during juror deliberations that she had googled gang information and knew about gang codes and that gang activity involved killing people.
>
> 7. [Juror #5] also said during deliberations that gangs have a pecking order according to information she googled at home. She went on to say that Darrell Ewing was at the top of the pecking order. That would put Tyree Washington at the bottom and the gang decided to sacrifice Tyree Washington by setting him up as the fall guy for the murder. According to [Juror #5], the above information was based on what she had read on line [sic] regarding the history of gangs on the goggle web site [sic].

Based on the Byrnes affidavit, Ewing filed a motion for a new trial on the ground that the jury was tainted [*5] by the extraneous information. Although the motion was styled as one for a new trial, Ewing alternatively requested an evidentiary hearing to elicit testimony from Byrnes and further develop the facts surrounding the allegedly tainted jury deliberations. The State argued in response that, while the affidavit alone did not warrant a new trial, the State would have no objection if the court determined that an adequate showing was made to hold an evidentiary hearing. Despite the State's amenability, the court held that Ewing had not shown that the jury was exposed to extraneous information "that was not already presented to it as evidence in the trial," and denied the motion outright. In other words, the court found that the jury was not [**4] exposed to any extraneous influences because the internet information was duplicative of what the jury had learned from the evidence at trial.

The Michigan Court of Appeals affirmed and held that the extraneous information was duplicative of evidence produced at trial and thus harmless. *See People v. Searcy*, 2013 Mich. App. LEXIS 1474, 2013 WL 4609125, at *9-10 (Mich. Ct. App. Aug. 29, 2013). According to the court, the Facebook picture of Ewing was innocuous and similar to many photos that were shown at trial; Watson's eulogy contained no new, relevant [*6] information and presumably was discussed only in passing; and the information about gang activity and hierarchy was either patently obvious or easily inferred from witness testimony. *See* 2013 Mich. App. LEXIS 1474, [WL] at *9. The court therefore held that Ewing had not shown a real and substantial possibility that the information could have affected the verdict. *See* 2013 Mich. App.

LEXIS 1474, [WL] at *10. The Michigan Supreme Court denied Ewing's petition for leave to appeal. *See People v. Ewing*, 495 Mich. 935, 843 N.W.2d 200 (Mich. 2014).

Having exhausted his state remedies, Ewing filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254. Ewing raised several claims,[1] including that he was denied his constitutional rights to a fair trial and an impartial jury because of the jury's consideration of extraneous facts, as recounted in the Byrnes affidavit. As for relief, Ewing argued that he was "entitled to a new trial or at least a proper hearing to determine the impact of the extraneous influences on the jurors." Over the State's opposition, the district court held that the state court's determination was contrary to clearly established law. The district court concluded that Ewing had "shown that the internet information may have tainted the jury" and that the "effect of the extraneous information on the jury does [*7] not appear to be harmless," but the court reiterated that the actual effect of the extraneous information was unknowable without an evidentiary hearing. Based on these findings, the district court conditionally granted Ewing's petition and ordered the State to afford Ewing a new trial within ninety days or release him.

 [**5] The parties now agree that Ewing was unconstitutionally denied an opportunity to prove that he was actually prejudiced by the use of outside internet research. "When a trial court is presented with evidence that an extrinsic influence has reached the jury which has a reasonable potential for tainting that jury, due process requires that the trial court take steps to determine what the effect of such extraneous information actually was on that jury." *Nevers v. Killinger*, 169 F.3d 352, 373 (6th Cir. 1999), *abrogated on other grounds by Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000); *see also Smith v. Phillips*, 455 U.S. 209, 217-18, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). In other words, "[w]here a colorable claim of extraneous influence has been raised, [an evidentiary hearing] must be held to afford the defendant an opportunity to establish actual bias." *See United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999). These cases apply the Supreme Court's holding in *Remmer v. United States*, 347 U.S. 227, 229-30, 74 S. Ct. 450, 98 L. Ed. 654, 1954-1 C.B. 146 (1954), and the required hearing is often referred to as a *Remmer* hearing.

Here, the Byrnes affidavit states that the jury learned of and discussed [*8] outside information about the defendant, the murder victim, and the activities and internal power-dynamics of gangs. Such information had a clear potential for tainting the jury. The State has accordingly made the reasonable concession on this appeal that it was contrary to established law for the state court to deny Ewing an opportunity to show the actual effect that the information had on the jury.

Ewing has not, however, proven a Sixth Amendment violation of his underlying rights to a fair trial and an impartial jury, because to do that he must demonstrate actual prejudice. *See Lang v. Bobby*, 889 F.3d 803, 811 (6th Cir. 2018). The district court's own findings compel the conclusion that, without a hearing, there is too much that is unknown about the deliberations to hold that Ewing has proven such prejudice. The court found that the Byrnes affidavit is "void of information pertaining to the extent of the discussions regarding the eulogy," and could only "infer" that the contents were discussed at all. Regarding the gang-code information, the court could conclude only that it "may have been discussed in order to break the jury deadlock." As to Juror #5's theory about gang pecking-orders and the Hustle Boys' scapegoating Williams, the court found [*9] that "[t]he details of the information itself and the source of this information are unknown," and that "[w]ithout an

---

[1] In addition to his claim of extraneous influence, Ewing argued that he was denied due process of law when the trial court failed to give a deadlocked jury instruction and that a signed confession by Washington constituted new evidence of innocence that required his release or at least an evidentiary hearing. Because the district court granted relief on Ewing's claim of extraneous influence, it held that Ewing's other two claims were moot.

evidentiary hearing, the specifics of this information, and the [**6] extent of other extraneous information, is unknown." These findings certainly suggest, in the court's words, "that the internet information may have tainted the jury," but by their own terms, they fall short of actual prejudice.

This, of course, is not Ewing's fault. He was denied an opportunity to develop these facts at a *Remmer* hearing. But that does not relieve Ewing of the burden to show actual prejudice once he has been provided an opportunity to do so. When a petitioner shows that extraneous information *may* have tainted the jury, due process requires the opportunity to show that the information *did* taint the jury to his detriment. *See, e.g., Remmer*, 347 U.S. at 229-30. "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith*, 455 U.S. at 217. Thus, where a petitioner has shown a colorable claim of juror bias but has been denied an opportunity to prove actual prejudice, the proper remedy is to remand for a *Remmer* hearing to determine what, if any, actual impact the outside information [*10] had on the jury's verdict. That is the relief the Supreme Court and our court have repeatedly ordered. *See, e.g., Remmer*, 347 U.S. at 230; *Smith*, 455 U.S. at 217-18; *Williams v. Taylor*, 529 U.S. 420, 442, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000); *United States v. Harris*, 881 F.3d 945, 953 (6th Cir. 2018); *United States v. Corrado*, 227 F.3d 528, 536-37 (6th Cir. 2000); *United States v. Herndon*, 156 F.3d 629, 637-38 (6th Cir. 1998). As the Supreme Court ruled in *Remmer* itself:

> The trial court should not decide and take final action ex parte on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.
> We therefore vacate the judgment of the Court of Appeals and remand the case to the District Court with directions to hold a hearing to determine whether the incident complained of was harmful to the petitioner, and if after hearing it is found to have been harmful, to grant a new trial.

*Remmer*, 347 U.S. at 229-30.

Ewing concedes that the Supreme Court "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."[2] In [**7] the face of this substantial caselaw, Ewing points to *Nevers* as his sole support for conditioning release on a new trial rather than a *Remmer* hearing. 169 F.3d 352. Depending on your reading, that case is either an outlier or the exception that proves the rule. In *Nevers* [*11], this court affirmed the district court's unconditional grant of habeas relief without any explanation as to why that relief should not be conditioned on a *Remmer* hearing. That lack of explanation is especially curious in light of the *Nevers* court's express recognition that "[w]hen a trial court is presented with evidence that an extrinsic influence has reached the jury which has a reasonable potential for tainting that jury, due process requires that the trial court take steps to determine what the effect of such extraneous information actually was on that jury." *Id*. at 373. One possible explanation is that the parties may not have litigated the propriety of the remedy because the district court below had vacated Nevers's conviction and ordered his unconditional release based on two constitutional violations, the extrinsic-influence claim and a pre-trial publicity claim that was reversed on appeal. To the extent that the propriety of the remedy was not litigated in *Nevers*, or was overlooked because of the scope of the district court's original grant, that case is uninstructive here.

Perhaps the best explanation for the remedy in *Nevers*, however, is that Nevers did show what Ewing has not—actual [*12] prejudice. In *Nevers*, the Michigan Supreme Court had denied an

---

[2] At one point in his brief Ewing even states that "[t]he case should be reversed or remanded for an evidentiary hearing."

evidentiary hearing but accepted as true the substance of three juror affidavits and conceded that the extraneous information was not duplicative of evidence at trial and had a substantial possibility of affecting the verdict. *See id*. at 373. The state court denied Nevers's claim only after concluding that the evidence of guilt was so overwhelming that the admittedly prejudicial information was harmless. *See id*. On habeas review, this court held that

> under the circumstances, Nevers need point to nothing more than the juror's sworn statement that the [extraneous information] *set the tone* for the jury's deliberations and the Michigan Supreme Court's acknowledgement that this was the kind of material that has a direct and rational connection between it and an adverse verdict *to demonstrate* that the jury's possession of the extraneous information had a substantial and injurious effect or influence in determining the jury's verdict, and *resulted in actual prejudice*.

[**8] *Id*. (internal citations and quotation marks omitted) (emphasis added). That is, Nevers demonstrated actual prejudice, which obviated any need for a *Remmer* hearing. Here, by [*13] contrast, the state court found the information to be duplicative and without the potential to affect the verdict; even crediting the Byrnes affidavit, one is left to guess what, if any, effect the outside information had on deliberations. In fact, not even Byrnes has said that the outside information affected her vote. Read this way, *Nevers* is the exception (where actual prejudice was shown without a hearing) that proves the rule (that the normal remedy for a colorable claim of extraneous influence is for a hearing to show actual prejudice).

Because the only demonstrated constitutional injury is the failure to grant Ewing a *Remmer* hearing, the proper relief was to condition his release on a suitable evidentiary hearing, rather than a new trial.[3] Courts typically have broad discretion in fashioning habeas relief, but the relief granted must be tailored to cure the constitutional injury without unnecessarily infringing on competing interests of comity, federalism, and finality. *See United States v. Morrison*, 449 U.S. 361, 364, 101 S. Ct. 665, 66 L. Ed. 2d 564 (1981); *see also Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987). Consistent with *Morrison*, the appropriate "remedy is the one that as much as possible restores the defendant to the circumstances that would have existed had there been no constitutional error." [*14] *See United States v. Carmichael*, 216 F.3d 224, 227 (2d Cir. 2000). Until Ewing shows actual prejudice, he has shown only a due process violation—for denial of an opportunity to prove prejudice—and not yet a violation of his Sixth Amendment right to an impartial jury. To remedy the constitutional violation, then, is to afford Ewing the opportunity he was denied, but to skip that step and grant a new trial is to cure a constitutional violation that has not been shown to exist.

Short-circuiting the remedial process in this way risks offending principles of federalism and comity that govern federal habeas review of state court convictions. As the Court explained in *Jackson v. Denno*, in the context of a potentially involuntary confession, to impose a trial on the state before the outcome of the constitutionally-required hearing is known "would not [**9] comport with the interests of sound judicial administration and the proper relationship between federal and state courts." 378 U.S. 368, 395, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). The entire habeas regime as it exists today reflects the deference and respect owed to state courts as part of this delicate balance. Federal habeas review "intrudes on state

---

[3] Ewing argues cursorily and without citation that the State has waived its ability to challenge the district court's remedy by conceding that Ewing is entitled to a *Remmer* hearing after opposing any relief below. The State's admirable concession regarding the need for a *Remmer* hearing hardly amounts to a waiver of its argument regarding the proper remedy in this case. Ruling otherwise in this context would deter reasonable concessions.

sovereignty to a degree matched by few exercises of federal judicial authority." See *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (quoting *Harris v. Reed*, 489 U.S. 255, 282, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989) (Kennedy, J., [*15] dissenting)). To condition Ewing's release on a new trial, without first allowing the State to conduct a *Remmer* hearing, intrudes on that sovereignty more severely than is necessary or appropriate. Thus, it was an abuse of discretion to do so.

We are mindful that the passing of time since Ewing's conviction eight years ago may make it difficult to conduct a suitable *Remmer* hearing at this stage. Jurors move and memories fade. But that has not stopped the Supreme Court from remanding for a *Remmer* hearing years after an initial conviction. *See, e.g., Williams v. Taylor*, 529 U.S. 420, 442, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000) (six-year delay). Indeed, Ewing does not argue that an evidentiary hearing would be futile at this point; just the opposite, he requested a hearing as alternative relief. In any event, the Michigan courts are well equipped to provide appropriate relief should the passage of time prevent the court from affording Ewing a constitutionally-meaningful *Remmer* hearing, and Ewing is free to seek habeas relief if he finds the State's process constitutionally inadequate.[4]

---

[4] At oral argument, counsel for the State agreed that to the extent juror testimony has become unavailable, a burden or presumption "might well" be placed against the State:

Q: Do you know if those jurors are alive?

A: I don't know your honor, I don't know, and if they're not, I mean these are things the court can take into account, and can say you know [*16] we've tried to have a hearing, we couldn't get these jurors here because they're missing or they're dead and we can make inferences and we can hold that against the State perhaps and we can say, you know...

Q: That's the question, suppose hypothetically that these jurors are inaccessible, either dead or can't be found, so against whom would any burden or presumption be placed? You just said it would be placed against the Government, the State.

A: I think it would depend and I think it might well be placed against the State.

[**10] For these reasons, we reverse and remand to the district court with instructions to issue an amended order conditionally granting habeas relief unless the State takes steps to conduct a proper evidentiary hearing on Ewing's claim of juror misconduct within a reasonable period set by the district court's order. We leave it for the district court to determine [*17] whether the two additional claims presented in Ewing's petition should be resolved before ordering relief on this claim. *See supra* note 1.

**Dissent by:** KAREN NELSON MOORE

**Dissent**

[**11] **DISSENT**

KAREN NELSON MOORE, Circuit Judge, dissenting. This is a case about a district court's discretion to fashion an equitable remedy. The facts are not complicated: Michigan violated Ewing's due process rights when it denied him a *Remmer* hearing. As to this all agree. The only question that remains is whether the district court's chosen remedy—a new trial—was proper. The standard of review is abuse of discretion.[1] The district court's

---

Q: What would it depend on?

A: I think it might depend on whose fault it is. I think unfortunately the fault lies mainly with the Wayne Circuit Court because in the Wayne Circuit Court, both parties agreed let's have a hearing, it's fresh, let's do it now, and the Wayne Circuit Court said we don't need a hearing . . . ."

[1] We have not held until today that the standard of review for habeas remedies is abuse of discretion, but other circuits have suggested as much. *See, e.g., Paxton v. Ward*, 199 F.3d 1197, 1202 (10th Cir. 1999) ("Finally, we hold that the district court did *not abuse its discretion* in remanding the matter to state court for further sentencing proceedings." (emphasis added)). In addition, the standard of review for equitable remedies is generally abuse of discretion. *See, e.g., eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006) ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion."); *Oakley v. City of Memphis*, 566 F. App'x 425, 429 (6th Cir. 2014) (stating that "[b]ackpay is an equitable remedy" and "[w]e

chosen remedy was within its discretion, and so I respectfully dissent.

A defendant who musters evidence that "an extrinsic influence has reached the jury which has a reasonable potential for tainting that jury" is owed an opportunity to prove the effect of that extrinsic influence on the jury—namely, an evidentiary hearing (also called a "*Remmer* hearing"). *Nevers v. Killinger*, 169 F.3d 352, 373 (6th Cir. 1999), *abrogated on other grounds by Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000). Ewing was denied such a hearing in state court, despite having presented an affidavit showing extrinsic influence on the jury, and the district court found that [*18] this violated Ewing's constitutional rights. *Ewing v. Horton*, No. 2:15-CV-10523, 2017 U.S. Dist. LEXIS 191023, 2017 WL 5564603, at *3 (E.D. Mich. Nov. 20, 2017). The State now concedes this violation. Appellant Br. at 11. Having found a violation of a right, the district court then fashioned a remedy: a new trial.

Guidance on habeas remedies is minimal; the law leaves much to the district court's discretion. Courts must "dispose of the matter as law and justice require." 28 U.S.C. § 2243. And, as is always the case when reviewing state-court decisions, courts must "respect the proper relationship between federal and state courts." *Jackson v. Denno*, 378 U.S. 368, 395, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964).

[**12] In this case, the district court decided that what law and justice required was a new trial. This is not beyond the pale, nor is it an unnecessary intrusion on state sovereignty. Due process requires a "sound[]" and "adequate" hearing, *id*. at 394, 395, and it is entirely appropriate for the district court to have concluded that an evidentiary hearing on highly fact-specific issues conducted seven years later would have been neither sound nor adequate—assuming the necessary parties were available at all. *Cf. Smith v. Phillips*, 455 U.S. 209, 243, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982) ("[D]eference to state-court factfinding is not required where the evidentiary hearing on which the factfinding is based is inherently unreliable." (Marshall, [*19] J., dissenting)). I fail to see how it is respectful of the state court to order it to conduct an inadequate hearing.

The majority points to *Williams v. Taylor* as evidence that a *Remmer* hearing conducted years after the violation is sound and what is required by principles of federalism. 529 U.S. 420, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000); Maj. Op. at 9. But *Williams* is less helpful than the majority suggests.

First, in *Williams* the district court denied the petitioner an evidentiary hearing. Thus, unlike the situation in which we find ourselves, the Supreme Court was not reviewing a chosen remedy. *Williams*, 529 U.S. at 427-29.

Next, the issue in *Williams* involved one juror's failure fully to answer voir dire questions going to bias and a prosecutor's failure to reveal his knowledge of the juror's bias. *Id*. at 427. Thus the evidentiary hearing required the calling of a few witnesses only: the juror and the prosecutor. In contrast, here, to prove prejudice, a substantial portion or likely all of the jurors may need to be called. In addition, the facts at issue in the evidentiary hearing in *Williams* were of a different sort than those at issue here. In *Williams*, a juror did not respond in the affirmative when asked whether she was related to the Deputy Sheriff, who was identified [*20] by name as a potential trial witness. *Id*. at 440. But in fact the juror had once been married to the Deputy Sheriff. *Id*. at 441. In addition, that juror failed to reveal at voir dire that one of the prosecutors had been her divorce attorney, despite having been asked whether any of the named prosecutors—including her former divorce attorney—had represented her. *Id*. at 440-41. The prosecutor of course knew of the juror's marriage to the Deputy Sheriff, just as he of course knew that he had represented the juror, although he

---

review a district court's decision to award backpay . . . for abuse of discretion"). Finally, the State concedes that the proper standard of review is abuse of discretion. Appellant Reply Br. at 4.

claimed otherwise. *Id*.

[**13] The evidentiary hearing in *Williams* revealed the length of the juror's marriage to the Deputy Sherriff, that they shared children, and and that they had an ongoing relationship in the form of child-support payments. *Williams v. Netherland*, 181 F. Supp. 2d 604, 608-09 (E.D. Va. 2002). It revealed also that the prosecutor drew up the juror's divorce papers and that his name was on the deed to her house as an attorney. *Id*. at 609. The *Williams* evidentiary hearing dealt primarily in factual, historical information, and in most instances this information would have been recorded on paper. That the hearing would have been so delimited was apparent from the issues.

Here, however, the evidentiary hearing will require exploration of the effects of extrinsic [*21] influence on the jury, including jurors' knowledge of certain pieces of information, the effects of the extrinsic influence on the jurors, and the relative weight they gave to proper and improper matters during deliberations. This is exactly the sort of information that is likely to be lost to time. Therefore, the fact that a hearing was granted in *Williams* despite a six-year gap does not mean the district court was wrong to conclude that, in this case, a hearing seven years later would have been an ineffective remedy.

Undeterred, the majority argues that ordering a new trial would be to "cure a constitutional violation that has not been shown to exist" and is "more severe[] than is necessary or appropriate." Maj. Op. at 8-9. In essence, the majority seems to believe that a remedy must mirror exactly the violation—a new evidentiary hearing if an evidentiary hearing was denied; a new trial if a fair trial was denied. For support, the majority points to a series of cases in which an evidentiary hearing was ordered to remedy the denial thereof, starting with *Remmer* itself. Maj. Op. at 6.

At least as to *Remmer*, the majority is mistaken. Granted, in *Remmer* the Supreme Court held initially [*22] that the defendant was owed an evidentiary hearing to determine whether his jury was prejudiced by extrinsic information and remanded the case to the trial court for such a hearing. *Remmer v. United States*, 347 U.S. 227, 230, 74 S. Ct. 450, 98 L. Ed. 654, 1954-1 C.B. 146 (1954). Of course, unlike this case, the trial court in *Remmer* did not know of its obligation to conduct a *Remmer* hearing. In addition, the remand order was issued less than two and a half years after the underlying trial. *See United States v. Remmer*, 122 F. Supp. 673, 674 (D. Nev. 1954). Most importantly, the fact that a [**14] hearing was the initial remedy chosen does not mean that the *only* appropriate remedy for a denied hearing or defective hearing is remand for a new hearing—*Remmer*'s subsequent history shows that other remedies are available.

In *Remmer*, after the Supreme Court's initial remand, the trial court conducted a limited hearing using an "unduly restrictive interpretation" of the Court's order. *Remmer v. United States*, 350 U.S. 377, 382, 76 S. Ct. 425, 100 L. Ed. 435, 1956-1 C.B. 641 (1956). Another appeal to the Supreme Court followed. Rather than remand for the more fulsome evidentiary hearing its mandate required, the Supreme Court used what facts were available and determined that the extrinsic influence "*may have* influenced and disturbed" the juror at issue and ordered a new trial. *Id*. (emphasis added). The Supreme Court's conclusion in the second iteration [*23] of *Remmer* perfectly demonstrates the discretion inherent in remedy crafting. The Supreme Court could have remanded for another evidentiary hearing, and, under the majority's view, ought to have. Instead given the circumstances, it found a new trial was appropriate. Here too, the district court could have remanded for an evidentiary hearing, but instead exercised its discretion to order a new trial.

Granted, unlike *Remmer*, here considerations of federalism weigh against a broader remedy. But federalism is not a trump card, and in some circumstances other considerations predominate. A district "court has broad discretion in conditioning a

judgment granting habeas relief." *Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987); *Van Tran v. Colson*, 764 F.3d 594, 619 (6th Cir. 2014). Habeas corpus is ultimately an equitable remedy. *Schlup v. Delo*, 513 U.S. 298, 319, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). The district court, guided by considerations of law and justice as well as federalism, crafted what it thought an appropriate remedy. In these circumstances a new trial was a reasonable balancing of the petitioner's rights and the State's interests. Therefore I respectfully dissent.

---

**End of Document**