1      UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF MICHIGAN
2       SOUTHERN DIVISION

3

4 **UNITED STATES OF AMERICA,**

5      Government,

             **HONORABLE GEORGE CARAM STEEH**

6   v.

             **No. 15-20652**

7 **D-3 EUGENE FISHER,**
 **D-4 COREY BAILEY,**
8 **D-6 ROBERT BROWN, II**
 **D-10 DEVON PATTERSON,**
9 **D-13 ARLANDIS SHY,**
 **D-16 JAMES ROBINSON,**
10 **D-19 KEITHON PORTER,**

11      Defendants.
 _____/

12

       **PRETRIAL CONFERENCE**

13

      **Tuesday, May 22, 2018**

14

         - - -

15

 APPEARANCES:

16

 For the Government:     CHRISTOPHER GRAVELINE, ESQ.

17           JULIE FINOCCHIARO, ESQ.
            JUSTIN WECHSLER, ESQ.
18           Assistant U.S. Attorney

19

 For the Defendants:     HENRY M. SCHARG, ESQ.

20           On behalf of Eugene Fisher

21           CRAIG A. DALY, ESQ.
            KEITH A. SPIELFOGEL, ESQ.
22           On behalf of Corey Bailey

23           JAMES L. FEINBERG, ESQ.
            On behalf of Robert Brown

24

           MARK H. MAGIDSON, ESQ.
25           JOHN T. THEIS, ESQ.
           On behalf of Arlandis Shy

1

WILLIAM W. SWOR, ESQ.
2                      On behalf of James Robinson

3                      STEVEN E. SCHARG, ESQ.
                     On behalf of Keithon Porter

4

5                  -   -   -

6

7        *To Obtain Certified Transcript, Contact:*
     *Ronald A. DiBartolomeo, Official Court Reporter*
8       *Theodore Levin United States Courthouse*
    *231 West Lafayette Boulevard, Room 1067*
9           *Detroit, Michigan  48226*
           *(313) 962-1234*

10      *Proceedings recorded by mechanical stenography.*
   *Transcript produced by computer-aided transcription.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **I N D E X**

2                                                                    Page

3    Status conference                                                 4

4

5

6

7

8

9

10

11

12

13

14

15                      **E X H I B I T S**

16   Identification                              Offered    Received

17

18                      N        O        N        E

19

20

21

22

23

24

25

                    *15-20652; USA v. EUGENE FISHER, ET AL*

```
 1                              Detroit, Michigan
 2                              Tuesday, May 22, 2019
 3
 4                         -    -    -
 5              THE CLERK:  Case Number 15-20652, Defendant
 6     Number 6, United States of America versus Robert Brown.
 7              MR. FEINBERG:  James L. Feinberg, attorney
 8     for Mr. Brown.
 9              MR. SPIELFOGEL:  Keith Spielfogel and Craig
10     Daly on behalf of Corey Bailey.
11              THE COURT:  Welcome.
12              MR. SWOR:  William Swor on behalf of James
13     Robinson.
14              MR. MAGIDSON:  Mark Magidson and John Theis
15     on behalf of Arlandis Shy.
16              MR. JOHNSON:  Bertram Johnson on behalf of
17     Devon Patterson.
18              MR. S. SCHARG:  Steven Scharg on behalf of
19     Keithon Porter.
20              MR. H. SCHARG:  Henry Scharg on behalf Eugene
21     Fisher.
22              THE COURT:  Okay.  Welcome.
23              MR. GRAVELINE:  Chris Graveline, Justin
24     Wechsler and Julie Finocchiaro on behalf of the United
25     States.
```

```
 1            THE COURT:  All right.  Welcome.

 2            All right.  The record should indicate that I had

 3       a brief conference with counsel for all the parties in

 4       chambers before coming out today.

 5            The Court has had an opportunity to consider the

 6       requests made by Mr. Swor on behalf of Mr. Robinson to

 7       sever from this group of defendants, and the Court will

 8       grant that request, and enter an order severing Mr.

 9       Robinson from this next upcoming trial.  We'll put him off

10       to a later date.

11            The Court also indicated that -- that the

12       reduction in number of defendants in this upcoming trial

13       needed to be reduced in order to make it possible from a

14       facility standpoint and a security standpoint to conduct

15       the next trial --

16            MR. SWOR:  Your Honor?

17            THE COURT:  -- especially with the additional

18       attorneys that the Court has having to participate.

19            Mr. Swor?

20            MR. SWOR:  I'm sorry.  Could we ask the Court

21       for its continued assistance in trying to get Mr. Robinson

22       back to Milan?

23            THE COURT:  Yeah.  If we can get that

24       arranged.  Part of the reason for the Court granting this

25       motion is because Mr. Robinson has been separated from the
```

1    discovery for a period of several weeks, if not months,

2    and -- and the Court concluded that it would be unfair

3    under those circumstances to bring him to trial.  So we

4    have to get him somehow together with the discovery

5    material, and apparently there is a limit on the number of

6    pages that can be given to an inmate at Sanilac, is that

7    right?

8                    **MR. SWOR:**  That's one of the issues.

9                    **THE COURT:**  And so if it's possible to get

10   him back to Milan, that would be great.

11                   **THE MARSHAL:**  We will do our very best.

12                   **MR. SWOR:**  Thank you.

13                   **THE COURT:**  All right.  So Mr. Swor, you're

14   welcomed to get off to your next appointment.

15                   **MR. SWOR:**  Thank you.

16                   **THE COURT:**  As it relates to the remaining

17   defendants in this group, the Court was asked by the

18   government to consider an adjournment of the trial based

19   upon some changes of circumstances for Mr. Graveline, who

20   is leaving the U.S. Attorney's Office in two weeks.  That

21   request was not with objections by all of the defense

22   counsel who reacted to the request, and the Court observed

23   that we have 159 jurors who have spent hours going through

24   a questionnaire, have tight schedules, along with the

25   attorneys and everybody in the process, and given how

*15-20652; USA v. EUGENE FISHER, ET AL*

1    close we are to the trial date, the Court indicated that I

2    would not be able to grant a request for an adjournment,

3    and what we can do is to consider for opening

4    statements -- a break as we did in the first trial

5    following jury selection.  We had a couple of days off for

6    the attorneys to get up to speed on their presentations,

7    and we can consider doing something like that, but we will

8    start our jury selection on the 5th as planned.

9          Okay.  Now we discussed the jury questionnaires

10   briefly in our conference, and I believe there was an

11   agreement, although one of the defense counsel asked for

12   the opportunity to have a couple of more days before

13   furnishing their proposed jurors to strike.  Who was that?

14          **MR. H. SCHARG:**  I made the suggestion, but

15   whether that was a deadline by the Court or by jury

16   commission, we understand that the jury commission needs

17   that time to notify the jurors that are going to be

18   excused.

19          So we agreed that the deadline will be Tuesday,

20   May 29th at end of the business day, and sometime before

21   the end of business day on the 29th, we will get together

22   with the government, agree to the consensus of those that

23   we agree to strike, and the rest of the witnesses will be

24   called.

25          **THE COURT:**  All right.  Thank you,

*15-20652; USA v. EUGENE FISHER, ET AL*

1    Mr. Scharg.

2          We have to discuss how many jurors we're going to

3    select.  In the first trial we started with 16 I believe,

4    and we didn't have anybody -- we didn't lose anybody until

5    the end of the trial.  Anybody have a request in terms of

6    the number of jurors to seat?

7          **MR. GRAVELINE:**  Based on the length of the

8    trial, 16 is a safe number.

9          **THE COURT:**  Anybody oppose that?  We'll make

10    it 16 then, and we will have six for the government plus

11    two, and for defense counsel 10 plus two, and the

12    attorneys all worked on a consensus basis during jury

13    selection, which is what I am anticipating you will do

14    here as well.

15          The first -- in the last trial, the Court elicit

16    an agreement from counsel to excuse the extra jurors who

17    are remaining at the conclusion of the trial at a

18    random -- on a random basis rather than directing the

19    alternates from Seats 13 through 16.

20          Is everybody in agreement to excuse the remaining

21    jurors randomly as we did last trial?  Anybody object?

22          **MR. GRAVELINE:**  No objection from the

23    government.

24          **MR. FEINBERG:**  No objection.  The only thing

25    that I would request, your Honor, instead of 10 plus two

*15-20652; USA v. EUGENE FISHER, ET AL*

```
1    preempts -- there will be six defendants -- I will ask
2    that there be 12 plus two, so that there will be an equal
3    amount per defendant.
4             THE COURT:  Well, if you're working,
5    collaboratively, it doesn't seem quite so necessary to
6    have -- it doesn't seem quite so necessary if you're
7    working collaboratively to excuse the jurors, but if the
8    defendants are going to have 14 total, would the
9    government be asking for more than the --
10            MR. GRAVELINE:  We probably would ask for one
11   so that will bring the number to 25 plus 16.  So we would
12   be qualifying 41 jurors.
13            THE COURT:  Twenty-five plus --
14            MR. GRAVELINE:  Sixteen, the actual people in
15   the box.  That's the total number that we would need out
16   of the 159.  We would need 41 people who we would pass for
17   cause.
18            THE COURT:  Right.  So in terms of the number
19   of peremptories that you will be asking for --
20            MR. GRAVELINE:  We would want nine if they
21   have 14 as oppose to 12 and eight.
22            THE COURT:  Right.
23            MR. FEINBERG:  My only comment on the
24   collaborative is that that shouldn't be in front of the
25   jury.  The jury shouldn't be thinking that if we are all
```

*15-20652; USA v. EUGENE FISHER, ET AL*

1    sitting down in their presence, that we're talking about

2    jurors, that we must therefore all be part of the same

3    allegation of the conspiracy.  So if the jury can be

4    excused while we're talking about the excusal, or if we

5    are able to leave the courtroom and go into the attorney

6    room, that would be my preference.  Certainly not in front

7    of the jury.

8              **THE COURT:**  Okay.  I don't think that was

9    ever an issue in the first trial.  In the first trial, the

10   lawyers huddled quite often, and I could give a curvative

11   instruction that tells them that we're asking counsel to

12   cooperate with one another to get the information out and

13   present it, and -- I mean, it's -- I'm suggesting by

14   collaborating, you're going to make the trial much more

15   efficient, and I certainly don't see the risk that they

16   would have an adverse consequence as you're talking to

17   each over.  There's going to be as many huddles with the

18   government and a defense lawyer or two occurring during

19   the course of the trial as there would be for the lawyers

20   to talk to each other.

21             **MR. FEINBERG:**  That's different though to

22   allege that the defense attorneys and the government are

23   collaborating with themselves.

24             **THE COURT:**  Well, you will be surprised.

25   Okay.  We can try to do it in a way that doesn't offend

*15-20652; USA v. EUGENE FISHER, ET AL*

1   your sensibility, Mr. Feinberg.

2          **MR. FEINBERG:**  Thank you.

3          **THE COURT:**  So the -- so the number of jurors

4   then will be 14 for defense counsel total and nine for the

5   government.

6          The trial schedule will be from nine to 1:00

7   daily, perhaps as long as 1:30 for planning purposes, but

8   close to one as possible.

9          I'll expect the lawyers to be here at least 15

10  minutes early before 9:00, so that if there are issues to

11  address, we can address those issues without having the

12  jurors sit around waiting for us to get ready.

13         We're going be conducting the trial in Judge

14  Tarnow's courtroom on the first floor.  We'll need to

15  figure out the set up and the technology available there.

16  It is somewhat different from what I've enjoyed in my

17  courtroom.  My courtroom is under construction.  So we

18  will use Judge Tarnow's space since he's gone for June and

19  July.

20         So that applies to the trial process, but not the

21  jury selection process.  So jury selection is going to be

22  from nine to five until we get a jury established.

23         We're going to have a semi-anonymous jury, so that

24  the only information about them that will be communicated

25  in the course of the selection process and the

*15-20652; USA v. EUGENE FISHER, ET AL*

1  instructions and alike will be referenced by their juror

2  number.

3       In the first trial the attorneys on both sides

4  agreed on a preliminary instruction which read:

5       The Court and all counsel, in recognition of

6  privacy concerns, will not ask for your names or

7  addresses.  We'll simply refer to you by your juror

8  number, and that was a -- there were a couple of other

9  options out there in case law that sounded more like

10  making up a story for the jurors rather than telling them

11  that they are going to be referred to by their juror

12  number out of privacy concerns.

13       So is there anybody that would object to that

14  approach in the inclusion of that in the preliminary

15  instructions?  Anybody on the defense side object?

16  Hearing none -- what about on the government side?

17            **MR. GRAVELINE:**  No objection, your Honor.

18            **THE COURT:**  That will be incorporated in the

19  preliminary instructions.

20       We need to get a short statement of the case to be

21  read at the outset of the voir dire.  We need to -- you

22  know, the suggested instructions would have the Court

23  defining the charges and the elements that are comprised

24  by each charge, and that was pretty easy in the first case

25  because there were only two counts that were involved for

*15-20652; USA v. EUGENE FISHER, ET AL*

1    all four of the defendants in that case.  This includes a

2    lot more charges, a lot more counts.  We have a couple of

3    defendants with 14 counts, others with 11, and so I'm

4    interested to know how much or how little should be given

5    to them by way of the Court's introduction of the case for

6    them.

7         Does anybody have a thought?  And a corollary to

8    that question is whether or not anybody in the case wants

9    to have the Court read the indictment to the -- as a part

10   of the case?  Again, in the first case, defense counsel

11   and the government -- and the government agreed not to

12   read the indictment to the jury.

13        Mr. Graveline?

14        **MR. GRAVELINE:**  It would be the government's

15   preference not to read the indictment.  I don't think that

16   serves a lot of useful purposes in the beginning, but what

17   I would suggest, we can draft up a summary of the charges,

18   and present it to the defense and the Court, and see where

19   people stand after that.

20        It will be lengthier than what we did last time.

21   It was a paragraph.  This one will be probably two or

22   three paragraphs, but let us take a crack at it.  If we

23   can get something that people can agree on, that's great.

24   If not, maybe less is more.

25        **THE COURT:**  Okay.  All right.

*15-20652; USA v. EUGENE FISHER, ET AL*

1              **MR. THEIS:**  If we can get that, and then if

2     we have anything to add to, we will present it to the

3     government.  I think by the time we start, we will either

4     be in agreement or close to it.

5              **MR. SPIELFOGEL:**  Your Honor, I think it would

6     be our preference that the government -- that the

7     statement that you read list the elements as you had just

8     suggested of each one of the charges.  That would be my

9     preference, and it might be an easier way of doing it.

10             Certainly, we don't want the whole indictment read

11    because there are a lot of things in the indictment that

12    are going to kinda of fall by the wayside during the

13    course of the trial.

14             So that would be our preference on behalf of

15    Mr. Bailey, that the elements be told to the jury.

16             **THE COURT:**  All right.  Anyone else have a

17    thought?

18             **MR. S. SCHARG:**  I would agree.

19             **MR. H. SCHARG:**  I would agree.

20             **MR. MAGIDSON:**  I would agree with that

21    analysis.

22             **MR. FEINBERG:**  I would agree.

23             **MR. JOHNSON:**  No objection on behalf of Mr.

24    Patterson.

25             **THE COURT:**  All right.  So that might affect

*15-20652; USA v. EUGENE FISHER, ET AL*

1      at least the format of what you're going to try to put

2      together?

3                    MR. GRAVELINE:   The issue that we came up

4      with last time was there was some argument about what the

5      elements were in terms of jury instructions toward the end

6      of that trial, and so drafting elements at the beginning

7      of the trial until we set up on jury instruction, be could

8      be problematic.   And so to do it elementary, I think could

9      be problematic right now.

10               And so that's what we were just discussing here.

11     Even in that initial reading from the last time, I think

12     we changed some elements by the time we got to the jury

13     instructions, and maybe we need to have pretrial

14     litigation about that first and get set on it, but I mean,

15     that was something that we were contemplating here.

16               So if the summary is going to include the

17     elements, then I think there's going to be some litigation

18     pretrial on that.

19                    MR. SPIELFOGEL:   Your Honor, that's the exact

20     reason why we should do the elements pretrial, so that we

21     know what the elements are going into the trial, so we can

22     make certain statements to the jury in opening as to what

23     has to be proved, and if there are issues on the elements,

24     I would ask that we litigate those before we begin

25     certainly opening statements, and now I'm saying before we

                 *15-20652; USA v. EUGENE FISHER, ET AL*

1    question the jurors, so when this is read to them, we are

2    in agreement on what the elements are.

3         We're going to have to do it eventually, so let's

4    do it before the trial begins.

5         **THE COURT:**  All right.  Well again, Mr.

6    Graveline has volunteered to try to write up what he has

7    in mind, and you are welcome to submit your own versions

8    of preliminary instructions, and this will fall within

9    that period that's going to be dead time, whether it's a

10   couple of days, day and a half or whatever period is

11   between the conclusion of the jury selection process and

12   the giving of the preliminary instructions.  So we'll have

13   some time to work that out.  I think both sides made some

14   good observations about if we do it by way of summarizing

15   the elements out, we have to be careful to do it right.

16        We're going to need a witness list to read to the

17   jury, and we're going to have a lot of witnesses.  I

18   understand from talking with counsel that the witness list

19   is now 170?

20        **MR. GRAVELINE:**  Yes.  We did email counsel

21   last week and asked about stipulations as to the chemists

22   for the drugs that were seized, and all counsel responded

23   that they could agree to those stipulations.  I think that

24   takes out about 12 to 14 of those witnesses.  So I think

25   we're probably down to about 155 witnesses.

*15-20652; USA v. EUGENE FISHER, ET AL*

1          **THE COURT:**  That's almost a third more than

2     the number of witnesses in the first case, and most of the

3     witnesses called in the first case were not cross-examined

4     by defense counsel.  So hopefully it won't add much to the

5     length of the case as it looks like it might.

6          Mr. Scharg?

7          **MR. H. SCHARG:**  First of all, I don't think

8     if Mr. Graveline produces those same witnesses from the

9     first trial, we probably won't cross examine those

10    witnesses either, but that's not the problem.

11         First of all, in terms of the getting together

12    with the -- striking the prospective jurors after these

13    questionnaires, motion to strike, after we agree to those

14    jurors that there is a consensus that they should be

15    stricken for cause, there's going to be a grouping,

16    hopefully less rather than more, of jurors that we can't

17    agree upon that should be stricken.

18         Do we get together -- should the Court set a

19    separate pretrial conference to go over that list, or wait

20    so that we can call those jurors off before trial?

21         **THE COURT:**  Well, if you're able -- whenever

22    you've reach an agreement --

23         **MR. S. SCHARG:**  Which will be by the end of

24    the business day on 29th.

25         **THE COURT:**  Right.


*15-20652; USA v. EUGENE FISHER, ET AL*

1          **MR. H. SCHARG:**  We're going to have three

2     lists, a list of those that we agree to strike, a list of

3     those that we cannot agree to strike, and a list of those

4     who we believe should be in that panel.

5              So for the first part, which is those that we

6     agree to strike, the Court through the jury commission

7     will be able to notify those people not to show up.

8              **THE COURT:**  Right.

9          **MR. H. SCHARG:**  But then the second grouping

10     of the jurors that we cannot agree about, should we --

11     between the 29th and the 5th, should we --

12              **THE COURT:**  As much as you can agree on,

13     whenever you agree on it is fine, but I would expect you

14     to continue your efforts to resolve differences.

15     Approaching the questioning of those people as a separate

16     matter during the selection process, I don't think would

17     be particularly useful.  They are going to be a part of

18     the larger group, and we'll just deal with them as they

19     come.

20          **MR. H. SCHARG:**  Well, what I was hoping was

21     that the second grouping, the ones that we cannot agree

22     that should be excused, if we could have a separate

23     hearing with the Court as to that pool, and the Court can

24     make some preliminary decision as to who should be excused

25     for cause so they won't have to come in.

1       **THE COURT:** If that's possible. I think the

2  problem with it is that you almost can't do it without

3  asking the individualized questions that you would ask of

4  people if one side believes it's not clear enough.

5       The way we're going to do the selection process is

6  we've got 159. We've got a lot of people to deal with,

7  and we're going to deal with roughly half of them on the

8  day that we start jury selection, and then hopefully we

9  get through those people in the day, and the next day we

10  bring in the other half, and then we somehow combine them

11  all.

12       **MR. H. SCHARG:** It's my understanding we're

13  down to 158. One is going to be excused.

14       Second of all, we were in court a couple of weeks

15  ago regarding some pretrial publicity, and at that time

16  defense counsel raised their concerns regarding a series

17  of articles that were in the Detroit News, and at that

18  time the Court suggested that we may have individual voir

19  dire.

20       **THE COURT:** Right.

21       **MR. H. SCHARG:** Well, then we have received

22  an email from ma'am docket manager, who indicated that

23  something of a reversal of the Court's preliminary

24  decision. Is it now the Court's position that we will not

25  have individual voir dire?

*15-20652; USA v. EUGENE FISHER, ET AL*

1          **THE COURT:**  Well, we're going to see.  Right

2     now it doesn't look like it will be needed because almost

3     nobody among the prospective jurors remembers reading

4     anything about the case.

5          **MR. H. SCHARG:**  So was your decision based

6     upon the questionnaire?

7          **THE COURT:**  Yes, it was based on the review

8     of the questionnaires which demonstrate that --

9          **MR. H. SCHARG:**  Okay.  Got it.  One more

10    point of clarification.  It is my understanding that

11    because of the changing of the guard of the prosecution,

12    the Court is not going to adjourn the trial date, and

13    we're going to commence jury selection on the 5th of June

14    but the Court is incline to give the government some time

15    between --

16         **THE COURT:**  Not just the government, you as

17    well.  I'm talking about no more than a couple of days.

18         **MR. H. SCHARG:**  Very good.  Thank you.

19         **THE COURT:**  All right.  Okay.

20         **MR. FEINBERG:**  Is the Court going to address

21    when it will be off?

22         **THE COURT:**  Yes.  So the general trial

23    schedule is going to hold from Monday through Friday, and

24    we're going to take the week of July 4th off, which is

25    Monday the 2nd through Friday the 6th, and we're going to

                *15-20652; USA v. EUGENE FISHER, ET AL*

1    take off the 6th of August to the 10th of August.   That

2    will also be explained to the jury, of course.

3              All right.   What else do we need to cover?

4              **MR. GRAVELINE:**   I think that's it from the

5    government, your Honor.

6              **THE COURT:**   We have a couple of motions in

7    limine that we might want to address.   One is Mr. Bailey's

8    motion to preclude the recall of government witnesses,

9    meaning Agent Ruiz, and I've had the opportunity to review

10   it.   Has there been an answer to that motion?

11             **MR. GRAVELINE:**   I don't believe there was a

12   reply to the motion.   We responded, but there was no

13   reply.

14             **THE COURT:**   So essentially, this I'm sure

15   arose out of observations from the first trial.   The --

16   you want to make sure if this is done, that it doesn't

17   lead to unnecessary duplication, and indeed, it was, I

18   thought, a very big success in the first trial.   It helped

19   to allow the government and defense counsel both the

20   opportunity to weigh in.   I mean, for every question

21   asked, there were -- there was considerable examination.

22   I didn't think that any of the evils identified in the

23   motion of getting too friendly, or providing too much

24   emphasis was -- didn't seem to be a problem at all and,

25   indeed, it made it easier to follow the evidence that was

*15-20652; USA v. EUGENE FISHER, ET AL*

1    coming in.  I saw absolutely no suggestion that there was

2    undue influence given to the agent's testimony because he

3    made multiple appearances on the witness stand.

4          So I'm going to deny.  Obviously -- I'm going to

5    deny the motion, but if there appears to be-- if it's

6    being abused in some manner, if there's too much

7    repetition, or one of the other problems is manifest as

8    argued might be the case among defense counsel, I'll be

9    glad to reconsider.  That's the beauty of a motion in

10   limine.  Nothing is ever final.

11         But I didn't see it abused in the first trial.  I

12   thought it helped actually to break up the testimony, and

13   so I'll plan to allow that as long as it is handled within

14   reason.

15         There is a -- there is another motion in limine

16   that breaks down into 11 different issues.  I don't think

17   that we have a response from the government.

18         **MR. GRAVELINE:**  We don't because it's going

19   to take awhile to respond to that particular motion

20   because it is 11 different aspects.  We have been working

21   on that response, and hope to have something to the Court

22   by the end of the week.

23         **THE COURT:**  Okay.  Okay.  I don't have

24   anything else that needs to be addressed.

25         How about defense counsel?

*15-20652; USA v. EUGENE FISHER, ET AL*

1          **MR. MAGIDSON:**  We talked about the government

2     disclosing co-conspirator's statements prior to the

3     time --

4          **THE COURT:**  Oh, yes.  That also, in

5     conformance with the order the Court entered in the first

6     trial, the government will -- if offering any 801(d)(2)

7     evidence, will be obliged -- was it the day before?

8          **MR. GRAVELINE:**  I believe the Court's order

9     said for to us give notice the day before, and then if

10    there is any objection, be prepare to argue before the

11    trial date, the next day.

12         **THE COURT:**  Right.  And I don't recall more

13    than one or two arguments that took place.

14         **MR. GRAVELINE:**  I think by and large we were

15    able to resolve a whole bunch of issues before trial.

16         **THE COURT:**  Right.  So they'll have the same

17    obligation to disclose witnesses offering co-conspirator

18    testimony that will be given to you the day before the

19    intended use, and then if there's a problem, you'll have

20    15 minutes before jury is brought out to deal with it.

21         Anything else?

22         **MR. S. SCHARG:**  Two discovery issues.

23         **THE COURT:**  Okay.

24         **MR. S. SCHARG:**  Reviewing the trial

25    transcripts from Group 1, there was reference to the

*15-20652; USA v. EUGENE FISHER, ET AL*

1    cooperation agreements of cooperating witnesses, plea

2    agreements of the cooperating witnesses, Rule 11's.  It is

3    my understanding after conferring with counsel -- defense

4    counsel from the first trial, that that material was

5    not -- which is Jencks material -- was not provided to the

6    defense counsel in terms of pretrial discovery or Jencks

7    material discovery, but those documents were provided on

8    the day that the witnesses were scheduled to testify, and

9    then the materials were gathered up at end of the day --

10          **THE COURT:**  Right.

11          **MR. S. SCHARG:**  -- which I think is unique to

12    this district to say the least, and asked the government

13    on the record if that is -- if that is the position they

14    are taking, and I would oppose that, and I believe that

15    that's Jencks material.  And second of all, we should

16    provided with that under the common procedure and policy

17    of this district before trial.  I don't understand why it

18    would not be given to us to prepare for cross examination

19    of those witnesses.

20          Second of all, Steven Arthur, known as Steve-O,

21    and his name has come up in both of my supression motions.

22    He was listed as a witness in the first trial, but was not

23    called.  It is my anticipation that he will be called in

24    the second trial.

25          Steve Arthur, when he was arrested on

*15-20652; USA v. EUGENE FISHER, ET AL*

1    September 25, 2015 in a video interview with task force

2    agents, disclosed that he had been in a mental institution

3    for three to six months, and that's why he was somewhat

4    dysfunctional in terms of his interview.

5         It is my understanding that the hospital records

6    were not produced at the first trial because the fact that

7    the government struck him as a witness.

8         It is my understanding -- at least I would like to

9    get the government's position at this time if Steven

10   Arthur will be called, and if he's going to be called,

11   when we can expect to have those hospital records which

12   indicate that he was in a mental institution between three

13   and six months, and I would suggest to the Court that

14   those records in and of themselves would be considered

15   Jencks material.

16        **THE COURT:**  All right.  Thanks, Mr. Scharg.

17        Mr. Graveline?

18        **MR. GRAVELINE:**  The government does not plan

19   on calling Steven Arthur in this case as a witness.

20        And then to the first question, Rule 11's will be

21   provided to the defense counsel pretrial.  The cooperation

22   agreement, we will not be handing out copies of that.

23   That will be open for inspection.  The defense counsel can

24   come over to the office and take a look at the physical

25   exhibits.  They are available for inspection at that time.

*15-20652; USA v. EUGENE FISHER, ET AL*

1    They can take notes on it.  They will be available for

2    cross examination purposes in the trial, but we will not

3    be providing cooperation agreements to the defense, and

4    that's the way -- I think last time it was the day before.

5    Because of the speed of the trial, we were having some of

6    the co-defendants plead guilty at that time, and so that

7    was the only reason it was done the day before, but the

8    cooperation agreements will be available for inspection

9    when they come over to the view the physical exhibits,

10   which will be next week.

11             **THE COURT:**  All right.  That sounds good to

12   me.  Anybody else?

13             **MR. GRAVELINE:**  Nothing further.  I don't

14   think we have anything further.

15             **THE COURT:**  Okay.  All right.  That will be

16   the day.

17             **DEFENDANT ROBINSON:**  Your Honor?

18             **THE COURT:**  Well, is your lawyer here?

19             **THE CLERK:**  No, it's Mr. Swor.  He's gone.

20             **THE COURT:**  I can't really talk with you

21   while your lawyer is not here.

22             **DEFENDANT ROBINSON:**  That's the problem.  I'm

23   trying -- I'm trying to fire him off my case.  I don't

24   need him.  I would like to get another attorney.

25             **THE COURT:**  Well, we'll communicate that to

*15-20652; USA v. EUGENE FISHER, ET AL*

1     Mr. Swor that you have concerns along those lines, and

2     encourage him to get together with you.

3

4                          (Proceedings concluded.)

5                          -    -    -

6                      **C E R T I F I C A T I O N**

7          I, Ronald A. DiBartolomeo, official court

8     reporter for the United States District Court, Eastern

9     District of Michigan, Southern Division, appointed

10    pursuant to the provisions of Title 28, United States

11    Code, Section 753, do hereby certify that the foregoing is

12    a correct transcript of the proceedings in the

13    above-entitled cause on the date hereinbefore set forth.

14         I do further certify that the foregoing

15    transcript has been prepared by me or under my direction.

16

17

18    s/Ronald A. DiBartolomeo                    May 9, 2019

19    Ronald A. DiBartolomeo, CSR                    Date
      Official Court Reporter
20                          -    -    -

21

22

23

24

25


                    *15-20652; USA v. EUGENE FISHER, ET AL*