UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

Vs.                                      Case No. 15-cr-20652
                                         HON. GEORGE CARAM STEEH

(D-13) ARLANDIS SHY, II,

    Defendant.

_____

### DEFENDANT SHY'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT PREPARED BY THE PROBATION DEPARTMENT

      The Probation Department prepared a Pre-sentence Report that made factual conclusions and guideline calculations that were not supported by the facts of this case as it relates to Mr. Shy. The Probation Department relied upon the Sixth Superseding Indictment and ignored the jury findings and evidence adduced at trial. Mr. Shy submitted objections to Probation but the same were not resolved. As a consequence it falls upon this Court to reconcile these objections.  Mr. Shy makes the following objections:

### THE MURDER AND ASSAULT WITH INTENT TO MURDER CANNOT BE ATTRIBUTABLE TO SHY EVEN BY A PREPONDERANCE OF THE EVIDENCE STANDARD

1. Mr. Shy objects to the scoring of the guidelines as set forth in the report, paragraphs 32-64. The sentence guideline range as computed by the Probation Department is "Life," (pir, paragraph 92). This guideline range is a result of the

probation department using the acquitted conduct pursuant to U.S.S.G §1B1.3- Relevant Conduct (Factors that determine the Guideline Range). Relevant Conduct relies on a preponderance of evidence standard. The U.S. Supreme Court has held that there is no constitutional barrier to considering acquitted conduct if it otherwise meets the definition of relevant conduct, and is demonstrated by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148, 156-57 (1997).

2. U.S.S.G §1B1.3(a)(1)(B), advises how the base offense level for each defendant is to be determined. Specifically, the defendant shall be held accountable for the conduct of himself and others when it is a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity.

3. Several Circuits including the 6th Circuit have held co-conspirator's conduct can only be attributed to a defendant if the conduct was "reasonably foreseeable" to the defendant and was within the scope of the criminal activity the defendant agreed to jointly undertake.

4. The Second Circuit held that in order to hold a defendant accountable for the acts of others under §1B1.3(a)(1)(B), a district court must make particularized findings

with respect to both the scope of the defendant's agreement and the foreseeability of his co-conspirator's conduct. *U.S. v. Studley*, 47 F.3d 569 (2d Cir. 1995).

5. The fifth Circuit remanded for resentencing because the district court failed to determine whether either defendant knew or reasonably should have foreseen the total amount of drugs distributed by the conspiracy. The presentence report attributed more than two kilograms of cocaine to each defendant. Although defendants objected to this conclusion, the district court adopted the presentence report's conclusion. Neither the judge nor the presentence report addressed whether each defendant knew or could have reasonably foreseen the amount of drugs involved in the conspiracy. *U.S. v. Webster*, 960 F.2d 1301 (5th Cir. 1992).

6. The Seventh Circuit remanded because district court did not make specific findings to support foreseeability. Although defendant's role in a drug conspiracy changed in 1986, the district court held him responsible for all the drugs distributed throughout the course of the conspiracy. The court failed to make specific findings to support its conclusion that these drugs were reasonably foreseeable to defendant. The court may have erroneously thought that the mere fact that defendant was charged with being a member of the conspiracy for the entire period was a sufficient basis for finding him responsible for the entire quantity handled by the conspiracy. *U.S. v. DePriest*, 6 F.3d 1201 (7th Cir. 1993).

7. The Eleventh Circuit remanded for individualized finding of foreseeability. Defendant challenged the district court's decision to attribute to him all 700 kilograms of cocaine involved in the conspiracy, rather than the 70 kilograms

hidden in a truck he drove. At the sentencing hearing, defendant did not request an individualized finding of fact as to what quantity was reasonably foreseeable to him, and the district court did not make one. Under these circumstances, the district court was entitled to rely on the factual statements in the PSR without making an individualized finding. However, defendant's PSR was ambiguous. Although it stated that the offense involved 700 kilograms, it also stated that defendant was a "hired hand" who probably did not know the quantity of cocaine he was transporting. *U.S. v. Perez-Tosta,* 36 F.3d 1552 (11th Cir. 1994).

8. The Sixth Circuit requires particularized findings about scope of agreement and foreseeability. Although defendant personally handled a much smaller quantity, the district court held that defendant was responsible for the conspiracy's total distribution of 15 kilograms of cocaine. The court did make particularized findings with respect to the foreseeability prong, holding that defendant was aware that the conspiracy was broader than the three transactions in which he was involved. However, the court did not address the first prong – whether the acts of the co-conspirators were within the scope of defendant's conspiratorial agreement. Accordingly, the case was remanded for the court to make further findings. *U.S. v. Campbell*, 279 F.3d 392 (6th Cir. 2002).

9. In another case, the Sixth Circuit remanded for foreseeability finding as to drug quantity. The district court sentenced defendants on the assumption that they must be held accountable for the total quantity of drugs that were the object of the conspiracy. Under section 1B1.3, a conspirator is not automatically responsible

4

for all the narcotics funneled through the conspiracy. Quantities handled by other conspirators are attributed to a defendant only if the conduct of the other conspirators was "reasonably foreseeable" to the defendant and was within the scope of the criminal activity the defendant agreed jointly to undertake. *U.S. v. Obiukwu*, 17 F.3d 816 (6th Cir. 1994).

10. The Sixth Circuit says foreseeability is not sufficient unless part of jointly undertaken criminal activity. The district court held defendant responsible for all 21.96 kilograms of cocaine distributed by the conspiracy in which he was involved, finding it was reasonably foreseeable that the distribution network of which he was a part was selling this quantity. The 6th Circuit remanded to determine the scope of the criminal activity defendant agreed to undertake. Foreseeability is only one of the limitations on the ability of a court to sentence one participant in a conspiracy for the conduct of other participants. Another limitation is that the conduct must be in furtherance of the "jointly undertaken criminal activity." The 1992 amendment to section 1B1.3 and its commentary clarifies this point. Because the court did not address the scope of the criminal activity defendant agreed to jointly undertake, remand was necessary. *U.S. v. Jenkins*, 4 F.3d 1338 (6th Cir. 1993).

11. Foreseeability is only one of the limitations on the ability of a court to sentence one participant in a conspiracy for the conduct of other participants. Another limitation is that the conduct must be in furtherance of the "jointly undertaken

criminal activity." The 1992 amendment to section 1B1.3 and its commentary clarifies this point.

12. The conduct of others that meets all three criteria set forth in subdivisions (i) through (iii) (i.e., "within the scope," "in furtherance," and "reasonably foreseeable") is relevant conduct under this provision. However, when the conduct of others does not meet any one of the criteria set forth in subdivisions (i) through (iii), the conduct is not relevant conduct under this provision. U.S.S.G § 1B1.3, commentary, application note 3.

13. Here, the Probation Department concludes in paragraph 26 of the presentence report, <u>Explanation of the Total Offense Level Computation</u>, Shy was "held accountable for the overt acts he personally engaged in and for conduct that was reasonably foreseeable for the defendant to have knowledge of. Since the offenses were jointly undertaken criminal activities, Shy II is responsible for the actions of his co-conspirators and ultimately, the injuries sustained by the victims." This conclusion, however, is not supported with evidence or facts.

14. The offense conduct in the paragraphs 18 through 25 is a paraphrased version of the Sixth Superseding Indictment. The Probation Department made no effort to go beyond the Government's allegations contained in the Indictment and indeed ignored testimony and facts produced at trial. The offense level computation, paragraphs 31 through 51, simply repeats the "overt acts" listed in the Sixth Superseding Indictment. The presentence report does not provide the court with any information to support the use of the murders and attempted murders as the

basis for calculating the base offense level. It does not indicate why or how the murder and attempted murders were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity. The Report prepared by the Probation Department is void of the specific rationale for its conclusion as to why Shy should be held accountable for the murder and attempted murders that occurred May 8, 2015 or any of the other murders or attempted murders attributable to the co-defendants. In order to be used in sentencing, the court must make the specific findings on this issue.

15. The evidence presented during trial does not rise to the level of preponderance of evidence standard and therefore, Shy should not be held accountable for the murder and attempted murders. Of the three victim-witnesses in the car at the time of the shooting, none of them identified Shy as the shooter. Dario Roberts and Marquis Wicker were interviewed by the Detroit Police Department immediately after the shooting and by the FBI a year later. Their recollection of the events of May 8, 2015 did not change as they maintained they could not identify the shooter. Moreover, in his court testimony, Roberts indicated he was acquainted with Shy and was sure he was not the shooter. Roberts was a victim who was injured and his brother was killed by the shooters. He was present at the time of the shootings and stated that it was not Shy.

16. Information contained in the Detroit Police Incident Reports identify the driver as " B/M/25-30 Years Old, Dark Complexion, 6'0 in Height, Wearing All Black

Clothing, Armed With A Rifle, And Operating A black Chevrolet Impala." This description is so generic and vague that it is hardly worth mentioning.

17. Furthermore, the government's witness, Special Agent J. Jensen testified July 19, 2018 that Shy's cell phone was not in the area at the time the murder/attempted murder was committed. The Expert produced by the Government corroborated and validated what Mr. Roberts testified to, that Shy was not present at the murder and shooting on May 8, 2015:

> **Q.** And you already, I think told Mr. Daly, that even though a was phone can be attributable to them, it doesn't mean the phone on that particular day was used by this particular person. These phones by nature are disposable, correct? Somebody else could be using that phone. I can let somebody else use my phone.
> **A.** Yes, they are mobile. Mobile phones.
> **Q.** Okay. All right. I would like to show you -- okay. I'm looking at Page 12 of your report, Exhibit 36.
> **A.** Yes, sir.
> **Q.** And there's just one phone on there, correct?
> **A.** Just one phone, yes.
> **Q.** That's that number that we've identified as 6O22, correct?
> **A.** Yes, sir.
> **Q.** And we called it Mr. Shy, okay?
> **A.** That's your attribution, yes.
> **Q.** Now that's not in a crime zone, is that correct?
> **A.** It's not.
> **Q.** You don't see anything on there called crime zone?
> **A.** There's not.
> **Q.** Or even a place of interest. We see the Dresden address some ways to the east, correct?
> **A.** West of the phone call.

18. Based on available information, the burden of proof (preponderance of evidence) has not been met to conclude Shy was involved in the jointly undertaken criminal activity (murder and attempted murders), did not

participate in furtherance of that criminal activity (murder and attempted murders), and was not reasonably foreseeable involved with that criminal activity (murder and attempted murders).

## USE OF ACQUITTED CONDUCT UNCONSTITUTIONAL

19. Here, Probation has relied only on acquitted conduct to reach the guidelines score in this matter. To score Mr. Shy this relevant conduct the court would have to find by a preponderance of the evidence that he did commit the murder and assault with intent to murder regarding the shooting on May 8, 2015.  Defendant contends that there is not sufficient evidence even under a preponderance of evidence standard. While the Defendant acknowledges that this Circuit has allowed the use of acquitted conduct for sentencing guideline purposes, *United States v White*, 551 F.3d 381,384 (6th Cir. 2008), Mr. Shy submits that this holding is contrary to *Apprendi v New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005). Defendant submits that the correct approach interpretation should be the dissent set forth in White where Judge Merritt stated, "the use of acquitted conduct at sentencing defies the Constitution, our common law heritage, the Sentencing Reform Act and common sense". *United States v. White*, *supra*, 391. Judge Fletcher in his dissent in United States v Mercado, 474 F.3rd 654, 658 (9th Cir. 2007) stated that the majority (in Mercado)

"ignored Booker's requirement that the jury's verdict alone must authorize a defendant's sentence".

20. The Michigan Supreme Court has recently addressed this issue in *People v Beck*, ___NW3d___; LEXIS 1298 at *    (July 29, 2019) that a judge may not include as relevant conduct crimes for which the defendant was acquitted, concluding the same violates due process. The Court in Beck held that "to allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself." *Beck, Id* (LEXIS 1298 at *18-19), quoting *State v Marley*, 312 N.C. 425; 364 SE2d 133 (1988).

    Legal Commentators have criticized the use of scoring acquitted conduct or considering it relevant conduct. One article, Johnson, The Puzzling Persistence of Acquitted Conduct in Federal Sentencing, and What Can be Done About It, 49 Suffolk Univ L Rev 1, 25 (2016) noted that " the use of acquitted conduct has been characterized as, among other things, 'Kafks-esque, repugnant, uniquely malevolent, and pernicious,' 'making no sense as a matter of law or logic' and … a perversion of our system of justice' as well as 'bizarre' and 'reminiscent of Alice and Wonderland.' The Court in *Beck* concluded "due process bars sentencing courts from finding by a preponderance of the evidence that a defendant

engaged in conduct of which he was acquitted. *Beck, Id* (LEXIS 1298 at *19-22)

21. Mr. Shy believes the proper guideline score and sentence range to be as follows:

### Count 1: RICO

**Base Offense Level**: The guideline for 18 U.S.C. § 1962(d) offenses is found in USSG §2E1.1 of the guidelines. The jury verdict on Count 1, Rico Conspiracy, and the sub question No. 1, Conspiracy to Assault with intent to Murder, with a date range of July 14, 2014 to September 26, 2015. However, the only Attempted Murder counts that named Arlandis Shy involved conduct on May 8, 2015, the conduct for which he was found not guilty. Therefore, he can only be held accountable for the general crime of Unlawful Conduct Relating to Racketeer Influenced and Corrupt Organizations, that defaults to § 2E1.1(a)(1).

Therefore, the base offense level defaults to 19. That section provides that an offense involving an enterprise engaged in racketeering activity has a base offense level of 19.

USSG §2E1.1(a)(1)**. ………………………………………………...…………….19**

 Acceptance of Responsibility: **……………………………………………….-0-**

Total Offense Level:  ……………………………………………………….**-19-**

22. **Criminal History Computation**

The total criminal history score is five. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of five establishes a criminal history category of III.

**23. <u>Sentence Determination</u>**

A total offense level of 19 and a criminal history category of III results in a sentence guideline range of 37 to 46 months.

24. However, if the Court determines he should be held accountable for Count 1, sub-question No. 1, the guidelines would be scored as follows:

Count 1: RICO, Conspiracy to Assault with Intent to Commit Murder -- Base Offense Level: The guideline for 18 U.S.C. § 1962(d) offenses is found in USSG §2E1.1 of the guidelines.

25. The underlying offense is Assault with Intent to Commit Murder, §2A2.1 (a)(2), which has a base offense level of 27…………………………………………… **27**

26. Acceptance of Responsibility: ………………………………………………..**-0**

27. Total Offense Level: ……………………………………………………………**27**

28. **Criminal History Computation**

The total criminal history score is five. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of five establishes a criminal history category of III.

29. **Sentence Determination**

A total offense level of 27 and a criminal history category of III results in a sentence guideline range of 87 to 108 months.

**FURTHER OBJECTIONS TO PIR**

30. Mr. Shy objects to much of the characterization of the Seven Mile Bloods related in the "Offense Conduct" set forth in paragraphs 19-24. At a very minimum, each paragraph should begin by stating, "the Government alleges…." rather that asserting the contentions and claims as fact.

31. More specifically Mr. Shy objects in paragraph 20 to the allegations that the Seven Mile Bloods (SMB) were affiliated or in alliance with other gangs, locally or nationally including the "Bloods," the "Vice Lords", the "Latin Counts", and the "Latin Kings".  There is no evidence of these allegations Further, objection is made to the allegation that the SMB is a rival of the "Folk Nation" which includes the "Gangster Disciples" and the "Crips". Once again there was no evidence to support these claims.

32. Objection is to references in paragraph 21 that the SMB was an enterprise and that the use of social media such as Facebook, Instagram, Twitter, YouTube by postings of photographs and videos reflected Mr. Shy's involvement and "affiliation" with the enterprise.

33. Objection is made to paragraph 22 that alleges that the SMB "currently…is actively involved in a gang war with an alliance of other gangs on Detroit's east side. This paragraph gives the impression that as of 12/4/18, the "war" is still raging when in fact the shooting alleged in this paragraph occurred over four (4) years ago.

34. Objection is made to Paragraph 23 where it is alleged that the "SMB is an ongoing organization in which members function as a continuing unit in order to "achieve the gang's objectives." Mr. Shy denies that the SMB is a structured unit with "gang objectives." Defendant Shy denies that there a "three purposes" of the SMB as outlined in this paragraph and continues to deny that the SMB is an enterprise. Mr. Shy submits that Probation has a duty to independently evaluate the facts of the case instead of adopting the "spoon-fed" allegations supplied by the Government.

35. Defendant Shy objects to the allegations made in paragraph 24 where it is contended that Mr. Shy agreed with others to participate in the "affairs of the enterprise through a pattern of racketeering activity" as set forth in said paragraph.

36. Defendant denies sub-paragraph (1) of paragraph 24 alleging that on September 26, 2015 is an "Overt Act" attributable to Mr. Shy in that another person, "member D" through a gun out of the window of a car being driven by Mr. Shy; Member D was in fact convicted of that offense, Mr. Shy was not charged and there was no evidence that Shy even knew of the presence of said weapon that was in the vehicle prior to it being discarded.

37. Defendant Shy denies sub-paragraph (2) of paragraph 24 alleging that on May 8, 2015 is an "Overt Act" attributable to Mr. Shy in that he was acquitted of the conduct attributable to him in said paragraph and that the victim, D.R.-2 testified at trial that he knew Shy prior to the incident described in sub-paragraph 2 and

that Mr. Shy was not one of the persons shooting that day and further the Government's cell tower expert did not place Shy at the May 8, 2015 crime scene (or any crime scene).

38. While Defendant Shy admits in sub-paragraph 3 of paragraph 24 that he was arrested nearly 10 years ago in a drug charge in West Virginia, he objects to this being an overt act for the reason there was no evidence that this was being done in furtherance of the objectives of the "enterprise" and no evidence that the SMB received any benefit from Mr. Shy's conduct and further those charges were dropped, acknowledging lack of evidence of a crime.

39. While Defendant Shy admits in sub-paragraph 4 of paragraph 24 that he was found in an apartment that contained marijuana, currency and packaging nearly 10 years ago in West Virginia, he objects to this being an overt act for the reason there was no evidence that this was being done in furtherance of the objectives of the "enterprise" and no evidence that the SMB received any benefit from Mr. Shy's conduct and further he was never arrested or convicted as a result of that conduct, meaning that he was merely present, and thereby acknowledging by the authorities a lack of evidence of a crime.

40. While Defendant Shy admits in sub-paragraph 5 of paragraph 24 that he and other SMB members were found in Detroit in a neighborhood with drugs and money over 10 years ago, he objects to this being an overt act for the reason there was no evidence that this was being done in furtherance of the objectives of the

"enterprise" and no evidence that the SMB received any benefit from Mr. Shy's conduct.

41. Defendant Shy objects to the statements in paragraph 25 that allege that he possessed firearms in furtherance of a "crime of violence during this racketeering conspiracy" nor did he aid and abet others in so doing.

42. Mr. Shy objects to being held accountable and responsible for actions that were not foreseeable to him of other persons, particularly Over Act I where another person was found guilty of possessing a weapon that was thrown away by another person in a car that contained four individuals and moreover denies being held responsible or accountable for Over Act 2 which are the murder and assaults with intent to murder, conduct that the jury found Mr. Shy not guilty of and where the victim stated affirmatively that it was NOT shy and moreover the Government's cell tower expert did not place Shy at the crime scene, and Shy objects being held accountable for drug trafficking regarding the other overt acts, because there was no evidence that linked his drug involvement to further the goals of the SMB nor was there any evidence that the SMB benefitted in any way from the conduct of Shy regarding said Over Acts.

43. Mr. Shy objects to the characterization in paragraph 30 that concludes that he "has not clearly demonstrated acceptance of responsibility"; Mr. Shy has accepted responsibility of the acts that he is guilty of, that being selling drugs in Detroit and elsewhere, as an individual (as opposed on behalf of or for the benefit of an

enterprise); he went to trial contesting that the SMB was an enterprise and while he was convicted of two counts, he was found not guilty of six counts.

WHEREFORE, Defendant Shy respectfully request this Court to grant his objections and amend the PIR to reflect the corrected guidelines as proposed by Defendant and to make the other corrections that would reflect the facts of the case.

Respectfully submitted,

By_____/s/_____
MARK H. MAGIDSON
Attorney for Defendant Shy
615 Griswold, Suite 810
Detroit, MI 48226
(313) 963-4311
MMAG100@AOL.COM

By_____/s/_____
JOHN T. THEIS
Attorney for Defendant Shy
190 South La Salle Street
Suite 520
Chicago, IL 60603
(312) 782-1121
Theislaw@aol.com