1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
2                         SOUTHERN DIVISION

3

4  **UNITED STATES OF AMERICA,**

5              Government,

                                      **HONORABLE GEORGE CARAM STEEH**
6        v.
                                      **No. 15-20652**
7  **ARLANDIS SHY,II,**

8              Defendant.
   _____/

9
                          **MOTION HEARING**
10
                     **Monday, June 4, 2018**
11
                          -   -   -
12

APPEARANCES:
13
For the Government:            MARGARET SMITH, ESQ.
14                             Assistant U.S. Attorney

15
For the Defendant:             MARK MAGIDSON, ESQ.
16
                          -   -   -
17

18          *To Obtain Certified Transcript, Contact:*
          *Ronald A. DiBartolomeo, Official Court Reporter*
19          *Theodore Levin United States Courthouse*
            *231 West Lafayette Boulevard, Room 1067*
20              *Detroit, Michigan  48226*
                    *(313) 962-1234*
21
          *Proceedings recorded by mechanical stenography.*
22     *Transcript produced by computer-aided transcription.*

23

24

25

2

1                          **I   N   D   E   X**

2    _____Page

3    Motion Hearing                                                   3

4

5

6

7

8

9

10

11

12

13

14                      **E   X   H   B   I   T   S**

15   Identification_____Offered     Received

16

17                      N        O        N        E

18

19

20

21

22

23

24

25

                    *15-20652; USA v. ARLANDIS SHY*

```
 1                              Detroit, Michigan
 2                              Monday, June 4, 2018
 3
 4                         -    -    -
 5             THE CLERK:  Case Number 15-20652, United
 6   States versus Arlandis Shy.  You may be seated.
 7             THE COURT:  Good morning.
 8             MR. MAGIDSON:  Good morning, your Honor.
 9             MS. SMITH:  Good morning, your Honor.  Maggie
10   Smith and Julie Finocchiaro on behalf of the United
11   States.
12             THE COURT:  Welcome.
13             MR. MAGIDSON:  Mark Magidson and John Theis
14   on behalf of Mr. Shy who is seated counsel table.
15             THE COURT:  Welcome.  All right.  This matter
16   is before the Court on the defendant's motion.
17        Would you like to address it, Mr. Magidson?
18             MR. MAGIDSON:  Yes, Judge.
19        Briefly, Judge -- and I know the Court has had an
20   opportunity to read my motion and the government's
21   response -- and here's the problem in a nutshell.
22        This case has been pending, as the Court knows,
23   for a substantial period of time, and then -- I don't
24   know.  It's been like a week or 10 days ago -- I received
25   a call from the U.S. Attorney and said, by the way, did I
```

*15-20652; USA v. ARLANDIS SHY*

1    ever give you your client's Facebook account?  I said no,

2    not really.  I mean, over the course of the past year,

3    I've gotten all of the co-defendants, and I've tried to

4    plow through voluminous amounts of material there, just

5    really a lot of stuff, and he said, well, there was an

6    oversight or something.  We thought we had given it to

7    you.  We just informed you that we have it.  We're going

8    to send it to you, and they did, and it came promptly at

9    that point, and it is roughly give or take -- roughly

10   6,000 pages of documents, and that was overwhelming in my

11   opinion because the -- to go through all of that.

12          Now I've gone through parts of it, and I've seen

13   certain things, and gleaned certain things, and things

14   frankly that I wish I had known before, because had I

15   known those before, I might have approached things

16   differently than I had been with my client, with the

17   government, negotiations, things like that.  I mean,

18   things that I thought were not going to potentially be

19   incriminating to my client, and now I have some of these

20   things of concern to me.

21          So the government says well, it's no big deal.  No

22   harm, no foul, but -- and I'm not -- I don't have

23   evidence.  I don't claim they did it as a deliberate

24   tactic.  I mean, this is a large case.  You know, to keep

25   this large -- with all of these defendants, to keep it all

*15-20652; USA v. ARLANDIS SHY*

1    organized, things fall through the cracks.  So I don't say

2    it is a deliberate intent.  I don't have any evidence of

3    that.   There's an error, but with substantial consequences

4    to the defense, and that's my concern.

5         And so the government says, we've listed things on

6    our exhibit list that we think we might use, and it may be

7    somewhat incriminating.  We're going to give you some of

8    these things.  You can infer some of the bad things.

9         That may be true, but that doesn't help me get

10   into the crux of it.  I mean, maybe there is exculpatory

11   material that I can use to benefit my client.  We got some

12   bad stuff.  I mean, we've got a photograph.  Standing

13   alone you may say, oh my God.  That's terrible, but it may

14   be connected with another document buried in the other

15   5,999 pages that could explain that.

16        So I have -- I think as a defense lawyer, I have a

17   duty to plow through these volumes, and in a typical case,

18   a typical single defendant case, you might have five,

19   three, 400 pages of discovery, maybe less than that.  A

20   gun case, drug case, 150 pages.  I had a robbery case

21   involving a phone dump of 3,000 pages, and the court

22   granted extra -- an expert for me to help analyze this and

23   go through some of this stuff in a different case.

24        So now I got 6,000 pages on the eve of trial that

25   I think ethically requires me to go through to see if

*15-20652; USA v. ARLANDIS SHY*

1    there is any exculpatory material because we know there's
2    inculpatory stuff.  The government has indicated so, and
3    I've actually plowed through a little bit of it and found
4    stuff that I shared with Mr. Theis today that I found last
5    night that is disturbing.
6              **THE COURT:**  Disturbing how?
7              **MR. MAGIDSON:**  It's disturbing that I didn't
8    have it beforehand, in terms of the government using the
9    material against my client, and maybe -- who knows, maybe
10   there's a basis for me to keep it out.  Maybe there's
11   motions to be filed.  I have not researched all of this.
12             So that's the reason for the motion.  I filed it.
13   We set forth the standards.  The Court has authority, and
14   I asking to preclude this, any use of it.  The Court has
15   discretion.  The Court can consider the reasons for the
16   government's delay, the prejudice to the defendant, and
17   whether there's a less severe sanction that's appropriate
18   and the other relevant circumstances.  I've cited that in
19   the case law, and I think we're in agreement on that.
20             The reasons for delay, it wasn't caused by the
21   defendant, and again, I don't have any evidence that it
22   was deliberate.  On the other hand, the government
23   acknowledges that there was an oversight, something they
24   forgot about us.
25             Secondly, the prejudicial --

*15-20652; USA v. ARLANDIS SHY*

1      **THE COURT:**  I think it was a little more than

2  that.  They didn't recognize that there was a body of

3  evidence applicable to your client's Facebook.

4      **MR. MAGIDSON:**  Well, I think the agent had it

5  all along, or they knew about it.  There was something

6  that the dots didn't connect.

7      **THE COURT:**  Right.

8      **MR. MAGIDSON:**  It wasn't recently discovered.

9  They had it for a period of time.  Somebody did.  The

10  agent, they didn't communicate, or wasn't made known to

11  the government.

12      Prejudice to the defendant I think is substantial

13  for the reasons that I've indicated, and -- and I believe

14  that given the lateness of the hour that the appropriate

15  remedy would be preclusion.

16      Now the government responds by saying well, you

17  know, the trial doesn't actually start until the 18th.  So

18  I've got time to, you know, start peeling these levels of

19  the onion to get to the core.  That's sounds good.  It is

20  a reasonable argument, except every day -- I shouldn't say

21  every day -- but we've gotten Jencks material coming in

22  fast and furious, and I've been trying to plow through all

23  of that.  It's one thing after another.  The day that I

24  think I'm almost caught up, here come another, and so last

25  evening Chris Anton sent out at 10:00 another bunch of

*15-20652; USA v. ARLANDIS SHY*

1    Jencks material production 45, 50, whatever amount of it
2    was.
3              So this will be continuing as the trial
4    progresses, and so I'm trying to maintain and getting all
5    of this new Jencks material and things, and still try to
6    follow through of what I could have had the past year I
7    think.
8              **THE COURT:**  Okay.
9              **MR. MAGIDSON:**  Thanks, Judge.
10             **THE COURT:**  Ms. Smith?
11             **MS. SMITH:**  Good morning.  Just from a
12   factual basis, I think it is worth noting that it is the
13   defendant's own Facebook account.  So I think the person
14   who is in the best position to know what's in that account
15   is probably the defendant himself, more than we would
16   because it is his account.
17             Notwithstanding for the record, I think we put
18   this in the brief, on the 18th of May, this Facebook
19   returned was passed over to the defendant, and then on the
20   30th of May, we marked what exhibits we intend to use at
21   trial from his Facebook account, and sent them over to the
22   defense along with the search warrant and application and
23   affidavit itself.
24             Opening statements as I understand it is to begin
25   on the 18th of June, and this defendant's Facebook

*15-20652; USA v. ARLANDIS SHY*

1    evidence isn't expected to be introduced to the jury until

2    towards the end of July.  So we're looking at

3    approximately seven weeks from the time that he received

4    the Facebook account until it will be utilized at trial.

5         So defense counsel is correct about Rule 16 and

6    the remedies.  The reason for the delay I think we both

7    agree.  It's not anything that's bad faith.  It just

8    happened to be an error in accumulation of the evidence,

9    and giving that over, and that's an important part in the

10   process of determining what would be an effective remedy

11   to cure this situation.

12        I wanted to point out two Sixth Circuit cases that

13   I found that are on point.  The first is United States

14   versus Naples, which is 6O F3d at 244, and that's a Sixth

15   Circuit Court of Appeals case where the court reversed the

16   decision of the district court where the district court

17   suppressed evidence as a remedy for an alleged discovery

18   violation.

19        And in that case the Sixth Circuit noted that the

20   evidence had been turned over approximately seven weeks

21   before trial, and just like here, and the Court -- the

22   panel in that Sixth Circuit case found that we ought to be

23   looking at the least severe remedy when looking at

24   discovery issues.

25        And then there's the United States versus Glover,

*15-20652; USA v. ARLANDIS SHY*

1    which is a Sixth Circuit case cited at 846 F2d 339, 1988

2    case.  In that case the evidence that was not turned over

3    was not turned over even in time for trial, and the Sixth

4    Circuit found that supression was not a remedy,

5    particularly because the defendant failed to ask for

6    continuance.

7          So when we look at what do we do here, 6,000 pages

8    of evidence, and we are literally today on the eve of

9    trial, but we know the reason for the delay.  It was not

10   anything in bad faith.  The degree of prejudice to the

11   defendant is something that the Court is going to

12   consider.

13         In terms of being able to negotiate a plea, as we

14   pointed out, we were never in a position to negotiate a

15   plea until the 14th of May, and it's my understanding that

16   it's unlikely that this defendant will enter into a plea

17   before trial.

18         In terms of having an opportunity for any grounds

19   to suppress, the government is not going to object if the

20   defendants decides that they want to file a motion to

21   suppress based on the Facebook search warrant, and he

22   would have until really -- the Court could fashion a date

23   for that motion cut off, and would not object to that.

24         The other issue that was brought up is that it is

25   unclear as to what charges the Facebook results were

*15-20652; USA v. ARLANDIS SHY*

1    pointing towards, and that was also answered in the

2    response, that it goes towards the RICO conspiracy count.

3           So the last factor here is what extent can the

4    prejudice be cured?  Well, he's not asking for a

5    continuance of trial, which is the first step in the

6    remedy afforded in a situation like this.  So because he

7    doesn't want to exercise that remedy, does not mean we go

8    to the more severe punishment of suppression of evidence.

9           This Court issued an opinion on the 24th of May

10   denying the government's request for continuance of trial,

11   and kind of laid out all of the time that the parties have

12   to continue to prepare for trial, and to utilize their

13   resources in half day trials, the break between jury

14   selection and the beginning of trial.

15          And so for all of these reasons, your Honor, we

16   believe that this evidence should be admitted at trial.

17          **THE COURT:**  Okay.  Thank you.

18          I know that the government has identified the

19   information it intends to elicit at trial from the 6,000

20   pages, and that amounts to 100 pages or 92.

21          **MS. SMITH:**  I think 92 and 11 videos, and the

22   videos are of short duration.

23          **THE COURT:**  And so Mr. Magidson, you and Mr.

24   Theis had a chance to review those materials to assess the

25   evidentiary value in your client's position?

*15-20652; USA v. ARLANDIS SHY*

 1              **MR. MAGIDSON:**  I have not, your Honor.  At

 2      this point I have not been able to look at those as of

 3      yet.  I certainly will.  I should --

 4              **THE COURT:**  You've had that for how long now?

 5              **MS. SMITH:**  Your Honor --

 6              **MR. MAGIDSON:**  I had it on May 30th.  So a

 7      few days.

 8              **THE COURT:**  Okay.

 9              **MR. MAGIDSON:**  And I just printed out -- my

10      client came from Milan.  So I printed out some of the

11      things, and one of the things that I thought was going to

12      be applying to him is a Facebook entitled  "Grymee the

13      Shooter," and it has some commentary.  It sounded

14      terrible, Grymee the Shooter, because his nickname, alias

15      if you will, is Grymee, but he tells me there are two

16      Grymees, and I have to explore this.  This is where all of

17      a sudden this becomes an issue.  I don't know if they got

18      right stuff.  There's other things I have to explore.

19              **THE COURT:**  Okay.  All right.  Thank you.

20              Well, I think the parties have agreed on the

21      general principles that apply to the late discovery

22      disclosures in this case, and it does appear to be

23      uncontested that the materials were overlooked, and

24      unknown to the government for a considerable period, and

25      as soon as it was discovered, was delivered and defense

*15-20652; USA v. ARLANDIS SHY*

1    counsel was notified.

2         So the Sixth Circuit has indicated in Naples,

3    which is cited by the government, that suppression of

4    evidence must be viewed as an undesirable remedy reserved

5    for those cases of incurable prejudice or bad faith

6    conduct, demanding punishment by the court.

7         Well, bad faith conduct is not at issue here, but

8    incurable prejudice is something that needs to be

9    considered by the Court.

10        In this case any prejudice that results to the

11   defendant by use of these materials is, or just the

12   defense counsel's inability to review all of the materials

13   is based on the imminent trial and all of the other

14   materials that are described by Mr. Magidson as coming in

15   day-to-day requiring review.

16        If the defendant requested an adjournment of

17   this case, it would likely get scheduled with the other

18   cases which we're hoping for trial in October.  So it

19   would be a matter of a few months before the defendant's

20   trial would take place if the defendant opted to accept

21   delay of the trial, and there are remedies that the Court

22   would be happy to consider if asked by defense counsel to

23   be considered for a remedy of the situation.

24        So one of those would be to appoint an

25   additional attorney to focus primarily on the 6,000 page

*15-20652; USA v. ARLANDIS SHY*

1    set of documents, and of course, in preparation in

2    general, Mr. Shy has the advantage of two lawyers.  The

3    Court did grant his motion to permit learned counsel to

4    continue in assistance for all of the issues addressed in

5    the trial.  But even with that addition, the Court would

6    consider another party to focus on this discovery and

7    assistance to defense counsel in getting prepared.

8            That, combined with the amount of time that's

9    built into our schedule for prep, that is ending the day

10   at 1:00 in the afternoon so the balance of the day is

11   available, taking two full weeks off during the course of

12   the trial at intervals that would allow defense counsel --

13   especially defense counsel would have additional

14   assistance of another lawyer to develop, those things I

15   think are a likely and effective remedy for the problem

16   that's developed here.

17           If this was done in bad faith, that would be a

18   different story, but it's pretty clear that it is not, and

19   the Court is constrained to conclude as in Naples that the

20   suppression of evidence under the circumstances is an

21   undesirable remedy, and not necessary, because again, I

22   realize Mr. Shy has been waiting a long time for his

23   trial, and that it is his desired to go forward, but --

24   and it's his life.  I think he's bright enough to

25   recognize where he is situated here, and if the request

*15-20652; USA v. ARLANDIS SHY*

1    was made for me to continue the trial, I would absolutely

2    do that as a remedy in his case.  But in the absence of

3    that, I can't think of anything else other than appointing

4    a lawyer to assist specifically in that connection, and --

5    well, other than, there's nothing else to be said.

6            **MR. MAGIDSON:**  I did consult, again with Mr.

7    Shy just now as to whether he would want to consider an

8    adjournment, and he said, as he has all along, he's very

9    firm that he wants to maintain his speedy trial rights,

10   and sooner than later.

11           The only other thing that I would ask the Court is

12   if we get into this and find some that there are some

13   grounds, some motions to proceed on -- there's been

14   mentioned of dual Grymees out there -- I would like to

15   keep that option open.

16           **THE COURT:**  Right.  This is all, as it stands

17   now, the expectation is that material might be used by the

18   government as of the end of July?

19           **MS. SMITH:**  Yes, your Honor.

20           **THE COURT:**  And depending on your progress,

21   I'm assume you would like the Court to appoint an

22   additional attorney to focus on this?

23           **MR. MAGIDSON:**  An additional attorney or even

24   a paralegal.  I can discuss it with co-counsel, and see

25   what is the best use of time.

*15-20652; USA v. ARLANDIS SHY*

 1              THE COURT:  Yes.  All right.  I'm happy to

 2    provide that as part of the remedy.

 3              MR. MAGIDSON:  I appreciate it.

 4              THE COURT:  But in terms of your ability to

 5    challenge the use of some aspect of the discovery to seek

 6    suppression, I heard the government agree that that would

 7    be appropriate to reserve that opportunity.  We need to

 8    establish a cutoff date.

 9              MS. SMITH:  Yes, your Honor.

10              THE COURT:  So what would you propose?

11              MS. SMITH:  I think since we don't anticipate

12    introducing evidence until mid-July -- I don't know what

13    day of week -- like the 15th or 18th of July, somewhere

14    along that line so that the Court would have the

15    opportunity to hear whatever motions might be filed as it

16    relates to the Facebook account.

17              THE COURT:  Okay.  So we'll make it --  we

18    will give Mr. Magidson and Mr. Theis an opportunity to

19    file -- I'm thinking the second week of July, early in the

20    second week.

21              MS. SMITH:  That's sounds right.  If it's a

22    motion to suppress based on the search warrant, then

23    perhaps they would let us know that they are going to file

24    something of nature, but motions in limine based on

25    evidentiary, I think that the mid-July date will work.

                    *15-20652; USA v. ARLANDIS SHY*

```
 1              THE COURT:  Okay.  So perhaps the 10th of
 2    July, which is a Tuesday.
 3              MS. SMITH:  That will be fine.
 4              THE COURT:  All right.  That will be the
 5    ruling as it relates to this motion in limine.
 6         Is there anything else that we needs to address?
 7              MR. MAGIDSON:  Nothing further from the
 8    defense, your Honor.
 9              MS. SMITH:  Not from the United States.
10    Thank you.
11              THE COURT:  Okay.  We'll let you get back to
12    work.
13              MS. SMITH:  Thank you, your Honor.
14              MR. MAGIDSON:  Thank you, your Honor.
15
16              (Proceedings concluded.)
17                   -   -   -
18             C E R T I F I C A T I O N
19         I, Ronald A. DiBartolomeo, official court
20    reporter for the United States District Court, Eastern
21    District of Michigan, Southern Division, appointed
22    pursuant to the provisions of Title 28, United States
23    Code, Section 753, do hereby certify that the foregoing is
24    a correct transcript of the proceedings in the
25    above-entitled cause on the date hereinbefore set forth.
```

*15-20652; USA v. ARLANDIS SHY*

1              I do further certify that the foregoing

2         transcript has been prepared by me or under my direction.

3

4

5    s/Ronald A. DiBartolomeo                    December 3, 2019

6    _____        _____
     Ronald A. DiBartolomeo, CSR                      Date
     Official Court Reporter
7                                     -    -    -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                        *15-20652; USA v. ARLANDIS SHY*