1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
2                         SOUTHERN DIVISION

3

4    **UNITED STATES OF AMERICA,**

5                    Government,
                                        **HONORABLE GEORGE CARAM STEEH**
6         v.
                                     **No. 15-20652**
7    **D-4 COREY BAILEY,**
     **D-6 ROBERT BROWN,**
8    **D-13 ARLANDIS SHY,**
     **D-19 KEITHON PORTER,**
9
                     Defendants.
10   _____/
                            **MOTION HEARING**
11
                     **Wednesday, April 17, 2018**
12
                              -    -    -
13
     APPEARANCES:
14
     For the Government:          MARK BILKOVIC, ESQ.
15                                TARE WIGOD, ESQ.
                                  Assistant U.S. Attorneys
16

17   For the Defendants:          CRAIG DALY, ESQ
                                  On behalf of Corey Bailey
18
                                  JAMES FEINBERG, ESQ.
19                                On behalf of Robert Brown

20                                MARK MAGIDSON, ESQ.
                                  On behalf of Arlandis Shy
21
                                  STEVEN SCHARG, ESQ.
22                                On behalf of Keithon Porter

23

24                            -    -    -

25           *To Obtain Certified Transcript, Contact:*
          *Ronald A. DiBartolomeo, Official Court Reporter*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard, Room 1067*
*Detroit, Michigan  48226*
*(313) 962-1234*

*Proceedings recorded by mechanical stenography.*
*Transcript produced by computer-aided transcription.*

```
 1                         I  N  D  E  X
 2  _____Page
 3  Motion hearing                                            3
 4
 5
 6
 7
 8
 9
10
11
12
13
14                       E  X  H  B  I  T  S
15  Identification_____Offered    Received
16
17                      N      O      N      E
18
19
20
21
22
23
24
25
```

*15-20652; USA v. COREY BAILEY, ET AL*

```
 1                              Detroit, Michigan
 2                              Wednesday, April 17, 2019
 3
 4                         -   -   -
 5            THE CLERK:  Case Number 15-20652, United
 6   States of America versus Corey Bailey, Robert Brown,
 7   Arlandis Shy and Keithon Porter.
 8            THE COURT:  Good morning.  Would you like
 9   state your appearances, Mr. Bilkovic?
10            MR. BILKOVIC:  Good afternoon.  Mark Bilkovic
11   and Tare Wigod on behalf of the United States.
12            THE COURT:  Welcome.
13            MR. S. SCHARG:  Good afternoon, your Honor.
14   Steven Scharg on behalf of Mr. Porter.
15            THE COURT:  Welcome.
16            MR. FEINBERG:  James L. Feinberg, attorney
17   for Mr. Brown, who apparently isn't here yet.
18            THE COURT:  Right.  Thank you, Mr. Feinberg.
19            MR. DALY:  Good afternoon, your Honor.  Craig
20   Daly on behalf of Corey Bailey.
21            THE COURT:  Welcome.
22            MR. MAGIDSON:  Good afternoon, your Honor.
23   Mark Magidson on behalf of Mr. Shy who stands to my right.
24            THE COURT:  Good afternoon.  As it relates to
25   Mr. Brown who is represented by Mr. Feinberg, we've been
```

1      advised that the -- that he is still in transit.  He might

2      be expected to arrive in a half hour was the last word.

3              Mr. Feinberg has indicated that he's going to be

4      joining in the arguments made by other counsel, and we'll

5      give you the opportunity to speak on the issue if you

6      would like once your client gets here, but rather than to

7      keep everybody waiting while we wait for delivery of Mr.

8      Brown to this proceeding, I think we should go ahead,

9      especially in the light of the fact that for the most part

10     going to just join the argument made by co-counsel, is

11     that agreeable, Mr. Feinberg?

12             **MR. FEINBERG:**  I'm not sure I'm in the

13     position to waive my client's presence, your Honor.  I

14     know he was in Dickerson, which isn't a half hour away.

15     So if he's in transit, he should only be minutes away.

16             **THE COURT:**  He's coming from where?

17             **MR. FEINBERG:**  Dickerson.

18             **THE COURT:**  He was in Milan.

19             **MR. FEINBERG:**  He was in Dickerson yesterday.

20             **THE MARSHAL:**  Milan.

21             **MR. FEINBERG:**  I don't know why he would have

22     been separated, but I'm not position to waive his

23     presence, your Honor.

24             **THE COURT:**  Well, you will be given the

25     opportunity to make any and all arguments that you wish

                  *15-20652; USA v. COREY BAILEY, ET AL*

1    once he gets here.

2         In the meantime, we'll address the remaining

3    defendants and their counsel so we don't inconvenience

4    them any farther.  Who will be arguing, Mr. Magidson?

5              **MR. MAGIDSON:**  I'm going to start out, Judge,

6    and maybe one of the other counsel will have rebuttal

7    afterwards.

8              **THE COURT:**  All right.  Come up to the

9    podium.

10             **MR. MAGIDSON:**  Please the Court, this is

11   defendants' motion for a new trial and or evidentiary

12   hearing based upon the jurors use of outside and

13   extraneous and material information that occurred during

14   deliberations.  This information either caused actual

15   prejudice to the defendants, or if such information was

16   disclosed properly, it would have been a basis of removal

17   of that juror for cause.

18        The Supreme Court has held in Duncan v Louisiana,

19   that the right to a jury trial is fundamental to our

20   system of justice, and along with that, the court held

21   that a right to a jury trial presupposes an absolute right

22   to a fair and impartial jury.  So that's what this issue

23   is about.

24        As this Court knows very well, there's a great

25   concern by the defendants and the government about the

1    jurors having opinions regarding street gangs in Detroit,

2    particularly in light of a multi-part, sensational news

3    article about this case that was published on the eve of

4    trial.

5          A questionnaire was prepared by both sides.  We

6    spent a lot of time working out the questions for that

7    questionnaire, with the idea that it was going to be

8    reviewed by the parties, and prior to the actual selection

9    in many cases, we determined based on answer that were

10   given, many jurors were excluded.  They had given opinions

11   and stated things on the questionnaire that showed bias,

12   and we stipulated to certain jurors being removed, and in

13   some cases the Court on its own saw certain things in the

14   questionnaire, and excluded jurors.  So the questionnaire

15   was in effect a court order, and required honesty and

16   sincerity.

17         The Sixth Circuit Court of Appeals in English

18   versus Burgess discusses the consequences when a juror

19   fails to disclose material facts.

20         There, a juror in a CSC, criminal sexual conduct

21   case, failed to disclose that she had been sexually

22   assaulted when she was a child.  There, like here, the

23   Court asked the juror whether she had any experiences that

24   is might affect her being an impartial juror, but she

25   never disclosed that she was a victim of a sexual assault

*15-20652; USA v. COREY BAILEY, ET AL*

1       as a child.

2               The circuit court reversed the lower court

3       granting a habeas petition, and ordered the case remanded

4       to state court because the admission was material, and

5       bias could be inferred because it was deliberate.  The

6       same occurred here.

7               In this case, a juror -- and we called her Juror

8       F -- reached out to defense counsel following the trial,

9       and disclosed that another juror -- we called her Juror

10      V -- had been dishonest in the jury selection process.

11      She had strong, negative opinions about gangs, stated it

12      was guys like this that were ruining the city, and ruining

13      her neighborhood.

14              Juror F stated that Juror V revealed that she

15      lived adjacent to the Red Zone, and used these extraneous

16      facts to unduly influence the jury.

17              Juror V commented that she was familiar with what

18      these types of guys did, unlike the suburban jurors who

19      did not know what was going on in the Detroit

20      neighborhood.

21              Now during the voir dire process, this Court

22      reminded all the jurors about the news coverage, and

23      whether anyone had been exposed to such coverage, and as

24      the Court recalls, there were jurors excused from the

25      panel who had either read the article or had knowledge of

                     *15-20652; USA v. COREY BAILEY, ET AL*

1    the article or -- and who had opinions about gangs and

2    gang activities, and Juror V was present during that time,

3    and she remained silent.  And the Court specifically

4    addressed her and asked whether she had heard all the

5    questions to the other jurors, and if there was anything,

6    quote, you want to bring to our attention?  That was your

7    language.  No, she answered.

8           The Court asked her directly, anything about the

9    nature of the case that raises concerns for you?  No.

10          And the questionnaire is equally dishonest and

11   deceitful.  The questionnaire asked if you ever had a

12   dispute with a gang member, and if she had any experience

13   with a gang, or any opinions or views as to why she could

14   not be objective, Questions 42 and 43.  She answered no.

15          She answered no to having any opinion about rap

16   music, no anything about vulgar language, no about not

17   being -- about being objective about drug distribution, no

18   opinion about guilt or innocence.  Question 50.

19          Based upon Juror F's affidavit, it's clear that

20   Juror V had lied and used this extraneous information,

21   information obtained outside the courtroom, outside the

22   evidence presented to unduly bully the other jurors.

23          Now based upon the affidavits of Juror F -- and I

24   should add parenthetically that following Juror F

25   contacting, another juror came forward as well.  We call

*15-20652; USA v. COREY BAILEY, ET AL*

1   him -- or this juror, Juror L.

2          Based upon these affidavits, there were a number

3   of instances where Juror V used or could have used

4   extraneous information that was used in the deliberations,

5   including she lived in the Red Zone or adjacent to the Red

6   Zone.  She had witnessed evidence of Seven Mile Bloods

7   activity in and around her neighborhood, including gang

8   graffiti.  She believed that people, quote, like

9   defendants, had ruined the neighborhood and ruined the

10  city.  She had opinions, they had to go down, they had to

11  burn.  These were her words.

12         She also refused to decide the case based upon the

13  evidence presented because, quote, these guys were here

14  for a reason, unquote.  She used her personal knowledge of

15  the neighborhood to try to force and intimidate her will.

16         Further, both Jurors F and L made reference to the

17  fact that Juror V used outside knowledge that contradicted

18  the location of a strip club, and grant it, there was only

19  limited reference to where the strip club was, but the

20  fact is that was one example that they could think of off

21  the top of their heads, but there may have been others as

22  well, but this is what they could think of.  This shows as

23  an example that she was using that knowledge.

24         Further, according to the these affidavits, it

25  appeared to Juror F that Juror V and another juror, Juror

*15-20652; USA v. COREY BAILEY, ET AL*

1    C, had information about the case that was not part of the

2    evidence, was not presented in the case at all.

3         Later, Juror F, after the case was over, read the

4    Detroit News article that was referenced, and much of what

5    Jurors V and C stated in the jury room about the case came

6    in their opinion from that article, leading to her

7    reasonably conclude that they had read that news article.

8         Finally, at one point in the deliberations, a

9    marshal entered the room, as confirmed by both Jurors F

10   and L, and told them they -- the marshal told them they

11   could be heard outside, and basically keep it -- quiet

12   down.

13        No one asked for the marshal, and it appears that

14   the Court did not, or for the marshal to take any action.

15   And while the jurors in their affidavits said, well, they

16   didn't feel that affected by it, one of the jurors, Juror

17   L, commented that another juror seemed quieter the next

18   day.

19        So now the government asserts that Rule 606(b)(1)

20   precludes the Court from considering these affidavits, but

21   602(b)(2) of the Federal Rules of Evidence provides an

22   exception, and does permit jurors to present affidavits

23   and testify as to whether one, there was extraneous,

24   prejudicial information that was improperly brought to the

25   jury's attention, and or second, an outside influence was

                  *15-20652; USA v. COREY BAILEY, ET AL*

1    improperly brought to bear on any juror, and we agree

2    that's the law, but we assert that these affidavits show

3    that there were outside influences brought mostly by Juror

4    V.

5         The fact is that -- the fact that there was a

6    disagreement or hostility in the jury room is of no

7    relevance.  That's just way it is.  It's part of the

8    deliberations.

9         There's a quote, laws are like sausages.  It's

10   better not see them made.  So goes with jury

11   deliberations, better not to see how it is done, because

12   there's, you know, fighting amongst themselves,

13   disagreements, and so forth.  But here, there's more than

14   arguments and name calling.  There were outside influences

15   and extraneous information that informed the jury during

16   deliberations, and that's the heart of this motion.

17        There's no doubt, according to the affidavits,

18   that a marshal came in the jury room and spoke to the

19   jury.  There's a strong inference that one or more of the

20   jurors read the Detroit News article.  This is information

21   that was outside the evidence, outside the influence.

22        Juror V did not disclose that she had lived

23   adjacent to the area, did not disclose that she was aware

24   of the Bloods, aware of the graffiti.  These are things

25   that would have been excused for cause had this been

*15-20652; USA v. COREY BAILEY, ET AL*

1    known.

2         She did not disclose that she had personal

3    knowledge about how the gangs ruined the neighborhoods,

4    and that she felt that they were ruining the city, and

5    this kind of dovetail into the government's first

6    witness -- I forgot his name -- Mr. Jones, who testified

7    that his neighborhood had been ruined by these guys.  So

8    it sort of like corroborated the government's witness.

9         Now some of the allegations might be boarder line,

10   things that I've raised here.  Some are in dispute.  Some

11   I think are clear.  So I believe that the Court needs to

12   err on the side of caution, and in this case the side of

13   caution is to make sure that these defendants were

14   provided a fair and impartial jury during this trial.

15        The relief that the court of appeals recently

16   ordered in Ewing versus Horton was remanded for a Remmer

17   hearing because without a hearing, how can we be sure, and

18   that's all at this point that's being sought.

19        The government wants to sweep these issues under

20   the rug.  Let's -- what's done is done, but all the

21   defense wants is to shed light as to what occurred.  If

22   the hearing showed nothing occurred, what's the harm?  We

23   lost a few hours.  We spent a few extra hours, but I

24   submit these gentlemen's life and their future is worth a

25   few more hours of our time.  Thank you.

*15-20652; USA v. COREY BAILEY, ET AL*

1            **THE COURT:**  Okay.  Thank you.

2        Mr. Daly, you indicated an intention to add to the

3    argument?

4            **MR. DALY:**  I will wait for the government to

5    see if there's something that they say that needs to be

6    rebutted.

7            **THE COURT:**  All right.  Mr. Scharg?

8        **MR. S. SCHARG:**  Yes, your Honor.

9        On behalf of Mr. Porter, I would like to

10   incorporate what Mr. Magidson said on behalf of Mr. Shy,

11   but I think it is crucial that a Remmer hearing be held in

12   this matter, otherwise our clients are being deprived of

13   their right to a fair trial under the Constitution and due

14   process.  And once we found out -- once we were alerted

15   about the jurors' issues they were having, it's our

16   position that a Remmer hearing should have been conducted

17   immediately, and each one of the jurors being questioned

18   independently to inquire whether or not there were any

19   biases or prejudices due to our clients.

20        Your Honor, as Mr. Magidson said, I think it is

21   crucial to our clients since they are facing life

22   imprisonment, and not only for that reason, but for any

23   other reason that they need a fair trial, your Honor, and

24   due to the fact that we know what we know now from the

25   jurors that were interviewed by our investigator, it is

*15-20652; USA v. COREY BAILEY, ET AL*

1   crucial that these individuals be interviewed

2   independently by this Court, and allow us the opportunity

3   to question them, and make sure that -- in my case Mr.

4   Porter -- was treated fairly, and had a fair trial in this

5   matter.  Thank you.

6          **THE COURT:**  Thank you.

7          Mr. Feinberg, we're still waiting on your client.

8   It is now 2:30, and we haven't seen him, but again, if you

9   want to offer comments now, you may.

10         **MR. FEINBERG:**  I'll adopt what Mr. Magidson

11  and Mr. Scharg said.

12         **THE COURT:**  All right.  I'm still

13  anticipating giving you the opportunity to speak more if

14  you wish.

15         **MR. FEINBERG:**  I understand.

16         **THE MARSHAL:**  Mr. Bilkovic?

17         **MR. BILKOVIC:**  Where do I begin?  I know the

18  Court knows it, because both sides have been clear in

19  their briefs, but I want to read it in the record.

20  Federal Rules of Evidence 606(b), during an inquiring into

21  the validity of a verdict or indictment.

22         During an inquiring into the validity of a verdict

23  or indictment, a juror may not testify about any statement

24  made or incident that occurred during the jury's

25  deliberations the effect of anything on that juror or

*15-20652; USA v. COREY BAILEY, ET AL*

 1     another juror's vote or any juror's mental processes

 2     concerning the verdict or indictment.  The Court may not

 3     receive a juror's affidavit or evidence of a juror's

 4     statement on these matters.

 5          Two exceptions that potentially the defense argues

 6     here, one, a juror may testify about whether extraneous,

 7     prejudicial information was improperly brought to the

 8     jury's attention, or an outside influence was improperly

 9     brought to bear on any juror.

10          Contrary to what Mr. Magidson suggested -- and

11     although as we cite in our briefs -- sometimes courts are

12     tempted to order hearings even when they are not required.

13     This is that case.  It's not good enough for them to say

14     for everybody to feel better about this, even though the

15     law doesn't require it, let's hold a hearing.  That's not

16     what the law is.  The law is very, very clear.

17          Mr. Scharg mentioned that this should have been

18     brought to the Court's attention immediately.  They didn't

19     bring to the Court's attention immediately.  They had the

20     juror's affidavit December 15, 2018.  They waited two

21     months after that to file this motion.

22          So despite their claim they wanted this done

23     expeditiously, and this should have been addressed

24     immediately, the actions in this case of defense counsel

25     don't bear that out.

*15-20652; USA v. COREY BAILEY, ET AL*

1          I'm going to start not in the order of how my
2     brief is outlined.  I'm going to start in reverse to
3     demonstrate why this Court and other courts are warned not
4     to interfere with jury verdicts months or years later, and
5     more importantly, why courts cannot use juror affidavits
6     to do that.
7          Both of the these jurors in their affidavits,
8     different ways, indicated when they were hung, they sent a
9     note indicating that they were hung.  They were brought
10    into the court, and this Court, you, Judge Steeh, told
11    them that they had to reach a verdict of guilty or not
12    guilty.
13         Exhibit B from Juror L, when we were brought back
14    into the courtroom, we were told we had to go back to
15    deliberate and reach an unanimous verdict, either guilty
16    or not guilty.
17         Absolutely incorrect.  I'm not going to go through
18    what the Court instructed them, but we know, because we
19    all have the transcript, and the Court in its instructions
20    made it very clear that the jury did not have to return a
21    verdict of guilty or not guilty, and the Court instructed
22    the jury that in the end, your vote must be your own.  It
23    is important for you to reach unanimous verdict, but only
24    if you can do so honestly and in good conscience.
25         Those these two jurors now coming forward, and

*15-20652; USA v. COREY BAILEY, ET AL*

1    according to defense have these great claims that there

2    were improper things that went on in jury deliberations,

3    show with their affidavits why courts don't entertain

4    this.  They were both absolutely wrong about what this

5    Court instructed the jury when the jury was hung.

6          So let's go to another example.  The defense has

7    had access to these jurors, at least Juror F since

8    December of 2015.  The case that defense counsel cites and

9    attaches to the brief, lays out an affidavit that did

10   contain extrinsic evidence.  It talked about how jurors

11   got on the internet, and they brought in Facebook pages,

12   and they discussed the specifics about outside influences,

13   and what happened based on additional research.

14         The defense didn't do that in this case.  They had

15   months to do it.  They offer up that Juror V knew where

16   the OO7 strip club was, a fact that totally, totally,

17   totally insignificant at trial.

18         But what didn't the defense do?  In December, in

19   January when the affidavit was notarized, in February when

20   they filed their motion, in March after getting our motion

21   and seeing the issues we were raising, what didn't they

22   do?  To this point they have not let you know what fact it

23   is or facts that Juror F claims were outside influences

24   that were contained in the Detroit News article that were

25   not admitted at trial, and I submit to the Court there's

*15-20652; USA v. COREY BAILEY, ET AL*

1    one of two reasons for that:  One, Juror F was wrong, just

2    like she was wrong about what you instructed her, and that

3    the fact that she thought was in the Detroit News article

4    and not mentioned at trial was brought up at trial, or

5    number two, that fact that she is aware of is so

6    insignificant that they chose not to put it in their

7    motion, and not to put it in the affidavit because it

8    would have no bearing on this Court's decision.

9            I asking to you use your common sense, your Honor.

10   You have four defense lawyers --

11           **THE COURT:**  Let me interrupt you for just a

12   minute.

13           We do have Mr. Brown now with us.

14           **DEFENDANT BROWN:**  How you doing, sir?

15           **THE COURT:**  Very fine.

16           **DEFENDANT BROWN:**  How is everyone in the

17   courtroom doing?

18           **THE COURT:**  Okay.  Mr. Feinberg, are you all

19   set?

20           **MR. FEINBERG:**  Yes, your Honor.

21           **THE COURT:**  You may continue.

22           **MR. BILKOVIC:**  So the same defense attorneys

23   that filed a motion, join a motion, claimed that there was

24   outside influence because this juror knew the location of

25   the 007 strip club.  When they get this information from

                    *15-20652; USA v. COREY BAILEY, ET AL*

1    the same juror, and she tells them, Juror V talked about

2    facts.  I didn't remember hearing those facts at trial.  I

3    then read the Detroit News article, and then I realized

4    that's where she got those facts.  They want you to

5    believe that not one of them asked her, what fact?  What

6    did you hear?  Did you hear about Corey Bailey having been

7    charged with the Calloway murder?  What did you hear?  For

8    some reason that is not in here, and what is not in this

9    affidavit is just as important, if not more important,

10   than what is in the affidavit.

11        So let's move onto extrinsic evidence.  Extrinsic

12   evidence is not a juror using their own personal

13   knowledge.  Every one of these defense lawyers knew that

14   this juror, Juror V lived in Detroit for 51 years.  They

15   knew that her brother-in-law was retired from the Detroit

16   Police Department.  They knew that her son was currently

17   working for the Detroit Police Department.  They knew

18   their brother was murdered in 1991.  They knew that she

19   had a cousin killed in 2017.  Knowing all of this, it

20   should not come as a surprise to anybody that this juror

21   is aware of gang activity.

22        One of the things that we cite in our brief was

23   the Warger case that talks about voir dire, one of the

24   principal cornerstones in weeding out bias.

25        The six attorneys -- I believe it was six -- at

*15-20652; USA v. COREY BAILEY, ET AL*

1      least five that was present when this juror was seated in

2      the box, did not ask her one single question.  Not one.

3      The fact that a juror lives in Detroit, and as a result of

4      that, 51 years old, relatives that are in the police

5      department, the fact that that juror is aware of what --

6      of gang activity, the fact that she is aware of graffiti,

7      the fact that she lived allegedly in the Red Zone, that's

8      not what the courts are talking about when the talk about

9      extrinsic evidence.

10         I identified multiple cases, and the courts says

11     sometimes defense lawyers leaves jurors like that on there

12     because they can do exactly what they are now complaining

13     about.  They can educate other jurors about things that

14     those other jurors might not know about.  Courts are

15     clear, there's nothing wrong with that.  There's nothing

16     wrong -- one of the cases that I cited to the Court -- an

17     emergency room doctor that talked to the other jurors

18     about evidence relating to somebody getting shot and what

19     would have happened to blood flow when that happened in

20     their experience.  They knew that was an issue, and they

21     left that person on.  There's nothing wrong with that.  So

22     there is no extrinsic evidence that requires a hearing in

23     this case.

24         You talk about the marshal knocking on the door

25     and going in, and telling them to quiet down.  Case law is

*15-20652; USA v. COREY BAILEY, ET AL*

1    clear, neutral intrusion, that's not anything that results

2    in prejudice.  And one of the things that I would like to

3    know -- because it would add to the argument that I would

4    make, but despite requests, we have not been given

5    information as to who these jurors are -- Juror F's

6    affidavit says, it didn't bother her.  Juror L, in his

7    affidavit, says it didn't bother him, and Paragraph 9 he

8    does indicate there's another juror who was called, and I

9    don't know who that is.  But if that's a Juror F, again

10   Juror L is wrong, because if it is Juror F, Juror F said

11   that she was not bothered by that.

12        There's been no allegation that if that entrance

13   did happen, that anything was said that affected anybody,

14   anything was said by the marshal to hurry deliberations

15   along where the Court could look at that intrusion that

16   might have affected the jury verdict.

17        If you look carefully at the jury questionnaire,

18   the jury questionnaire -- and if you look carefully at the

19   motion, things that defense counsel is complaining about

20   that warrants them a new trial -- that she showed bias

21   against gang members, and as Mr. Magidson put in his

22   motion, and said in court today, that Juror F said, quote,

23   they must burn.  Juror V said that they must burn.  That

24   is nowhere in Juror F's affidavit.  Mr. Magidson said it

25   here, and put it in his motion.  It is nowhere in the

*15-20652; USA v. COREY BAILEY, ET AL*

1    affidavit, and I would submit to the Court that if based

2    on the evidence that these jurors heard, that juror, any

3    juror, felt defendants like these -- the evidence has

4    shown defendants like these, yeah, these are the people

5    that are doing this.  They are guilty of these crimes, and

6    we're going to find them guilty -- there's nothing wrong

7    with that.

8         Again, her reliance -- defense counsel indicates

9    her reliance on facts are not in evidence.  There's no

10   evidence of that in these allegations other than personal

11   knowledge that she had growing up 51 years in Detroit that

12   they didn't bother to ask her about for whatever reason.

13   They chose not to ask her about those questions.

14        So basically what they want to do is have a

15   hearing to do the things that if they had a valid claim

16   already would have been done, submit an affidavit from

17   these jurors that was complete and lays out specific facts

18   that were not evidence at trial, that would be prejudicial

19   if other jurors knew about them.  Facts from this Detroit

20   News article, instead of mentioning that she knew where

21   the OO7 strip club was.

22        So if I'm on a jury, and I live in Ann Arbor, and

23   somebody says that Spots Wings is on such a location, and

24   I say no, it's not.  It's somewhere else, that's improper?

25   That's not improper.  Juror are allowed to use that

                *15-20652; USA v. COREY BAILEY, ET AL*

1    experience.

2          So based on all the law that you have in this

3    case, based on the very clear direction from the Court of

4    Appeals, from the United States Supreme Court, there is no

5    evidence of extrinsic influences or other influences that

6    these affidavits have borne out that you can even look at,

7    because you have to start there.  What in these

8    affidavits, if anything, am I allowed to look at, and the

9    courts and the rule of evidence makes it very clear, very,

10   very limited information, and that limited information is

11   not what these affidavits go to, and as a result, I'm

12   asking the Court to deny the defendants' second motion

13   fork a new trial.

14          **THE COURT:**  All right.  Thank you, Mr.

15   Bilkovic.  Mr. Daly?

16          **MR. DALY:**  Thank you, Judge.

17          I want to address my arguments in two ways; the

18   first is a response to what the government has said, and

19   then I want to spend a little bit of time emphasizing why

20   we should have a evidentiary hearing, why that is

21   essential in this particular case.

22          So the government correctly read the rule, and we

23   know what the rule says.  It's no secret that the defense

24   is looking at the two exceptions that were read into the

25   record about extraneous information or influence that was

*15-20652; USA v. COREY BAILEY, ET AL*

1    brought to the jury's attention.

2         So I got the feeling that when the government was

3    talking that there wasn't any law to support what we were

4    saying, that's not correct.  So the law is there in the

5    form of the rule, and in the form of Sixth Circuit cases

6    that we cited.

7         One of the government's complaints is that we

8    waited too long.  Well, in this case there was a

9    semi-anonymous jury.  We didn't know who the jurors were.

10   We couldn't reach out and touch them or contact them.  We

11   had to wait until they contacted us.

12        The time of the delay really is minimal.  It's a

13   few months.  The verdict came in at the end of August.  In

14   the fall, late fall, early winter is when the one juror

15   called me, and was clearly upset about what had happened,

16   and some of the words that she used and that are in the

17   affidavit is that she described the deliberations as

18   misleading, disturbing, things of that nature.  So she was

19   volunteering that information to us, and then it was put

20   into the form of an affidavit.

21        So that government complaint about the delay is

22   really falls on deaf ears because one, it was not very

23   long, and two, we had to rely on the jurors to come

24   forward in order to speak with us.  So that's not really

25   important consideration for you at all.

                *15-20652; USA v. COREY BAILEY, ET AL*

1           I think the government is correct when they go

2      back to the affidavits, and they sort of sort through the

3      difference between what would fall into the exceptions,

4      and what falls into the first category which would be not

5      be a sufficient basis for a new trial.

6           For example, they correctly point out that their

7      interpretation of your instruction after they indicated

8      that they were hung, made them believe that there were

9      only two possible verdicts, guilty or not guilty, that

10     there was no such thing of a hung jury.  That could not be

11     the basis of a new trial.

12          What we did though, we didn't want to parse out

13     all the information that they were giving us.  We wanted

14     to put it all there to make as complete record as we could

15     with the affidavits.  So there are certain things in there

16     that would not qualify for a new trial.  I think it's

17     obvious.  It's not difficult to sort through and figure

18     out what is what.

19          The news articles which came out shortly before

20     trial, if it was a passing article, like on the back page

21     of the News, and it was like a few paragraphs, the

22     government may have a position.  This was I believe -- and

23     I don't remember at this point -- an eight part expose.

24     It was very extensive.  It had a lot of information in it.

25          That document, that news article, we will submit

*15-20652; USA v. COREY BAILEY, ET AL*

1    to you and to the government -- they've seen it, we've all

2    seen it, the defendants have it, and we will attach that

3    as a supplemental exhibit for you to see -- once you read

4    it, you will see that there is, in fact, a lot of

5    information in there that was not disclosed during the

6    trial.

7         I don't remember everything in it, but one of my

8    guesses is that they made have had information about

9    another homicide that Mr. Bailey was allegedly involved

10   in, and the government decided not to introduce it.  So

11   that would be something that we would be looking for, but

12   we can that for you with the Court's permission to point

13   out why this news article was so devastating.

14        And the other thing that is extraneous that Mr.

15   Magidson pointed out is the fact that this juror, Juror V

16   lived near -- just east of Gratiot, real close to the Red

17   Zone that was identified as the area that the Seven Mile

18   Bloods operated in.

19        Now the government's position I find somewhat

20   speculative to say the least that if you lived in Detroit,

21   number one, you know about gangs, and number two, you have

22   a particular feeling about it.  The difference is -- and

23   this is just common sense -- the closer you are to the

24   activity, the more response you are going to have to it.

25   If you're close to the Red Zone, and you're seeing

*15-20652; USA v. COREY BAILEY, ET AL*

1     tagging, and you can see if driving with your own eyes

2     down Gratiot, what's going on, or you hear because you're

3     in the neighborhood.  That's a big difference than living

4     in the high rise on the river, and you never have contact

5     in the neighborhood.

6          So there's lots of people that live in Detroit

7     that don't have contact with gangs, and don't even know

8     that there are gangs on the east side, gangs on the south

9     side in different areas of Detroit.  They just don't know

10    it.  When you say it, they say, I didn't know there were

11    gangs in Detroit.  We thought that was out in Los Angeles

12    or something.  So that argument doesn't carry much weight

13    either.

14         The other thing that the government tried to do,

15    they tried to shift on to us what they are claiming is our

16    failure to interrogate this juror.  On its face, it looks

17    like it would have some validity, except you've got to

18    look at it in the context of what happened.

19         This juror came onto the panel at the end.  Now

20    she sat there and listened to all of the questions being

21    asked by the lawyers to other jurors and you, and what you

22    said to this juror was, is there anything that you heard

23    by any questions by all of the other lawyers and by myself

24    that you need to respond to, and bring to our attention,

25    and we do that because it's a waste of time for us to go

*15-20652; USA v. COREY BAILEY, ET AL*

1    back and ask each juror that gets up in the box all of

2    those questions.  We rely on the jurors to listen.  In

3    fact, I believe you probably told them to listen to all of

4    the questions.

5         So what we are doing, we're relying on the jurors

6    to bring to our attention information that they know they

7    should disclose.  We are relying on them to be honest to

8    come forward by asking the general question, is there

9    something we need to know.

10        She knew.  She should have told us that she lived

11   near there.  She knew that she should have told us that

12   she had particular feelings about gangs.  She knew that

13   she should have told us that she was going to conclude

14   that those gang members were here for a reason, all of

15   those things that violates our client's right to be

16   presume innocent for example.

17        Those are things that we had to rely on her to

18   bring to our attention, and she didn't, and that's what

19   makes this a particularly meritorious issue, not because

20   we didn't do our job, but because she didn't come forward

21   with that information.

22        The other thing that I want to talk about is why

23   we need an evidentiary hearing.  The government is correct

24   we cannot win this motion on the affidavits.  We just

25   can't.  An evidentiary hearing is essential for us to make

*15-20652; USA v. COREY BAILEY, ET AL*

1    out our case.  An evidentiary hearing is essential to the

2    government so that they can quit complaining about not

3    having an opportunity to speak to the jurors and find out

4    exactly what happened; so they can question the jurors in

5    open court.  It would be helpful to them as much as to

6    you.

7         But most importantly it is essential for you to

8    hear the jurors.  You have to see them.  You have to look

9    at them in the eye.  You have to make a credibility

10   determination about whether or not they are being truthful

11   and accurate in what they are saying, and you are the only

12   one that can do it, and you can only do it through a

13   hearing.

14        And so when the government says in general, or in

15   the pleadings, we don't like to drag jurors in because

16   it's a form of harassment, that's not this case at all,

17   because the jurors voluntarily came to us.  We're not

18   dragging them in here under circumstances that they don't

19   want to be here.  In their affidavits they say explicitly,

20   I'm prepared to come into court under oath and testify so

21   they are willingly coming to court.  Now maybe Juror

22   Number -- or Letter V maybe somewhat reluctant, but that's

23   one juror.  One juror.  So that argument falls flat as

24   well.

25        The other part about the evidentiary hearing

*15-20652; USA v. COREY BAILEY, ET AL*

1      that's important is that when we filed our brief, and we

2      talked about the evidentiary hearing in response to the

3      government's position, they cited everything outside the

4      Sixth Circuit, but the Sixth Circuit says is that when

5      there is a prima facie case, the affidavits serve as the

6      prima facie case.  The court has -- and the word they

7      use -- is duty -- there's a duty or an obligation on

8      behalf of court to investigate these types of allegations

9      when we file the affidavits.

10            If we didn't file the affidavits, there wouldn't

11     be a playable plain for us.  So that's the only purpose of

12     the affidavit, isn't to be a final statement about what we

13     expect.

14            But what you heard from the government basically

15     is a factual dispute.  I mean, basically what they said to

16     you is well, we don't agree with this, and we don't think

17     you should infer from that, this, and defense says this,

18     and we say that.  The purpose of the evidentiary hearing

19     is for us to figure out what are the facts that we want to

20     present to you in dispute, and let you decide.  Let you

21     decide whether or not in this case the defendants were

22     denied a right to fair trial through this jury, and

23     there's more than sufficient and specific facts that we

24     set forth, Judge, that would allow you to grant the

25     hearing, and I do think under the circumstances, Judge,

                    *15-20652; USA v. COREY BAILEY, ET AL*

1    you have an obligation.  I think you have an obligation to

2    the system, to yourself, to the government, to the

3    defendants to conduct a hearing.

4            **THE COURT:**  All right.  Thank you, Mr. Daly.

5        Mr. Feinberg?

6            **MR. FEINBERG:**  Yes, your Honor.

7        I guess for the record, I was mistaken when I

8    thought I saw Mr. Brown in the court because when he came

9    in, he told me he had just arrived.

10           **THE COURT:**  All right.

11           **MR. FEINBERG:**  I agree with Mr. Magidson and

12   Mr. Daly with their arguments, but I think one of the real

13   key issues is while we were able to get affidavits from

14   Jurors F and L, we did not attempt to seek Juror V to find

15   out whether or not the allegations that the other two

16   jurors were alleging came from her, did come from her in

17   order that find out her credibility to determine whether

18   or not there were improprieties going on in the jury room

19   about her telling the rest of the jurors her own -- her

20   own feelings based on her growing up in the area.

21       Again, Mr. Daly indicated the reason she was not

22   asked any questions, wasn't because there weren't any

23   questions to ask her.  This Court indicated to her when

24   she came on -- because they were all sitting in the

25   courtroom while the voir dire it was going on -- whether

*15-20652; USA v. COREY BAILEY, ET AL*

1   or not there was anything that she heard or knew that she

2   is responsible to report to us?  She said no, meaning that

3   without asking whether or not she lived in the close

4   proximity of the Red Zone, she indicated no.  Whether or

5   not she gained any information, or knew of any information

6   about the gangs in that area that she was not suppose --

7   or if she acknowledged, she would have been excused.  The

8   fact that she didn't mention that indicated that she had

9   no knowledge, but if she gave that knowledge to the jury

10  during deliberation that we should have known that she was

11  capable of knowing, she would not have been on the jury.

12          Again, I agree with Mr. Daly when he said the only

13  way to really determine if there was really any

14  impropriety is to have a evidentiary hearing.  The

15  defendants are facing -- Mr. Brown is facing a lot of

16  time, an enormous amount of time up to life imprisonment

17  according to the probation officer.  To take another week,

18  two weeks, even a month to make a final determination of

19  whether or not there was any jury impropriety is no skin

20  off the Court's nose or the government or the attorneys is

21  enormously meaningful to the defendants, and I would

22  concur that the Court should grant and conduct the

23  evidentiary hearing.

24          **THE COURT:**  Okay.  Thank you.

25          **MR. S. SCHARG:**  May I add something?

*15-20652; USA v. COREY BAILEY, ET AL*

1              **THE COURT:**  Sure.

2              **MR. S. SCHARG:**  Your Honor, we know that this

3     had to be so severe for, as Mr. Daly said, the jurors, we

4     didn't go looking for them.  They contacted us.  So for

5     them to contact us, we know the issues they were

6     experiencing in the jury room had been to be pretty,

7     pretty horrible for the jurors to have to feel that way in

8     order to call the defense attorneys about the issues they

9     were experiencing, because this issue doesn't happen all

10    the time.  This is a very rare instance, and these jurors

11    contacted us.  They explained to us, explained to Mr.

12    Daly, the issues they were experiencing in the jury room,

13    which affects these defendants and their right to be free,

14    and have a fair trial in this matter.

15             We spent 10 weeks in trial at least, and longer

16    that the case was going on, for quite a long time, almost

17    two years, and what is two or three hours?  How can that

18    two or three hours hurt to us have a hearing to see what

19    occurred in the jury?  What is two or three hours when we

20    spent two years and 10 weeks in trial?

21             And there's been testimony today by Mr. Magidson,

22    Mr. Daly, as well as myself and Mr. Feinberg, and you have

23    the government making their positions in this matter, and

24    arguing about what these affidavits said and what they

25    didn't say.  Well, let's bring the jurors back.  Let's get

*15-20652; USA v. COREY BAILEY, ET AL*

1   the real version of what occurred.  Let the jurors explain

2   to you why they contacted us, and what they were

3   experiencing in that jury room, and to see whether or not

4   these gentlemen actually had a fair trial or not.

5          So respectfully, we would ask you to consider an

6   evidentiary hearing in this matter.

7                  **THE COURT:**  Thank you, Mr. Scharg.  Anybody

8   else on the defense side?  Mr. Bilkovic?

9                  **MR. BILKOVIC:**  Thank you, your Honor.

10          Your Honor, Mr. Scharg says that this is an

11   unusual situation.  This is not an unusual situation.  It

12   happens all the time, which is why there is a court rule

13   on it, by there is rules of evidence on it, and why there

14   are thousands of cases on it that warn courts not to do

15   this.

16          I'll touch on the timing briefly of these

17   affidavits because I actually got something wrong.  Mr.

18   Daly indicated that that's really not an issue.  I'm not

19   the one that raised it.  Mr. Scharg did, but interestingly

20   enough, the first juror they talked to -- and I apologize

21   for getting this wrong earlier -- the first juror they

22   talked to was Juror F.  It wasn't until after they talked

23   to Juror F that they found out about another juror, and

24   then they talked to that juror, Juror L.  Juror L's

25   affidavit is dated December 15, 2018.  Juror F's affidavit

*15-20652; USA v. COREY BAILEY, ET AL*

1   is dated January 15, 2019.  So the second juror that they

2   talked to signed an affidavit December 15th, and we know

3   that that juror was talked to after they talked to Juror

4   F, which means they talked to Juror F before

5   December 15th, and what do we still don't have after Mr.

6   Daly getting up again, and Mr. Scharg getting up, and Mr.

7   Feinberg getting up?  They still will not tell you, and

8   have not told you what fact did this juror say that Juror

9   V brought up that she believes was from the Detroit News

10  article.

11        This is their opportunity to do it.  They have to

12  convince you that there is extrinsic evidence that

13  requires a hearing.  They just can't say there's extrinsic

14  evidence, but we're not going to tell you.  They have to

15  tell you because you have to make a determination as to

16  whether it's evidence that could prejudice a jury, and the

17  fact that they told you about the OO7 strip club not in

18  one, but both affidavits and refuse to tell you what this

19  fact is that was allegedly contained in the Detroit News

20  article should be glaring to this Court.

21        They want to go on a fishing expedition.  They

22  want to bring these two jurors in, and hope that it will

23  prompt you to then harass Juror V, and bring her in.

24        Mr. Daly said the government doesn't want you to

25  harass the jurors.  I don't want -- the government, that's

*15-20652; USA v. COREY BAILEY, ET AL*

1    not our position.  That is the United States Supreme

2    Court's position.  Those are the Court of Appeals opinions

3    and their positions that this court should not engage in

4    that type of behavior.

5          They have had since at least December 15th to

6    follow up with this juror and say, you know what?  There

7    was this prejudicial article that appeared in the Detroit

8    News, a six piece article.  You made an allegation that

9    you read that article, and that there was something in

10   there that was discussed during trial.  We need to know

11   what that is.  That was not done, and this Court needs to

12   ask why, and again, the answer is obviously.  It's either

13   insignificant, or it simply didn't happen.

14         She was wrong, just like she was wrong about what

15   this Court instructed, and Mr. Daly conceded that what the

16   jurors thought you had told them is not the basis of a new

17   trial, but again, the reason why courts don't allow this

18   is Juror Affidavit L doesn't say that's what he thought

19   you said.  He said we were told we had to go back to

20   deliberate and reach an unanimous verdict, either guilty

21   or not guilty, and we all left with the impression that

22   saying hung is not an option, but he puts in his affidavit

23   that we were told by you, Judge Steeh, we had to go back

24   and find them guilty or not guilty.

25         When it comes to the personal knowledge, again of

*15-20652; USA v. COREY BAILEY, ET AL*

1      the juror, you don't look at this in a vacuum.  I'm sure

2      there are jurors that have moved here from other cities,

3      and live in million dollars high rises, or $500,000 high

4      rises that have been here for a few months that may not

5      understand the crime problem in the city of Detroit, and

6      may not understand gangs, but this juror in her affidavit,

7      Juror V, let the defense attorneys know that she's been in

8      Detroit for 51 years, and oh, by the way, her

9      brother-in-law retired from the Detroit Police Department,

10     and oh, by the way, her son is currently a Detroit Police

11     Officer.

12          They didn't ask one question in follow up to that,

13     and the Court has to assume that there's a strategy reason

14     they chose not to do that.  It's certainly in a jury

15     selection that took three days, a trial that took 10

16     weeks, the reason certainly is not because they didn't

17     want to waste the jury's time ask additional questions.  I

18     mean, this trial lasted 10 weeks instead of because five

19     weeks because of how many times the same question was

20     asked.

21          I would have to go back and look at it, but I

22     would venture to guess that that juror was the only juror

23     that was impaneled on this jury that not one of the

24     defense lawyers asked one question to.  So for whatever

25     reason they had for not doing that, that doesn't give them

                    *15-20652; USA v. COREY BAILEY, ET AL*

1    a license to come in now and say, you know what?  She bias

2    against gangs, and lived near the Red Zone, so that

3    entitles us to a hearing and potentially a new trial.

4         I would also submit, I don't believe I mentioned

5    it in our brief, but in the Warger case, the court

6    specifically held that Rule 606(b) precludes a party

7    seeking a new trial from using a juror's affidavit of what

8    another juror said in deliberations to demonstrate other

9    juror's dishonesty during voir dire.  That the United

10   States Supreme Court opinion.

11        So again, we come back to basically what this is

12   about is, Judge Steeh, months later, couple of the jurors

13   were upset about some things that happened.  So we kind of

14   want another hearing because we want another shot at this.

15   The law doesn't allow that.  You shouldn't grant it.

16        Thank you.

17             **THE COURT:**  All right.  I appreciate the

18   presentations on both sides.  I'm assuming there are no

19   other remarks.  The Court will take the matter under

20   advisement, and issue a written opinion as soon as

21   possible.  Thank you.

22             **DEFENDANT BROWN:**  Thank you, Judge Steeh.

23             **THE COURT:**  Okay.  You're welcome.

24             (Proceedings concluded.)

25                    -   -   -


                 *15-20652; USA v. COREY BAILEY, ET AL*

```
 1                    C E R T I F I C A T I O N
 2              I, Ronald A. DiBartolomeo, official court
 3    reporter for the United States District Court, Eastern
 4    District of Michigan, Southern Division, appointed
 5    pursuant to the provisions of Title 28, United States
 6    Code, Section 753, do hereby certify that the foregoing is
 7    a correct transcript of the proceedings in the
 8    above-entitled cause on the date hereinbefore set forth.
 9              I do further certify that the foregoing
10    transcript has been prepared by me or under my direction.
11
12    s/Ronald A. DiBartolomeo              _December 3, 2019
      Ronald A. DiBartolomeo, CSR                 Date
13    Official Court Reporter
14                          -   -   -
15
16
17
18
19
20
21
22
23
24
25
```

*15-20652; USA v. COREY BAILEY, ET AL*