<pre>
  1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
  2                         SOUTHERN DIVISION

  3

  4   UNITED STATES OF AMERICA,

  5              Government,
                                         HONORABLE GEORGE CARAM STEEH
  6         v.
                                         No. 15-20652
  7   D-1   BILLY DARRELL ARNOLD,
      D-2   STEVE RUMEAL ARTHUR,
  8   D-3   EUGENE FISHER,
      D-4   COREY BAILEY,
  9   D-5   QUINCY GRAHAM,
      D-6   ROBERT BROWN, II
 10   D-7   JEROME GOOCH,
      D-8   MICHAEL ROGERS,
 11   D-9   DERRICK KENNEDY,

 12              Defendants.
      _____/
 13
                          STATUS CONFERENCE
 14
                    Monday, November 21, 2016
 15
                         -    -    -
 16
      APPEARANCES:
 17
      For the Government:          CHRISTOPHER GRAVELINE, ESQ.
 18                                Assistant U.S. Attorney

 19
      For the Defendants:          MARIA MANNARINO, ESQ.
 20                                ERIC K. KOSELKE, ESQ.
                                   On behalf of Billy Arnold
 21
                                   JOHN M. MCMANUS, ESQ.
 22                                On behalf of Steve Arthur

 23                                HENRY SCHARG, ESQ.
                                   On behalf of Eugene Fisher
 24
                                   JOHN MINOCK, ESQ.
 25                                KEITH SPIELFOGEL, ESQ.
                                   On behalf of Corey Bailey
</pre>

```
 1                                MICHAEL A. RATAJ, ESQ.
                                 On behalf of Quincy Graham
 2
                                 JAMES L. FEINBERG, ESQ.
 3                               On behalf of Robert Brown, II

 4                               CHRISTOPHER M. SEIKALY, ESQ.
                                 On behalf of Jerome Gooch
 5
                                 DOUGLAS R. MULLKOFF, ESQ.
 6                               On behalf of Michael Rogers

 7                               BARTON W. MORRIS, JR.
                                 On behalf of Derrick Kennedy
 8
                                       -    -    -
 9

10             To Obtain Certified Transcript, Contact:
          Ronald A. DiBartolomeo, Official Court Reporter
11            Theodore Levin United States Courthouse
             231 West Lafayette Boulevard, Room 1067
12                  Detroit, Michigan  48226
                         (313) 962-1234
13
            Proceedings recorded by mechanical stenography.
14         Transcript produced by computer-aided transcription.

15

16

17

18

19

20

21

22

23

24

25
```

1                          I  N  D  E  X

2   _____ Page

3   Status Conference                                           4

4

5

6

7

8

9

10

11

12

13

14

15                      E  X  H  B  I  T  S

16  Identification_____Offered   Received

17

18                      N       O       N       E

19

20

21

22

23

24

25

                   *15-20652; USA v. BILLY ARNOLD, ET AL*

```
 1                            Detroit, Michigan
 2                            Monday, November 21, 2016
 3
 4                      -    -    -
 5            THE CLERK:  Case Number 15-20652, United
 6   States of America versus Billy Arnold, Steven Arthur,
 7   Eugene Fisher, Corey Bailey, Quincy Graham, Robert Brown,
 8   Jerome Gooch, Michael Rogers, Derrick Kennedy.
 9            THE COURT:  Good morning.
10            MR. GRAVELINE:  Chris Graveline and Raj
11   Prasad on behalf of the United States, your Honor.
12            THE COURT:  Welcome.
13            MR. MORRIS:  Barton Morris on behalf of
14   Derrick Kennedy.
15            MS. MANNARINO:  Good morning.  Maria
16   Mannarino on behalf of Defendant Number 1, Mr. Billy
17   Arnold.
18            MR. KOSELKE:  Good morning.  Eric Koselke on
19   behalf of Billy Arnold.
20            MR. MCMANUS:  Your Honor, John McManus for
21   Steven Arthur.  Good morning.
22            MR. RATAJ:  Good morning, your Honor.  Mike
23   Rataj on behalf of Mr. Quincy Graham.
24            MR. MULLKOFF:  Doug Mullkoff on behalf of
25   Michael Rogers.
```

*15-20652; USA v. BILLY ARNOLD, ET AL*

1        **MR. SEIKALY:**  Christopher Seikaly on behalf

2   of Jerome Gooch.

3        **MR. SCHARG:**  Good morning, your Honor.  Henry

4   Scharg on behalf of Eugene Fisher, Number 3 on the

5   indictment.

6        **MR. MINOCK:**  Good morning.  If it please the

7   Court, John Minock on behalf of Corey Bailey.

8        **MR. FEINBERG:**  James L. Feinberg, attorney

9   for Robert Brown.

10       **THE COURT:**  Mr. Spielfogel is on the phone.

11   He's learned counsel for Mr. Bailey.

12       **MR. SPIELFOGEL:**  Yes, I am.  Good morning.

13       **MR. FEINBERG:**  Your Honor, I have learned

14   counsel Jack Martin.  Apparently he has not called in, and

15   he is not here.  I don't know what his status or his

16   preference is.

17       **THE COURT:**  Okay.

18       **MR. FEINBERG:**  It was suggested by the

19   marshals that the attorneys sit behind their clients in

20   the jury box.  So that's why I'm here.

21       **THE COURT:**  That's fine.  Anybody else want

22   to do that, that's fine.

23       **MR. SCHARG:**  May I request that my client sit

24   behind me in the first row?

25       **THE COURT:**  That will be fine.  Go ahead.

*15-20652; USA v. BILLY ARNOLD, ET AL*

1          **MR. GRAVELINE:**  Good morning.  So we set this

2     status conference in September when we were talking about

3     that there was going to be a superseding indictment in

4     this case, we have superseded, a third superseding

5     indictment, which has added three additional defendants

6     and additional counts to both existing defendants and to

7     the three new defendants as well.

8          Everyone now has been arrested and or made their

9     initial appearances on at least one of the indictments in

10     this case.  There's a number of people who needs to be

11     arraigned on the third superseding indictment, and if the

12     Court is willing to do that, we can do that during this

13     proceeding or we can handle it in duty court at 1:00, but

14     I think we can have everyone arraigned on the third

15     superseding indictment by end of the day today.

16          So with that, we just put out about 1,100 more

17     pages discovery as of Friday.  I talked to Mr. Anton

18     today.  I think we put that out Friday night.  So it

19     should be in the mail today and received today.  That will

20     be given out to defense counsel.  We have additional

21     discovery right now.

22          One of the tasks that we're going through is to

23     make sure that all of the lab results, all of the -- any

24     type of testing, any type of expert, I was going to

25     prepare an expert witness notice for defense in this case

*15-20652; USA v. BILLY ARNOLD, ET AL*

1    hopefully no later than December 15th, so that they know

2    exactly who we might call in terms of experts, and what

3    types of evidence might be presented by experts by

4    December 15th, and I believe that we will have the

5    majority of the discovery out in this case by the end of

6    the year by December 31st in this case.

7         The issue that I think is going to come up from

8    the defense perspective is a lot of the discovery,

9    especially some of the things linking different defendants

10   to Jencks material, and so that might not be coming.  It

11   might not be readily apparent how we're linking some of

12   the defendants to certain shootings until we release

13   Jencks, and that won't be until far closer to the trial,

14   but I believe what we will be able to disclose anything

15   non-Jencks will be done by December 31th in this case.

16        One of the things that I would like to do was

17   propose prospective trial groups to the Court today, and

18   essentially my methodology on this was to put anyone

19   facing death eligible charges in the first group, and then

20   fill in that group with defendants who are currently in

21   custody.

22        So the proposed trial groups -- and clearly this

23   is subject to both the Court's approval and defense

24   counsel's objections -- but the proposed trial group that

25   the government is going to put forward is in Trial Group

*15-20652; USA v. BILLY ARNOLD, ET AL*

1      1, Billy Arnold, Quincy Graham, Robert Brown, Jerome

2      Gooch, James Robinson and Matleah Scott.

3              Trial Group 2 would be Corey Bailey, Michael

4      Rogers, Derrick Kennedy, Devon Patterson, Jeffrey Adams,

5      and Arlandis Shy.

6              Trial Group 3 would be Steven Arthur, Eugene

7      Fisher, Christopher Owens, Anthony Lovejoy, Diondre

8      Fitzpatrick and Donnell Hendrix.

9              I think the one exception to the rule that I think

10     immediately comes out is Corey Bailey, who we propose in

11     Trial Group 2 is one of the death eligible defendants.

12     However, the reason we put -- or suggested Mr. Bailey in

13     Trial Group 2 is he is serving a custodial sentence

14     already in the Bureau of Prisons, and so while he has not

15     been given a pretrial bond in this case, he's already in

16     incarcerated on another case.

17             So if we're going to try to get somebody who is in

18     pretrial custody case heard first, I thought that would be

19     best to move one of the other defendants who is being held

20     in pretrial incarceration before Mr. Bailey, and so that's

21     why we put him in Trial Group 2 as oppose to Group 1.

22             I had a brief conversation this morning with the

23     Court's case manager about what could possibly be some

24     realistic trial dates in this case.  We initially started

25     looking at July, maybe toward the end of July for Trial

*15-20652; USA v. BILLY ARNOLD, ET AL*

1    Group 1.  I think based upon the Court's calendar, it

2    appears that the third week of August would probably be a

3    good trial date for Trial Group 1.  I believe that would

4    give us time to resolve the death legibility defendants

5    and pretrial motions in this case.  I anticipate at least

6    a two month long trial, and so if we began in the third

7    week of August, I would say trial would continue on until

8    at least mid-October.

9         For Trial Group 2, based on that, I would suggest

10   a mid-November trial date, and with a mid-November date,

11   that would probably go to the middle of January, and then

12   for Trial Group 3, a mid-February 2018 trial date.

13        **THE COURT:**  When?

14        **MR. GRAVELINE:**  Mid-February of 2018.

15        Now it's been my experience in these type of

16   cases, sometimes people plead out in a six defendant trial

17   group.  So if someone in Group 2 wanted to have his case

18   heard before mid-November and be part of Trial Group 1, we

19   will be able to accommodate sliding people up into Trial

20   Group 1.  We will work to resolve some of the cases by

21   pleas so we can have a better idea.

22        I don't know the Court's preference, but both

23   myself and several of the defense counsel on this case

24   have been part of large trials before.  I think my only

25   personal opinion, seven becomes the absolute far end of a

*15-20652; USA v. BILLY ARNOLD, ET AL*

1    big trial can be and be effective, but if the Court wants

2    less or more, I'll take whatever guidance you give on

3    that, but we thought we would start with at least this

4    initial group of six people.

5              **THE COURT:**  Okay.  All right.  Does the

6    defense counsel have any comments on general concept of

7    making death eligible defendants the -- and other in

8    custody defendants up to comprise the first group for

9    trial?  Does anybody think that is a bad idea?

10             **MR. FEINBERG:**  Jim Feinberg for Mr. Brown.

11   Since Mr. Brown is just indicted on the death penalty

12   eligible counts, learned counsel has been appointed, but

13   he has not submitted his entire budget, and has not

14   started proceedings as far as what learned counsel needs

15   to do did, along with a litigation specialist and a

16   paralegal since he is not either here or on the phone, I

17   don't know how much time he is going project to be needed

18   for his job.

19             So I can't say that the August trial date is

20   realistic.  I certainly have no objection if the death

21   penalty eligible count is approved by DOJ, for Mr. Brown

22   to be in Group 1, but if for some reason it is declined, I

23   don't know, when he is going to be going ready, but based

24   on that, I have no objection to being with Group 1 based

25   on Mr. Martin's litigation specialist being ready with

*15-20652; USA v. BILLY ARNOLD, ET AL*

1    everybody else Group 1 to be tried.

2            **THE CLERK:**  Thank you.  I might just ask,

3    other than Mr. Spielfogel who is on the phone, any other

4    learned counsel here?

5            **MR. KOSELKE:**  Eric Koselke on behalf of Mr.

6    Arnold.  We would ask not to go with the first group for

7    several reasons:  Number one, as Mr. Graveline indicated,

8    we don't have all the discovery yet in the case, and I

9    think there's a potential -- I don't think it's definite

10   yet -- for an additional superseding indictment or

11   potential additional defendants.  That all will affect our

12   preparations.

13        I know I can speak on behalf of our defense team,

14   we have had significant difficulty obtaining records.  The

15   more time we can get -- we're going to need more than the

16   non-eligible capital defendants to prepare the capital

17   phase, and therefore, we request to be placed in one of

18   the later groups.

19           **THE COURT:**  All right.

20           **MR. FEINBERG:**  Based on what he said, I

21   believe Mr. Martin, who is my learned counsel, would

22   probably want to do what was just suggested by prior

23   counsel's client.

24           **THE COURT:**  All right.  My first reaction to

25   the general question similar to what was just advanced by

*15-20652; USA v. BILLY ARNOLD, ET AL*

1    learned counsel, that is that the process of deciding

2    death eligibility or not, whether it is going to be

3    withdrawn or not, from my prior experience, it is a pretty

4    dragged out process, and now with the change of

5    administration even more so, and in addition to the

6    argument that mitigation evidence will have to be the

7    subject of discovery, and in addition to the discovery

8    otherwise required.  So what is your reaction, Mr.

9    Graveline?

10            **MR. GRAVELINE:**  In terms of defense counsel

11   being in collection of their own mitigation evidence, I

12   can't speak to that.  So if they need more time, they need

13   more time.  I can't speak to that.

14            In terms of interacting with Washington D.C., it's

15   been my experience, less time is better.  Making them make

16   a decision is better then giving them, well, you don't

17   have to make a decision until nine or 10 or a year from

18   now.  They will take nine months, 10 months, 11 months to

19   make a decision because you've given them that much time.

20            That's why I proposed it this way.  It's been my

21   experience working with Washington D.C. on these types of

22   issues, give them a deadline.  Make them make a decision,

23   and then they will usually make a decision.  Washington

24   D.C. is never going to make decision without us setting a

25   deadline to make a decision.

*15-20652; USA v. BILLY ARNOLD, ET AL*

1          **THE COURT:**  I see.

2          **MR. GRAVELINE:**  And I think flexibility is

3    critical, and I definitely want to work with the defense

4    teams on that.

5          On the flip side, if we need to flip Trial Group 1

6    and Trial Group 2 and move things around, I can understand

7    that as well.  It's just that my experience that

8    setting -- you know, this is a firm trial date.  This is

9    when we need a decision to be made by.  That advances the

10   process as oppose to take away from the process.

11         **MR. MINOCK:**  John Minock for Corey Bailey.

12   In this case we don't have all the discovery yet, and the

13   breaking of the defendants into trial groups was just made

14   known I think to the defense this morning.

15         Speaking for Mr. Bailey, I can't tell you now

16   whether we have an objection or would seek a severance

17   from any of the defendants in Trial Group 2, simply

18   because we don't have all the information, and we haven't

19   analyzed the case with the eye towards that yet.

20         So preliminarily, I don't have problem with it,

21   but I want to be clear that depending on what we discover,

22   there maybe a severance issue down the road.

23         **MR. RATAJ:**  Mike Rataj on behalf of Mr.

24   Graham.

25         I would echo Mr. Minock's comments regarding that

*15-20652; USA v. BILLY ARNOLD, ET AL*

1    severance, and that I haven't looked at all of the

2    discovery, but I also want to put on the record that my

3    client has expressed his speedy trial rights.  I can't

4    tell you where we are on that right now.  I have not

5    calculated it, but if we go in August, we may have an

6    issue with speedy trial issues.

7              THE COURT:  All right.  We have had the last

8    of the defendants arrested and not yet arraigned?

9              MR. GRAVELINE:  That's correct.  We will

10   complete arraignments, and I believe speedy trial clock

11   starts today.  The government will be making a motion to

12   toll the speedy trial clock based on regarding the

13   complexity of the case, some of the issues involved, the

14   number of defendants, and motion practice.

15         So we will be submitting that motion, if not

16   today, then by before Thanksgiving for the Court's

17   consideration.

18              THE COURT:  All right.

19              MR. SEIKALY:  Your Honor, Christopher Seikaly

20   on behalf of Mr. Gooch.

21         I would join in on Mr. Rataj's statement.  I have

22   not gotten all of the discovery.  There may be an issue to

23   sever, and then we got people that are not even involved

24   in any shootings or killings going to trial with someone

25   who's a death penalty case, that kind of takes the other

*15-20652; USA v. BILLY ARNOLD, ET AL*

1    defendants down because of the severity of the charges of

2    the people who are assaultive and charged with the

3    killings, and individuals that can't be tied to any of

4    those.  So that's an issue that we need to address.

5              **THE COURT:**  We don't have -- I understand we

6    don't have a written motion yet.

7              **MR. GRAVELINE:**  For the speedy trial?

8              **THE COURT:**  The whole determination of the

9    groups.

10             **MR. GRAVELINE:**  No, and so I'll put forth the

11   motion in a written motion for the Court's consideration,

12   and that will elicit a response from all defense counsel.

13        I will say this, in analyzing these trial groups,

14   we thought about what would the evidence be?  Would it

15   change if -- could be less trial to Trial Group 2 as

16   oppose to Trial Group 1.

17        Based upon our analysis, we believe the evidence

18   is going to be the exact same in both -- at least the

19   first two trials, because the shootings and the murders

20   are all part of the RICO conspiracy.  Everyone is charged

21   in RICO conspiracy.  Whether, for example, Mr. Arnold is

22   sitting in Trial Group 1, the evidence of the shootings

23   charged to Mr. Arnold is going to be part of the evidence

24   on even Trial Group 2.

25        And so we believe that at least for the first two

_15-20652; USA v. BILLY ARNOLD, ET AL_

1    trial groups, it's going to be almost a mirror image

2    trial, both in the first trial and second trial.

3                **THE COURT:**  On the other hand, we have --

4    we'll have a considerable portion of the early trial

5    proceedings with the voir dire process and selecting

6    jurors who voice the ability and willingness to consider

7    the death penalty as an option in the case.

8                **MR. GRAVELINE:**  If the death penalty is on

9    that table, and when D.C. makes the decision, we'll know

10   sooner rather than later, and then we can make more

11   intelligence decisions if it comes back as this is a death

12   eligible case.  I agree with everybody.  I think that

13   changes how this case gets tried.

14               **THE COURT:**  Okay.  And we'll have at this

15   point three?

16               **MR. GRAVELINE:**  There are four people who

17   have death eligible charges against them.

18               **THE COURT:**  My suggestion for you as you look

19   at this motion is to consider the possibility of just

20   making the death eligible defendants a class of

21   themselves, and we might very well get to the point of

22   determining the death eligible decision on the case

23   earlier rather than later, because we won't necessarily

24   get tied up and distracted by other issues that will be

25   shared in common with everyone.  Just to consider that,

                *15-20652; USA v. BILLY ARNOLD, ET AL*

1    and then if you do and we reject that, we'll consider the

2    motion obviously that you will file.

3              **MR. GRAVELINE:**  All right.

4              **THE COURT:**  What else should we be

5    addressing?

6              **MR. GRAVELINE:**  I think that's it from the

7    government's point of view.

8              **THE COURT:**  Okay.  All right.  For defense

9    counsel, I know that I have some arraignments to conduct.

10    I will do that after we clear other issues that are upon

11    us.  Ms. Mannarino?

12              **MS. MANNARINO:**  Thank you.  Maria Mannarino

13    on behalf of Mr. Arnold.

14              There are a couple of issues that Mr. Arnold has

15    asked me to bring to the Court's attention, and asked for

16    some guidance from the Court.

17              Mr. Arnold has been requesting to be moved from

18    his present location of -- he's at the St. Clair County

19    Jail.  There's a number of issues that have arisen from

20    the St. Clair County Jail that have proven to be a great

21    concern to him.

22              One of them has to do with issues that he had

23    getting and being able to review the voluminous discovery

24    material.  He's been provided with his discovery on flash

25    drives, but he's not been given access to it, and he's

                 *15-20652; USA v. BILLY ARNOLD, ET AL*

1   been told that the flash drives have been lost.  When he

2   has requested time to review the materials, he has not

3   been able to get that time.  It's been extremely difficult

4   to prepare and go through the material with him when he is

5   not being given access to his discovery.  Certainly, we're

6   seeking guidance on that.

7       He's also been asking to be moved because of

8   issues involving, quite frankly, threats that he has

9   gotten there.  Apparently, there are others who are

10  located at that facility who -- and I'm not talking about

11  the defendants in this case -- but others who are at the

12  facility, quite frankly, he believes to be people who are

13  alleged to be victims in this case or connected to alleged

14  victims in this case who have been making threats, and so

15  we're very concerned about that, and he's asking to be

16  moved from that facility, from St. Clair.  We're asking

17  the Court to consider doing what it can get him moved to

18  Milan.

19      Apparently, he's been told that one of the reasons

20  he can't go is because of separation in this case, and

21  we've asked, and we believe that it was at the request of

22  the prosecutor, and we would ask the prosecutor to revisit

23  that issue, because quite frankly, not all of the

24  defendants need to be separated from each other.  So we

25  are asking the Court to revisit that issue of doing what

*15-20652; USA v. BILLY ARNOLD, ET AL*

```
 1        it can do get him to Milan for all of those reasons.
 2                   THE COURT:  Thank you.  Before we ask on this
 3        issue, Mr. Seikaly?
 4                   MR. SEIKALY:  Just the issue that my client
 5        is at the Sanilac County Jail.  In order to meet with him,
 6        it's two and a half hours up two, and two and a half hours
 7        back.  There's no solitude for an attorney-client
 8        discussion to take place in privacy.
 9                   I would ask the Court to perhaps move Mr. Gooch to
10        Milan.  It's only 45 minutes away.  It makes it a little
11        bit easier to go more times to see him, because one of the
12        complaints from Mr. Gooch is that I'm not giving him
13        enough time in going up to see him enough, and I
14        understand that.  It's just you have to wipe out a day and
15        a half.
16                   THE COURT:  Thank you, Mr. Seikaly.
17                   MR. KOSELKE:  This is Eric Koselke.  It's not
18        a placement issue, and it may be appropriate for another
19        discussion, but right now we have an informal agreement
20        with the government to a proffer by February 15th.  I know
21        there's just been two additional death eligible defendants
22        added to the case, and I assume there's going to be an
23        extension on that time.
24                   MR. GRAVELINE:  Well, I can address what's
25        been raised.
```

*15-20652; USA v. BILLY ARNOLD, ET AL*

1          First, I will double check on this, but it's my

2    understanding the only separation orders on this case

3    right now -- I don't believe there's any separation orders

4    between the defendants on this case.  If there's any

5    separation orders, it might be between any of the

6    defendants and other people who are charged by the federal

7    government in other cases, but I will double check on

8    that.  I don't believe there are any separation orders

9    between the defendants, and if there is, I will double

10   check that.

11         I know, for example, there's at least four or five

12   of the defendants who are altogether at Sanilac right now,

13   and so I will double check.  If I'm wrong, I'm wrong, and

14   I will double check, but it's my understanding there

15   weren't any but I will double check.

16         **MR. RATAJ:**  Mike Rataj on behalf of Mr.

17   Graham.

18         There is a separation order, at least as to Mr.

19   Graham and Mr. Arnold.  That I know for a fact.  I'm not

20   sure as to any other defendants, but I know between my

21   client and Mr. Arnold there is a separation order.

22         **MR. GRAVELINE:**  Okay.  I'll double check.

23         **MS. MANNARINO:**  When the prosecutor says that

24   he will check, will it be lifted?

25         **MR. GRAVELINE:**  I will check as to each

*15-20652; USA v. BILLY ARNOLD, ET AL*

1    defense counsel because some may have been separated from

2    somebody else.

3           **MS. MANNARINO:**  On behalf of Mr. Arnold, he

4    has not made that request, and if we can get that lifted,

5    that would be great.

6           **THE COURT:**  Okay.

7           **MR. GRAVELINE:**  I'll work on that issue.

8           In terms of the deadline submissions, if Ms.

9    Mannarino and Mr. Koselke are looking for additional time

10   for Mr. Arnold, we can accommodate that.

11          I personally was viewing it because they have been

12   in the case longer than the two new defendants -- well,

13   Mr. Brown being new as a death eligible defendant -- and

14   that those timelines are not necessarily hooked together

15   at the same time.  If I can, I want to resolve that issue

16   for any defendant as quickly as I possible can.  Figure

17   out which way it's going to go.  I don't figure those four

18   defendants decisions being coupled together.  If somebody

19   is ready to submit and make a recommendation, let's get it

20   done.  If another two or three need additional time, then

21   we'll give them additional time.  I don't view those four

22   as being a block that we will wait and give it all at one

23   time to Washington D.C.  The sooner we can resolve it, I

24   think the better off we are in terms of everyone knowing

25   the landscape of the case, and so if that's your request,

*15-20652; USA v. BILLY ARNOLD, ET AL*

```
 1    you're seeking additional time, we can do that.

 2              MR. KOSELKE:  Yes.

 3              MR. GRAVELINE:  But if somebody else is ready

 4    to go on February 15th, I more than welcome to that too.

 5              THE COURT:  Okay.  Thank you.  All right.

 6    Anyone else with the placement issue?  Okay.

 7         Any other issues?  Mr. Scharg?

 8              MR. SCHARG:  Henry Scharg.  A couple of

 9    discovery issues, your Honor.  First of all, it's my

10    understanding that although we have three groups with

11    scattered trial dates --

12              THE COURT:  We don't have that yet.  We're

13    waiting for written motions, and then we'll seek your

14    input along with other defense counsel.

15              MR. SCHARG:  The issue is that can I

16    anticipate that when Jencks Act material is released to

17    the first group, that it will be released to all groups?

18              MR. GRAVELINE:  I don't think so.  I think

19    we'll be putting that Jencks material up pursuant to a

20    protective order for each trial group.

21              MR. SCHARG:  Second of all, as the Court

22    knows when we were first before the Court, we requested

23    the appointment of a discovery coordinator in this case.

24    It was part of our budget, and at that time he's servicing

25    all the defendants, and because of the fact that now with
```

*15-20652; USA v. BILLY ARNOLD, ET AL*

1    the dissemination of all materials and added defendants,

2    some of them death eligible, his budget is almost

3    exhausted.

4         So we've had some discussion for the Court's

5    consideration in that we're asking in terms of the

6    non-death eligible attorneys, that the death eligible

7    defendants submit their own budgets with Mr. Anton or

8    another discovery coordinator so it doesn't further

9    exhaust our budget, and to pick up part of the cost --

10   part of their expenses in their budget so we have more

11   room.  We will need more room based upon the disclosure

12   from the government today that here's going to be at least

13   two additional discovery dumps in this case.  And as I've

14   said, we've almost exhausted our budget for our

15   coordinator because of the additional work that attorneys

16   from the death eligible defendants have requested.

17        **THE COURT:**  As it stands now, the coordinator

18   is acting on behalf of all the defendants?

19        **MR. SCHARG:**  Yes, and then for that reason

20   he's exhausted almost his entire budget, and we've

21   approached some of the learned counsel regarding that fact

22   that when they approach the Court for their budget, they

23   should include a discovery coordinator, Mr. Anton or

24   someone else so that relieves us.

25        **THE COURT:**  Have you talked to any of the --

                    *15-20652; USA v. BILLY ARNOLD, ET AL*

1              **MR. SCHARG:**  Yes.  I wanted to bring it to

2    your attention also so when they discuss their budgets,

3    you will have that in mind.

4              **THE COURT:**  Okay.

5              **MR. MINOCK:**  John Minock for Corey Bailey.

6          I indicated to Mr. Scharg that I would be filing a

7    motion to amend our budget for a discovery coordinator and

8    paralegal.  I also indicated to him that I am going to

9    consult with Robert Rand, the Sixth Circuit budget

10    attorney, regarding the way the Sixth Circuit wants to pay

11    him, and we'll will be submitting an amended budget when I

12    speak to him.

13              **MS. MANNARINO:**  Maria Mannarino.  On behalf

14    of Mr. Arnold, we too will follow up in the appropriate

15    manner.

16              **THE COURT:**  Okay.  Other than the

17    arraignments, are there any other issues that you think we

18    need to be address?

19              **MR. GRAVELINE:**  No.

20              **THE COURT:**  As it relates to placement, I

21    think the first discussion should take place with the

22    government, and I'm certainly willing to hear from

23    counsel.  We can do it by way of a telephone conference

24    and have that recorded so that we don't need to wait for a

25    hearing date to come up to address placement, but I think

*15-20652; USA v. BILLY ARNOLD, ET AL*

1    logically the first discussion should be between counsel

2    and the government and see if you can work that out short

3    of my intervention.

4             So for those of you who are going to be arraigned,

5    how many individuals do we have?

6                    MR. SCHARG:  Mr. Fisher.

7                    THE COURT:  So we have four.  So we can do

8    that.

9                    MR. GRAVELINE:  Maybe we can just handle it

10   rights now before we excuse everybody.

11                   THE COURT:  Right.

12                   MR. GRAVELINE:  So I believe first one is

13   Mr. Arthur, Defendant Number 2.

14                   MR. MCMANUS:  John McManus on behalf of Mr.

15   Arthur.  We have provided the Court in advance of his

16   acknowledgement of the third superseding indictment, and

17   we're prepared to proceed for indictment.

18                   THE COURT:  All right.  So the Court has been

19   presented in this case with Mr. Arthur's acknowledgement

20   of the third superseding indictment?

21                   MR. MCMANUS:  That's correct.

22                   THE COURT:  The charges are identified in

23   that acknowledgement, and so have you had the opportunity

24   Mr. McManus to go over the third superseding indictment

25   with your client?

                 *15-20652; USA v. BILLY ARNOLD, ET AL*

1          **MR. MCMANUS:** I have, your Honor.

2          **THE COURT:** And you understand Mr. Fisher

3     (sic), you're charged in Count 1 of --

4          **MR. GRAVELINE:** It's RICO conspiracy, your

5     Honor.

6          **MR. MCMANUS:** RICO conspiracy for Mr. Arthur.

7          **THE COURT:** And the maximum penalty for that

8     violation is up to life imprisonment, maximum fine of

9     $250,000 provided by statute, you understand that?

10          **DEFENDANT ARTHUR:** Yes, sir.

11          **THE COURT:** Okay. In Count 25, the charge --

12          **MR. GRAVELINE:** It's Count 32, and that's

13     924(c), possession of a firearm in furtherance of a crime

14     of violence, with a mandatory minimum of five years up to

15     life imprisonment and a $250,000 fine.

16          **THE COURT:** Do you want to state the other

17     charges remaining?

18          **MR. GRAVELINE:** Those are two against

19     Mr. Arthur.

20          **THE COURT:** I see. Okay.

21          **MR. GRAVELINE:** Maybe you were looking at the

22     wrong acknowledgement. For Mr. Arthur, it is Count 1 and

23     Count 32.

24          **THE COURT:** I'm sorry. I was presented with

25     papers relating to more than one defendant. I'm sorry.

*15-20652; USA v. BILLY ARNOLD, ET AL*

1       So we have two counts.

2                       **MR. GRAVELINE:**  That's correct.

3                       **THE COURT:**  And you understand the charges

4       from your discussion with Mr. McManus?

5                       **DEFENDANT ARTHUR:**  Yes, sir.

6                       **THE COURT:**  And you understand what the

7       maximum penalties are as recited?

8                       **DEFENDANT ARTHUR:**  Yes, sir.

9                       **THE COURT:**  The plea would be?

10                      **MR. MCMANUS:**  We stand moot, and ask the

11      Court to enter a not guilty plea and continue the bond.

12                      **THE COURT:**  All right.  Any objection to the

13      request?

14                      **MR. GRAVELINE:**  No, your Honor.

15                      **THE COURT:**  The Court will continue the bond

16      and enter a not guilty plea for Mr. Arthur.

17                      **MR. MCMANUS:**  Thank you, your Honor.

18                      **THE COURT:**  You're welcome.  You waive the

19      reading of the information?

20                      **MR. MCMANUS:**  Waive the reading.

21                      **MR. GRAVELINE:**  Next one is Mr. Fisher,

22      Defendant Number 3.

23                      **THE COURT:**  All right.

24                      **MR. SCHARG:**  Henry Scharg on behalf of Eugene

25      Fisher.

*15-20652; USA v. BILLY ARNOLD, ET AL*

1          We acknowledge the third superseding indictment,

2    waive the reading, stand moot.  We've also executed a copy

3    of the acknowledgement of the third superseding

4    indictment.  I have gone over the charges with my client

5    and the maximum sentences that the Court could impose upon

6    him upon conviction, and he has signed his name to it.  I

7    have gone over the third superseding indictment with him,

8    and have gone over acknowledgement with him.

9               THE COURT:  All right.  Mr. Fisher, you

10   understand what's been said?

11              DEFENDANT FISHER:  Yes, your Honor.

12              THE COURT:  You had a chance to go over the

13   third superseding indictment with Mr. Scharg?

14              DEFENDANT FISHER:  Yes, sir.

15              THE COURT:  You believe you understand the

16   charges?

17              DEFENDANT FISHER:  Yes.

18              THE COURT:  You understand the maximum

19   penalties that are applied to the charges?

20              DEFENDANT FISHER:  Yes, your Honor.

21              THE COURT:  And the minimum statutory

22   penalties as well?

23              DEFENDANT FISHER:  Yes, your Honor.

24              THE COURT:  Do you have any questions

25   concerning that?

*15-20652; USA v. BILLY ARNOLD, ET AL*

1          **DEFENDANT FISHER:**  No, your Honor.

2          **THE COURT:**  All right.  You're asking the

3     Court to enter a not guilty plea on your behalf?

4          **DEFENDANT FISHER:**  Yes, your Honor.

5          **THE COURT:**  The Court will do so.  The

6     maximum penalty for Count 1 is up to life imprisonment and

7     a $250,000 or both, you understand that?

8          **DEFENDANT FISHER:**  Yes, your Honor.

9          **THE COURT:**  Count 25 carries up to 10 years

10    imprisonment and a $250,000 fine or both, you understand

11    that?

12         **DEFENDANT FISHER:**  Yes, your Honor.

13         **THE COURT:**  Count 26 carries a maximum

14    penalty of 20 years in prison and up to a $250,000 fine or

15    both, you understand that?

16         **DEFENDANT FISHER:**  Yes, your Honor.

17         **THE COURT:**  Count 27 is carries up to 10

18    years in prison and a $250,000 fine or both, you

19    understand that?

20         **DEFENDANT FISHER:**  Yes, your Honor.

21         **THE COURT:**  Count 32 carries a maximum

22    penalty provided by statute of life in prison, minimum

23    penalty of -- I'm sorry -- five years in prison, maximum

24    of $250,000 in fines or both, you understand that?

25         **DEFENDANT FISHER:**  Yes, your Honor.


*15-20652; USA v. BILLY ARNOLD, ET AL*

1          **THE COURT:**  And Count 33 carries up to 10
2    years in prison, a $250,000 fine or both, you understand
3    that?
4          **DEFENDANT FISHER:**  Yes, your Honor.
5          **THE COURT:**  And lastly Count 35, up to 10
6    years in prison, $250,000 fine or both, you understand
7    that?
8          **DEFENDANT FISHER:**  Yes, your Honor.
9          **THE COURT:**  Okay.
10         **MR. GRAVELINE:**  The only other thing to add
11   from the government's point of view of Mr. Fisher is he
12   also is currently charged in a separate indictment 15-
13   2O751.  That charge is now incorporated into the third
14   superseding indictment in this case.  So we will be filing
15   a motion to dismiss that felon in possession in that
16   separate indictment, which is in front of your Honor as
17   well.
18         So the Court can be anticipating a motion to
19   dismiss.
20         **MR. SCHARG:**  We have no objection to that.
21         **THE COURT:**  Okay.
22         **MR. SCHARG:**  One final matter, your Honor.
23   We ask that bond be continued with the caveat that we will
24   be filing a motion to modify the conditions of bond.  That
25   will be in writing at a later time.

                    *15-20652; USA v. BILLY ARNOLD, ET AL*

1          **THE COURT:**  All right.  Did you waive the

2     reading?

3          **MR. SCHARG:**  We did.

4          **THE COURT:**  Thanks.  The Court will continue

5     the bond.

6          **MR. SCHARG:**  Thank you, your Honor.

7          Next is Mr. Gooch?

8          **MR. GRAVELINE:**  That's correct, your Honor.

9          **THE COURT:**  All right.  Mr. Seikaly.

10         **MR. SEIKALY:**  We would waive the formal

11    reading of the indictment and stand moot.  He has signed

12    the defendant's acknowledgement of the third superseding

13    indictment.  We have reviewed the indictment together, and

14    he understands what charges are.

15         **THE COURT:**  All right.  Mr. Gooch, you

16    understand what's been said?

17         **DEFENDANT GOOCH:**  Yes.

18         **THE COURT:**  And you believe that you

19    understand the charges that are made against you in this

20    third superseding indictment, both in Count 1 and Count

21    32?

22         **DEFENDANT GOOCH:**  Yes, your Honor.

23         **THE COURT:**  And so you understand that the

24    maximum penalty for the violation charged in Count 1 is up

25    to 20 years in prison and a $250,000 fine or both?

*15-20652; USA v. BILLY ARNOLD, ET AL*

```
 1              DEFENDANT GOOCH:  Yes, your Honor.
 2              THE COURT:  And the maximum penalty in Count
 3    32 is up to life in prison, and a maximum fine up to
 4    $250,000 or both, and that the a minimum sentence for the
 5    violation in Count 32 is five years in prison, you
 6    understand that?
 7              DEFENDANT GOOCH:  Yes, your Honor.
 8              THE COURT:  You have gone over the third
 9    superseding indictment with Mr. Seikaly?
10              DEFENDANT GOOCH:  Yes.
11              THE COURT:  You believe you understand
12    charges that have been made against you?
13              DEFENDANT GOOCH:  Yes, your Honor.
14              THE COURT:  Anything else that relates to Mr.
15    Gooch?
16              MR. GRAVELINE:  Nothing.
17              THE COURT:  All right.  The Court will
18    continue the detention order, and enter a not guilty plea
19    to the charges.
20              MR. SEIKALY:  Thank you.
21              MR. GRAVELINE:  I had a conversation
22    Mr. Bailey's attorney, and we are prepared do his
23    arraignment at this time.
24              THE COURT:  Mr. Spielfogel, is there anything
25    else that you want to weigh in on while you are on the
```

*15-20652; USA v. BILLY ARNOLD, ET AL*

1     phone?

2                    **MR. SPIELFOGEL:**  No.  I had things, but it

3     seems to me all have been covered by other learned counsel

4     and by Mr. Minock.  I would just concur with them that we

5     originally, per the Court's order -- have been trying to

6     get this submission in shape by February 15th.  That's

7     been a real slow go.  We're trying to get there.  I would

8     agree with Mr. Koselke that we will need more time than

9     that, and with the additional death eligible defendants,

10    it doesn't seem like that date will be realistic, but we

11    will continue to work on it.  We will get there as quickly

12    as we can, Judge.

13                   **THE COURT:**  Thank you, sir.

14                   **MR. GRAVELINE:**  I'm delivering to the Court

15    Mr. Bailey's acknowledgement.

16                   **THE COURT:**  Mr. Bailey is seated where?

17    Okay.  So Mr. Minock?

18                   **MR. MINOCK:**  Yes, Judge.  Waive the reading

19    of the indictment I would note that Mr. Bailey has not

20    received a copy of the indictment until this morning, but

21    when I visited him last Thursday, we discussed at the time

22    the details of it, and the changes from the second to the

23    third superseding indictment.  We are ready to proceed

24    with the arraignment on those counts which he's charged.

25                   **THE COURT:**  Okay.  So Mr. Bailey, you had a

*15-20652; USA v. BILLY ARNOLD, ET AL*

1    chance to review the third superseding indictment that

2    state the charges brought against you?

3              **DEFENDANT BAILEY:**  Yes, I have.

4              **THE COURT:**  And you understand the nature of

5    the charges that are facing you?

6              **DEFENDANT BAILEY:**  Yes, I do.

7              **THE COURT:**  You understand that the charges

8    in Count 1 carries a maximum penalty of life in prison,

9    $250,000 fine or both?

10             **DEFENDANT BAILEY:**  Yep.

11             **THE COURT:**  And then Count 4, up to death

12   penalty or life in prison, and a $250,000 fine or both,

13   you understand that?

14             **DEFENDANT BAILEY:**  Yes, I understand.

15             **THE COURT:**  Count 5, you're also facing

16   charges, if convicted, that's punishable by a maximum

17   penalty of death or life in prison, $250,000 in fines or

18   both, you have understand that?

19             **DEFENDANT BAILEY:**  I understand.

20             **THE COURT:**  Count 6, you're facing up to 10

21   years in prison and a $250,000 fine or both, you

22   understand that?

23             **DEFENDANT BAILEY:**  Yes.

24             **THE COURT:**  Count 7, up to 20 years in

25   prison, $250,000 fine or both, you understand that?

*15-20652; USA v. BILLY ARNOLD, ET AL*

1          **DEFENDANT BAILEY:**  Yes, I understand.

2          **THE COURT:**  Count 8, up to 20 years in

3    prison, $250,000 fine or both, you understand that?

4          **DEFENDANT BAILEY:**  Yes.

5          **THE COURT:**  Count 9, up 20 years in prison,

6    $250,000 fine or both, you understand that?

7          **DEFENDANT BAILEY:**  Yes.

8          **THE COURT:**  Count 10, up to 20 years in

9    prison, $250,000 fine or both, you understand that?

10         **DEFENDANT BAILEY:**  I understand.

11         **THE COURT:**  Count 11, up to 20 years in

12   prison, $250,000 or both, you understand that?

13         **DEFENDANT BAILEY:**  Yes.

14         **THE COURT:**  Count 12, 10 years to -- 10 year

15   mandatory minimum sentence up to life in prison, $250,000

16   fine or both, you understand that?

17         **DEFENDANT BAILEY:**  Yes.

18         **THE COURT:**  And Count 32, minimum sentence of

19   10 years -- five years in prison and a maximum penalty of

20   life in prison, and a $250,000 fine or both, you

21   understand that?

22         **DEFENDANT BAILEY:**  Yes.

23         **THE COURT:**  You understand you're asking the

24   Court to enter a not guilty plea for all of the charges?

25         **DEFENDANT BAILEY:**  Yes.


                *15-20652; USA v. BILLY ARNOLD, ET AL*

1              THE COURT:  And that you're waiving your

2    right to have the indictment read to you in its entirety

3    this morning, you understand that?

4              DEFENDANT BAILEY:  Waiving?

5              THE COURT:  Just waiving the right to have me

6    read the entire indictment to you, you understand that?

7              DEFENDANT BAILEY:  I would like to hear -- I

8    didn't know I was waiving everything.

9              THE COURT:  All right.  You have a copy of

10   that indictment, sir?

11             DEFENDANT BAILEY:  You say what?

12             THE COURT:  You have a copy of the

13   indictment?

14             DEFENDANT BAILEY:  Right here this

15   indictment.  I see it.

16             THE COURT:  I'm sorry?

17             DEFENDANT BAILEY:  Yes, I have copy of the

18   indictment.

19             THE COURT:  And you had a chance to discuss

20   it with Mr. Minock?

21             DEFENDANT BAILEY:  We discussed it.

22             THE COURT:  All right.  Thank you.  The Court

23   will enter a not guilty plea on your behalf.

24             MR. MINOCK:  May I have a moment to confer

25   with my client please?

                 *15-20652; USA v. BILLY ARNOLD, ET AL*

1              THE COURT:  Sure.

2              DEFENDANT BAILEY:  You ain't got to read it.

3    I understand.  We went over it.

4              THE COURT:  All right.  Thank you, sir.

5    Okay.  The Court will enter not guilty plea as it relates

6    to each of the counts for Mr. Bailey.

7         Anything else?

8              MR. GRAVELINE:  I believe that's everyone --

9    or Mr. Rogers?

10             MR. MULLKOFF:  Mr. Rogers is prepared.  Doug

11   Mullkoff on behalf of Michael Rogers.

12             MS. MANNARINO:  May we be excused?

13             THE COURT:  Yes.  You don't have an

14   arraignment?

15             MS. MANNARINO:  We have already been

16   arraigned.

17             THE COURT:  Okay.  Mr. Rogers, have you had

18   an opportunity to go over the third superseding indictment

19   with Mr. Mullkoff?

20             DEFENDANT ROGERS:  Yes.

21             THE COURT:  And he has explained the nature

22   of the charges against you?

23             DEFENDANT ROGERS:  Yes.

24             THE COURT:  Mr. Mullkoff?

25             MR. MULLKOFF:  There has been no changes as

                  *15-20652; USA v. BILLY ARNOLD, ET AL*

1    applied to Mr. Rogers between the previous indictment and

2    this one.  This indictment are Counts 1 and 32.  924(c) is

3    Count 32, and Count 1 is racketeering.  We ask the Court

4    to enter a not guilty plea on his behalf, and we would

5    waive the formal reading of the indictment.

6              **THE COURT:**  Okay.  And Mr. Rogers, you

7    understand if convicted on Count 1, the maximum penalty is

8    up to life in prison, $250,000 fine or both?

9              **DEFENDANT ROGERS:**  Yes.

10             **THE COURT:**  As it relates to the charges in

11   Count 32, if convicted on the 924(c) violation, you would

12   face a mandatory minimum sentence of five years up to a

13   maximum of life in prison, $250,000 fine or both?

14             **DEFENDANT ROGERS:**  Yes.

15             **THE COURT:**  And you are waiving your right to

16   have me read the charges?

17             **DEFENDANT ROGERS:**  Yes.

18             **THE COURT:**  Okay.  Any questions that you

19   have?

20             **DEFENDANT ROGERS:**  No.

21             **MR. MULLKOFF:**  Thank you, Judge.

22             **THE COURT:**  The Court will continue the

23   detention order, enter a not guilty plea to both

24   violations.

25             I think that's it.  Anything else?

                    *15-20652; USA v. BILLY ARNOLD, ET AL*

```
 1              MR. GRAVELINE:  That's it from the
 2      government.
 3              THE COURT:  Okay.
 4
 5              (Proceedings concluded.)
 6                    -    -    -
 7            C E R T I F I C A T I O N
 8          I, Ronald A. DiBartolomeo, official court
 9      reporter for the United States District Court, Eastern
10      District of Michigan, Southern Division, appointed
11      pursuant to the provisions of Title 28, United States
12      Code, Section 753, do hereby certify that the foregoing is
13      a correct transcript of the proceedings in the
14      above-entitled cause on the date hereinbefore set forth.
15          I do further certify that the foregoing
16      transcript has been prepared by me or under my direction.
17
18      s/Ronald A. DiBartolomeo                May 9, 2019
19      Ronald A. DiBartolomeo, CSR                    Date
        Official Court Reporter
20                    -    -    -
21
22
23
24
25
```

*15-20652; USA v. BILLY ARNOLD, ET AL*