UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


**UNITED STATES OF AMERICA,**

                Government,

          v.

**D-3 EUGENE FISHER,**
**D-4 COREY BAILEY,**
**D-6 ROBERT BROWN,**
**D-13 ARLANDIS SHY,**
**D-16 JAMES ROBINSON,**
**D-19 KEITHON PORTER,**

                Defendants.

_____/

**HONORABLE GEORGE CARAM STEEH**

**No. 15-20652**

**STATUS CONFERENCE HEARING**

**Monday, May 1, 2017**

-   -   -

APPEARANCES:

For the Government:          CHRISTOPHER GRAVELINE, ESQ.
                                Assistant U.S. Attorney


For the Defendants:          HENRY M. SCHARG, ESQ.
                                On behalf of Eugene Fisher

                                JOHN R. MINOCK, ESQ.
                                KEITH A. SPIELFOGEL, ESQ.
                                On behalf of Corey Bailey

                                JAMES FEINBERG, ESQ.
                                  JOHN R. MARTIN, ESQ.
                                On behalf of Robert Brown

                                MARK MAGIDSON, ESQ.
                                  JOHN THEIS, ESQ.
                                On behalf of Arlandis Shy

WILLIAM SWOR, ESQ.
On behalf of James Robinson

JUAN MATEO, ESQ.
On behalf of Keithon Porter


- - -


*To Obtain Certified Transcript, Contact:*
*Ronald A. DiBartolomeo, Official Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard, Room 238*
*Detroit, Michigan  48226*
*(313) 962-1234*

*Proceedings recorded by mechanical stenography.*
*Transcript produced by computer-aided transcription.*

```
 1                         I  N  D  E  X
```

```
 2  _____Page

 3  Status Conference Hearing                            4
```

```
 4

 5

 6

 7

 8

 9

10

11

12

13                    E  X  H  B  I  T  S

14  Identification_____Offered    Received

15

16                   N      O      N      E

17

18

19

20

21

22

23

24

25
```

*15-20652; USA v. EUGENE FISHER, ET AL*

4

```
 1                        Detroit, Michigan
 2                        Monday, May 1, 2017
 3                           -   -   -
 4            THE CLERK:  Case Number 15-20652, United
 5   States of America versus Eugene Fisher, Corey Bailey,
 6   Robert Brown, Arlandis Shy, James Robinson and Keithon
 7   Porter.
 8              MR. GRAVELINE:  Good afternoon.  Chris
 9   Graveline and Raj Prasad for the United States.
10              THE COURT:  Welcome.
11              MR. SCHARG:  Good afternoon.  Henry Scharg on
12   behalf of Eugene Fisher.
13              MR. MAGIDSON:  Good afternoon, your Honor.
14   Mark Magidson on behalf of Mr. Shy.
15              MR. THEIS:  John Theis on behalf of Mr. Shy
16   as well.
17              MR. SPIELFOGEL:  Good afternoon, your Honor.
18   Keith Spielfogel on behalf of Corey Bailey.
19              MR. MINOCK:  John Minock on behalf of Corey
20   Bailey.
21              MR. MATEO:  Good afternoon, your Honor.  Juan
22   Mateo appearing on behalf of Keithon Porter.
23              MR. SWOR:  Good afternoon, your Honor.
24   William Swor on behalf with James Robinson.
25              MR. FEINBERG:  James L. Feinberg and John
```

*15-20652; USA v. EUGENE FISHER, ET AL*

1    Martin on behalf of Robert Brown.

2            **THE COURT:**  Okay.  Welcome.

3            **MR. GRAVELINE:**  Good afternoon, your Honor.

4    This being a status conference, at our last status

5    conference, we talked about having all the discovery out

6    by April 15th.  That is not been accomplished in this

7    case.  Since the last status conference, we have produced

8    over 2,400 pages of discovery, numerous security camera

9    footage, Instagram returns, jail calls to particular

10   defendants, and other related evidence to include

11   photographs and YouTube material.

12           By our account, we still have about 500 more pages

13   of materials less the -- the agent who has been doing this

14   since our last status conference is looking at the

15   indictment, going through every overt act, collecting

16   information.  So an overt act, for example, talks about

17   selling prescription pills in West Virginia.  They have

18   gone to West Virginia, collected reports, collected

19   witness statements.  If there is any physical evidence,

20   they've collected that.  Any lab reports, and so all of

21   those things are being collected, and then being turned

22   over to the defense.

23           We believe these last 500 pages will be produced

24   by the end of this week, and then in terms of the

25   particular defendants here, I've received correspondence

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    from Mr. Feinberg and Mr. Minock asking for particular

2    pieces of discovery, as well as Mr. Mateo as well.  We

3    have been working through that.  Some of it -- and I will

4    be the first to say -- that I have been completely

5    responsible.  For last three weeks I have been preparing

6    for another trial that was suppose start last Tuesday.  I

7    owe them some responses here.

8          Most of it goes towards some of the cell phone

9    materials.  Mr. Feinberg put together a letter asking for

10   I believe eight different things, and we have been talking

11   about that before trial, before this hearing as well.  So

12   we are working through the discovery.  We are talking to

13   each other.

14         The biggest pieces that I think we need to get out

15   still other than these 500 pages that we currently have,

16   are our expert witness notice, which would include all of

17   the lab people who tested drugs, firearms, cell phone

18   expert report.  That's been a topic of conversation in

19   this group, what exactly what our cell phone expert will

20   say.  They have the raw data, but they are looking for the

21   cell phone expert report.

22         Since this group is trailing the first group a

23   little bit, I think I will be producing at the same time

24   as to Group 1, the same material for Group 2.  The

25   discovery that remains in terms of police reports and

*15-20652; USA v. EUGENE FISHER, ET AL*

1   those types of articles will be done by this Friday.  I

2   will be talking with my cell phone expert, if not by the

3   end of the day today, hopefully by tomorrow to get a

4   timeline on his report, which I think will be sometime

5   during the month of May we'll have that out.  I don't want

6   to give a date certain until I have spoken to him, but

7   that's what we're looking for right now.

8           For the record for this particular group, just to

9   inform this particular group where they stand in relation

10  to Group 1, Group 1 just had a trial date set for

11  October 10, 2017, motion cutoff date of July 31th for the

12  motions, and a plea cutoff date of September 18th, and the

13  Court stated that you will be gone for most of the month

14  of December in the Ninth Circuit.

15          **THE COURT:**  Correct.

16          **MR. GRAVELINE:**  So it is just to inform this

17  trial group where they stand in relation to that group.

18          As we laid out in the last status conference is

19  the plan in this case to see what the Capital Case Unit

20  and the Attorney General plans to do with Mr. Arnold's

21  capital case first and foremost, and with Mr. Arnold, his

22  counsel stated that they believe that they will have their

23  mitigation packet submitted to us, U.S. Attorney's Office,

24  by June 15th and hopefully before that, and we hope to

25  have a decision based on the Court scheduling this on

*15-20652; USA v. EUGENE FISHER, ET AL*

1    behalf of Mr. Arnold by the end of July, and so if we have

2    that decision, I think that will then help inform what

3    will happen in this particular group, and also when

4    mitigation and decisions have to be made for this

5    particular group as well, for those individuals who still

6    face death eligible charges.

7            In terms of I believe the last time we held a

8    status conference in terms of a general trial date for the

9    second group, we talked of January of 2018.  Based upon

10   what we set in the first group, I think that's still

11   realistic.  If we can get that first group done in October

12   and November, I think it's still realistic to try this

13   case in January.  I would suggest mid-January as oppose to

14   early on, and that would give the Court 6-7 weeks between

15   trials, and it would help us sort out where we stand in

16   terms of the various pieces of evidence and whatnot.

17           **THE COURT:**  Okay.

18           **MR. GRAVELINE:**  That would be the

19   government's status report at this time in terms of both

20   discovery and where we stand in terms of time in this

21   case.

22           **THE COURT:**  So how much will be lagging

23   behind the first group in terms of discovery for this

24   group?  Is it going to be completed simultaneously with

25   the first?

*15-20652; USA v. EUGENE FISHER, ET AL*

1          **MR. GRAVELINE:**  I would say for the most

2     part, yes.  The one difference could be, for example, Mr.

3     Feinberg asked for several pieces of discovery from a 2006

4     homicide that Mr. Brown was charged with.  Depending on

5     how the evidence breaks out, maybe we won't be presenting

6     as much on the 2006 homicide during that first trial since

7     Mr. Brown is not part of that first trial.

8          So that's -- I think a client specific type

9     discovery might lag behind the general discovery that

10    we're talking about, but I think we're working through

11    some of those issues, and where we agree and disagree, I

12    believe talking to defense, they might be filing some

13    motions for earlier disclosure of information, but I think

14    in terms of general discovery, I think that will be pretty

15    much on pace where Group 1 is.

16          If I could suggest to the Court that maybe the

17    motion practice for this group perhaps lag behind that

18    first group by a month so while-- or even to maybe the

19    motions would be due with this group on September 30th,

20    and even though we will be in trial, there are three of us

21    who are participating from the prosecution side.  So we

22    will be able to respond to the motions from Group 2 while

23    in trial on Group 1.  We can set that type of motion for

24    this group.

25          **THE COURT:**  Unless you are unable to have the

*15-20652; USA v. EUGENE FISHER, ET AL*

1    discovery along the same pace, but it sounds like you

2    could?

3              **MR. GRAVELINE:**  I think discovery will go

4    along the same pace.  So for example, the cell phone

5    expert report will be given to all counsel in all three

6    groups at the same time.  I'm not going to hold back just

7    because of the second group.

8         The only question are the client specific type of

9    discovery.  So regardless when we do the motion deadline,

10   if we have those types of discovery disputes, perhaps it's

11   just a matter of we argue as we go along here, as oppose

12   to waiting until -- you know, in terms of discovery

13   dispute when, where and how much discovery we're obligated

14   to turn over to them.

15             **THE COURT:**  My question was whether it's

16   possible to keep enough flexibility in the process so if a

17   number of individuals in Group 1 decide to take advantage

18   of a plea agreement, others could be moved up if they are

19   otherwise far enough along in discovery.

20             **MR. GRAVELINE:**  Well, I think in terms of

21   this particular group, I think perhaps the only defendant

22   who might be able to take advantage of a situation like

23   that is Mr. Robinson, simply because I don't know -- and

24   I'll let defense counsel speak to this -- from a

25   mitigation point of view, they'll have their mitigation

*15-20652; USA v. EUGENE FISHER, ET AL*

11

packet prepared, and we'll have a decision from Washington

D.C. in time to move up into the October 10th trial date.

They are still, based on my conversations with them, they

are still working pretty hard.  They are pretty focused on

that piece as oppose to moving up for trial.  In this

particular group, I think that might only be Mr. Robinson.

        **THE COURT:**  Okay.

        **MR. GRAVELINE:**  Thank you.

        **MR. SWOR:**  Your Honor, considering the fact

that we've received no discovery that identifies specific

to Mr. Robinson, the suggestion that we could be ready for

a multiple defendant death penalty level trial by

September is absurd.  The government has resisted my

requests to turn over specific information.  I'm going to

be filing a motion, but it cannot be trial by ambush.

        **MR. FEINBERG:**  One of the things that -- Jim

Feinberg on behalf of Mr. Brown -- the Court is aware that

in 2006, another person in Frank Murphy Recorder's Court

was found guilty twice of the murder that Mr. Brown is now

being accused of committing in federal court.  Apparently,

there is a complete transcript of the second trial.  There

is no transcript of the first trial because the notes were

lost.

        The government has now the entire transcript of

that trial.  They paid $1,800 in Frank Murphy for that

*15-20652; USA v. EUGENE FISHER, ET AL*

transcript.  The government's response to my asking them

for a copy is, we can get it the same way they did.  So I

don't know whether or not the Court wants to issue an

order allowing that transcript to be paid out of CJA

funds, or that the government make a copy of the

transcript.  Apparently there's nine volumes of

transcripts.

I am fully aware that the court reporters need to

be paid, but I don't know whether or not the government --

if the Court wants CJA to buy another entire transcript

when, in fact, the government has it.

**MR. GRAVELINE:**  Just to be clear on this, the

court reporters are independent contractors both here and

at Frank Murphy Hall of Justice.  This is how they get

pay.  Not in this case, but I've had multiple court

reporters saying, why are you handing out the transcripts

for free when they can order a copy, and I can be paid for

what I do?  So that's genesis of this.

Now if the Court decides that no, we're not paying

CJA funds, that's, you know, the genesis, and you know,

I'm -- you know, this part of negotiation -- not

negotiation -- the court reporters have asked me on

multiple occasions to push back a little bit and say,

people have to order their own copy.  That was my

suggestion.  They can order their own a copy and apply for

1    CJA funds.  If the Court decides, no, not paying that and

2    we're told to hand it over, we'll hand it over.  That's

3    the genesis of that.  I'm not trying to be some

4    obstruction here.  I got it, you don't.  That's the

5    genesis.

6              **THE COURT:**  Is Mr. Feinberg the only one

7    affected by this?

8              **MR. GRAVELINE:**  Yes, of that particular

9    transcript.

10             **THE COURT:**  Was the transcript actually

11   produced for you?

12             **MR. GRAVELINE:**  We asked them to prepare it.

13   It's been prepared and done as of last week, and we have

14   paid for that initial copy of the transcript.

15             **THE COURT:**  So it would presumably be an

16   additional copy?

17             **MR. GRAVELINE:**  I think it would be at a

18   discounted rate.

19             **THE COURT:**  I'll figure it out.  I'll check

20   it out.

21             **MR. FEINBERG:**  If CJA funds have to be

22   used -- and I don't know how the court reporter gets paid,

23   whether I have to pay the court reporter out of my pocket,

24   and then get reimbursed --

25             **THE CLERK:**  You have to file a motion.

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    **MR. FEINBERG:**  But they get the order that

2    they have to submit a voucher.

3         **THE COURT:**  Give me a couple of days to

4    figure it out.

5         **MR. FEINBERG:**  There are additional materials

6    related to the homicide that Mr. Brown is charged with,

7    the entire Detroit homicide file at that time back in 2006

8    include all of the witness statements.  The government is

9    saying they don't want to give it to us because it may be

10   Jencks.  Well, if there are witness statements that say

11   someone else committed the crime, that's not Jencks.

12   That's exculpatory, and is something we need immediately.

13        Also, we made need it for mitigation purposes.

14        **THE COURT:**  All right.

15        **MR. GRAVELINE:**  Mr. Feinberg and I have

16   discussed this, and that might be a good substance for a

17   motion.

18        **THE COURT:**  Okay.  Mr. Mateo?

19        **MR. MATEO:**  Your Honor, on behalf of Mr.

20   Porter, Mr. Graveline as noted previously, we've sent the

21   government written correspondence on a matter that we

22   think we should be provided discovery.  I know you've been

23   busy, and I can personally attest to that.  I'm going to

24   add to that list.  I have another situation where I'm

25   requesting certain files from the Wayne County

*15-20652; USA v. EUGENE FISHER, ET AL*

1    Prosecutor's Office, and because there's one case pending,

2    they cannot release that information.  I will propose to

3    the government by a stipulated order, that they order

4    Wayne County Prosecutor's Office to turn that material

5    over to us, and there may be other files that they have.

6    I have an outstanding request that I may need assistance

7    on.  I may need those files for purposes of the mitigation

8    package.

9            The only other question or note that I want to

10   make in terms of discovery is they have told you that they

11   have 500 additional pages.  I don't believe that would

12   cover what I believe is missing.  So is there a way we can

13   have an understanding as to when we file our discovery

14   motion so we can sort this out if we have to?

15           **THE COURT:**  I don't see any reason to delay

16   or file such a motion if you feel there's enough to

17   demonstrate a show cause.

18           **MR. MATEO:**  We'll do.

19           **THE COURT:**  You're not restricted.

20           **MR. GRAVELINE:**  Just for the record, we will

21   not be agreeing to a stipulated order demanding the Wayne

22   County Prosecutor's Office to turn over the files, just

23   like we would not appreciate them stipulating to anything

24   coming out of our files.  The United States government

25   will not enter into a stipulated order to that effect.  So

*15-20652; USA v. EUGENE FISHER, ET AL*

1  Mr. Mateo can file a motion, and that will be the subject

2  of some litigation at trial.

3      **THE COURT:** So you're indicating that they

4  won't share with you either?

5      **MR. GRAVELINE:** I would imagine that, and to

6  be quite honest with you, I think I know exactly the

7  situation that Mr. Mateo is talking about here.  I would

8  not -- no, I would not be seeking the contents of their

9  files for the particular person that he is talking about.

10      **THE COURT:** All right.

11      **MR. GRAVELINE:** I cannot imagine this will be

12  a situation where that I will be going to the Wayne County

13  Prosecutor's Office saying, you have to hand me over this

14  material in their investigative file, just like they would

15  not agree to that, coming to our office and saying, we

16  need your investigative files.

17     Now there are Detroit Police reports and other

18  things that Mr. Mateo wants to say, what about the Detroit

19  Police reports?  That's totally different.  That's an

20  investigative agency as oppose to a prosecutorial agency,

21  and if there's some relevance, then we can talk about

22  that, but the investigative file from the Wayne County

23  Prosecutor's Office, no, we will not be agreeing to that.

24  That will be the subject of a motion.

25      **THE COURT:** All right.  Well, I guess if

*15-20652; USA v. EUGENE FISHER, ET AL*

1    there are portions of that file that you feel are clearly

2    important to receive, and maybe would not constitute

3    materials withheld, and there's a request for some

4    informal action by the Court, I could certainly make a

5    call to the prosecutor's office to discuss it at least,

6    but I want you to both agree that the information --

7         **MR. MATEO:** Your Honor, I have been in

8    contact with the executive over at the Wayne County

9    Prosecutor's Office, and I believe that they would

10   probably agree to a stipulated order. So I'll do whatever

11   I can to minimize whatever issues to bring to your

12   attention.

13        **THE COURT:** All right. Okay. Any other

14   input from defense counsel?

15        **MR. MARTIN:** Your Honor, just so I can be

16   clear, if I understand what Mr. Graveline just said, which

17   I think is totally reasonable, to wait and see what the

18   department says about Mr. Arnold before any decision by

19   anybody else, and I understand that to mean that with

20   regards our submissions, we would have to wait until that.

21   There's no reason for us to file until that decision is

22   made. So I guess once a decision is made by Mr. Arnold,

23   assume if Arnold is declined, they will probably decline

24   everybody else, and then just to assume the opposite, we

25   will have some date set after that time for us to have our

*15-20652; USA v. EUGENE FISHER, ET AL*

1    mitigation.

2              **MR. GRAVELINE:**  That's correct.  That's the

3    way I would envision how that would work.

4              **MR. MARTIN:**  We'll just wait to see what

5    happens with Mr. Arnold and go from there.

6              **MR. GRAVELINE:**  That's correct, your Honor.

7              **THE COURT:**  All right.  Anybody else?  All

8    right.  Mr. Graveline?

9              **MR. GRAVELINE:**  I'm not sure if now would be

10   a good time to set a trial date for Group 2 just so we

11   have it on the calendar, and so it's been my experience

12   that all the lawyers' calendar fill up, especially when we

13   are setting a six to eight week trial.  If the Court is

14   inclined, I believe that since Group 1 is set for the day

15   after Columbus Day, I would ask for the day after Martin

16   Luther King Day in January for this, and block off six to

17   eight weeks.

18             **THE COURT:**  How about we do it week after the

19   first?

20             **THE CLERK:**  January 8th.

21             **MR. GRAVELINE:**  That's fine with the

22   government, your Honor.

23             **THE COURT:**  How does that work for defense?

24             **MR. SWOR:**  Not really.  So we are going to be

25   preparing during the holidays?

                *15-20652; USA v. EUGENE FISHER, ET AL*

```
 1              THE COURT:  That will require some --
 2              MR. SWOR:  Besides that, we will need the
 3    first trial transcripts.  I mean, my client is charged in
 4    a count that's charged against Mr. Arnold, and obviously
 5    the evidence with regards to that, if it comes out at the
 6    trial of Mr. Arnold, is going to be critical to have.
 7              MR. SCHARG:  Same thing on behalf of
 8    Mr. Fisher.  Mr. Arnold's trial testimony will be critical
 9    in our defense, and I would ask the Court -- I concur more
10    with after Martin Luther King Day, later in the month,
11    because I don't think it is realistic to set a date so
12    early in 2018, and I would ask the Court to reconsider.
13              MR. FEINBERG:  Judge, I would ask, looking at
14    the calendars, that we set it right after President's Day,
15    which is February 20th, so that following week.  It's
16    awfully tough preparing for a trial jury during the
17    holidays.
18              THE COURT:  That's way out.
19              MR. FEINBERG:  It is only another month.
20              THE COURT:  Only another month?  All right.
21    Let's set it around the first of February then.
22              THE CLERK:  February 5th, a Monday.
23              THE COURT:  February 5th.  If it turns out to
24    unrealistic --
25              MR. SWOR:  Well, February 5th I guess is
```

                    *15-20652; USA v. EUGENE FISHER, ET AL*

20

1     fine, but just some advance notice, the weekend of
2     President's Day, Mr. Feinberg and I are already scheduled
3     to be out of town.  So we may need to ask the Court for a
4     recess.
5                    THE COURT:  That will be --
6                    MR. FEINBERG:  Thursday to Monday of that
7     weekend.
8                    THE COURT:  I imagine there will be some
9     interruptions from time to time.  Let's set it initially
10    for February 5th.
11         Anything else from anyone?
12                    MR. MAGIDSON:  Judge, will we receive any
13    other dates for plea cutoff or motions?
14                    THE COURT:  We need a plea cutoff date.
15                    THE CLERK:  Motion cutoff date is
16    September 30th.
17                    MR. MATEO:  December?
18                    THE CLERK:  September 30th.  Do you want to
19    go to October 2nd?
20                    MR. GRAVELINE:  That's fine for the
21    government.
22                    THE CLERK:  October 2nd.
23                    THE COURT:  Plea cutoff?
24                    THE CLERK:  January 11th.
25                    THE COURT:  That's the plea cutoff.


                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    Anything else?

2         **MR. GRAVELINE:**  Nothing from the government.

3         **THE COURT:**  Anything from defense counsel?

4    Excellent.  See you then.

5              (Proceedings concluded.)

6

7                   -   -   -

8              **C E R T I F I C A T I O N**

9         I, Ronald A. DiBartolomeo, official court

10   reporter for the United States District Court, Eastern

11   District of Michigan, Southern Division, appointed

12   pursuant to the provisions of Title 28, United States

13   Code, Section 753, do hereby certify that the foregoing is

14   a correct transcript of the proceedings in the

15   above-entitled cause on the date hereinbefore set forth.

16         I do further certify that the foregoing

17   transcript has been prepared by me or under my direction.

18

19   _____          _____

     Ronald A. DiBartolomeo, CSR                Date
20   Official Court Reporter

21                   -   -   -

22

23

24

25

            *15-20652; USA v. EUGENE FISHER, ET AL*