```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION



UNITED STATES OF AMERICA,

                 Government,

                                      HONORABLE GEORGE CARAM STEEH
       v.
                                      No. 15-20652
D-3    EUGENE FISHER,
D-4    COREY BAILEY,
D-6    ROBERT BROWN, II
D-10   DEVON PATTERSON,
D-13   ARLANDIS SHY,
D-16   JAMES ROBINSON,
D-19   KEITHON PORTER,

                 Defendants.
_____/

                      STATUS CONFERENCE

                 Thursday, March 15, 2018

                        -    -    -

APPEARANCES:

For the Government:          CHRISTOPHER GRAVELINE, ESQ.
                            JULIE FINOCCHIARO, ESQ.
                            Assistant U.S. Attorney


For the Defendants:         HENRY M. SCHARG, ESQ.
                            On behalf of Eugene Fisher

                            CRAIG A. DALY, ESQ.
                            KEITH A. SPIELFOGEL, ESQ.
                            On behalf of Corey Bailey

                            JAMES L. FEINBERG, ESQ.
                            On behalf of Robert Brown

                            MARK H. MAGIDSON, ESQ.
                            JOHN T. THEIS, ESQ.
                            On behalf of Arlandis Shy
```

WILLIAM W. SWOR, ESQ.
On behalf of James Robinson

STEVEN E. SCHARG, ESQ.
On behalf of Keithon Porter


-    -    -


*To Obtain Certified Transcript, Contact:*
*Ronald A. DiBartolomeo, Official Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard, Room 1067*
*Detroit, Michigan  48226*
*(313) 962-1234*

*Proceedings recorded by mechanical stenography.*
*Transcript produced by computer-aided transcription.*

1                            I  N  D  E  X

2  _____Page

3  Status conference                                        4

4

5

6

7

8

9

10

11

12

13

14

15                        E  X  H  B  I  T  S

16  Identification_____Offered    Received

17

18                    N        O        N        E

19

20

21

22

23

24

25

*15-20652; USA v. EUGENE FISHER, ET AL*

```
 1                                   Detroit, Michigan
 2                                   Thursday, March 15, 2018
 3
 4                          -      -      -
 5              THE CLERK:  Case Number 15-20652, United
 6     States of America versus Eugene Fisher, Corey Bailey,
 7     Robert Brown, Devon Patterson, Arlandis Shy, James
 8     Robinson and Keithon Porter.
 9              MR. GRAVELINE:  Good afternoon, your Honor.
10     Chris Graveline and Julie Finocchiaro on behalf of the
11     United States.
12              THE COURT:  Okay.  Welcome.
13              MR. H. SCHARG:  Good afternoon, your Honor.
14     Henry Scharg appearing on behalf of Eugene Fisher.
15              MR. DALY:  Good afternoon.  Craig Daly on
16     behalf of Corey Bailey.
17              THE COURT:  All right.  Thank you.
18              MR. JOHNSON:  Good afternoon, your Honor.  If
19     it please this Court, Bertram Johnson appearing on behalf
20     of Devon Patterson.
21              THE COURT:  Welcome.
22              MR. THEIS:  Good afternoon, your Honor.  John
23     Theis.  I represent Arlandis Shy.
24              THE COURT:  Good afternoon.
25              MR. MAGIDSON:  Mark Magidson also
```

1   representing Arlandis Shy.

2          **MR. SPIELFOGEL:**   Keith Spielfogel on behalf

3   of Corey Bailey, your Honor.

4          **THE COURT:**   Okay.  Welcome.

5          **MR. S. SCHARG:**   Good afternoon, your Honor.

6   Steven Scharg on behalf of Mr. Porter.

7          **THE COURT:**   Thank you.

8          **MR. FEINBERG:**   James L. Feinberg on behalf of

9   Mr. Robert Brown.  Learned counsel, I understand, will

10   participate by conference call.

11          **THE CLERK:**   No.  He'll call you later.

12          **MR. FEINBERG:**   Okay.

13          **MR. SWOR:**   William Swor on behalf of James

14   Robinson.

15          **THE COURT:**   Welcome.  All right.  So we set

16   this up as a status conference.  As you undoubtedly know,

17   the first group of defendants have completed the evidence

18   and the argument phases of the trial, and the jury has

19   been deliberating for a couple of days now.

20          The current trial date in this case is June 5,

21   2018.  I don't necessarily want to jump ahead to that if

22   there are other preliminary matters that have to be

23   discussed.  Mr. Graveline do you have items on your

24   agenda?

25          **MR. GRAVELINE:**   I went through the docket

*15-20652; USA v. EUGENE FISHER, ET AL*

1    last night for all pending motions I think in this case,

2    and right now -- and I bring this up so if I'm wrong,

3    counsel, please let me know -- but I believe we have filed

4    a response to everything except for the suppression that

5    Mr. Scharg has filed on behalf of Mr. Fisher, and then

6    there's one motion to suppress that Mr. Daly filed, and so

7    I think those are the only two outstanding motions that we

8    need to respond.  I believe they are both due a week from

9    today, March 22nd.

10          So in terms of motion practice, I think the Court

11   has our responses to every other motion that's been filed

12   by this particular trial group.  Am I incorrect at all by

13   any of the counsel?  Is that right?  I think that's right.

14   So I think in terms of briefing we're there.

15          In terms of the June 5th trial date, so this is

16   where we stand.  We have four defendants in this trial

17   group who are still face death eligible charges.  I have

18   not been able to forward all the materials up to

19   Washington D.C. given our ongoing trial, but I hope to

20   have all of those materials up to Washington D.C. if not

21   by tomorrow, then by Monday.

22          I've talked to the capital case section about the

23   timing of this, and while it's a very tight turnaround,

24   they are also saying it's the same panel considering every

25   defendant in this case who has already read for defendant

*15-20652; USA v. EUGENE FISHER, ET AL*

1    Arnold's submission as well.  So we're not submitting to

2    people who are not familiar with the case.

3            And so in terms of, can I absolutely agree right

4    now, I think it's a tight turnaround, and so -- but we're

5    trying very hard to meet that deadline.

6            And so right now we stand approximately 75 days

7    out from trial.  I think probably to be completely safe is

8    to maybe set the trial out 90 days from right now.  So

9    maybe mid-June, but at the same time if we keep it at

10   June 5th, I don't think that's an impossible task.  I'm

11   just saying that it's going to be pretty tight based upon

12   what Washington D.C. has communicated to me.

13           So that's where we stand in terms of timing of

14   that.  All of those should be up to Washington D.C. by

15   Monday for their consideration, and those four defendants

16   are Corey Berry, Arlandis Shy, Robert Brown and Keithon

17   Porter.

18                   **THE COURT:**  Do you know the status of

19   mitigation packages?

20                   **MR. GRAVELINE:**  The only one that I'm still

21   missing is Mr. Robert Brown's, and so I think going

22   through this last trial has also helped the government a

23   bit as well.

24           So, for example, one of the things that Mr.

25   Feinberg has been asking for is when Mr. Elroy Jones

*15-20652; USA v. EUGENE FISHER, ET AL*

1    was -- he made a motion to have his conviction overturned

2    in the murder of Cleo McDougal.  The government was

3    unaware, but Mr. Feinberg brought this to our attention

4    that there was a several day motion practice and multiple

5    witnesses were called.  So we just received those

6    transcripts of that motion practice about a week and a

7    half ago.  So that was helpful in informing -- you know,

8    preparing Mr. Brown's submissions, and I think that's why

9    Mr. Brown's mitigation submission is trailing a little

10   bit.  They were waiting for those records.

11          Another thing that I personally was waiting for,

12   there was a cell phone seized from Corey Bailey upon his

13   arrest in July of 2014.  The FBI had not previously been

14   able to get into that phone, and if the Court remembers,

15   we had a similar issue with one of which Michael Rogers'

16   phones, and we were able to get into it in the first week

17   of February based upon some new technology that allowed us

18   to actually dump the phone.

19          And so the report was made for Mr. Rogers' phone.

20   I still don't have the complete report from Mr. Bailey's

21   phone.  I was hoping to get that during trial, but Agent

22   Ruiz's is being tied up in court on most of those days.

23   That report has not been compiled.  He's been working on

24   that over the last day or two, and I hope to have that to

25   Mr. Bailey.  I'm not saying there's anything relevant in

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1   that.  I just wanted to make sure that the phone that was

2   seized from Mr. Bailey approximately eight days after the

3   Djuan Page homicide, didn't have something in there that

4   would inform us one way or the other in terms of that

5   death penalty submission.  So that's where we stand in

6   terms of the timing and capital case process.

7              THE COURT:  All right.  Who would like to

8   start?  Mr. Swor you're at the end of the line.  Any input

9   as to whether the date should be back couple weeks or try

10  to maintain?

11             MR. SWOR:  I have to be at the Outer Banks of

12  North Carolina the last week in July.  We keep pushing

13  this trial back.  It is a large family gathering.  It may

14  involve a wedding.  Not mine.  So I have to be there I

15  guess.

16             THE COURT:  You have to be there a day or

17  two?

18             MR. SWOR:  No, the week.  It's a week of

19  family events.

20             THE COURT:  I see.  Okay.  So prefer to keep

21  the time and date?

22             MR. SWOR:  Yes.

23             THE COURT:  And Mr. Robinson is not one of

24  death eligible defendants?

25             MR. SWOR:  That's true.

                *15-20652; USA v. EUGENE FISHER, ET AL*

 1           **THE COURT:**  So let me hear first from the

 2    death eligible defendants.

 3           **MR. FEINBERG:**  James Feinberg on behalf of

 4    Mr. Brown.

 5           My learned counsel Martin, who was not able to be

 6    here today, informed me that his mitigation submission, at

 7    least as of last week, the end of last week, was not done

 8    because we had just gotten the evidentiary hearing

 9    transcripts that Mr. Graveline told the Court about.

10           I don't know when he is going to finish the

11    submission.  I thought it was going to be this week, but I

12    can't tell the Court if it is going to be this week or the

13    beginning of next week.

14           That is important because we don't know whether or

15    not the Department of Justice is going to authorize or not

16    authorize death penalty.  That puts me and Jack Martin at

17    a precarious situation, but I can tell that you that Mr.

18    Brown does not wish for the trial to be delayed for any

19    length of time, but again, we have no control over the

20    Department of Justice.

21           **THE COURT:**  All right.  Mr. Scharg?

22           **MR. S. SCHARG:**  Yes.  Good afternoon again,

23    your Honor.  Steven Scharg on behalf of Mr. Porter.

24           My client strongly suggests that his case not be

25    adjourned again.  We have prepared for trial.  We are

*15-20652; USA v. EUGENE FISHER, ET AL*

 1    ready to go to trial.  He does not want anymore

 2    adjournments.

 3           My issue also would be, I have another trial

 4    starting on June 12th.  That's another gang related case,

 5    and if this case gets postponed after the 12th, then that

 6    case might run into the next case.

 7           THE COURT:  So that -- do you know that

 8    defendant?

 9           MR. GRAVELINE:  Latin Counts.

10           MR. S. SCHARG:  Latin Counts.

11           THE COURT:  Is that one that you're handling

12    also?

13           MR. GRAVELINE:  No, just supervise.

14           THE COURT:  Okay.  Okay.

15           MR. SPIELFOGEL:  Mr. Daly wants to address

16    the Court on behalf of Mr. Bailey.

17           THE COURT:  Okay.

18           MR. DALY:  Mr. Bailey is adamant that we

19    begin on the trial date that's set.  I am assuming that

20    learned counsel will also be present.  If not, that would

21    raise a separate issue.

22           THE COURT:  Learned counsel be present for

23    the trial?

24           MR. DALY:  Yes.

25           THE COURT:  Yes.


                 *15-20652; USA v. EUGENE FISHER, ET AL*

1        **MR. DALY:**  Okay.  That's all.

2        **THE COURT:**  I mean, I assumed.  Maybe I

3    shouldn't have assumed.

4        **MR. DALY:**  Well, that's important.

5        **THE COURT:**  I haven't had learned counsel

6    before.  So I think the one death eligible case that I had

7    was withdrawn long before we ultimately tried it, and that

8    doesn't appear to be the inclination of our current

9    attorney general.

10       **MR. DALY:**  I don't believe Mr. Spielfogel has

11   withdrawn.  We're talking about two of us together.

12       **THE COURT:**  Right.  Yeah, yeah.

13       **MR. DALY:**  Okay.

14       **THE COURT:**  And I don't know.  You tell me.

15   Is that standard operating practice?

16       **MR. DALY:**  I wouldn't necessarily call that

17   standard.  I think it is within the discretion of the

18   Court.  In the previous cases that I've been involved in,

19   the answer was yes.

20       **THE COURT:**  So in the course of your

21   representations so far, have you separated the tasks that

22   you're each working on?  Is somebody taking responsibility

23   for some portion of the case, and would you be sharing the

24   presentation or cross examination of the witnesses?

25       **MR. DALY:**  Yes, we have started that process.

*15-20652; USA v. EUGENE FISHER, ET AL*

1          THE COURT:  All right.

2          MR. H. SCHARG:  Judge, just to give you some

3     insight, I was that involved in that case.  It was the

4     Herman Johnson case.

5          THE COURT:  You mean the one that we

6     ultimately tried.  Was that yours?

7          MR. H. SCHARG:  It was my case.

8          THE COURT:  And they withdrew the notice long

9     before.

10         MR. H. SCHARG:  But learned counsel wanted to

11    withdraw.  He didn't want to continue on.  It would have

12    been helpful had he stayed on the case because of the

13    complexity.

14         THE COURT:  I remember now.  Thank you.

15         MR. DALY:  I should add too, that if for any

16    reason there weren't two lawyers representing Mr. Bailey,

17    that would create a problem for me.  I am substitute

18    counsel.  So I have been on the case for six months.  Of

19    that six months, three months was preparing and trying

20    another case.  So it's -- it is a necessity in this case,

21    Judge.

22         THE COURT:  To have two?

23         MR. DALY:  Yes.

24         THE COURT:  Right.  All right.

25         MR. MAGIDSON:  Mark Magidson on behalf of Mr.

*15-20652; USA v. EUGENE FISHER, ET AL*

1    Shy.  I think the Court already knows Mr. Shy's position

2    on these further delays having filed previous --

3              **THE COURT:**  I don't know.  They're all so

4    shy.  Go ahead.

5              **MR. MAGIDSON:**  So he objects for all the

6    reasons that, as we know been, he's been locked up now for

7    two years.

8         And so in addition, I have a paid vacation in

9    August, mid-August.  I'm anticipating that would -- even

10   if it is a two month trial, I thought I was safe by

11   booking a place in August.

12             **THE COURT:**  Okay.

13             **MR. MAGIDSON:**  It's a family vacation, which

14   is about 10 days.

15             **THE COURT:**  You will be ready to go?

16             **MR. MAGIDSON:**  Yes.

17             **THE COURT:**  All right.

18             **MR. MAGIDSON:**  I think John wants to speak to

19   the other issue.

20             **MR. THEIS:**  I just want to, Judge, respond.

21   You asked about the standard procedure for keeping a

22   second lawyer.  It has been done both ways.  We have

23   discussed, if the Court would like, we can provide some

24   history of that.  This one I think is fairly clear of a

25   second lawyer because of the volume of the discovery in

*15-20652; USA v. EUGENE FISHER, ET AL*

1   this case, number of witnesses, the length of the trial.

2   Very frankly, the length of time it has taken to get a

3   decision with regards to the death penalty eligibility is

4   pushing it back, so as we get closer to trial, the work of

5   two people has to be consolidated into one.  We are

6   preparing for trial on this case, and I just think it

7   would be a tremendous hardship.  It would put Mr. Shy at a

8   tremendous disadvantage in the trial not to have a second

9   lawyer on the case.

10          **THE COURT:**  Thank you.  Mr. Swor?

11          **MR. SWOR:**  During the O'Reilly case, which

12  was Harold Gurewitz's case in this district, which is the

13  last one that was tried, Mr. Gurewitz had at least second

14  learned counsel present through the entire trial.

15          **THE COURT:**  I have a question of you, Mr.

16  Swor.  Did you say your conflict was in the middle of

17  July?

18          **MR. SWOR:**  The last week of July.

19          **THE COURT:**  Is that cutting it pretty close

20  even if we start on June 5th?

21          **MR. GRAVELINE:**  This past trial I think we

22  took five weeks, and we're going into the sixth week right

23  now.  So I think that went fairly fast, and it was four

24  defendants.  So a seven week trial, six or seven weeks, I

25  mean, it's going to be close, but I think --

*15-20652; USA v. EUGENE FISHER, ET AL*

```
 1              THE COURT:  It's possible?

 2              MR. GRAVELINE:  It's possible.

 3              THE COURT:  But possible might not be

 4   adequate assurance for you, Mr. Swor.

 5              MR. SWOR:  It's paid for.

 6              THE COURT:  And the Fourth of July week is in

 7   there, and --

 8              MR. SWOR:  Yeah, but in the first trial, the

 9   one that the jury is out, you all had a week off, a trial

10   week off.

11              THE COURT:  Right.  We had a four day off

12   period, and we did that well ahead of the trial.  We set

13   those dates.  I have to say I think it made it easier to

14   get a jury because they recognized that they would have

15   that break, and then the trial schedule was nine to one,

16   which I expect to maintain for this trial as well.  Is

17   that what you were planning?

18              MR. GRAVELINE:  I was going to ask for a half

19   day trial schedule.  Maybe we can extend it out, like nine

20   to two or something like that, you know, an extra hour per

21   day, but I would leave that up to the Court.  I think

22   those half days are helpful, and I think as the Court has

23   experienced, we got a lot done even in four hours of court

24   time everyday.

25              THE COURT:  Definitely, and it allows
```

*15-20652; USA v. EUGENE FISHER, ET AL*

1    everybody to keep up their schedule.

2             **MR. FEINBERG:**  I would join in on some of the

3    other attorneys' request having learned counsel

4    participate in the entire trial with Mr. Brown and myself.

5             **THE COURT:**  Okay.  Mr. Johnson?

6             **MR. JOHNSON:**  With respect to Mr. Patterson,

7    we are happy to move forward for all of the reasons

8    stated.  However, I do understand the issues that the

9    death eligible counsel have stated, but we are ready to

10   move forward on behalf of Devon Patterson.

11            **THE COURT:**  All right.  So it maybe cutting

12   it close, but it sounds like we ought to try to maintain

13   the turnaround.

14            **MR. GRAVELINE:**  Very good, your Honor.  We'll

15   get it done.

16            **THE COURT:**  Okay.  So we'll keep the date,

17   and -- and I don't know what we'll do about the potential

18   break around the Fourth of July, because I have a feeling

19   that -- again, if jury selection was at all indicative for

20   the first group of what might happen in the second, I

21   think that opportunity for the break around a school

22   holiday was pretty helpful in getting jurors to agree to

23   participate, and so I thought that natural break period

24   would be around the July 4th holiday.

25            The difficulty -- one of the difficulties that

                   *15-20652; USA v. EUGENE FISHER, ET AL*

1    Marcia just pointed out for me is that the jury

2    questionnaires are going out in two weeks, and so we've

3    got to have a pretty firm idea -- set pretty firm dates if

4    we're going to properly forewarn the jurors about the

5    length of the trial and the schedule that we're going to

6    follow.

7          So I don't know about going until 2:00 frankly.  I

8    mean, to ask people to go that long without sustenance is

9    I think pushing it.  Perhaps maybe we can split the

10   difference and go to 1:30.

11              **MR. GRAVELINE:**  That would be fine, your

12   Honor.

13              **THE COURT:**  The period of time to complete

14   this first trial was shortened considerably by the

15   experienced lawyers on the defense side frankly.  We have

16   a similar group.  So I would think we would be approaching

17   it -- I couldn't imagine a much more efficient trial

18   taking place.  The defense lawyers asked no questions of a

19   large number of -- I'm sure if you're getting transcripts

20   already, you're seeing that the -- the lawyers identified

21   their issues, their theory of the case, and stuck close to

22   both the theory of the case and the specific factual

23   disputes that exist in the case.  So there was no

24   showmanship, and I'm sure we'll have a similar experience

25   here.  But I don't think it can get anymore efficiently

*15-20652; USA v. EUGENE FISHER, ET AL*

1    done than this first group.

2              MR. GRAVELINE:  I agree, your Honor.  We went

3    through 101 witnesses in five weeks.

4              THE COURT:  That's pretty amazing.  Nobody --

5    I think nobody would believe at first glance that that

6    occurred going half days.

7              MR. FEINBERG:  Your Honor, is it possible for

8    the attorneys in this group to receive the jury

9    questionnaires to see whether or not, based on our input,

10   if any additional questions maybe included in the

11   questionnaire?

12             THE CLERK:  The attorneys have to agree on

13   the questions that go into the questionnaires.  The jurors

14   are being summoned in the next two weeks to appear to fill

15   out the questionnaires.

16             MR. FEINBERG:  Are we talking about the jury

17   questionnaires specific to this case?

18             THE COURT:  Right.

19             THE CLERK:  The first trial?

20             MR. FEINBERG:  Yes.

21             THE COURT:  I'm sorry.  What good would that

22   do you?  I don't understand.

23             MR. FEINBERG:  I don't want the jury

24   questionnaires and their answers from the first trial.

25             THE COURT:  Just the questions?  I see.

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1              **MR. FEINBERG:**  Jury questionnaires specific

2      to this trial.

3              **THE COURT:**  Has that been finalized?

4              **MR. GRAVELINE:**  No.  I think what Mr.

5      Feinberg is asking is can -- so can he see the one that we

6      used in the first round to see if he wants to either to

7      ask some of them, some of the questions deleted or added

8      from that first one before they are finalized.

9              **MR. FEINBERG:**  That's correct.

10             **THE COURT:**  Okay.  I see no reason why not.

11     Do you?

12             **MR. GRAVELINE:**  I don't.  I don't have any

13     problem with that.  Marcia, do you have the last version?

14             **THE CLERK:**  I can find it.

15             **MR. GRAVELINE:**  If you don't mind emailing it

16     out to all parties, and I will coordinate with all defense

17     counsel to see if we can have it agreed upon by next

18     Friday.

19             **THE COURT:**  Okay.  We will get those for you.

20     You certainly should have the chance to participate in

21     identifying questions asked.

22         Okay.  We need to couple of supression hearings as

23     I understand it, and everything else -- are there any

24     various motions that are now pled?

25             So we have Mr. Bailey's motion to exclude rap

                *15-20652; USA v. EUGENE FISHER, ET AL*

1    videos, and that's joined by Mr. Shy, Mr. Brown and Mr.

2    Patterson, and we have the motion and the answer, and I

3    don't know if Mr. Bailey or any of the joining

4    defendants --

5         **MR. FEINBERG:**  Judge, I'm having difficulty

6    hearing you.

7         **THE COURT:**  Okay.  So as it relates -- as it

8    relates to that motion, first of all, we have a motion and

9    response.  Do we have a reply?

10        **MR. GRAVELINE:**  I don't believe so, your

11   Honor.

12        **THE COURT:**  I might report for the benefit of

13   Mr. Daly and Mr. Spielfogel, that I went through this on

14   the first round, and I set out a procedure that would be

15   used for determining the admissibility of specific rap

16   lyrics and videos, and so I would anticipate a similar

17   procedure in this case, and the question is whether you

18   wanted an opportunity for a reply following the response

19   by the government, or whether you would end up in

20   agreement with the procedure that I employed in the first

21   trial group.

22        **MR. SPIELFOGEL:**  Your Honor, I believe we

23   asked to file a reply.

24        **THE COURT:**  How soon can you get that in?

25        **MR. SPIELFOGEL:**  One week.


                *15-20652; USA v. EUGENE FISHER, ET AL*

```
 1              THE COURT:  One week from today.

 2              MR. SPIELFOGEL:  Thank you, Judge.

 3              MR. FEINBERG:  I think we would need to know

 4    specifically which rap lyrics, et cetera are specifically

 5    going to be introduced by the government as it relates to

 6    Mr. Brown before we can submit a response.

 7              MR. GRAVELINE:  So I think that's the

 8    procedure that you set out in the first trial, and we can

 9    identify the specific ones that we intend to introduce in

10    Trial Group 2 by April 1st.

11              THE COURT:  April 1st?

12              MR. GRAVELINE:  Yes.

13              MR. SPIELFOGEL:  We will a need week after

14    that.

15              MR. FEINBERG:  Yes, a week after that, your

16    Honor, for the response.

17              THE COURT:  Okay.  A week after what?

18              MR. FEINBERG:  A week after they let us know

19    which videos --

20              THE COURT:  Okay.  I got it.  Thanks.  All

21    right.

22         We also have a motion by Mr. Bailey to suppress

23    cell phone evidence.  We don't have a response to that

24    motion by the government as of yet.  Did you intend to

25    respond?
```

*15-20652; USA v. EUGENE FISHER, ET AL*

 1             **MR. GRAVELINE:**  Is this a Daubert motion?

 2             **THE COURT:**  No, this is a motion to suppress

 3    cell phone evidence, Docket Number 681.

 4             **MR. GRAVELINE:**  All right. I missed that one.

 5    I will have a response to you, your Honor.

 6             **THE COURT:**  Okay.  And how soon will that

 7    happen?

 8             **MR. GRAVELINE:**  On a motion to suppress, I

 9    know that they filed it before the March 1st deadline, but

10    I would ask for three weeks from March 1st.  That would be

11    a week from today.

12             **THE COURT:**  Okay.  That's good.  Then

13    Mr. Bailey has a motion to compel discovery of Detroit

14    Police homicide files, Document Number 773, and that's

15    also joined in by Mr. Shy.

16             **MR. GRAVELINE:**  Yes, your Honor.  We filed a

17    reply -- or replied that we would have it done by

18    January 31st.  It got lost in the shuffle.  We've been

19    going through it and redacting it yesterday and today.  I

20    anticipate it will be out by tomorrow.

21             **THE COURT:**  Okay.

22             **MR. FEINBERG:**  I believe that we requested

23    the Detroit Police homicide files as it relates to Mr.

24    Brown.  I thought we joined in on that motion.

25             **MR. GRAVELINE:**  I think we've already

*15-20652; USA v. EUGENE FISHER, ET AL*

1    produced that.

2                    **MR. FEINBERG:**  The entire homicide file?

3                    **MR. GRAVELINE:**  I believe so.  With our

4    Jencks disclosures as well, that would complete that

5    homicide file.

6                    **MR. FEINBERG:**  I will check.

7                    **MR. DALY:**  I think there's -- it's not clear

8    from what the government is saying in terms of what

9    they've actually produced on the homicide files.

10        This particular motion is to have the actual

11   jackets of the Detroit Police Department Homicide Section

12   delivered to a place where the defense lawyers can

13   actually look at it; that is, not to have the government

14   go through it first and decide what they want to give us.

15   That's the specific motion.  They filed a response.  We

16   filed a reply, and we are waiting for a ruling on that

17   Judge.  So I think it is different than what the

18   government is telling us right now.

19                    **MR. GRAVELINE:**  I did not understand it.  I

20   thought it was disclosure of that, and disclosure means we

21   review it and produce what's relevant.

22        So for example, so within the Detroit homicide

23   file, there's papers in there from photocopies of Wayne

24   County Prosecutor's notes or emails between two Wayne

25   County Prosecutors about charging decisions.  I don't

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1   think that becomes, you know, disclosable in any way,

2   shape or form.

3        So I would object to yeah, I'm just going to

4   deliver the homicide file and let people go through it.  I

5   believe it's our responsibility to go through and produce

6   what's relevant, not work product, not, for example, the

7   Wayne County Prosecutor's witness list from that, what

8   they turned over at the time.  Those things are not

9   disclosable.  The disclosables are things like the

10  investigation, statements taken, that type of material.

11       **MR. DALY:**  So what I would propose, and we've

12  done this in the past, is that the defense lawyers go

13  through it.  Whatever we want, we tag.  If the government

14  doesn't want to give it to us, we can then seal that, give

15  it to you in camera, and let you decide instead of letting

16  the government decide what's relevant for us to see,

17  because in the past when we've done this, we've seen

18  progress notes about other suspects that the government

19  never turned over to us.  We have found Brady statements

20  as well that the government did not turnover.

21       So the process that I'm proposing will give the

22  government a chance to object once we see it.  It's a

23  whole different process.

24       **MR. FEINBERG:**  Judge, as it relates to Mr.

25  Brown, our situation is a little bit different, because

*15-20652; USA v. EUGENE FISHER, ET AL*

1      another defendant had been tried twice and convicted.

2      Ultimately, that person's case was granted a new trial,

3      and the case was dismissed.  So I think it is very

4      important for us to know exactly what kind of notes that

5      were going on relating to the trial in that case,

6      potential suspects, witnesses that may not have testified

7      or been given to us.  So we need to be able to go through

8      the entire homicide file ourselves, along with exactly

9      what Mr. Daly said, just to find out whether or not

10     there's something in there that definitely helps our case.

11              **THE COURT:**  The difficulty that I have Mr.

12     Daly with your suggestion is that to the extent that the

13     government is asserting privilege or work product, I don't

14     know how Detroit homicide file could necessarily --

15              **MR. GRAVELINE:**  I'm talking about, for

16     example, an email in there between two prosecutors

17     yesterday.  I mean, that's work product.  That's not -- I

18     mean, I don't know why it's in DPD homicide file, but it's

19     in there.

20              **THE COURT:**  Before you get to sit down with

21     the file, it would seem to me that the government should

22     go through the file and identify any items they believe

23     are privileged or not discoverable for some whatever

24     reason, and they could furnish you that -- the description

25     of what they have removed, but they should probably have

                *15-20652; USA v. EUGENE FISHER, ET AL*

1    the opportunity to remove from the file anything that

2    would otherwise would be undiscoverable, and then give you

3    the opportunity to do that, but I don't know -- is there,

4    again, an established way that the Detroit Police have for

5    producing materials like this for examination?

6            **MR. GRAVELINE:** Not that I'm aware of. I

7    have to ask DPD homicide. I don't know what they do in

8    state court practice for homicide, but I can find out.

9            **MR. DALY:** It's simply a red row jacket where

10   all the documents are contained.

11            **THE COURT:** Red --

12            **MR. DALY:** Red row.

13            **MR. GRAVELINE:** One of these.

14            **MR. DALY:** It's much bigger, and they just

15   literally bring the whole file and put it on the desk, and

16   allows the defense to make that decision about what's

17   relevant and what maybe important, rather than the

18   government doing it initially. But if the government is

19   going to go through and take certain things out, I think

20   they have to identify that, and create a separate file at

21   least, and then either you will look at it in camera or

22   we're going to look at it.

23            **THE COURT:** Right.

24            **MR. DALY:** One of the two.

25            **THE COURT:** Right. That's what I was trying

1    to say, but you probably said it better.  Okay.  All

2    right.  So Mr. Graveline should be able to find out what

3    the procedure is over in Detroit.

4            **MR. GRAVELINE:**  Yes, your Honor.  I'll have

5    answers for all of it tomorrow.

6            **THE COURT:**  All right.  So again, returning

7    to the motions, Mr. Bailey's fourth motion is to strike

8    allegations and preclude evidence regarding homicide and

9    the shooting for which the defendant was tried and

10   acquitted, and that I think is what we were just talking

11   about, and that's the file that you're talking about

12   having access to, is that right?

13           **MR. DALY:**  That's one of the files, but the

14   argument is essentially a double jeopardy argument, Judge.

15           **THE COURT:**  Two different sovereigns?

16           **MR. DALY:**  Yes.

17           **THE COURT:**  Okay.  So that's been answered?

18           **MR. GRAVELINE:**  Yes, your Honor.

19           **THE COURT:**  And did you intend to reply, Mr.

20   Daly?

21           **MR. DALY:**  No.

22           **THE COURT:**  Okay.  So I'll assess that on the

23   papers unless I conclude that I really need oral argument,

24   and then I'll have you come in.

25           The fifth argument is Corey Bailey's motion for

*15-20652; USA v. EUGENE FISHER, ET AL*

1   Bill of Particulars, and I don't know if that was joined

2   in -- it was by Mr. Shy.  So that's been answered?

3                   **MR. GRAVELINE:**  Yes, your Honor.

4                   **THE COURT:**  And is there going to be a reply?

5                   **MR. DALY:**  No, sir.  There will not be.

6                   **THE COURT:**  All right.  Thank you.  I'll

7   follow the same process for that one.

8           So we have the government had responded that

9   discovery would be provided January 4th, and it is your

10  position that it's been fully complied with?

11                  **MR. GRAVELINE:**  For which?  I'm sorry.

12                  **THE COURT:**  There is for this -- you

13  previously argued that the discovery will make it clear to

14  the defendants what they are charged with.

15                  **MR. GRAVELINE:**  That's correct.  We produced

16  Jencks, your Honor, back on December 26th.  There's some

17  Jencks that's particularly relevant to this trial of

18  witnesses we didn't call at the last trial.  We will

19  produce that to the defense here as well, and yes, we

20  stand by that.  So when we put Jencks out for the first

21  trial, we gave it to all defense counsel.

22                  **THE COURT:**  Okay.

23                  **MR. GRAVELINE:**  So now there are witnesses

24  that we will be calling in the second trial that are

25  different than the first trial.  So we need to go back and

*15-20652; USA v. EUGENE FISHER, ET AL*

1     make sure we produced Jencks for those individuals as

2     well, and we will.

3                    THE COURT:  All right.  There was an issue in

4     the first trial that dealt with the theory of the case,

5     and the government's assertion of -- I'm trying to

6     remember now -- the government's corporation of the --

7     well, it dealt with our jury instructions.

8                    MR. GRAVELINE:  Pinkerton, your Honor.

9                    THE COURT:  Right.

10                   MR. GRAVELINE:  We will be proceeding on

11    Pinkerton on Count 32.

12                   THE COURT:  And were you going to provide

13    some formal notice?

14                   MR. GRAVELINE:  I will email everyone to that

15    effect.

16                   THE COURT:  And defense counsel may already

17    be familiar with the issue given the transcripts of that

18    trial.

19                   MR. DALY:  With regards to the Jencks

20    material that the second group has not received, is it the

21    government's intention to give it to us 30 days before

22    trial at least?

23                   MR. GRAVELINE:  At least, but I'm going to do

24    it before that.  It will be at least 30 days, but I'm

25    hoping to get it done in the next three weeks or so.  I

15-20652; USA v. EUGENE FISHER, ET AL

1      don't -- we've got quite a bit of things that are starting

2      to pile up on in getting done in the next week or two, but

3      it's my intention to have it probably by 45 days out.

4                  THE COURT:  Okay.  Thank you.  All right.

5            So Mr. Porter has a motion for additional

6      discovery, and given what the government has turned over,

7      is discovery still an issue?

8                  MR. S. SCHARG:  Judge, I realize he filed a

9      response to that motion.  So I'll look at it.

10                 THE COURT:  Okay.  So you don't know whether

11     or not you wish to file a reply?

12                 MR. S. SCHARG:  I will file a motion to

13     dismiss.  My client indicates that he believes the

14     government took too long to respond for our motion for

15     discovery, and that their response should be vacated.

16                 THE COURT:  All right.  Thank you.

17           So I'll expect if you're going to file a reply,

18     that you do it within a week or if you're filing a

19     withdraw based on the representations of discovery then

20     you can indicate that also.

21                 MR. S. SCHARG:  Thank you, Judge.

22                 THE COURT:  Mr. Patterson has a motion to

23     remove Mr. Johnson as his counsel.  Obviously, if that

24     were to happen, nobody would be going to trial on

25     June 5th, but Mr. Patterson, have you and Mr. Johnson

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    worked that out?

2           **DEFENDANT PATTERSON:**  Absolutely, your Honor.

3    With all due respect, that motion was filed months ago,

4    I'm definitely satisfied with my attorney, and we're

5    moving forward.

6           **THE COURT:**  All right, sir.  Thank you.  We

7    will allow that motion to be withdrawn.

8           Mr. Bailey has a motion for a Daubert hearing, and

9    to preclude the testimony of the proposed experts cellular

10   analysis.  The Court has ruled on the subject matter of

11   that motion in the first, since we had joinders to the

12   motion in the first group, and you've answered?

13          **MR. GRAVELINE:**  Yes.

14          **THE COURT:**  Has there been a reply?

15          **MR. DALY:**  No, we didn't file a reply, but

16   we've asked for a hearing, Judge.

17          **THE COURT:**  A hearing, meaning oral argument

18   on the issue?

19          **MR. DALY:**  No, evidentiary.

20          **THE COURT:**  All right.  So as an evidentiary

21   hearing, we should be allocating --

22          **MR. GRAVELINE:**  Just to inform the Court,

23   part of our response was there's no need for an

24   evidentiary hearing.  We believe the Court can rule

25   without calling an actual Daubert hearing based upon the

1    nature of the evidence in this case.

2          So perhaps if the Court takes a look before

3    setting an evidentiary -- and if the Court believes an

4    evidentiary hearing is necessary, then obviously that's

5    what we'll do, but as part of our response, it's not

6    necessary.

7                    THE COURT:  That makes sense.  Not the

8    outcome necessarily, but the idea that I look at it,

9    screen it first to decide if we need a hearing.

10         Mr. Fisher has a motion to suppress physical

11   evidence, and that's been answered?

12                  MR. GRAVELINE:  It has not, and we intend to

13   have an answer to the Court by next Thursday, which would

14   be three weeks from March 1st.

15                  THE COURT:  Okay.  Mr. Scharg?

16                  MR. H. SCHARG:  I'll go out on a limb, and

17   say I don't know how the Court could resolve this without

18   an evidentiary hearing based upon the allegations made.

19                  THE COURT:  All right.  So let's make --

20   let's set that one for a hearing.

21                  MR. GRAVELINE:  Okay.

22                  THE COURT:  Do you need anything more than a

23   couple of hours?

24                  MR. H. SCHARG:  No, your Honor.

25                  THE COURT:  Okay.


               *15-20652; USA v. EUGENE FISHER, ET AL*

1          MR. GRAVELINE:  That's sounds appropriate.

2          THE COURT:  Okay.

3          MR. H. SCHARG:  The only thing that I may say

4     is that the hearing will require the testimony of

5     cooperating witnesses in this case who was the source of

6     information, the cooperating witness in this case,

7     Mr. Steve Arthur, and he's critical to the motion.

8          THE COURT:  All right.  Do you have any

9     problem with producing him for that?

10         MR. GRAVELINE:  No, your Honor.

11         THE COURT:  Will there be a reply?

12         MR. H. SCHARG:  I haven't gotten a response.

13         THE COURT:  What week?

14         MR. H. SCHARG:  I don't think there will be a

15    need for a reply.

16         THE COURT:  That means we don't have a

17    response yet?

18         MR. GRAVELINE:  No.

19         THE COURT:  Okay.

20         MR. GRAVELINE:  So that's one I was going to

21    file a response by next Thursday.  That's one of the three

22    supression motions that we have to respond to.

23         THE COURT:  Next Thursday, week from today?

24         THE CLERK:  How about April 11th at 2:30.

25         MR. GRAVELINE:  That works for the

                 *15-20652; USA v. EUGENE FISHER, ET AL*

1    government.

2                    THE COURT:  A Wednesday.

3                    MR. H. SCHARG:  I would ask the Court to do

4    it in the morning in case --

5                    THE CLERK:  We have a bench trial in the

6    morning.

7                    MR. H. SCHARG:  We can start I don't know --

8                    THE CLERK:  Maybe 2:00?

9                    THE COURT:  Set it for two.  I would think --

10   you have two witnesses you expect?

11                   MR. H. SCHARG:  I think about 4-5.  They are

12   short witnesses because it's a very narrow issue.

13                   THE COURT:  Okay.

14                   MR. H. SCHARG:  We'll try.

15                   THE COURT:  Okay.  So we have Mr. Keithon

16   Porter's motion to dismiss the indictment.  That's been

17   answered Mr. Graveline?

18                   MR. GRAVELINE:  Yes, your Honor.

19                   THE COURT:  And is there going to be a reply?

20                   MR. S. SCHARG:  Judge, I'll make that

21   decision.  I think I can respond by I think the 28th.

22                   THE COURT:  Yes, so within a week if you're

23   going to?

24                   MR. S. SCHARG:  Yes, your Honor.  I will let

25   your clerk.

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1          My client wants me to address the issue about the

2     Jencks materials.  It was his misunderstanding that all of

3     the Jencks material was submitted prior to the last

4     Court's ruling deadline when Jencks material had to be

5     submitted to all counsel.  Now it is known to us that

6     there are additional witnesses, Jencks materials, that

7     have not been given to us for the second group.  We want

8     to make sure -- we want the Court to address that issue

9     because we thought they were suppose to give all Jencks

10     material in its entirety, and why are we getting all of

11     this new Jencks material now when we're only so many days

12     from trial.

13               **THE COURT:**  Okay.  All right.  Mr. Graveline?

14               **MR. GRAVELINE:**  Your Honor, I think that was

15     just a misunderstanding by them because -- so, in fact, I

16     think the government's obligation was only give it to

17     Trial Group 1 to be quite frank.  They were the ones that

18     were going to trial, and in terms of -- for all the

19     reasons as laid out in the Jencks Act and also witness

20     security, we gave Jencks 30 days out for that reason, and

21     so the fact that we gave it to everybody, for the people

22     that we were calling in the first trial group, I think was

23     something we didn't have to do, quite frankly, for Trial

24     Group 2.

25               So we've given them an 80 percent solution already

                   *15-20652; USA v. EUGENE FISHER, ET AL*

1      in this matter.  I think we are complying with the Jencks

2      Act.  We're keeping with what we've told counsel before,

3      and we will be given whatever Jencks material is

4      additional to the people who are different than who we

5      called in Trial Group 1.

6                  **THE COURT:**  All right.  Thank you.

7            We have Mr. Bailey's motion to suppress.  Have we

8      already addressed that?

9                  **MR. GRAVELINE:**  I believe that's the one that

10     we will respond to next week as well.  So there's three

11     supression I believe, two for Mr. Bailey, one that was

12     filed by Mr. Minock back in September.  I think that's why

13     I missed it.  There's one by Mr. Daly which was filed I

14     believe in December, and then the one by Mr. Scharg.

15     We'll have responses on all of those by next Thursday.

16                 **THE COURT:**  All right.  Thank you.

17                 **MR. DALY:**  I should say that there are a

18     number of factual issues that will need to be resolved by

19     an evidentiary hearing.  I don't believe that you could

20     rule on the pleadings.

21                 **THE COURT:**  On the supression?

22                 **MR. DALY:**  Yes.  So I think it might be

23     well -- I would kind of anticipate that as well.  So do

24     you have a reason to think otherwise, Mr. Graveline?

25                 **MR. GRAVELINE:**  No, but I think the motion

*15-20652; USA v. EUGENE FISHER, ET AL*

1    that Mr. Daly is talking about is going to require some

2    time.  So that one motion to suppress, there's six

3    different factual scenarios and arrests that have

4    different theories of suppression.  So it's kind of really

5    almost like six motions to suppress just to let the Court

6    know.  I think we're going to probably need between six to

7    10 witnesses for that, and so when planning an evidentiary

8    hearing, we will need two days or probably a full day.

9         THE COURT:  Okay.  Having fun yet?  So we'll

10   plan on a day or two.  Do you want to set a date now?  You

11   want for both suppression motions?

12        MR. GRAVELINE:  That's correct.

13        THE COURT:  And then you anticipate a reply?

14        MR. DALY:  On the motion to suppress Fourth

15   Amendment issues, yes.

16        THE COURT:  All right.  That will be within a

17   week of the -- which puts it out -- you're response date

18   again is a week from Thursday?

19        MR. GRAVELINE:  Yes, your Honor, March 22nd.

20        THE COURT:  Week from this Thursday?

21        MR. GRAVELINE:  A week from today.

22        THE COURT:  Today?

23        MR. GRAVELINE:  Yes.

24        THE CLERK:  Wednesday, April 25th.

25        MR. DALY:  What time?

15-20652; USA v. EUGENE FISHER, ET AL

```
 1              THE CLERK:  9:00.

 2              MR. DALY:  All day?

 3              THE CLERK:  All day.

 4              MR. DALY:  That's fine.

 5              THE COURT:  So we have the question, of

 6   course, what's going to happen to the death eligible

 7   defendants if the Department of Justice concludes that the

 8   United States Attorney has to pursue a death penalty, and

 9   it certainly would have to be the remaining -- we have

10   four total, three in this group who are death eligible, is

11   that right?

12              MR. GRAVELINE:  Four.

13              THE COURT:  So if all four are certified then

14   we will be left with three?

15              MR. GRAVELINE:  That's correct, your Honor.

16              THE COURT:  And we don't have anybody in that

17   last group that you could move up?

18              MR. GRAVELINE:  I hesitate to do that just

19   because if we told one of the defense counsel to be

20   prepared for that, we already have seven defendants in

21   this particular trial.  I would just -- maybe I can talk

22   to some of the defense counsel and see if they want to be

23   moved up, but I would imagine the overwhelming response

24   will probably be no.  Nobody has expressed that to me from

25   the last trial group, but I can ask.
```

*15-20652; USA v. EUGENE FISHER, ET AL*

1          **THE COURT:**  So there are two possibilities.

2    Let's assume that all of the defendants who are eligible

3    are certified by the attorney general.  Are they trialable

4    together?

5          **MR. GRAVELINE:**  I believe so, but I think

6    that would probably be the subject to a motion by defense.

7          **MR. SPIELFOGEL:**  We would object to that.

8          **MR. FEINBERG:**  And we would object to that.

9          **MR. S. SCHARG:**  We do.

10          **MR. THEIS:**  As we.

11          **THE COURT:**  So is this a matter -- is it your

12    estimation that this is a matter that is given to the

13    discretion of the Court, or is it -- is there any

14    prevailing case law in one direction or another on that

15    subject?  Do you have any idea?

16          **MR. SPIELFOGEL:**  There's several cases, your

17    Honor, going each way and --

18          **THE COURT:**  Federal cases?

19          **MR. SPIELFOGEL:**  Yes, Judge.  That's been

20    litigated hundreds of times.  Hopefully we won't have to

21    bother the Court with that.

22          **THE COURT:**  That would be great.  All right.

23    So we're going to hold to the plea cutoff date of

24    April 30th.

25          **MR. GRAVELINE:**  I would suggest that we move

*15-20652; USA v. EUGENE FISHER, ET AL*

1      that back a week to maybe May 8th.  I think that's more

2      realistic.

3                    **DEFENDANT PATTERSON:**  No pleas.

4                    **THE COURT:**  This isn't going to affect the

5      trial date.  This is a date that we hold to address each

6      of you to know if you've satisfied everyone, that you're

7      fully informed and acting of your own volition, nobody is

8      forcing you to do otherwise.  So it's for our planning

9      purpose.  So it's important to know ahead of trial who's

10     going forward or not, and if you all want to go forward,

11     and you're all still here, then we will.

12                   **DEFENDANT BROWN:**  We ready to go to trial

13     now.

14                   **THE COURT:**  Right.

15                   **DEFENDANT BROWN:**  It keeps getting pushed

16     back.

17                   **THE COURT:**  We're not pushing the date back

18     as of today at least we're not.

19                   **DEFENDANT BROWN:**  Thank you.  I appreciate

20     that.

21                   **THE CLERK:**  May 10th?

22                   **MR. GRAVELINE:**  That will be fine.

23                   **THE COURT:**  That will be the cutoff instead

24     of April 30th.

25                   **MR. FEINBERG:**  May 10th is a Thursday?

*15-20652; USA v. EUGENE FISHER, ET AL*

```
1              THE CLERK:  May 10th is a Thursday.

2              THE COURT:  That's all on my agenda.

3         Mr. Scharg?

4              MR. H. SCHARG:  Regarding -- go back to the

5    questionnaires so I can get clarity.  We are going to

6    receive a copy of the standard questionnaire that was

7    provided to the first group that went to trial, correct,

8    just the standard boilerplate?

9              THE COURT:  Well, it wasn't all standard.

10             MR. H. SCHARG:  I mean, standard in terms --

11             THE COURT:  We took input from defense

12   lawyers and input from the government and compiled it.

13             MR. H. SCHARG:  And I anticipate it

14   probably -- if someone wants to change, we all have to

15   unanimously agree to the changes, correct?

16             THE COURT:  Yes.  I don't think that's too

17   difficult.  Anything that is within reason is going to be

18   fine.  If there is a dispute that needs to be resolved, I

19   can do that.  I probably can do that on a telephone

20   conference.

21             MR. H. SCHARG:  In terms of completed

22   questionnaires, will have those prior to trial?

23             THE CLERK:  Yes.

24             MR. H. SCHARG:  And I understand that time is

25   of the essence for some of us in completing the trial.
```

*15-20652; USA v. EUGENE FISHER, ET AL*

1    Just throwing this out for everyone, is it possible that

2    the defense attorneys get together prior to trial and with

3    the government, and see if we can weed out certain jurors

4    that we can agree would not be acceptable to both parties

5    to try to expedite the process?

6              THE COURT:  Yes, that was done with the first

7    group, and we would expect you to do it with this group as

8    well, and not only that, I mean, one of the reasons the

9    first trial was done so efficiently is because defense

10   counsel got together and coordinated their planned

11   examinations, and so everybody knew what their roles were

12   going to be, and everybody got a chance to participate,

13   but not without unnecessary duplication because there is a

14   lot of potential for duplication since the theories will

15   often play out in a similar way and the -- they really

16   avoided a lot of repetitiveness, which is one of the major

17   complaints that we hear from jurors, do you think we're

18   stupid?  We have been told that 10 times in 15 different

19   ways.  So we would expect a deal of communication on the

20   defense side to help to coordinate as well.

21             Anything on the government's part?

22             MR. GRAVELINE:  No, your Honor.

23             THE COURT:  Yes, Mr. Feinberg?

24             MR. FEINBERG:  Yes, your Honor.  During the

25   first trial, Jonathan Murphy was testifying on behalf of

*15-20652; USA v. EUGENE FISHER, ET AL*

1   the government, and apparently -- and I've seen the

2   transcript where he was caught committing perjury.  The

3   question that I need to know -- and that was testimony

4   that was involving Mr. Brown -- what I need to know is

5   what the government is going to pursue concerning Mr.

6   Murphy?  What we can bring out as a result of Mr. Murphy's

7   perjury, and I don't know whether or not the Court wants

8   us to file a formal motion as a result of that, or whether

9   or not that's something that we can discuss and reach some

10  kind of an amicable decision.

11          **MR. GRAVELINE:**  We are always up to

12  discussion, your Honor.

13          **THE COURT:**  Again, I encourage you to talk to

14  one another.  We are past the motion cutoff date.

15          **MR. FEINBERG:**  The problem is that Mr. Murphy

16  just testified.

17          **THE COURT:**  Right.

18          **MR. FEINBERG:**  And I was not made aware of

19  his perjury before the motion cutoff.  So this maybe

20  something that needs to be done as a motion in limine.

21          **THE COURT:**  Okay.  It might be a proper

22  subject for a motion in limine.

23          **MR. S. SCHARG:**  Judge, briefly.  Mr. Porter

24  advised me this morning that he needs immediate medical

25  attention.  He's being housed at the Midland County Jail.

*15-20652; USA v. EUGENE FISHER, ET AL*

1   He's been spitting up blood.  He's been asking to go to

2   hospital.  They are not complying with any of his

3   requests.  He does suffer from bullets wounds that he has

4   before he was arrested in this case, but he is in

5   desperate need of medical attention, and they are not

6   providing medical attention, and he would like to be moved

7   out of Midland.

8               THE COURT:  Have they not responded at all?

9               MR. S. SCHARG:  From what I understand, the

10  only way he can get medical attention is to put him in the

11  hole for a couple days, and then maybe he will get to see

12  a doctor at that point, but he needs approval from the

13  marshals.

14              THE COURT:  He needs approval to be moved for

15  medical attention?

16              MR. S. SCHARG:  Yes, your Honor.  He's asking

17  if he could go to Milan to get medical attention there.

18              THE COURT:  All right.  So have you been made

19  aware of this?

20              THE MARSHAL:  No, this is first we heard of

21  it.  We can complete another alert notice, contact the

22  facility, and find out the circumstances and advise the

23  Court.

24              THE COURT:  Okay.  All right.  Is this

25  related -- I know that earlier in the case the defendant

                *15-20652; USA v. EUGENE FISHER, ET AL*

1    asked to have the detention order revoked to get medical

2    attention.  We offered to direct medical attention, and he

3    indicated that he really didn't want to have it at that

4    point.  So this is the same condition?

5            MR. S. SCHARG:  No, your Honor.  He advised

6    me -- that is true, your Honor.  The Court was willing to

7    comply with his request at the detention hearing.  However

8    now, he is, in fact, spitting up blood.

9            DEFENDANT PORTER:  There are no doctors.  I'm

10   in pain.  I didn't see a doctor until Monday.  Feeling

11   chest pains.  I was shot in the chest.

12           THE COURT:  Mr. Scharg, have you talked to

13   Midland?

14           MR. S. SCHARG:  I have not since the last

15   time, but about the blood situation, I was just told about

16   it.

17           THE COURT:  Well, I think before we call on

18   the marshal to do anything, you should talk to the

19   facility, and understand what they're saying about it, and

20   then communicate with the marshal.

21           MR. S. SCHARG:  I will.  Thank you.

22           THE COURT:  All right.  Anything else on

23   defense side?

24           MR. MAGIDSON:  Is there a time for the plea

25   cutoff?

                 *15-20652; USA v. EUGENE FISHER, ET AL*

1    **THE CLERK:** 2:00.

2    **THE COURT:** Thank you. We'll see you at the

3    next event whenever that might be.

4

5    (Proceedings concluded.)

6    -    -    -

7    C E R T I F I C A T I O N

8    I, Ronald A. DiBartolomeo, official court

9    reporter for the United States District Court, Eastern

10   District of Michigan, Southern Division, appointed

11   pursuant to the provisions of Title 28, United States

12   Code, Section 753, do hereby certify that the foregoing is

13   a correct transcript of the proceedings in the

14   above-entitled cause on the date hereinbefore set forth.

15   I do further certify that the foregoing

16   transcript has been prepared by me or under my direction.

17

18

19   s/Ronald A. DiBartolomeo                    May 9, 2019

20   _____              _____
     Ronald A. DiBartolomeo, CSR                    Date
     Official Court Reporter

21   -    -    -

22

23

24

25

*15-20652; USA v. EUGENE FISHER, ET AL*