```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3

 4   UNITED STATES OF AMERICA,

 5             Government,
                                      HONORABLE GEORGE CARAM STEEH
 6        v.
                                      No. 15-20652
 7   D-3 EUGENE FISHER,
     D-4 COREY BAILEY,
 8   D-6 ROBERT BROWN,
     D-10 DEVON PATTERSON,
 9   D-13 ARLANDIS SHY,
     D-19 KEITHON PORTER,
10
               Defendants.
11   _____/

12                      MOTION HEARING

13               Thursday, June 14, 2018

14                    -   -   -

15   APPEARANCES:

16   For the Government:         JULIE FINOCCHIARO, ESQ.
                                 JUSTIN WECHSLER, ESQ.
17                               WILLIAM SLOAN, ESQ.
                                 MARK BILKOVIC,ESQ.
18                               Assistant U.S. Attorneys

19
     For the Defendants:         HENRY M. SCHARG, ESQ.
20                               On behalf of Eugene Fisher

21                               CRAIG DALY, ESQ.
                                 On behalf of Corey Bailey
22
                                 JAMES FEINBERG, ESQ.
23                               On behalf of Robert Brown

24                               MARK MAGIDSON, ESQ.
                                 On behalf of Arlandis Shy
25
```

1          STEVEN SCHARG, ESQ.
           On behalf of Keithon Porter

2

3                    -    -    -

4

5          *To Obtain Certified Transcript, Contact:*
        *Ronald A. DiBartolomeo, Official Court Reporter*

6         *Theodore Levin United States Courthouse*
          *231 West Lafayette Boulevard, Room 1067*

7              *Detroit, Michigan  48226*
                *(313) 962-1234*

8

9      *Proceedings recorded by mechanical stenography.*
     *Transcript produced by computer-aided transcription.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        I N D E X
 2    _____Page
 3   Motion hearing                                       4
 4
 5
 6
 7
 8
 9
10
11
12
13
14                      E X H B I T S
15   Identification_____Offered    Received
16
17                   N      O      N      E
18
19
20
21
22
23
24
25
```

*15-20652; USA v. EUGENE FISHER, ET AL*

```
 1                              Detroit, Michigan

 2                              Thursday, June 14, 2018

 3

 4                          -    -    -

 5              THE CLERK:  Case Number 15-20652, United

 6    States versus Billy Arnold, et al.

 7              THE COURT:  Good morning.

 8              MR. DALY:  Good morning, Judge.

 9              THE COURT:  Okay.  We have several matters to

10    address today.  Sorry for the cramp quarters.

11         The first I think will be Mr. Fisher's motion to

12    sever.  Mr. Scharg?

13              MR. H. SCHARG:  Yes, your Honor.  Your Honor,

14    Henry Scharg on behalf of Mr. Eugene Fisher.

15         We did file a motion to sever.  The government has

16    filed a response, and we filed a reply brief yesterday

17    morning.  I assume the Court --

18              THE COURT:  I've seen it.

19              MR. H. SCHARG:  -- seen everything.  In terms

20    of -- basically it's two arguments.  The government says

21    this is an untimely motion.  A motion to sever is never

22    untimely.  It evolves around the circumstances of the

23    trial, the dynamics of the trial.  To say that we were

24    untimely, and that it should have been filed earlier, I

25    also pulled out the motion filed by Mr. Swor on behalf of
```

*15-20652; USA v. EUGENE FISHER, ET AL*

1    Mr. Robinson.  That was filed May 14th.  It was not

2    opposed by the government.  They never raised the

3    timeliness issue.  For them to come in and say that it

4    wasn't filed on March 1st is very much a hollow issue

5    because you have to be consistent in raising opposition,

6    and in fact, when it comes to severance motions -- I mean,

7    if you file early, the Court will say, let's wait and see

8    what happens and how this plays out.

9         You can file it way before trial.  You can file it

10   right before trial.  You can file it during trial.  It

11   depends on the circumstances of the case, and I did raise

12   that motion periodically during this case.  Every time --

13   even before Mr. Swor started raising it when we were

14   getting the groups together, we raised the issue that we

15   did not want to be with this group, the death eligible

16   individuals.  When Mr. Swor raised the issue, we did so

17   again, and even as late as several weeks ago, the day that

18   Mr. Graveline gave notice and we had conference in

19   chambers, I brought it up again at that point in time, and

20   it's something that I have consistently raised as an

21   issue.

22        The only problem is that it has become more

23   prevalent as an issue here at this point in time.  After

24   the jury selection process where I saw that the government

25   has strategically attempted to use Mr. Fisher -- use to

*15-20652; USA v. EUGENE FISHER, ET AL*

1    try to connect him to the other co-defendants in this

2    case, constantly using the words "they" and "defense" when

3    clearly that is in violation of the instructions that the

4    Court is going to give the jury; that each -- that each

5    defendant should be judged separately, that guilt or

6    innocence is personal and individual, and the instruction

7    reads on, it is your duty to separately consider the

8    evidence against each defendant on each charge and return

9    separate verdicts.

10          Based upon what happened from both sides of the

11   table, both from the government and the defense, people

12   were trying to treat my client as part of the defense, as

13   part of the group at the table, and not to judge him

14   separately.  It became more obvious during the last

15   several days of jury selection that my client would not be

16   able to get a fair trial.

17          Ironically, he is Number 3 or the top individual

18   on this indictment when, in fact, he is the least

19   culpable.  The only reason he's Number 3 is because

20   originally way back when, the original charges were just

21   for felon in possession, and for that reason he was

22   charged with Mr. Arnold and Mr. Arthur in terms of the

23   traffic stop of Mr. Arnold and Mr. Arthur back in

24   September of 2015.  He was high on that list, but, in

25   fact, he is the least culpable and not involved in any

*15-20652; USA v. EUGENE FISHER, ET AL*

1    murders, robberies, attempted murders, et cetera, et

2    cetera, and it's clear that is he is being grouped in here

3    by the government because the government has suggested to

4    the Court the groupings, it's strictly for spillover

5    effect.

6        If, in fact, that you were going to sever him and

7    he would have to have a separate trial from everyone else,

8    you know, have a separate trial himself, I think there

9    would be at least a more valid argument by the government.

10   The fact is there is a number of other defendants that are

11   more in line with the drug offenses, the nonviolent

12   offenses, with the weapon offenses that Mr. Fisher is

13   charged with, and it would be more in line and consistent

14   with the charges -- in the offenses to group Mr. Fisher in

15   with a later -- with a later group of defendants, and we

16   know that there will be at least one or two other trials

17   that will follow and are subsequent to this one.

18       Finally -- finally, there has been a lot of -- as

19   I said in my reply brief, there has been a lot of -- we

20   are concerned about the vocal and disruptive nature of

21   several of the co-defendants in this case.  That concerned

22   us at the pretrial stage as Mr. Fisher and I sat at the

23   table while other co-defendants were in the box.  Some of

24   the co-defendants were vocal and were disruptive, and we

25   were concerned at that time, but we also thought that the

*15-20652; USA v. EUGENE FISHER, ET AL*

1     situation had been resolved.  It has not.  Even as late as

2     last week, we saw certain types of behavior from the

3     defendants -- defendants, each defendant, from that table

4     that continued to concern us; that the -- not only had

5     there been vocal and disruption during the pretrial, but

6     the disruption and disrespect for the Court was not only

7     diminishing, but getting greater, and it's more of a

8     concern to Mr. Fisher's right to a fair trial.

9          For all -- and one other thing.  I just want to

10    make clear, there's three substantive counts regarding the

11    May 10th non-fatal shooting on State Fair and Hoover.

12    Those are Counts 24, 25 and 26 I believe, and the argument

13    is -- 25, 26 and 27, and the argument is somewhat being

14    made that well, it's just not the text messages and the

15    postings which are really the overt acts in the RICO

16    conspiracy that Mr. Fisher is being charged with, but we

17    have these substantive acts, vicar acts of attempted

18    murder, assault with a firearm in furtherance and use of a

19    firearm.  It sounds real serious.

20          The evidence regarding those three counts are that

21    Mr. Arnold was in the area of the Lamont house, in that

22    sector, which is, you know, a several mile sector; that he

23    was in that area after the -- after the State Fair

24    shooting.  There's nothing else to tie -- there's nothing

25    to tie Mr. Arnold into -- into Mr. Fisher's house.

*15-20652; USA v. EUGENE FISHER, ET AL*

1    There's nothing to tie Mr. Fisher into this.  The only

2    evidence regarding these three vicar counts is that at

3    some point in time after the shooting, Mr. Arnold's phone

4    bounced off a cell tower closest to the Lamont address,

5    which they say was the stash house.  That's the only

6    evidence.  It is the thinnest of thin evidence, and quite

7    frankly, I'm pretty confident that won't survive a Rule 29

8    motion at the end of the case, but it will linger on

9    throughout the case.

10        And in fact, you may ask why, why was Mr. Fisher

11    charged with those offenses, if, in fact, the only

12    evidence was that the cell phone bounced off that cell

13    tower that day.  And the reason is because Agent Ruiz

14    testified before a grand jury that on May 10th, the phone

15    call was made from Eugene Fisher's house on Lamont, which

16    as you recall from the government's expert on cell tower

17    analysis cannot be determined.

18        It is our position that the only reason Mr. Fisher

19    is charged with those counts is because Agent Ruiz who, as

20    far as from my review, whose reputation, credibility and

21    truthfulness maybe legendary, gave false testimony before

22    a grand jury; that the -- that the -- that Billy Arnold

23    made these phone calls from Mr. Fisher's house on Lamont

24    after the shooting, which we know based upon the prior

25    testimony, it's impossible to say that.

                *15-20652; USA v. EUGENE FISHER, ET AL*

1          The only thing the cell tower expert could say was

2     that when a phone -- a cell phone hits a tower, you don't

3     know who's making the call, and you don't know the direct

4     area -- you don't know where the call is being made from,

5     but it's in the vicinity of the sector or the slice so it

6     would probably was in that area, but nothing more.

7          For all of the reasons, we are asking this Court

8     to sever Mr. Fisher from this trial group for the reason

9     that there is a problem regarding fundamental fairness and

10    his ability to get a fair trial being grouped with the

11    present defendants and the offenses for which they are

12    charged.

13              **THE COURT:**  All right.  Thank you, Mr.

14    Scharg.

15          Mr. Bilkovic?

16              **MR. BILKOVIC:**  Thank you, your Honor.

17          The first thing that I want to deal with is the

18    comments that Mr. Scharg talked about, and the statement

19    that he put in his reply brief where he indicates that it

20    was not anticipated that this disrespectful banter,

21    disruptive behavior and disrespect and lack of courtroom

22    etiquette would continue as the trial began, but it

23    appears there is not an end in sight.

24          Frankly, I don't know what he is talking about.  I

25    sat through three days of jury selection.  I didn't see

*15-20652; USA v. EUGENE FISHER, ET AL*

1    it.  None of the other government attorneys saw it.  The

2    Court at no time stopped proceedings because the Court was

3    concerned about anything occurring.

4         So frankly, I don't know what he's talking about,

5    but I certainly think if there is anything like that, the

6    Court will make sure it polices that to make sure that

7    behavior does not occur.

8         Moving onto his motion to sever where he is

9    telling you that his client is the least culpable in this

10   case, that's absolutely not true, notwithstanding the fact

11   that a defendant is not entitled to severance because the

12   proof is greater against a co-defendant.  His client is

13   charged with one of the attempted murders in aid of

14   racketeering, and he tells you about a couple of facts,

15   but he doesn't tell you about all the facts.

16        You look at Devon Patterson.  He's charged with

17   Counts 1 and 32, and that's it.  Look at Mr. Fisher.  He's

18   charged with Counts 1 and 32.  He's charged with Counts

19   25, 26, 27, 33.

20        The day of the Mother's Day shooting, there was a

21   call between Billy Arnold and Eugene Fisher prior to the

22   shooting.

23        There's a video of Eugene Fisher that will be

24   presented at trial where he's holding an assault rifle

25   talking about going out on ops, going out on operations.

*15-20652; USA v. EUGENE FISHER, ET AL*

1          There is a conversation between Billy Arnold and

2     Eugene Fisher via text message in the late evening of

3     September 25, 2015 where Billy Arnold tells him that I

4     need to come to your crib and grab my hookups.  I'm coming

5     to your crib to grab something.  Be close.

6          Shortly thereafter, Billy Arnold gets into a high

7     speed police chase, and the police recover the Bushmaster

8     rifle that was used in multiple shootings.

9          Shortly after that, a couple of days later, Eugene

10    Fisher posts a picture on Facebook with him and another

11    gentleman, where one of them is holding an assault rifle,

12    and Mr. Fisher just says -- or says, the feds just took my

13    AR that my bro is holding.

14         This is a defendant that is charged with RICO

15    violation in Count 32 along with all of the other

16    defendants -- I'm sorry -- Count 1 with all of the other

17    defendants, which means the evidence against him is going

18    to be primarily the same as all of the other defendants.

19         There's absolutely no reason to sever him out of

20    this case.  He is not even close to being the least

21    culpable.  The evidence is basically in proving the RICO

22    charge the same against him as it is against everybody

23    else.  Anything that he talks about with respect to the

24    defendants, there's no prohibition when you have six

25    defendants that are charged with one count of a RICO

*15-20652; USA v. EUGENE FISHER, ET AL*

1    violation to refer to them as the defendants.

2         I understand the jury will have to decide each one

3    of the cases separately, and I think the jury is capable

4    of doing that, but to tell the jury the defendants are

5    charged with a RICO violation is a true statement.  We

6    weren't the only ones that did it.  Defense counsel did it

7    during their voir dire.  There was no intentional design

8    to bring specific attention to Mr. Fisher, and in fact,

9    when Mr. Scharg was arguing this motion to you just now,

10   he used the term "defendants" three different times.

11        So it's not being done by design to try to bring

12   him into something that he is not part of.  The Court has

13   the ability through jury instructions throughout case,

14   beginning of the case, middle of the case, and at the end

15   of the case to make sure this jury knows, which I think

16   this jury already knows after three days of jury

17   selection, that they are to decide each defendant's case

18   separately.  I believe they are capable of doing that.

19        Based on the brief that the government submitted,

20   there's absolutely no reason whatsoever to sever

21   Mr. Fisher out of this case.

22             **THE COURT:**  All right.  Thank you.

23         **MR. H. SCHARG:**  Judge, may I briefly?

24             **THE COURT:**  Yes, a minute.

25         **MR. H. SCHARG:**  I want to school the

*15-20652; USA v. EUGENE FISHER, ET AL*

1    government a little on the history of this case very

2    briefly.

3        We had a pretrial several months ago down in Judge

4    Tarnow's courtroom where a number of the defendants were

5    very disrespectful to the Court with banter, and just

6    acting out, where the defense lawyers were all -- where --

7    where the marshals caucused with the defense lawyers --

8    all of the defense lawyers to reprimand them about the

9    behavior of their clients.  I thought at that time that --

10   I got the message, and I was hopeful that everyone -- and

11   my client got the message, and we were hopeful that

12   everybody got that message or memo.

13       It was apparent during this trial the other day --

14   and Mr. Bilkovic was in the courtroom -- when one of the

15   defendants had an outburst and referred to the Court as

16   Steeh.  Steeh.  I'm not getting my meals on time.  Steeh.

17       That's the disrespect and banter that I'm talking

18   about which is consistent with what happened at the

19   earlier proceeding, and -- and I've been in this case from

20   the duration, and -- and what I'm saying about the

21   concerns that I have regarding a continuation of this type

22   of conduct which has nothing but negatively affected my

23   client's right to have a fair trial.  There's nothing that

24   I saw before.  There's nothing that I saw in the last

25   couple of days that changed my mind or make me feel that

                15-20652; USA v. EUGENE FISHER, ET AL

1    this banter and disrespect will not continue in this

2    trial.

3         My client wants no part of it.  I don't want any

4    part of it.  The concern is that it will spill over to my

5    client.  Any type of disrespect or banter created will

6    have a spill over affect to my client, his right to have a

7    fair trial.

8         The government, you know, again talked about the

9    May 10th shooting and says well, there was a phone call,

10   and when we say "there was a phone call", that means from

11   the detailed call records it shows that there was a call

12   made from Mr. Arnold to Mr. Fisher.  It doesn't tell us

13   the length of the call, whether the call was completed,

14   because when you make a call and someone doesn't pick it,

15   it is still recorded in that -- in those records as a

16   call.

17        So there's no evidence that there was ever any --

18   there's some evidence there was a call made, but there's

19   nothing that there ever was a conversation or that the

20   call was completed that we have.

21        The other testimony was text messages from

22   Mr. Arthur regarding a hookup.  There's no indication that

23   Billy Arnold went to Mr. Fisher's home at night and picked

24   up a gun.  All there is is a text saying I need my hookup.

25        Pics in September or later in 2015, months after

*15-20652; USA v. EUGENE FISHER, ET AL*

1        the shooting has nothing to do with the shooting itself.

2        This is all red herrings by the government.

3                When I say my client is the least culpable, he may

4        not be the least culpable of the 21 defendants charged,

5        but he's the least culpable of the people in this trial

6        group, and it's for those reasons that we're asking the

7        Court for the relief and severance.

8                        **THE COURT:**  All right.  Thank you, Mr.

9        Scharg.

10               The Court basically agrees with the position

11       advocated by the government in this case, and I think it

12       is important to clarify the timing question of this

13       request for severance.

14               In the defendant's papers there was a reference to

15       an oral motion that was made, and I think it was Mr.

16       Scharg's recollection that the oral request for severance

17       was made in either March or May, but indeed, the dates

18       suggested were not accurate.  The oral request by Mr.

19       Scharg for severance was April 30, 2018, and at earlier

20       hearings, both in March of 2015 and in May, May 22nd,

21       the -- Mr. Scharg on behalf of his client was opposing the

22       idea of severance.

23               Indeed, May 22nd, I believe we had an in chambers

24       conference, and at that in chambers conference, Mr. Swor

25       on behalf of Mr. Robinson pressed the written motion for

*15-20652; USA v. EUGENE FISHER, ET AL*

1   severance that he had filed, and the Court in chambers

2   asked if any others were interested in severance because

3   of the number of defendants that we had.  The Court felt

4   efficiency would dictate either the number that we have

5   now or one less, and Mr. Swor, of course, did press his

6   motion when we went back on the record, and Mr. Scharg did

7   not, and I recall -- and I could be mistaken -- but I

8   recall asking Mr. Scharg specifically that day in May

9   whether his client was interested in severance, and I was

10   told no, but all of that is kind of secondary any way to

11   the arguments made here.

12         As it relates to misconduct on the part of the

13   defendants, I think this was earlier in the case where

14   there have been some episodes as described by Mr. Scharg

15   that are less than desirable.  We have no jurors at that

16   point, and it's the Court's opinion that the behavior of

17   the defendants during jury selection was fine.  They know

18   who the decision maker is apparently, and I don't -- I

19   didn't consider their behavior disruptive in the least.

20         The one issue that we had with Mr. Patterson, the

21   Court ended up concluding was not founded.  The complaint

22   that Mr. Patterson was making gestures was found to be not

23   accurate, and I think it's logical to expect that the

24   behavior by defendants during the trial is going to be as

25   experienced with the jury selection process, and it was

15-20652; USA v. EUGENE FISHER, ET AL

1    fine.

2         So I think that concern on Mr. Fisher's part that

3    the other co-defendants are going to misbehave and that

4    would somehow prejudice his case is not a concern at all.

5         We have gone through jury selection.  We have not

6    sworn the jurors in.  So I'm not concerned about jeopardy

7    as it relates to Mr. Fisher, but Mr. Fisher participated

8    in the jury selection process, and what am I to do if I

9    were to grant this request?  Am I going to have to

10   consider starting all over again with jury selection?  I

11   don't think so, and yet, to the extent that he

12   participated in that process, I think it is a legitimate

13   question.

14        We have -- I was concerned about the room when I

15   invited at this May 22nd date -- when I invited people to

16   indicate if they wish the Court to consider severance, I

17   was concerned about having a courtroom, period, much less

18   a courtroom that would accommodate the number of

19   co-defendants that we had as of that date, and I ended up

20   getting one, and that was Mr. Swor who pressed his case,

21   and at a minimum there was no request for severance as of

22   that date by Mr. Scharg on behalf of Mr. Fisher.

23        So I think as it relates to his level of

24   culpability, I don't know.  In general, he's charged with

25   furnishing weapons that were used in the commission of

*15-20652; USA v. EUGENE FISHER, ET AL*

1    murders and other serious violence, and I don't think that

2    the seriousness or the culpability of the charges, if

3    accurate, are of utmost seriousness and consequence.

4         So -- so I think for all of those reasons -- well

5    in addition, we got -- this is my second trial under this

6    indictment, and I've got -- I've got a number of

7    defendants who are lined up for the next round, and I've

8    got Mr. Arnold who will be tried separately, and a round

9    to follow that presumably.

10        So it would be inefficient to add Mr. Fisher now

11   to the next group up, which I think we already got seven

12   defendants in that group. I'm not totally sure. It seems

13   to me efficiency and fairness both dictate that the

14   request be denied. So the Court will deny it.

15            **MR. H. SCHARG:** Very good, your Honor. I

16   understand the Court's ruling. Therefore, I am asking the

17   Court in its preliminary instructions to the jury on

18   Monday to give 2.01(c), which is the instruction regarding

19   separate consideration, which is the appropriate

20   instruction that the Court will give at the end of the

21   trial, but because of the concerns that I have, I'm

22   requesting that instruction also be given --

23            **THE COURT:** I agree.

24            **MR. H. SCHARG:** Okay. And second of all, if

25   either side, the government or co-counsel, make any

*15-20652; USA v. EUGENE FISHER, ET AL*

 1    statements in front of the jury that's inconsistent with

 2    that, I will be standing up and objecting and asking for a

 3    cautionary instruction each time that happens.

 4              THE COURT:  Well, I'll think about that one.

 5              MR. H. SCHARG:  Okay.

 6              THE COURT:  All right.  The next issue is the

 7    government's motion to exclude evidence or testimony

 8    concerning prior acquittals, and who will address that,

 9    Mr. Bilkovic?

10              MR. BILKOVIC:  Thank you, your Honor.  I will

11    be brief I know the Court read the pleadings.

12         The government is asking for a ruling from the

13    Court prohibiting any mention or reference to Corey

14    Bailey's acquittal of one of the murder cases that we're

15    going to present evidence on this case, the October 21,

16    2009 Calloway murder, as well as recent Michael Rogers

17    acquittal in the last trial.

18         I've cited to the Court the cases that are

19    relevant on this issue, and basically those cases stand

20    for the proposition that judgments of acquittal are almost

21    always excluded because of the lack of relevancy because

22    they are not proof of innocence, and the judgment of

23    acquittal does not decide any facts of issue, but simply

24    means the government failed to convince the jury beyond a

25    reasonable doubt.

*15-20652; USA v. EUGENE FISHER, ET AL*

1          Judgments of acquittal have little, if any,

2     probative value, and if the Court were to determine there

3     was some probative value, case law is very clear that if

4     the Court makes that determination under a 403 analysis,

5     the danger of unfair prejudice or confusing the jury

6     substantially outweighs any limited probative value those

7     may have, especially with respect to the Corey Bailey

8     acquittal where you have a different sovereign, different

9     evidence.  It's not like we're going to just simply

10    present the transcripts of that trial where it's going to

11    be identical.  There are going to be differences.

12          With respect to the Michael Rogers acquittal, he

13    was charged with different charges and had a different

14    role allegedly than defendants in this case.  Those

15    defendants in this case are charged with involvement in

16    shootings, including murders, and so the difference

17    between these defendants and Mr. Rogers are substantial,

18    and based on those reasons, and the reasons that I've

19    cited in the government's motion, we would ask the Court

20    to preclude any mention or reference to those acquittals.

21              **THE COURT:**  Thank you, Mr. Bilkovic.

22          On behalf of the defendants, Mr. Daly?

23              **MR. DALY:**  Yes.  Thank you, Judge.

24          Judge, Craig Daly on behalf of Corey Bailey.  Good

25    morning.

*15-20652; USA v. EUGENE FISHER, ET AL*

1          **THE COURT:**  Good morning.

2          **MR. DALY:**  When I think about the

3    government's motion I think it is closely tied to the

4    question of the government's intent to introduce judgment

5    of conviction, the proofs of some of the overt acts.

6          We filed a motion to dismiss on the grounds that

7    Mr. Bailey was acquitted of the Calloway murder.  Your

8    ruling was they were separate sovereigns, and that the

9    government would be allowed to introduce evidence

10   regarding the Calloway homicide.  We're not opposed to the

11   government introducing evidence based on your ruling.

12   They are allowed to do that, and we will contest that

13   evidence obviously, vigorously.  So there's a difference

14   between the question of evidence that the government seeks

15   to introduce, and then the actual acquittal.  So as I

16   said, I think these are closely tied prior convictions and

17   the acquittal.

18         When I filed a motion in limine on my behalf

19   seeking to exclude the judgments of conviction, not the

20   evidence, but the actual judgments as evidence, what the

21   government responded to was with a single case, and that's

22   the Tocco case, T-o-c-c-o.  The Tocco case is a mafia case

23   that was tried here in the Eastern District, and when you

24   read that case, what the Court said was that the prior

25   convictions were convictions and judgments of convictions

*15-20652; USA v. EUGENE FISHER, ET AL*

1    of the co-defendants, not of Mr. Tocco, and what they said

2    was Mr. Tocco had the opportunity to show to the jury that

3    he, Mr. Tocco, was not involved with the crimes for which

4    the judgments of convictions for the co-defendants had

5    been entered, and they talked about the right of the

6    defendant to a trial by jury.

7            So what I'm saying is that these two issues before

8    you are closely related, and I think that you have to

9    consider them together; in other words, is the government

10   going to be allowed to prove an overt act only to a

11   judgment of conviction, or should they be allowed to

12   introduce evidence?

13           On the second matter, we cannot oppose it.  You've

14   ruled that they can introduce evidence.  That's fine.  Let

15   them do that, but the judgment of conviction in itself is

16   misleading.  It's confusing to the jury.  They maybe of

17   the impression that since Mr. Bailey was convicted of the

18   underlying offense and there was the judgment of

19   conviction, that they don't have any say in the matter.

20           The flip side of it is the same thing.  The

21   government is trying to preclude a judgment of

22   conviction -- of acquittal saying that Mr. Bailey went to

23   trial in state court, and he was acquitted, and they are

24   also trying to preclude evidence of the acquittal itself

25   because we expect that there maybe witnesses who will come

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    and say oh, I testified in that trial -- prior case in

2    state court, and it may come up that he was acquitted.

3         So I think these are closely linked together, and

4    our position is evidence that -- of the underlying cases

5    that the government wants to introduce is admissible, but

6    the actual judgments are not, and if you consider them

7    together, the prior convictions and the acquittals, I

8    think that the fair result would be both should be

9    excluded.  Let the government introduce the evidence that

10   they want.  Let us contest the underlying evidence

11   regarding all of the overt acts, and leave the question of

12   judgments and acquittals in the state court out of this

13   case because it is very misleading.  It's very confusing

14   to the jury.

15                **THE COURT:**  All right.  Thank you, Mr. Daly.

16                **MR. BILKOVIC:**  Your Honor, in brief response,

17   again, the problem is the law says that's what you do.  It

18   talks about the limited relevance, if any, of acquittals,

19   but it talks about improving, especially the Tocco case,

20   improving -- or has evidence proving an act that you can

21   use, a prior conviction.

22        And the government's position at this point is

23   we're not intending to use judgments of conviction, but if

24   issues become contested, for example, we have a conviction

25   where a defendant, such as Mr. Bailey, entered a guilty

*15-20652; USA v. EUGENE FISHER, ET AL*

1    plea where they laid out the factual basis of a conviction

2    and there was a conviction entered, but yet, the defense

3    at trial was he wasn't there.  He was in another state.

4    He had nothing to do with this.  We certainly feel that we

5    have the right to then bring that in.

6         But as a starting point, we don't plan at this

7    point in our case in chief to use evidence of judgment of

8    convictions to establish the predicate acts unless we're

9    forced to based on a defense strategy.  If based on the

10   questioning, if we feel it is appropriate, we can approach

11   the Court, have the Court make the determination, but

12   right now we don't plan on using it, but I think under the

13   Tocco case, if we want to establish it, we are entitled

14   to.

15        **THE COURT:**  All right.  Okay.  Thank you.

16        Based on the argument, both in the papers that

17   have been filed with the Court, as well as orally today, I

18   can certainly understand the argument by Mr. Daly that it

19   doesn't appear to be fair if -- as it is one sided, and

20   the issues are generally at least related to one another,

21   but indeed, the relevance of an acquittal is quite

22   different than the probative value of a conviction, and in

23   light of the government's stated intention not to prove

24   the fact of a conviction unless defense strategy would

25   open that door, the Court has found the general discussion

*15-20652; USA v. EUGENE FISHER, ET AL*

1    of this issue and the ruling in U.S. versus Castro

2    Ramirez, 461 Fed Appendix 467, 2012 decision written by

3    Judge Sutton.  The Court finds the reasoning persuasive.

4         There are references to Sixth Circuit opinions

5    going back to as far as 1983 and 2002 that -- that would

6    dictate granting the motion in limine filed by the

7    government.

8         And so the Court grant that motion in limine.

9    There is to be no references to the acquittals subject

10   that is the subject to that motion.

11        All right.  So the next matter to address is a

12   motion in limine filed by Mr. Daly.

13            **MR. DALY:**  Thank you, Judge.

14        What I want to begin with -- because we have

15   addressed a number of different areas -- I think it is

16   helpful to start with what the parties agree to.

17        There was an agreement regarding a specific rap

18   video that we filed a motion in limine, and the rap video

19   is referred to as OG HardWorkJig Sonny, and it may be

20   Sonny Cocaine, and that is Government Proposed Exhibit 68.

21        What we raised was a Fifth Amendment argument

22   because as part of his rap, Mr. Bailey says, quote, I kept

23   silent.  It was well worth it.

24        There is some other language that he used in that

25   context too about the prior homicide that you just ruled

*15-20652; USA v. EUGENE FISHER, ET AL*

1  on, where he says I beat the murder.  Not guilty was the

2  damn verdict.  You just ruled that can be excised, that

3  that should not be a part of the case.

4          I just want to say at this point, the agreement,

5  as I understand the government's position, is that the

6  reference to, I kept silent.  It was well worth it, will

7  not be admitted, and that's the extent of the agreement.

8          So we have an agreement between the parties with

9  regard to that, and then we have the Court's ruling that

10  this other portion should excised, and I think that's an

11  accurate representation of that particular issue that I

12  raised.  Is that a fair summary?

13          **MS. FINOCCHIARO:**  Yes, your Honor.

14          **MR. DALY:**  Okay.  So there are a number of

15  issues that I need to go through.  This will take me some

16  time, so I appreciate your patience.

17          What I want to start with is the government's

18  attempt to use certain aliases that Mr. Bailey used down

19  in West Virginia.  There were three separate incidents all

20  in Charleston, West Virginia, and they are contained in

21  Overt Acts 66, 72 and 74, and on three separate dates, and

22  dates respectfully are October 27, 2009, November 6, 2009

23  and February 8, 2012.

24          So the government intends to use this information.

25  They claim that this use of what they refer to as fake

*15-20652; USA v. EUGENE FISHER, ET AL*

1    names is part of the enterprise and conspiracy charge in

2    Count 1.

3         What the government and the defense agrees to is

4    what Sixth Circuit precedent is.  What the law here in

5    this circuit is that evidence of an alias is not to be

6    used in an indictment or as evidence at trial.  So it is

7    disfavored, and that's the starting point, and the case

8    law says there's one exception, and the one exception is

9    is there a question of identification, and the question of

10   identification could be raised in two contexts

11   essentially.

12        One is the defense could say well, when Mr. Bailey

13   was down in West Virginia and said that he was Eric Brown

14   or Dwayne Pruitt, the defense could say hey, it wasn't

15   Corey Bailey.  It was some other person.  That won't

16   happen.  We won't do that, and there's a good reason for

17   it, and the reason for it is the second part, which is

18   that law enforcement in each one of these instances was

19   able to determine either at the time or shortly thereafter

20   that the person was, in fact, Corey Bailey.  No question

21   about.

22        So when they either detained him or they arrested

23   him, they would often take his photograph.  They would

24   take his fingerprints, and they knew who he was.  So

25   there's really no issue at all about whether or not there

1    was Corey Bailey.  It's not a material issue.

2        So the government in response to the motion cited

3    to the Weaver case, and the Weaver case is a Sixth Circuit

4    unpublished opinion, and in the Weaver case they said that

5    the use of an alias could be admitted because it was

6    connected specifically to that case.

7        And what happened in Weaver is that Mr. Weaver was

8    stopped by the police, and he gave what the police

9    believed was a false name, and in response to that, they

10   moved him from one place to another, to another residence

11   so that they could determine who he was, and in the

12   process of doing that, according to the police, Mr. Weaver

13   took out a gun and dropped it.

14       So in the context of that case, they needed to

15   show why it was that they were moving him from Point A to

16   Point B and in relation to that he dropped the gun.

17       So that's the Weaver case, and that's so much

18   different than what we're dealing with here, because the

19   use of his aliases in all three instances are disconnected

20   from anything that the police actually ended up doing.  It

21   doesn't matter.  Had he said he was Mother Teresa or John

22   F. Kennedy, everything that the police did for the most

23   part afterwards ended up in with the same result.

24       So if we go first of all to the February 8, 2012

25   incident, which Overt Act 66, if you recall when we had

*15-20652; USA v. EUGENE FISHER, ET AL*

1   the evidentiary hearing, that's when Detective Allen had

2   information about some drug activity at an apartment.

3   That apartment belonged to a person named Adam Halstead.

4   And so they went and did what they call is a knock and

5   talk because they were doing an investigation, and when

6   they walked into the apartment, they saw Mr. Halstead,

7   they saw a man identified as Mr. Powell, and they saw

8   Corey Bailey.  And they asked Mr. Bailey what is your

9   name, and he said Eric Brown, but because of those

10  officers who were there had been doing an ongoing

11  investigation, one of them knew already that he was not

12  telling the truth about who he was, but that didn't make

13  any difference, because really what they were looking for

14  were drugs in the apartment.

15         So they searched the apartment, and they find a

16  single pill in the bathroom, and according to Detective

17  Allen, he comes back and confronts Mr. Bailey and he says,

18  do you mind if I pat you down, and Mr. Bailey allegedly

19  says okay, and they pat him down, and they find some

20  money, and they put it back in his pocket, and then they

21  say, can we pat you down further, and in that pat down,

22  according to Detective Allen, he feels a hard object in

23  the cheeks of his buttocks, and they place him under

24  arrest because he believes, based on his experience, that

25  there are drugs, and they take his down to the precinct.

*15-20652; USA v. EUGENE FISHER, ET AL*

1    They don't have the drugs, and they get a search warrant.

2    And in the search warrant, they don't refer to Eric Brown

3    because they know who he is.  The search warrant to do

4    that intrusive search is for Mr. Bailey because they know

5    who he is.  And so eventually Mr. Bailey turn over the

6    drugs, and that's essentially it.

7          It doesn't matter whether he said my name is Corey

8    Bailey or Eric Brown.  What happened happened, and they

9    ended up with the drugs.  So it isn't intricately

10   intertwine into what happened in this case.  It didn't

11   matter one way or the other.

12         The same thing if we go to November 6, 2009, which

13   is Overt Act 72.  That's the case where the government

14   claims that Mr. Bailey was walking in a parking lot.  As

15   he's walking in the parking lot, nearby are officers from

16   the Charleston West, Virginia Police Department.  They are

17   in plain clothes, unmarked vehicle, and they claim that

18   Mr. Bailey then drops some items.  They don't know what it

19   is.  They go over and pick up the items, and those items

20   include two small bags of marijuana, 53 pills of Xanax --

21   not the drugs that normally were associated with the drug

22   dealing of the Seven Mile Bloods -- and a small amount of

23   cocaine.

24         So then they meet up with Mr. Bailey having seen

25   him alleging throw down these drugs, and they ask him what

*15-20652; USA v. EUGENE FISHER, ET AL*

his name is.  He says Dwayne Pruitt.  It doesn't matter
what he says.  He could say whatever he wants.  They are
going to arrest him.  They saw what he did, and so there
is no connection really between what he is saying about
who he is and police activity.

        **THE COURT:**  Wouldn't it intend to show
consciousness of guilt?

        **MR. DALY:**  In what way?  So if he says, I'm
Judge Steeh, do you think they're going to do anything
different?  No.  They are going to arrest you like they
arrested Mr. Bailey.  It doesn't really matter what he
says.  He can't conceal what he did based on who he is
because they're operating not what he is saying about his
identity, but what he did, right?  So that's the
disconnect.

      So the government can say consciousness of guilt
theoretically, and that has some traction to it, but it's
only when you analyze the specific conduct of the parties
and the place that you realize that theoretically it
doesn't fit.  That's why I'm going through all of the
facts, because there's nothing that the police do that's
different based on his fake name.

      So the reason why I'm doing this is that 401, 403,
401 is it relevant?  Is it probative, and is it more
prejudicial than probative?  And so if Mr. Bailey got on

*15-20652; USA v. EUGENE FISHER, ET AL*

1     the witness stand and testified about these incidents,

2     then they could introduce this for credibility.  They

3     could impeach him because he used a false name and he

4     lied.  So that's a different thing than the government in

5     their case in chief using it as character evidence to

6     impugn who he is.  Those are accept two separate issues.

7          So I would say if we put him on the stand, the

8     government is free to ask him about all his aliases, did

9     he use them and why did he do it.

10          And the last incident is Overt Act 74 from

11    October 27, 2009.  That's a case where the police stopped

12    a vehicle driven by a woman whose name I recall is

13    Ms. Parker.  I think you heard evidence of that at the

14    evidentiary hearing.  Mr. Bailey was a front passenger of

15    the vehicle, and when they stopped the vehicle, because

16    allegedly there was a brake light that was out, and they

17    ordered everybody out.  Mr. Bailey was the front

18    passenger.  They told him to get out.  They searched him.

19    They found no weapons, no guns, no money.  Nothing.

20         So what is the consciousness of guilt related to

21    that because they don't arrest him?  He's got no drugs.

22    He's not hiding anything in terms of the offense.  What

23    they found a bag -- a duffel bag in the trunk with a small

24    amount of marijuana and some money that Mr. McClure said

25    belonged to him, and Mr. McClure was arrested.

*15-20652; USA v. EUGENE FISHER, ET AL*

1          So what I'm trying to do, Judge, is give you the

2     specifics of the case that put it in context because the

3     government often says in their reply, you've got to put it

4     in context.

5          So when we move from the theoretical of

6     consciousness of guilt to the specifics, there's such a

7     disconnect between the two, that it is our position that

8     you should exclude that in the case in chief.  You're

9     frowning at me.

10          **THE COURT:**  Yeah, I'm not sure I understand

11     the theoretical reference.  You got -- why would it be any

12     different than fleeing the police?  Obviously, defendants

13     may flee for a number of innocent reasons --

14          **MR. DALY:**  Yes.

15          **THE COURT:**  -- but one potential inference on

16     flight by a defendant is that he's fleeing because he

17     knows that he's done something wrong, and he doesn't want

18     to be caught.

19          **MR. DALY:**  Yes.

20          **THE COURT:**  Right?

21          **MR. DALY:**  Right.

22          **THE COURT:**  Why is this any different from

23     that?

24          **MR. DALY:**  Well, there's a difference between

25     flight where we're trying to actively escape arrest or

                     *15-20652; USA v. EUGENE FISHER, ET AL*

detection, and what I said.  So if the person, according

to the police, committed the crime in their presence, it

doesn't matter who they are.  That's the disconnect.  So

it doesn't matter what he says about who he is.  He's

going to be arrested, right?

**THE COURT:**  Well, depending on the discretion

the officer employs.  We have a number of incidents with

these very defendants where they might -- you might have

anticipated that they would be arrested, but the officer

employed his discretion and decides that maybe somebody

else is more culpable than this individual and lets them

pass, and maybe that could very well be the result because

in another context they don't know who they are dealing

with.

**MR. DALY:**  I think as a general concept, I

would agree, but when you get down to the specifics of

what was happening, I don't think that the officers would

ever exercise their discretion not to arrest Mr. Bailey

because he said he was somebody else given what they saw.

If they see him drop the drugs, they are going to arrest

him, right?  They are not going to say, oh, you're Eric

Brown.  We'll let you go home.  Oh, you're Dwayne Pruitt.

We'll let you go home.  You're not Corey Bailey.  We'll

let you go home.  That's what I'm talking about.

The question of flight is separate from the use of

*15-20652; USA v. EUGENE FISHER, ET AL*

1    an alias to try to deceive the police in terms of what

2    they are doing.  That is at least how I see it in the

3    context.

4              THE COURT:  Okay.  Thank you, Mr. Daly.

5              MR. DALY:  Do you want me to go onto the next

6    area, or do you want them to respond because we are going

7    through a number of different areas?

8              THE COURT:  Well, why don't I hear the

9    response.  I know part of the response is going to be it

10   is premature, that I should be making these judgments as

11   the evidence comes in, and if I end up agreeing with it,

12   maybe that will relieve you of the need to go through all

13   of the others.

14             MR. DALY:  Okay.  Thank you.

15             MR. SLOAN:  Good morning, your Honor.

16   William Sloan on behalf of the United States.

17             THE COURT:  Welcome, Mr. Sloan.

18             MR. SLOAN:  Thank you, your Honor.

19        Your Honor, as you just mentioned the first

20   argument the government would make is that this is

21   premature; that most of evidentiary arguments raised by

22   the defendant, including this one, would be better

23   resolved during trial in the proper factual context, but I

24   would like to avoid -- excuse me -- address a couple of

25   the issues raised by Mr. Daly.

                 *15-20652; USA v. EUGENE FISHER, ET AL*

 1          Just starting with the framework, the cases here,

 2     I certainly agree with Mr. Daly on the cases he cited, and

 3     there's a Sixth Circuit case that says we disfavor the use

 4     of aliases in indictments or at trial.  However, I think

 5     it is important to look at the context of those cases, and

 6     what the Court's concern is.

 7          I think these are best interpreted as the Court

 8     just putting a thumb on the scale of 403, and cases that

 9     the defendant cites involves these facts.

10          Number one in Wilkerson, that involved the

11     prosecutor inflaming the jury, as the court put it, by

12     referring to the defendant using an alias and saying

13     people with nothing to hide don't use aliases.  That's not

14     the case here.  It's not what the government will use this

15     evidence for.  This evidence will come in simply as part

16     of the narrative explanation of testifying regarding the

17     police officers.

18          Number two --

19          **THE COURT:**  Wait.  Wait.  Wait.  So we're

20     discussing the probative value of this evidence, and

21     you're argument is that it is just part of the narrative?

22          **MR. SLOAN:**  Well, your Honor, I'll turn to

23     that in one second.  I was just trying to set the

24     framework.  I think the Court's concern of these cases is

25     sort of the inherently prejudicial nature of a potential

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    nickname, or if the government uses it in a certain way.

2    Neither is the case here.

3            So the other example that I was going to make,

4    your Honor, is in the Williams case.  That defendant's

5    nickname was Capone.  Obviously, that has some inherent

6    prejudicial value.

7            If this were a case hypothetically where the

8    defendant's nickname was murder, quote-unquote, but it was

9    a drug case, we could certainly understand why there might

10   be an issue there.  That is just not the factual

11   circumstance we're dealing with here.  These were anodyne

12   fake names, just like Joe Smith, the defendant gave

13   obviously to avoid getting caught.

14           There were three instances which Mr. Daly referred

15   to, and as the government set forth in its brief, these

16   uses of fake names are relevant for a couple of reasons.

17           Number one, I think it does help certain officers

18   identify the defendant for a given action.  It's part of

19   the narrative explanation of how this encounter

20   unfolded -- how they first encountered Mr. Bailey, and

21   ultimately identified him by his true name.  But as the

22   Court referred to a minute ago, I think the really

23   important point here is it is evidence of consciousness of

24   guilt, not only of the pattern of drug dealing conduct in

25   West Virginia, which is alleged as racketeering activity

*15-20652; USA v. EUGENE FISHER, ET AL*

1       in the indictment, but also the government would note of

2       the October 21, 2009 murder of Ronald Calloway.

3              The first -- I think it is notable, your Honor,

4       that the first time Mr. Bailey used the alias Dwayne

5       Pruitt was October 27th, just six days after that

6       homicide.  So perhaps he left the Detroit area, was down

7       in West Virginia, and when encountered by the police it

8       doesn't matter whether or not they found anything on him

9       or were going to arrest him.  It's what was in Mr.

10      Bailey's mind, which is, I want to avoid getting caught.

11      He doesn't know what the police are going to do.  The

12      police might just run the name he gives, and not

13      ultimately fingerprint him and take him back to the police

14      station to confirm that identity.

15             So I think it is consciousness the guilt because

16      Mr. Bailey just doesn't know what actions the police are

17      going to take as the your Honor just pointed out.

18             Your Honor, I would also point out that he used

19      that fake name twice in a row or about two weeks later,

20      which again, is evidence of the pattern of his travel to

21      West Virginia for drug activity, and using the same

22      pattern of trying to avoid getting caught giving the same

23      name to police.

24             Your Honor, for those reasons, the government

25      would suggest, first of all, that it's premature to

                  *15-20652; USA v. EUGENE FISHER, ET AL*

1    exclude this categorically in advance of trial, but on the

2    merits it is relevant to show consciousness of guilt on

3    behalf of Mr. Bailey.

4              **THE COURT:** Okay.  Thank you.

5              **MR. DALY:** So Judge, I'll just respond, and

6    then I'll move on to the next argument.

7              As you heard in the evidentiary hearing, when

8    Detective Allen and the other officer -- whose names

9    escape me -- when they talk about these incidents when

10   Mr. Bailey used an alias, they refeed to him as Bailey.

11   They never referred to him as Brown or Pruitt, because

12   they knew who he was.  The only time the alias came up was

13   when the government directly asked the question, did he

14   use a different name.  Other than that, they started from

15   Point A to the end, always referred to him as Corey

16   Bailey.  So it's -- there's no confusion here among the

17   police about who he was, and what they are going to say at

18   trial.

19             So when talking about consciousness of guilt, it

20   has to be consciousness of guilt of the crime charged is

21   what the law says, and so the government says well, if

22   it's not consciousness of guilt of the actual offense for

23   which he was arrested, it has something to do with a

24   homicide back in 2009, but what they didn't tell you is

25   that the warrant for the homicide in 2009 wasn't signed by

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    the prosecutor until October 26th.  So we're talking about

2    him using an alias on October 27th in West Virginia, and

3    the chances of him knowing that a warrant signed by the

4    prosecutor had been put on the docket sheet, and not

5    necessarily put in the lien machine the day before is

6    almost zero.  So to say that he was trying to avoid

7    apprehension for the homicide does not fit either

8    factually.

9          So that's what I would say in response to the

10   government, and may I move to the next issue, Judge?

11                    **THE COURT:**  Yes.

12                    **MR. DALY:**  Thank you.

13         So this has to do with the conspiracy hearsay

14   objections, and again, the government says that this is

15   premature, and if you agree, I will sit down and not say

16   another word.  I will object during the trial, but my

17   understanding is that when we filed this original motion

18   to have you order the government to disclose to us at

19   least 24 hours in advance what they intended to do, it was

20   your intent to have these issues litigated not in front of

21   jury, but before, and that's why I don't think it is

22   premature because that's the same argument that they made

23   as they just did.

24         They don't want you to rule on this, but they

25   haven't said to you that these witnesses will say

                *15-20652; USA v. EUGENE FISHER, ET AL*

1    something different than what they said in the first

2    trial; in other words, they don't have, and they don't

3    make an offer of proof that there's some additional reason

4    why this evidence should be admissible.  And so I say as a

5    matter of expediency, you should decide this now unless

6    the government has something else that they have not put

7    in their brief that they want to bring to your attention.

8         And so what we are talking about are two witnesses

9    that testified during the first trial, and the first

10   witness is a person Derrick Kennedy.

11        So Derrick Kennedy testified that contrary to the

12   government's brief where they said that he was an SMB

13   member, he testified explicitly before you during his

14   guilty plea he was not a member, which you considered

15   previously in ruling on these issues was important.

16        So we have Derrick Kennedy saying he's not a SMB

17   member, and we also have the fact that the other person

18   who is involved in this conversation, allegedly Michael

19   Rogers, was acquitted.

20        So does the acquittal mean that you're completely

21   bound by that?  No, because it is proof beyond a

22   reasonable doubt, and now you're at a preponderance of the

23   evidence.  So those are two different standards, but to

24   ignore that powerful evidence that he was acquitted, I

25   think would be a mistake.

*15-20652; USA v. EUGENE FISHER, ET AL*

1          So the beginning of analysis is are these people

2     who are SMB members or not, and that's the beginning of

3     the conversation I think for you.

4          So according to Mr. Kennedy -- and this involves

5     the shooting of Djuan Page in July of 2014, July 14th --

6     this is what the conversation allegedly is about.  After

7     the July 14th shooting, 2014, near the Lawton parole

8     address, according to Mr. Kennedy, he has a conversation

9     with Arnold, and in that conversation with Arnold, Arnold

10    says, I did the shooting.  I did it alone.  Nobody else

11    was with me.  I used my own gun, and it was a

12    10-millimeter.  That's what he tells Kennedy, and I

13    believe -- although may be mistaken -- that ultimately the

14    government retrieves a slug from one of twins Michael who

15    was in the car too, and that slug is consistent with a .40

16    caliber 10-millimeter weapon.  So that's all Kennedy

17    knows.  And Derrick Kennedy and Arnold are like this.

18    They are very close.  Derrick Kennedy talked about being

19    at the mall, the confrontation with the twins and the

20    Hustle Boys, how he stuck with him.  They are really

21    tight.

22          Now we go all the way to December, five or six

23    months later, and Derrick Kennedy claims that he has a

24    conversation with Michael Rogers.  So that's why I brought

25    up Michael Rogers who was acquitted, and he claims that in

*15-20652; USA v. EUGENE FISHER, ET AL*

1    this later conversation with Michael Rogers, the subject

2    of why the police and the FBI were looking at Corey Bailey

3    about the July shooting, and Kennedy says, I don't

4    understand it.  Arnold told me he was the only one

5    involved.  Why were they looking at Sonny, and allegedly

6    Michael Rogers says something to the effect, the dumb ass

7    was leaning out the window and waving a flag, and that's

8    what we're trying to keep out because it is not a

9    statement in furtherance of the conspiracy.

10        And the two cases, one of which you often refer to

11   in the prior trial, Worman, and the other case Mitchell,

12   is what Michael Rogers is doing, assuming that it's true

13   for the purposes of this argument, he is merely informing

14   Mr. Kennedy about a past event.  He's not furthering the

15   conspiracy in any way, shape or form.  This is a

16   conversation just between two people who I say are not

17   members of the Seven Mile Bloods, and they are trying to

18   clarify what had happened, and there's really nothing in

19   that conversation that could promote the objectives of the

20   conspiracy.

21        So the government faced with that, again theorizes

22   that the importance of that conversation was that

23   Mr. Kennedy was now on notice that the people involved in

24   the shooting was not just Mr. Arnold, but Mr. Bailey, and

25   they theorize that the significance of this in terms of

*15-20652; USA v. EUGENE FISHER, ET AL*

1    the objective of the conspiracy was that Mr. Kennedy was

2    now on notice that Mr. Bailey was also involved, and

3    therefore, Kennedy needs to stay away from Bailey because

4    of the retaliation and the conflict between the two

5    parties that he could be the subject of a shooting.

6    That's their theory about how it further the conspiracy.

7         But the problem with that is that it is not case

8    specific.  Why?  Because Kennedy was already on the hit

9    list for the Hustle Boys.  He was already a target.  It

10   didn't matter who he associated with, whether it was

11   Arnold, Bailey or Scooby-Doo.  It doesn't matter.  He's

12   already on the hit list, number one.

13        Number two, because of his close relationship with

14   Bailey, and the Hustle Boys knew that because they

15   confronted Arnold and Kennedy together on multiple

16   occasions, he was already a target by his relationship

17   with Bailey, and because the brothers, the twins, had

18   allegedly said that Arnold was involved in the shooting.

19        So this whole theory about, oh my God.  Now he's

20   going to be a victim of a shooting in retaliation, is not

21   an accurate representation of the specific facts.  So it

22   is a fishing theory unsupported by the evidence, Judge,

23   and we would ask that you exclude that.

24        I don't think there's anything else that Mr.

25   Kennedy has ever said in a proffer or trial other than

*15-20652; USA v. EUGENE FISHER, ET AL*

1    what I said, the government knows about it.  Let them say

2    it, but I haven't seen it.  So we're trying to keep that

3    out.

4           The other thing has to do with Ms. Scott, and as

5    you recall, Ms. Scott testified about an incident sometime

6    in July of 2014.  Again, this is according to government's

7    theory somewhat related to shooting on the 14th.

8           According to Ms. Scott, she was in a vehicle

9    with Mr. McClure, and they are driving over to the Erotic

10   City, a bar, and at this bar allegedly our Hustle Boys,

11   including the twins, and on the way over, according to Ms.

12   Scott, Mr. McClure, who is dead, says we are going to

13   start something.  A rather vague statement.  There's no

14   weapons in the car.  It's not clear from her testimony

15   that, in fact, Mr. Bailey is present in the car.  They

16   pick him up.

17          So what we have is, we have Ms. Scott in her

18   first debriefing on September 20, 2016, never mentioning

19   this, I'm going to start something.  That's the first

20   debriefing.

21          The second debriefing is December 9, 2016.

22   Again, she says nothing about McClure saying something is

23   going to get started, and then there's her trial testimony

24   from the last trial which she makes this statement.

25          So in response to trying to keep this out

*15-20652; USA v. EUGENE FISHER, ET AL*

1    because it's not in furtherance of the conspiracy, the

2    government's response is that it's a verbal act, and it's

3    not offered for the truth, which is, again, has some sex

4    appeal to it, but the problem is if you admit it for that

5    reason, we're going ask that you turn and tell the jury

6    with an instruction that that statement is not being offer

7    for the truth, right?  Tell them right now that the

8    government is saying something, but they're not claiming

9    it's true.  It's just going to show what was said, and let

10   the jury try to figure that out and understand it.

11            So when they start by saying that it's not being

12   offered for the truth, then they switch gears later on and

13   they say look what happened.  He said something was going

14   to happen and something did happen.  So in essence, they

15   really want the jury to accept it for the truth of the

16   matter asserted, that is, that something was going to

17   start.

18            So then according to Ms. Scott, the two

19   individuals, meaning Mr. Bailey and Mr. McClure, they go

20   into the Erotic Club.  They are gone for 10 minutes.  Come

21   back.  Mr. McClure is bleeding from the head, pounds on

22   the window, and allegedly says Neff hit me with a bottle,

23   and we're seeking to exclude that too.  The government

24   says it's an excited utterance.  It isn't at this point.

25   They may be able to, they may not be able to lay a

*15-20652; USA v. EUGENE FISHER, ET AL*

1   foundation, but at this point the record doesn't support

2   that.

3           But really in the end, there are some other

4   things that you need to consider in context of this motion

5   about what was happening at the time, and whether or not

6   they were going to go there to start something.  She

7   testified there was a flier about this party, and the

8   people that were invited were Mr. McClure and Mr. Bailey.

9           So in the context of this information that the

10  government wants to seek in introduce in their case in

11  chief, Judge, we would say they don't have the proper

12  foundation.  It's not in furtherance of the conspiracy,

13  and we would ask that you exclude it.  Thank you.

14          **THE COURT:**  All right.  Thank you.

15      Mr. Sloan?

16          **MR. SLOAN:**  Thank you, your Honor.

17      Your Honor, picking up on Mr. Daly's last point, I

18  think it's a perfect example of why ruling now pretrial is

19  simply not possible.  What the defense does in their

20  motion is assume that the trial transcript from a previous

21  trial with different defendants is somehow set in stone,

22  and the witnesses are going to say the exact same thing

23  and create the exact same foundation.

24          As your Honor knows, that's just not the case.

25  What matters is the evidence will come in fresh in a new

*15-20652; USA v. EUGENE FISHER, ET AL*

trial with these defendants, and the witnesses will
testify to what they will testify to.  They may testify in
a slightly different way, or articulate different details,
and that's for obvious reasons.

Number one, there are different defendants on
trial.  So they may be asked different questions more key
to those defendants.  That may produce different
information.  Different attorneys will ask the questions
in a different way, and witnesses, you know, may say
things a little bit differently if asked a question
differently or they remember it better this time.

So I think as a starting point we can't just
assume this prior trial transcript, which defense counsel
has used to make the factual basis for his motion, is
controlling, and that's why the government starts with the
initial point, which is that essentially the Court has
already ruled how it wants to handle proffers about out of
court statements, and that was Court's order, docket entry
828, which is a day prior notice by the government of
anticipated out of court statements, and then the Court
will conditionally admit those subject to the government
proving the three elements required for a co-conspirator's
statement in furtherance by a preponderance of evidence.

So just as a starting matter, the government
recommends that the Court stick to that plan precisely

*15-20652; USA v. EUGENE FISHER, ET AL*

1   because the evidence will be coming in in a new way.

2          Just as one example of that, your Honor, it's hard

3   to make these determinations whether it's 801(d)(2)(E) or

4   some other hearsay exception or exclusion in advance of

5   trial, because the evidence might be developed slightly

6   differently.

7          For example, Mr. McClure statements to Ms. Scott

8   and or Mr. Bailey regarding the July 2014 trip to a rival

9   Hustle Boy gang party where Mr. McClure said he was going

10  to start something, comes back to the car a few minutes

11  later bleeding with Mr. Bailey, and says Neff hit him in

12  the head with a liquor bottle.

13         Now one of the -- that statement that Neff hit him

14  in the head with a liquor bottle was repeated several

15  times by Mr. McClure as Ms. Scott testified to her when he

16  and Bailey came back from the club initially, again to

17  Billy Arnold sometime shortly thereafter, and then later

18  to other SMB members, Jig and Nice, at a house, and one

19  thing that was not developed in Ms. Scott's testimony was

20  what, if any, initial reaction did Billy Arnold have when

21  Mr. McClure said that rival gang member just hit me in the

22  head with a liquor bottle.  We just don't know the answer

23  to that question.

24         So to categorically exclude something before trial

25  makes no sense in the circumstances because we don't know

*15-20652; USA v. EUGENE FISHER, ET AL*

1    what the exact foundation will be.

2         Now turning to 801(d)(2)(E) specifically your

3    Honor, which is really the heart of the defendant's motion

4    here, and I would say as a side, your Honor, I apologize

5    for the lengthy brief, but the government did that just as

6    a preview of ways that this could come in, and the reason

7    the government set out alternative explanations is for the

8    reason that I just articulated.  We just don't know what

9    the witness might say at the time, but I will say to the

10   Court that most, if not all of these, the government

11   believes will be admissible for their truth under

12   801(d)(2)(E).

13        And before I turn to the specific statements in a

14   little more detail, I just want to point out some

15   parameters of the law that I think were a little bit

16   muddied in Mr. Daly's motion.  The three elements that the

17   government has to show by a preponderance and the finding

18   that the Court has to make is number one, a conspiracy

19   existed, number two, that the defendant against the

20   statement was offered, in this case Mr. Bailey, was a

21   member of that conspiracy, and number three, that the

22   co-conspirator declarant made the statement during and in

23   furtherance of the conspiracy.

24        I think the motion really focuses on prong three,

25   but I just want to clarify number one, as to the speaker

*15-20652; USA v. EUGENE FISHER, ET AL*

1      or declarant, just to reiterate, Mr. Daly conceded I

2      think.  The fact that Michael Rogers was acquitted does

3      not bar him from being a co-conspirator for purposes of

4      801(d)(2)(E) analysis.  The jury acquittal simply means

5      the jury didn't find that he was guilty of RICO conspiracy

6      beyond a reasonable doubt, which, of course, is a higher

7      standard than mere preponderance.  And we would point to a

8      Sixth Circuit case that specifically states this, and

9      that's United States versus Todd, T-o-d-d, 920 F.2d 399.

10             And then point number two, the listener need not

11     be a co-conspirator.  The language that Mr. Daly used in

12     his brief was these statements should not come in because

13     they are not, quote-unquote, among co-conspirators, but

14     that's not what the rule requires.  The rule requires that

15     the defendant against whom it's offer be a co-conspirator

16     and the declarant be a co-conspirator, and we have that

17     here.  Mr. Bailey -- the government anticipates the trial

18     evidence will show that Mr. Bailey, Mr. McClure and Mr.

19     Rogers were all part of a racketeering conspiracy.

20             Mr. Daly claimed that Mr. Kennedy testified that

21     he was not SMB.  Your Honor, I beg to differ with that

22     characterization.  In fact, in the first trial he

23     testified he that he was 5-5, which is in some sense

24     synonymous with or a certain subgroup of SMB.  He even

25     testified that he had a 5-5 tattoo on his body, as does

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1     Mr. Rogers.  So the government anticipates that trial

2     evidence will show that Mr. Kennedy was, in fact, a

3     co-conspirator and Mr. Rogers was a co-conspirator.

4             Now turning to first set of statements by Michael

5     Rogers to Derrick Kennedy regarding the July 14th shooting

6     of Djuan Page, Neff, and the substance of that statement

7     as Mr. Daly stated was that Mr. Kennedy didn't know until

8     Mr. Rogers told him that Mr. Bailey was in the car with

9     Billy Arnold during the shooting.  And the defense

10    argument essentially is that this couldn't be in

11    furtherance because it is months --

12                    THE COURT:  After the fact.

13                    MR. SLOAN:  -- after the fact --

14                    THE COURT:  Right.

15                    MR. SLOAN:  -- and therefore, how could this

16    possibly further a conspiracy, and the government's

17    response, your Honor, is that the case law I think --

18    well, start with the case law.

19            Statements that serve to identify co-conspirators

20    and their roles in the conspiracy are in furtherance, as

21    well as statements that update or apprise a co-conspirator

22    of the status of the conspiracy, and in this case the

23    conspiracy, part of what's alleged, is of this

24    racketeering enterprise.  This gang was an ongoing gang

25    war with rivals, and part of the pattern of their

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    racketeering activity was to protect their image and

2    reputation through violence and force through controlling

3    territory in the Red Zone.

4         And so in the midst of an ongoing shooting gang

5    war, the government submits that being informed one of

6    your co-conspirators was involved in a particular shooting

7    is precisely an update on the status of the conspiracy.

8         The second point, your Honor, is, you know, I

9    think context matters here.  It's true the statement was

10    made a few months after the shooting, but as the

11    government pointed out in its brief, in the intervening

12    time -- and in fact right before the statement was made

13    around Christmas time of 2014 -- two other SMB members had

14    recently been shot.

15         So it just goes to show that this was an ongoing

16    shooting war, and in fact, the government would submit

17    that the July shooting of Neff kicked off the shooting

18    war.  And so to be informed of an update of the conspiracy

19    in December was just as relevant then as it would be in

20    July of 2014.

21         Why?  So that a co-conspirator would take actions

22    to go stay alive and or take vengeance on rival gang

23    members.  It's certainly relevant to know that one of your

24    fellow gang members did something you thought other one

25    did, so that if you're walking down the street with

*15-20652; USA v. EUGENE FISHER, ET AL*

1    Mr. Bailey, you might be more likely to be shot than with

2    another member.

3            And your Honor, I think what's lost in Mr. Daly's

4    motion is the three elements of 801(d)(2)(E) are by

5    preponderance.  That's more likely than not.  The

6    government does not have to prove 100 percent or beyond a

7    reasonable doubt that the statement did further, or it was

8    only intended to communicate this to this co-conspirator.

9    In fact, the case law is pretty clear that statements that

10   can be interpreted with different meanings or that were

11   made not even primarily to further the conspiracy can be

12   in furtherance.  The preponderance standard is not an

13   incredibly a high bar for this third prong.

14           And the last point on the Michael Rogers

15   statements, your Honor, in terms of timing it, I think a

16   good case in point factually would be the Odum case,

17   O-d-u-m, 878 F.3d 508, which we did cite in our brief,

18   and, you know, admittedly, the time span is a bit short in

19   this case.  The statements were made shortly after the

20   shooting, but I think the purpose comes across here.

21           In that case this was a motorcycle gang vicar

22   trial I believe before Judge Borman initially, and on

23   appeal the defendants contested admission of certain

24   statements that the shooters came back to the motorcycle

25   clubhouse shortly after the shooting, and updated the club

15-20652; USA v. EUGENE FISHER, ET AL

leadership on the shooting they just done.  And what the

Sixth Circuit said was, you know, even though it happened

after the fact, it's a statement of a past event, this was

in furtherance because the statements were updating the

leadership to that they could take steps to avert

retaliation from the rival gang who was a victim of the

shooting.

It's a very similar purpose here.  Mr. Rogers is

updating Mr. Kennedy on what a co-conspirator has done so

he can take steps to anticipate a response from the rival

gang.

And turning briefly to the next set of statements

which were made by Mr. McClure to -- some combination of

Ms. Scott and Mr. Bailey and then Mr. Arnold, Jig and Nice

subsequently.  As the government laid we think those are

admissible for a number of reasons, but to include

801(d)(2)(E).

And as to Ms. Scott, I would like to emphasize

something that we didn't necessarily emphasize in the

brief, which is, that we think these are 801(d)(2)(E) as

to her as well, both the statement that Mr. McClure is

going to start something in the club, as well as the

subsequent statement that Neff hit him in the head with

the bottle, and the reason is this, your Honor, the law

does not require that the -- number one, that the

1    listener, Ms. Scott, be a co-conspirator at all.  It only

2    requires that the listener be prompted to take some action

3    to facilitate the conspiracy, and that's exactly what

4    happened here.

5         Ms. Scott drives -- her boyfriend Mr. McClure

6    tells Ms. Scott, I'm going to start something at a rival

7    gang party.  What is her response?  She drives him and

8    Mr. Bailey to that party, waits for him.  When he comes

9    back, Mr. McClure informs her that he was hit in the head

10   by a rival gang member.  What does she do?  She drives Mr.

11   McClure, Mr. Bailey to talk to Billy Arnold, and then

12   drives Mr. McClure to talk to Jig and Nice so they can

13   communicate what this rival gang did to disrespect and

14   assault Mr. McClure.

15        So in that sense, Ms. Scott is acting upon

16   statements by Mr. McClure to take actions to facilitate

17   further action by the gang.  So we submit that Ms. Scott,

18   the statements to her, also fall within the co-conspirator

19   exception here.

20        And your Honor, I don't want to belabor the other

21   arguments that we made in the notice brief unless the

22   Court has any question.

23            **THE COURT:**  I'm good.  Thanks.

24        So the -- with respect to the evidence that has

25   just been reviewed, I have not really heard anything that

*15-20652; USA v. EUGENE FISHER, ET AL*

1     would lead the Court to conclude that the protocol we

2     employed during the first trial is not appropriate, and

3     that the evidence should be excluded without considering

4     the state of the evidence to the date of the statement in

5     dispute as a co-conspirator statement pursuant to 801

6     (d)(2)(E), and the analysis that is dictated.

7          I think the parties agree on the analysis that

8     needs to be employed.  The process of notifying opposing

9     counsel of their intention to introduce evidence pursuant

10    to 801(d)(2)(E) by the day before the continuation of

11    trial I think is appropriate as the protocol was

12    established originally, and it worked well.  It think it

13    gave the both sides the opportunity to consider whether

14    the statement is idle chitchat about past events, or an

15    update on the status of the ongoing conflict between rival

16    gangs and the risks that individual defendants are members

17    or participants in an enterprise committed.

18         So the Court is going to I think refrain from

19    making a declaration at this juncture with respect to the

20    admissibility of the evidence because it can, indeed, be

21    affected by the other evidence in the case up to the time

22    of the claims statement.

23         So the Court will deny the motion in limine, so

24    that the analysis can be undertaken, if there is a

25    conflict between the parties with respect to admissibility

*15-20652; USA v. EUGENE FISHER, ET AL*

1    of the same evidence at the time it's intended to be

2    introduced by the government.

3          It also pairs up with Rule of Evidence 104(b),

4    which permits the Court to proceed to make conditional

5    admissions based on what request other evidence is

6    anticipated, and I think there was a fair amount of

7    testimony at the first trial that was introduced and was

8    conditionally admitted, and I think by the end of the

9    evidence phase there were no conflicts over the

10    admissibility of those statements that were conditionally

11    admitted under 104(b).

12          So I think the process worked successfully and

13    efficiently in the first trial, and should again in this

14    trial.

15          Why don't we take a five minute break.

16

17                    (Recess taken.)

18

19                (Proceedings resumed.)

20

21          **THE COURT:**  All right.  So again, we're going

22    to employ the protocol that was employed in the first

23    trial.

24          And next on my list is just a scheduling question.

25    One, we're going to begin with the preliminary

*15-20652; USA v. EUGENE FISHER, ET AL*

1      instructions from the Court which will be relatively brief

2      except for a summary of the elements of the various claims

3      that are agreed upon here.  They have a proposal that was

4      I think generated initially by the government, and then

5      tweaked by the defense.  So is there any remaining

6      conflicts to be resolved as it relates to the elements of

7      the charges?

8                  MR. WECHSLER:  Justin Wechsler for the

9      government.

10             The only issue we had after Mr. Spielfogel sent it

11     to the government was -- I apologize.  I don't have it in

12     front of me -- the line about it's not illegal to be a

13     member of the Seven Mile Bloods, or it's not a crime to be

14     a member of the Seven Mile Bloods.  We're okay with that

15     statement generally, but we prefer say it's not illegal to

16     be a member of an enterprise, because those definitions

17     that appear right before that talk about what an

18     enterprise is over and over again, and all of a sudden

19     we're saying the proposal it's not illegal to be a member

20     of the Seven Mile Bloods.  As long as we make it it's not

21     illegal to be a member of an enterprise, we're okay with

22     the suggestions that Mr. Spielfogel put forward.

23                 THE COURT:  Okay.  That was put forward by

24     Mr. Spielfogel and who?

25                 MR. WECHSLER:  I believe it came from Mr.

                 15-20652; USA v. EUGENE FISHER, ET AL

1    Spielfogel.

2              **MR. MAGIDSON:**  I also supplemented something.

3              **THE COURT:**  Okay.  What was your supplement?

4    I know I just entertained a request --

5              **THE CLERK:**  I have it.

6              **MR. MAGIDSON:**  I'm glad somebody has it.

7              **THE COURT:**  As proposed by the defense, as it

8    relates to what Mr. Wechsler just addressed, the proposed

9    language is it is not illegal in and of itself to be a

10   member or associate of the Seven Mile Bloods, and that was

11   proffered by who, defendants collectively?

12             **MR. DALY:**  I think by Mr. Spielfogel.  There

13   was no objection from the other lawyers.  So I would say

14   by silence, that they agree.

15             **MR. MAGIDSON:**  If I may, I was just handed by

16   one of my colleagues here something that I did tender.  I

17   thought I was tendering it to the Court, but apparently it

18   never made it.

19             **THE COURT:**  Okay.

20             **MR. MAGIDSON:**  When I do things on my own,

21   that's what happens.  I cited a case, United States versus

22   Turkette, a Supreme Court case, 452 U.S. 576.  In there

23   they had language as follows:  While the proof used to

24   establish the separate elements may in a particular case

25   coalesce, proof of one does not necessarily establish the

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1    other.  The, quote, enterprise, end of the quote, is not

2    the pattern of racketeering activity.  It is an entity

3    separate and apart from the pattern of activity in which

4    it engages.  The existence of an enterprise is a separate

5    element which must be proved by the government.

6         That was part -- because the government had

7    included in addition to the actual elements, there's some

8    commentary that was included, and I thought as long as

9    we're going to be doing that, then we should balance this

10   as well.  And so I thought this would be important just to

11   tell the jury that there's different -- that there's a

12   distinction that has to be made all times, and that an

13   enterprise is not to same as a pattern of racketeering

14   activity, and that it has to be proven separately.  This

15   is an general instruction.

16        **THE COURT:**  So following the five elements of

17   the RICO conspiracy charge in Count 1, we have a

18   paragraph, and the paragraph describes what an enterprise

19   is.

20        **MR. MAGIDSON:**  Right.  If I may, Judge, I can

21   tender this to the Court for your edification.

22        **MR. WECHSLER:**  Can we see a copy?  This is

23   first chance that we heard about this.

24        I think when the Court lays out the five elements,

25   you know, first this, second this, it's going to be clear

*15-20652; USA v. EUGENE FISHER, ET AL*

1     to them, the jurors, that there are five distinct

2     elements, and I don't necessarily have a huge problem with

3     the Court saying these are distinct, and each have to be

4     proved, but it seems that this statement that Mr. Magidson

5     just gave to us, it's going too far into almost a final

6     jury instruction, and in some ways an argument from the

7     defense attorneys of what does and does not need to be

8     proven.  I just think the jurors, this early on, will

9     benefit from more of a succinct instruction than --

10          THE COURT:  That ship has sailed I think.

11          MR. WECHSLER:  Well, in fairness yes, you

12    know, one of the alternatives would just be the elements

13    solely.  We tried to limit the definitions we wanted to

14    use because we think that everyone on that panel for both

15    the prosecution and the defense will wonder what an

16    enterprise is, and I think it's enough to say it's not

17    illegal in and of itself to be a member of an enterprise.

18    I think with those five elements, the jury will be able to

19    put together what it is they need to be thinking about as

20    the trial progresses.  It think this in some way has

21    become almost too legalistic.

22          THE COURT:  Yeah, I was not processing it

23    very well during --

24          MR. WECHSLER:  I'll hand it to the Court.

25          THE COURT:  All right.  I'll consider the

*15-20652; USA v. EUGENE FISHER, ET AL*

1  addition sought here and incorporate it if I feel

2  incorporating any of it in the proposed discussion of the

3  elements is called for.

4       So at the last trial we didn't have any time

5  limits, and I think that defense counsel must have had --

6  must have conferred to parse out the discussion from

7  defense counsel to defense counsel, so that we had the

8  government consuming 40 minutes, we had Mr. Rataj

9  consuming 20, Mr. Mullkoff consuming 25, Mr. Arnone 10 and

10 Mr. Machasic five, and so it was quite manageable.  I

11 don't know if you have an idea of how long your opening

12 statements are likely to require.  The government first,

13 Mr. Wechsler?

14          **MR. WECHSLER:**  I will be doing the opening.

15 Sometimes I speak fast.  Sometimes I speak slowly, as I'm

16 sure you're aware.  I think realistically 45 minutes will

17 be the max.  It may go a little over that.  I haven't

18 timed myself, but I don't foresee myself going much longer

19 than that at all.

20          **THE COURT:**  Okay.  Among defense counsel, Mr.

21 Magidson?

22          **MR. MAGIDSON:**  John Theis will be doing the

23 opening.  I've talked with him.  He's not long winded.  He

24 will be talking about the salient points, and I would be

25 surprised if he goes over 20 minutes.

*15-20652; USA v. EUGENE FISHER, ET AL*

 1               THE COURT:  Okay.

 2               MR. DALY:  Judge, on behalf of Mr. Bailey,

 3    Mr. Spielfogel will be making the opening statement.  I

 4    have not talked to him about his specific time frame.  He

 5    has not indicated what that might be.  I guess that's as

 6    much information as I can give you at this point.

 7               THE COURT:  All right.  Yes, Mr. Feinberg?

 8               MR. FEINBERG:  I suspect no more than 30

 9    minutes, but I have a problem that I would like to address

10    the Court as to my giving an opening statement as it

11    relates to information that I was given late yesterday by

12    Eric Straus that may cause a problem with my proceeding

13    Monday with opening statement.

14               THE COURT:  I see.  Of course you can always

15    reserve.

16               MR. FEINBERG:  Well, I don't want to do that.

17    Do you want me to present to the Court the issue that I'm

18    now confronted with?

19               THE COURT:  Well, yes and no.  Let me hear

20    from Mr. Scharg and Mr. Scharg.

21               MR. S. SCHARG:  Good morning, your Honor.

22    Steven Scharg on behalf of Mr. Porter.

23          Your Honor, I think we will be no longer than 20

24    minutes.

25               THE COURT:  All right.

                  *15-20652; USA v. EUGENE FISHER, ET AL*

1             **MR. H. SCHARG:**  In Wayne County Circuit

2      Court, they refer to us as the evil Scharg and good

3      Scharg, and I'm embarrassed to tell you which one I am.

4             In regards to the opening statement, for the first

5      time 40 years, I intend to reserve.

6             **THE COURT:**  I see.  Okay.  All right.

7             **MR. H. SCHARG:**  We don't have -- Mr. Johnson

8      is not here.  So --

9             **THE COURT:**  Right.  I just want to make sure

10     it was likely that we will finish openings on the first

11     day of trial, and it certainly appears likely that we

12     will.  I'm not imposing time limits.

13            **MR. WECHSLER:**  With that said, your Honor, is

14     it fair to say the government should be ready to bring

15     witnesses in for Tuesday morning, and use the first day

16     more for whatever business the Court has with the jurors

17     as well as openings?

18            **THE COURT:**  Well, I think we found that if

19     you have one or two witnesses standing by, if concludes --

20     if the opening statements conclude by noon, I would hate

21     to lose that last hour.

22            **MR. WECHSLER:**  Fair enough.

23            **MR. H. SCHARG:**  I can give an opening

24     statement if you want me to fill the time up.

25            **THE COURT:**  No, no.  Definitely not.  Okay.

*15-20652; USA v. EUGENE FISHER, ET AL*

1    I'll come back to Mr. Feinberg in just a moment.

2         The Court would like to encourage counsel to

3    consider stipulations with respect to much of the medical

4    evidence that we spent a lot of time admitting through,

5    you know, the doctors who were in the ER, and really

6    contributing nothing more than the notes that were

7    introduced as records of treatment, and really I thought

8    that it would be much more efficient to seek to stipulate

9    at least to the introduction of the medical records, and

10   forego the testimony of the treaters, but --

11        **MR. WECHSLER:**  The government will speak with

12   defense attorneys.  We're prepare to stipulate to the

13   doctors that come in for some of the nonfatal shootings,

14   but for the medical examiners, we would like bring in

15   those witnesses.

16        **THE COURT:**  Okay.  That makes sense.

17        **MR. WECHSLER:**  Obviously, we will have a

18   conversation with defense attorneys about this as well.

19        **THE COURT:**  Right.  Right.  And so we've got

20   conference rooms that are going to be down on the first

21   floor that are going to be reserved.  One will be reserved

22   for defense counsel, which is near Judge Berg's chambers,

23   and then the government witnesses will be, as they report,

24   directed to a room that is next to Judge Tarnow's chambers

25   so you can keep track of them and will be immediately

*15-20652; USA v. EUGENE FISHER, ET AL*

1    available.

2         So that's all I have on my list.

3         Mr. Feinberg, you wanted to address that issue?

4         **MR. FEINBERG:** Yes, your Honor. Late

5    yesterday, early evening, I got a phone call from AUSA

6    Eric Straus telling me that there is new witness that they

7    have just found that is allegedly going to testify that

8    Mr. Brown committed the murder. I have no report. I have

9    no -- I believe that there was a photo display. I mean,

10    this is 12 years ago that the murder took place. I

11    suspect that I'm going to need to file a motion to have a

12    evidentiary hearing as to the photo spread, how it was

13    conducted.

14         Again, I don't have any of the information. Even

15    if I got it today, I doubt whether or not I would be able

16    to follow it before tomorrow or Monday. I can't give an

17    opening statement if I don't know what the evidence is

18    going to be involving the shooting. I know what is --

19    what I have, but this is brand new.

20         So I'm letting the Court know that there's a

21    possibility that I will not be prepared to even give an

22    opening statement or proceed Monday morning without being

23    able to get the information and file whatever motions are

24    necessary, and the Court conduct an evidentiary hearing.

25         **THE COURT:** All right. Mr. Wechsler?

*15-20652; USA v. EUGENE FISHER, ET AL*

1          **MR. WECHSLER:**  Your Honor, yesterday agents

2     did speak with a witness who -- well, he's listed in the

3     police report from the 2006 homicide, but did not give a

4     very detailed statement to the police at that time.  The

5     agents went back and talked to him yesterday, which Mr.

6     Feinberg is correct.  He picked out Mr. Brown in a photo

7     array.

8          We informed the agents that they needed to have

9     the report done as soon as possible to get it to Mr.

10    Feinberg.  As he's indicated, Mr. Straus from our office

11    give him this information yesterday.  We are planning to

12    have the 302 done today.  We will reiterate to the agents

13    again that they need to get it done as soon as possible

14    for Mr. Feinberg to review.

15         Additionally, we don't plan on presenting evidence

16    of this homicide until I believe at least week two, which

17    gives him an extra week to file any motions that he would

18    like, and any litigation that needs to take place can

19    happen after the 1:00 break.

20         **THE COURT:**  Would your opening statement be

21    addressing any of this?

22         **MR. WECHSLER:**  The only thing that I plan to

23    say is that we have witnesses who will testify about that

24    homicide.  I don't plan on saying anything about this

25    particular witness.  I'll leave it very vague.  We do have

*15-20652; USA v. EUGENE FISHER, ET AL*

 1     another witness in which he was -- Mr. Feinberg was given

 2     notice awhile ago that he would testify about this, and so

 3     I believe when I say that we have witnesses that will

 4     testify about this, that will cover that witness.  I don't

 5     need to specifically say that we have John Smith who said

 6     that he saw Mr. Brown on the day in question.  I don't

 7     need to list those individuals which would give Mr.

 8     Feinberg a chance to rebut that in his motions.

 9               **THE COURT:**  Right.  All right.

10               **MR. FEINBERG:**  May I respond?

11               **THE COURT:**  Sure.

12               **MR. FEINBERG:**  The 302 is not sufficient for

13     me to know what is -- what I need to do.  I need to get

14     all of the information that led up to the 302 that was, I

15     guess, prepared yesterday.

16          In addition, if there was any -- if there was a

17     photo lineup, I need to get that, who conducted it, how it

18     was done, whether or not there was a defense attorney

19     present during the photo lineup, how it was done, whether

20     or not it was just a regular photo array or whether or not

21     it was a blind photo array.

22               **THE COURT:**  Right.

23               **MR. FEINBERG:**  I cannot be prepared for the

24     trial unless I know that, and just to get a statement is

25     insufficient because I know that I'll have to file a

*15-20652; USA v. EUGENE FISHER, ET AL*

1    motion that will --

2            **THE COURT:**  We can conduct the hearing on a

3    motion easily in the afternoon.  So I mean, I think the

4    only question is in what manner would your opportunity to

5    make an opening statement, which is just -- we know from

6    the government's side they are not going to make any

7    specific references to the evidence that it is going to be

8    introduced relative to this 2006 killing.

9            **MR. FEINBERG:**  I understand.  If they're

10   going to indicate witnesses, plural, I need to know in my

11   opening statement what we intend to show as it relates to

12   the homicide, the witnesses, specific witnesses.  If I

13   don't have that information, I don't know whether or not

14   this Court is going to allow that witness to testify.  I

15   don't know whether or not it's going to exclude them from

16   presenting it.  If they allow it -- if there's going to be

17   a cautionary instruction as a result of it, I don't know,

18   but I can tell you right now that I'm not prepared Monday

19   to proceed without knowing evidence that is very, very

20   crucial to the most serious of all counts that Mr. Brown

21   is being charged with.

22           **THE COURT:**  All right.  Well, I'll certainly

23   be in a position to consider it when you file your motion

24   after you had an opportunity to review the papers that

25   apparently are in preparation.

*15-20652; USA v. EUGENE FISHER, ET AL*

1           **MR. FEINBERG:**  But again, it's more than just

2    a 3O2.  That maybe what the government thinks all is

3    necessary, but it's certainly not what I think is

4    necessary to file the motion, and if I don't get

5    everything, then there will be a motion to compel, which

6    will prolong the necessity of me filing the motion

7    relating to how it was conducted.

8           I'm putting the Court on notice that I may come in

9    on Monday and indicate to the Court that I'm not ready to

10   proceed.

11          **THE COURT:**  Well, okay.  I think you should

12   be prepared for the possibility that the Court will agree

13   there are other cures, and will call on you to make

14   decision as to whether --

15          **MR. FEINBERG:**  I understand, but I do have a

16   client that I'm representing to a certain extent takes

17   precedence over whether or not the Court tells me that I

18   have to proceed.

19          **THE COURT:**  Okay.

20          **MR. FEINBERG:**  I think Mr. Brown wants to

21   raise his hand.

22          **THE COURT:**  Mr. Feinberg can talk to you for

23   a moment.

24          **DEFENDANT BROWN:**  I want to speak to you.

25          **THE COURT:**  Well --


                 *15-20652; USA v. EUGENE FISHER, ET AL*

1          **MR. FEINBERG:**  That's what he wants to do,

2     your Honor.

3          **DEFENDANT BROWN:**  I want to go on with the

4     trial.  I'm ready Monday.

5          **THE COURT:**  I know that's your feeling.

6          **DEFENDANT BROWN:**  I'm ready Monday, your

7     Honor.  I'm ready.

8          **THE COURT:**  Okay.

9          **DEFENDANT BROWN:**  I will be my own defense

10    attorney.  Like you told me before, if I fire him, then I

11    have to represent myself, and I'm willing to do that if

12    he's not ready because I'm ready.  If he not ready, I'm

13    ready.

14         **THE COURT:**  Okay.

15         **DEFENDANT BROWN:**  Trial goes Monday.  I'm

16    here.

17         **THE COURT:**  That's the plan.

18         **DEFENDANT BROWN:**  I'm ready.

19         **THE COURT:**  So Mr. Feinberg will be thinking

20    about how he handles -- which is not an easy question, and

21    it's concern that you get a fair trial, not just a trial.

22         **DEFENDANT BROWN:**  I'm not trying to get push

23    back, your Honor.

24         **THE COURT:**  Okay.

25         **MR. H. SCHARG:**  Judge, one more thing.

*15-20652; USA v. EUGENE FISHER, ET AL*

 1            THE COURT:  Yes.

 2            MR. H. SCHARG:  Earlier on the severance

 3   motion, I asked for an instruction regarding separate

 4   defendants, same trial.

 5            THE COURT:  Yes.

 6            MR. H. SCHARG:  Will you give that in the

 7   preliminary instructions?

 8            THE COURT:  Yes.

 9            MR. H. SCHARG:  You didn't confirm or deny

10   that.

11            THE COURT:  If I didn't, I intend to.  I will

12   incorporate that.

13            MR. H. SCHARG:  Thank you.

14            THE COURT:  Okay what else, if anything?

15            MR. DALY:  There were two matters left on

16   motions in limine that I won't -- will not argue one of

17   them.  I think it as been resolved.  I was seeking to

18   suppress prior convictions.  The judgment, it appears the

19   government has agreed will not introduce in their case in

20   chief, unless they feel it is necessary, at which point

21   they will bring it to the Court's attention, and we can

22   deal with it then.  That's essentially what we agreed to.

23            MS. FINOCCHIARO:  That's correct, your Honor.

24            THE COURT:  Okay.

25            MR. DALY:  So the last part has to do with

                *15-20652; USA v. EUGENE FISHER, ET AL*

1      401 and 403 arguments, about the overt acts, and there

2      were a number that were listed there.  I'm not going to

3      argue each and every one.  It was 71, 72, 94, 95, 100 and

4      103, and I believe the government agreed not to introduce

5      evidence on 103.  So that's done.

6              I'm not going to go through all of those.  You've

7      read the briefs, Judge.  I will rely on my briefs.  You

8      can either rule on the record or a written order.  Thank

9      you.

10             **THE COURT:**  Thank you.  Anything further from

11     the government side?

12             **MR. SLOAN:**  No.

13             **THE COURT:**  103, you're in agreement?

14             **MR. SLOAN:**  That's right, your Honor.

15             **THE COURT:**  Mr. Daly, do you wish that I to

16     this on the record.

17             **MR. DALY:**  No, I don't.

18             **THE COURT:**  All right.  And you're asking

19     have a conference with the Court and government counsel,

20     is that right?

21             **MR. DALY:**  Yes, and Mr. Spielfogel.  He's

22     waiting for conference call.

23             **THE COURT:**  Okay.  Well, if nothing else,

24     we'll break for day.

25             **MR. H. SCHARG:**  Should we stay around?

                    *15-20652; USA v. EUGENE FISHER, ET AL*

1              **THE COURT:** Is it going to affect you, do you

2    think? Might it affect the others?

3              **MR. DALY:** Depending on what you decide.

4              **MR. H. SCHARG:** We'll stick around.

5

6                    (Proceedings concluded.)

7                      -   -   -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    *15-20652; USA v. EUGENE FISHER, ET AL*

```
1                    C E R T I F I C A T I O N

2              I, Ronald A. DiBartolomeo, official court

3       reporter for the United States District Court, Eastern

4       District of Michigan, Southern Division, appointed

5       pursuant to the provisions of Title 28, United States

6       Code, Section 753, do hereby certify that the foregoing is

7       a correct transcript of the proceedings in the

8       above-entitled cause on the date hereinbefore set forth.

9              I do further certify that the foregoing

10      transcript has been prepared by me or under my direction.

11

12      s/Ronald A. DiBartolomeo              _____
        Ronald A. DiBartolomeo, CSR                Date
13      Official Court Reporter

14                            -   -   -

15

16

17

18

19

20

21

22

23

24

25

                    15-20652; USA v. EUGENE FISHER, ET AL
```