```
                                                                    1


 1                       UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF MICHIGAN
 2                             SOUTHERN DIVISION

 3

 4   UNITED STATES OF AMERICA,

 5              Government,
                                       HONORABLE GEORGE CARAM STEEH
 6       v.
                                       No. 15-20652
 7   D-3 EUGENE FISHER,
     D-4 COREY BAILEY,
 8   D-6 ROBERT BROWN,
     D-13 ARLANDIS SHY,
 9   D-19 KEITHON PORTER,

10              Defendants.
     _____/
11
                                JURY TRIAL
12
                         Monday, August 13, 2018
13
                               -  -  -
14
     APPEARANCES:
15
     For the Government:         JULIE FINOCCHIARO, ESQ.
16                               JUSTIN WECHSLER, ESQ.
                                 TARE WIGOD, ESQ.
17                               MARK BILKOVIC,ESQ.
                                 Assistant U.S. Attorneys
18

19   For the Defendants:         HENRY M. SCHARG, ESQ.
                                 On behalf of Eugene Fisher
20
                                 CRAIG DALY, ESQ.
21                               KEITH SPIELFOGEL, ESQ.
                                 On behalf of Corey Bailey
22
                                 JAMES FEINBERG, ESQ.
23                               On behalf of Robert Brown

24
                                 MARK MAGIDSON, ESQ.
25                               JOHN THEIS, ESQ.
                                 On behalf of Arlandis Shy
```

```
 1
                                       STEVEN SCHARG, ESQ.
 2                                     On behalf of Keithon Porter

 3

 4                        -   -   -

 5
                  To Obtain Certified Transcript, Contact:
 6          Ronald A. DiBartolomeo, Official Court Reporter
                   Theodore Levin United States Courthouse
 7             231 West Lafayette Boulevard, Room 1067
                       Detroit, Michigan   48226
 8                           (313) 962-1234

 9         Proceedings recorded by mechanical stenography.
          Transcript produced by computer-aided transcription.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        I  N  D  E  X
 2  _____Page
 3  Jury instruction conference                              4
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15                       E  X  H  B  I  T  S
16  Identification_____Offered   Received
17
18                     N     O      N      E
19
20
21
22
23
24
25
```

*15-20652; USA v. EUGENE FISHER, ET AL*

```
 1                          Detroit, Michigan
 2                          Monday, August 13, 2018
 3
 4                                -  -  -
 5            (Proceedings held without defendants and jury.)
 6
 7            THE COURT:  So the Court has been presented
 8    the proposed jury instructions in the case with two issues
 9    that were given to the Court to decide.
10            I have to say that I think you did a wonderful job
11    in developing the instructions to be delivered to the
12    jury.  Much as difficult and as complex as it could have
13    been, I think you have made the -- structured the
14    instructions in a way that is relatively simple, and
15    understandable for the jury address.
16            Addressing the two matters that you were not able
17    to conclude, the defendants object to instructions
18    relating to the sentencing enhancement questions that are
19    given to the jury, and specifically to the instructions
20    that direct the jury to consider whether the defendant or
21    a conspirator attempted to -- to kill, for example, at
22    Page 32 of the current version of the instructions.
23    Actually, it would involve the question of whether first
24    degree premeditated murder was a -- and the elements of
25    that would apply to the defendant or a conspirator caused
```

|   |   |
|---|---|
| 1 | by the death of another person in light of the elements |
| 2 | are based upon Michigan law, and the defense argument was |
| 3 | that the Michigan law would require the jury to conclude |
| 4 | attribution of the acts to the defendant only, not to the |
| 5 | defendant or a conspirator as set forth in the proposed |
| 6 | instructions to the jury. |
| 7 | The Court agreed with the arguments by the |
| 8 | government that this statement of the elements of the |
| 9 | offense constitute the identifying the scope and reach of |
| 10 | the agreement that the conspiracy that is alleged to be -- |
| 11 | to have been committed, and it could be a third person |
| 12 | altogether, or other members of the conspiracy involved, |
| 13 | but it is not an act that needs to be tied to the |
| 14 | defendant in any case, and to eliminate the language or |
| 15 | the conspirator in that instruction would mislead the jury |
| 16 | to believe they are required to tie the acts -- the act of |
| 17 | commission of the first degree murder to the main |
| 18 | defendant involved in this enhancement alone. |
| 19 | So I'm sure you want to articulate the same |
| 20 | arguments better than what the Court just did. |
| 21 | **MR. WIGOD:** I think the Court stated the |
| 22 | government's argument properly, that given that it is a |
| 23 | RICO conspiracy, I think it's not required that a |
| 24 | particular defendant committed the underlying racketeering |
| 25 | act.  So the instruction should include the defendant or a |

```
 1   conspirator.  If it were to state that if a defendant
 2   caused -- in this case, for example, premeditated
 3   murder -- if it were to state the defendant caused the
 4   death, I think that would confuse the jury and is not an
 5   accurate statement of what's required in the RICO
 6   conspiracy.
 7             THE COURT:  I know Mr. Daly, you can restate
 8   your argument much better than I did.
 9             MR. DALY:  Yes.
10             THE COURT:  Yes?
11             MR. DALY:  Yes, like I'm agreeing with what
12   you just said.  Yes, I acknowledge I should go forward
13   next.
14        We specifically object the phrase or a conspirator
15   because the government has charged the RICO conspiracy,
16   and in the elements of the RICO conspiracy, they layout
17   what the jury has to find, which is a conspiracy or
18   agreement between a defendant and a conspirator, but
19   they've charged specific subjective crimes, and they
20   picked first degree premeditated murder in one of the
21   racketeering activity, and they don't correctly state
22   Michigan law.  Michigan law does not allow a conviction
23   for first degree premeditated murder if the defendant or a
24   conspirator committed any of the elements that are listed
25   in the proposed instruction.
```

 1        If you read the first paragraph of racketeering
 2   activity, it clearly tells the jury, racketeering activity
 3   applied in the RICO statute includes specific types of
 4   crimes under state or federal law.
 5        So then they go onto instruct the jury about
 6   Michigan law by misleading the jury that it includes or a
 7   conspirator, and the next sentence, Count 1 of the
 8   indictment, alleges that the defendant agreed that the
 9   specific crime of racketeering activity, the following
10   types committed.
11        So the jury is told that there's an agreement to
12   commit these substantive crimes, but then allows the jury
13   to convict the defendant even though the elements of first
14   degree premeditated murder is with regards with the
15   individual defendant.  It's the or a conspirator phrase
16   that we object to, Judge.
17        **THE COURT:**  Yes.  And again, I look at this
18   as a summary description of the four elements that
19   represent the elements required to be proven, but to
20   render one guilty of premeditated murder, and the
21   reference to defendant or a conspirator causing the death
22   is an accurate statement of the liability in light of the
23   fact that we're looking at the agreement -- of the
24   agreement represented in this conspiracy, which would not
25   require success in the commission of the murder, or

```
 1    require the defendant alone to be responsible for the
 2    offense.
 3              MR. DALY:  But the same language that we're
 4    talking about shows up in the other racketeering activity,
 5    robbery, witness intimidation.
 6              I just want to point out that when it comes to
 7    controlled substances, they charge both the substantive
 8    and the conspiracy racketeering.  That's what I'm talking
 9    about.
10              So it you read through all of these other
11    racketeering activities, it actually distinguishes between
12    a substantive offense and a conspiracy.  So that just
13    furthers my argument.  Sorry to interrupt you.
14              THE COURT:  That's fine.  Okay.  So I think
15    we've staked out our positions on that subject.
16              And then the second issue, also objected by
17    defense counsel, was with respect to the verdict form, and
18    again, these are in connection with the sentencing
19    enhancement questions posed, which are broken out
20    defendant by defendant.
21              And the first of those enhancement questions
22    reads:  Did defendant, between July 14, 2014 through
23    September 26, 2015, agree that he or another conspirator
24    assault rival gang members with the intent to commit
25    murder, yes or no.
```

1    And the second question: Did defendant commit, or
2    cause to be committed, or aid and abet in the commission
3    of the attempted murder, in paren, assault with intent to
4    murder of Derrick Peterson, Darnell Canady or Jason Gaskin
5    on or about May 10, 2015.
6    The objection made by defense counsel is that the
7    period of -- by mentioning only the period of the
8    conspiracy without identifying the specific dates of
9    assaults on rival gang members is too ambiguous to
10   effectively address by the defense, that sort of a due
11   process argument, I suppose, although I don't think it was
12   identified as such by Mr. Scharg who was arguing the case.
13   The Court ended up agreeing with the government as
14   it relates to this issue, given the fact that we're
15   talking about a conspiracy, and the unlawful agreement
16   that is at the heart of the conspiracy is certainly
17   clearly identified in the proofs of the case that has been
18   presented through the witnesses thus far, and the jury
19   needs only to find one instance -- I guess I should say
20   that actually, as it's -- I'm trying to recall the
21   government's response to the argument. Mr. Wigod?
22   **MR. WIGOD:** Judge, it is our position that
23   what's in the indictment adequately gives the defendant
24   notice of what the enhancement involves. It states what
25   the statute violation is. It states that they are

1  conspiring. It states when they are conspiring, the date
2  range. It explains the object of the conspiracy, and who
3  they are trying to assault.
4  So it is rather narrow in the time frame that they
5  are going to commit an assault or conspiring to commit an
6  assault, and who the committed the assault against, and as
7  you mentioned, that notice is -- has to be viewed in
8  context of what the proofs were at trial. We're not going
9  to argue anything that was not established at trial.
10  This is a conspiracy. So identifying the specific
11  date and time when the conspiracy started is not necessary
12  in these circumstances. So I think it provides more than
13  adequate notice of what the situation is when you review
14  the context of what the proofs were during the trial.
15  **THE COURT:** Okay. Again -- well, I'll hear
16  Mr. Scharg.
17  **MR. H. SCHARG:** I just want to say that the
18  Court has summarized, you know, my argument which really
19  falls under the due process argument.
20  The only thing that I would like to add is that in
21  the indictment, specifically the sixth superseding
22  indictment, it doesn't give notice -- you know, there's no
23  overt acts in reference to the specific acts that the
24  government alleges would fall in the category of the
25  enhancement, meaning that there's no reference in the

1    overt acts as to Mr. Fisher's video regarding dropping an
2    opp or the reference to going hunting.
3            So of all the overt acts, there were over 100 of
4    them, none of those overt acts in Count 1 address those
5    acts that they are using for the enhancement. So it's a
6    due process argument, and I believe it was not properly
7    notified as to those acts in the defendant's case.
8            **THE COURT:** Okay. So again, this is similar
9    to the only other issue that was presented to the Court
10   for a decision, in that the enhancement is going to be
11   considered by the jury in the summary form that it is --
12   that is identified in presenting these two issues for a
13   decision, because we do have named individuals who were
14   identified as the objects of the attempted murder, and we
15   have a summary description to the defendant or another
16   conspirator to assault rival gang members with the intent
17   to commit murder.
18           It's apparent from the body of the evidence in the
19   case that these are the issues that we're dealing with,
20   and I don't think anything more than a description that is
21   made in these two questions to be presented to the jury is
22   sufficient, and the defendants have enjoyed a sufficient
23   opportunity to identify and to defend the evidence
24   presented in the case that the government is relying on in
25   the presentation of its arguments to the jury.

*15-20652; USA v. EUGENE FISHER, ET AL*

1  So it is a question for the parties to deal with
2  in the argument, and I think sufficiently identify to
3  protect the rights of the defendant to understand what
4  they're charged with.
5  So the Court is going to again side with the
6  government as it relates to those enhancement questions.
7  Anything else on the subject?
8  **MR. H. SCHARG:** I apologize.  I can't get
9  pacer in the room here, but there's some reference --
10  **THE COURT:** Keep your voice up, Henry.
11  **MR. H. SCHARG:** There's a reference in the
12  prior trial that there were separate verdicts forms for
13  each of them, was that true?
14  **THE COURT:** Yes.
15  **MR. H. SCHARG:** My question is if there were
16  separate verdict forms in that case, why do we not have
17  separate verdict forms for the defendants in this case?
18  **THE COURT:** The short answer is there are a
19  lot of other things that are different about the form in
20  this case, and I think the short answer from the Court's
21  perspective is that this is a -- broken out in a way that
22  is simple and easier to understand by the jury than the
23  first jury verdict form was.
24  And the second answer is that this was something
25  that I assumed you all worked out based on the fact that

```
 1    that's the only issue raised here.
 2              MR. H. SCHARG:  Not necessarily.  I mean --
 3              THE COURT:  I mean, we sent you a copy of the
 4    verdict form.
 5              MR. WIGOD:  This is the first the government
 6    heard of it.  I don't how it make a difference.
 7              MR. H. SCHARG:  It's a big difference, even
 8    in terms of the optics.
 9              MR. FEINBERG:  It gives the jury a clearer
10    picture of each defendant.
11              MR. H. SCHARG:  These are separate trials.
12              MR. WIGOD:  We're not doing individual
13    trials.
14              MR. DALY:  But you're breaking it up.
15              MR. WIGOD:  Let me see.  I'll take a look at
16    it.
17              THE COURT:  I'm happy to revert to that form
18    also if you agree on it.
19         I'm going to, given the complexity of the
20    instructions, I'm incline to give each juror a full set of
21    the instructions.
22              MR. FEINBERG:  We're talking about separate
23    verdict forms for each defendant.
24              MR. WIGOD:  The Judge is talking about a
25    separate set instructions for each juror.
```

*15-20652; USA v. EUGENE FISHER, ET AL*

```
 1                  MR. FEINBERG:  Oh, yes.
 2                  THE COURT:  I was going to deliver them a
 3     copy to follow as I'm reading.  It might enhance their
 4     comprehension as well.
 5             So the short answer is you're going to take a
 6     look at --
 7                  MR. WIGOD:  I'll take a look at it.  Unless
 8     there's a problem, I don't have an issue with it.
 9                  THE COURT:  Okay.  So we've had other
10     clerical errors and things that you discussed this
11     morning?
12                  MR. WIGOD:  Yes.  We had agreed to make some
13     changes.  I don't know if they need to go on the record.
14     I'll be sending a new copy over to the defense, and if I
15     missed anything, they will let me know.
16                  THE COURT:  Okay.
17                  MR. SPIELFOGEL:  So far you have made the
18     corrections.
19                  THE COURT:  So if we are going to make all
20     these copies, we need to get going on it this afternoon.
21                  MR. WIGOD:  We won't be reading tomorrow,
22     right?  I mean, I'll get it done as soon as I can, but
23     hopefully --
24                  MR. BILKOVIC:  We don't think we'll finish
25     closing until Wednesday.
```

*15-20652; USA v. EUGENE FISHER, ET AL*

```
 1            MR. FEINBERG:  Have we decided a time
 2   schedule for tomorrow?
 3            MR. DALY:  We talked about it.
 4            THE COURT:  So I told them to be here by
 5   nine.
 6         Another question, are we going to wait until all
 7   of the defense closings are in before the government
 8   responds, or is the government going to want to go
 9   defendant by defendant?
10            MR. SPIELFOGEL:  I've never seen that.
11            MR. BILKOVIC:  That would be awesome.  I will
12   make on blanket rebuttal at the end, but if the Court
13   wants to give me that opportunity --
14            MR. FEINBERG:  If that's way it is the
15   defendant who is not being responded to by Mark, we can
16   leave the court and the attorneys leave and come back?
17            THE COURT:  Yeah, right.
18            MR. BILKOVIC:  It's just going to be one.
19            MR. THEIS:  How many do you think we'll get
20   done tomorrow?
21            MR. BILKOVIC:  I don't know how long you guys
22   will be, but I think Julie will be two, two and a half
23   hours.  I don't know, Judge, but would you be incline if
24   Julie is an hour in, to give a five minute break?
25            THE COURT:  Oh, yeah.  Of course.
```

*15-20652; USA v. EUGENE FISHER, ET AL*

```
 1              MR. BILKOVIC:  Okay.  So depending on how
 2   long you guys are going.  How long do you plan to give the
 3   jury for lunch if going to 12 or 12:30?
 4              THE COURT:  An hour maybe, because we can
 5   order the food in for them, so they don't have to leave.
 6              MR. WIGOD:  We'll be done by lunch time.
 7              MR. DALY:  I'm going first and last, and
 8   depending how far they are, I may ask for an early lunch
 9   or later.  We'll see how it goes.  I'll be about an hour.
10              MR. BILKOVIC:  I think it's reasonable that
11   once Julie does her --
12              MR. DALY:  We'll need break.
13              MR. THEIS:  Are we going to four?
14              THE COURT:  Yes.
15              MR. THEIS:  Three at least.
16              MR. H. SCHARG:  Can we agree to do the
17   government's closing, and then maybe three defense
18   closings, and -- and the of defense closing on Wednesday,
19   and rebuttal on Wednesday?
20              THE COURT:  Yeah, that sounds like --
21              MR. BILKOVIC:  If the Court is okay, that
22   would be great.  That would allow us to better time
23   everything, it doesn't rush Julie who goes tomorrow first,
24   then three defense arguments, and then the last two and
25   rebuttal.
```

*15-20652; USA v. EUGENE FISHER, ET AL*

```
 1                    MR. MAGIDSON:  Instruction on Wednesday?
 2                    THE COURT:  Sure.
 3                    MR. FEINBERG:  How long do you think you will
 4       be?
 5                    MR. BILKOVIC:  Depends on how long you are.
 6                    MR. FEINBERG:  How long?
 7                    MR. BILKOVIC:  Without knowing, maybe
 8       somewhere around an hour.
 9                    THE COURT:  Okay.  We'll touch base at some
10       point later today and make sure you got the stuff.
11                    MR. FEINBERG:  Thank you for breakfast.
12                    THE COURT:  You're welcome.
13
14                         (Proceedings concluded.)
15                                -   -   -
16
17
18
19
20
21
22
23
24
25
```

*15-20652; USA v. EUGENE FISHER, ET AL*

**C E R T I F I C A T I O N**

I, Ronald A. DiBartolomeo, official court reporter for the United States District Court, Eastern District of Michigan, Southern Division, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a correct transcript of the proceedings in the above-entitled cause on the date hereinbefore set forth.

I do further certify that the foregoing transcript has been prepared by me or under my direction.

```
s/Ronald A. DiBartolomeo                        __May 9, 2019
Ronald A. DiBartolomeo, CSR                          Date
Official Court Reporter
```

- - -