```
 1                    UNITED STATES DISTRICT COURT

 2                 FOR THE EASTERN DISTRICT OF MICHIGAN

 3                          SOUTHERN DIVISION

 4

 5    UNITED STATES OF AMERICA,

 6                   Plaintiff,               Case No. 15-20652-13

 7         -vs-

 8                                           Detroit, Michigan

 9    ARLANDIS SHY, II
                                             September 26, 2017
10                   Defendant.

11    ----------------------------/

12

13                   TRANSCRIPT OF STATUS CONFERENCE

14             BEFORE THE HONORABLE GEORGE CARAM STEEH

15               UNITED STATES DISTRICT COURT JUDGE

16

17    APPEARANCES:

18

      For the Government:          Christopher Graveline
19                                 United States Attorney's Office
                                   211 West Fort Street, Suite 2001
20                                 Detroit, MI 48226

21                                 Justin Wechsler
                                   U.S. Department of Justice
22                                 Antitrust Division
                                   450 5th Street, NW, Suite 11440
23                                 Washington, DC 20005

24

25
```

### UNITED STATES OF AMERICA v. ARLANDIS SHY
#### Status Conference

APPEARANCES CONTINUED:

For the Government:          **Julie A. Finocchiaro**
                             U.S. Department of Justice
                             Organized Crime & Gang Section
                             1301 New York Avenue, N.W., 7th Floor
                             Washington, DC 20005

For Defendant Robert Brown:  **James L. Feinberg**
                             James L. Feinberg & Associates
                             28411 Northwestern Highway, Suite 875
                             Southfield, MI 48034

For Defendant Eugene Fisher: **Henry M. Scharg**
                             30445 Northwestern Hwy., Suite 225
                             Farmington Hills, MI 48334

For Defendant Corey Bailey:  **Keith A. Spielfogel**
                             190 S. LaSalle Street, Suite 520
                             Chicago, IL 60603

                             **John R. Minock**
                             Cramer, Minock & Sweeney, P.L.C.
                             339 E. Liberty Street, Suite 200
                             Ann Arbor, MI 48104

For Defendant Arlandis Shy:  **Mark H. Magidson**
                             615 Griswold, Suite 810
                             Detroit, MI 48226

For Defendant James Robinson: **William W. Swor**
                             615 Griswold Street, Suite 1120
                             Detroit, MI 48226

*UNITED STATES OF AMERICA v. ARLANDIS SHY*
*Status Conference*

1

2     APPEARANCES CONTINUED:

3

      For Defendant Keithon Porter:   **Steven E. Scharg**
4                                       615 Griswold, Suite 1125
5                                       Detroit, MI 48226

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

      Proceedings taken by mechanical stenography, transcript
23    produced by computer-aided transcription

24

25

UNITED STATES OF AMERICA v. ARLANDIS SHY
Status Conference

1          **Detroit, Michigan**

2          **Tuesday, September 26, 2017**

3          **(At about 1:05 p.m.)**

4          **- - -**

5          **(Call to Order of the Court)**

6          THE CLERK OF THE COURT: Case number 15-20652, United

7    States of America versus Corey Bailey, Robert Brown, Arlandis

8    Shy, Keithon Porter, James Robinson and Eugene Fisher.

9          THE COURT: Good afternoon.

10         MR. GRAVELINE: Good afternoon, Your Honor.  Chris

11   Graveline, Justin Wechsler and Julie Finocchiaro on behalf of

12   the United States.

13         THE COURT: Welcome. Defense Counsel want to state

14   their appearances?

15         MR. FEINBERG:  James L. Feinberg for -- attorney for

16   Robert Brown, and also standing in for my learned counsel, Jack

17   Martin.

18         THE COURT:  Thank you.

19         MR. STEVEN SCHARG: Good afternoon, Your Honor.

20   Steven Scharg on behalf of Mr. Porter.

21         THE COURT: Welcome.

22         MR. SPIELFOGEL: Good afternoon, Your Honor.  Keith

23   Spielfogel on behalf of Corey Bailey.

24         THE COURT:  Welcome.

25         MR. MAGIDSON: Good afternoon, Your Honor.  Mark

*UNITED STATES OF AMERICA v. ARLANDIS SHY*
*Status Conference*

1  Magidson on behalf of Arlandis Shy and I'm also standing in for

2  John Theis, learned counsel.

3  THE COURT: Welcome.

4  MR. SWOR: William Swor on behalf of Mr. Robinson,

5  Your Honor.

6  THE COURT:  Okay, welcome.

7  MR. MINOCK: John Minock on behalf of Mr. Bailey.

8  THE COURT: Welcome.

9  MR. HENRY SCHARG: Henry Scharg on behalf of Eugene

10  Fisher.

11  THE COURT:  Welcome.  All right.  This was

12  established as a status conference as well as a motion hearing

13  on Mr. Bailey.

14  MR. GRAVELINE: That's correct, Your Honor.  I'm not

15  sure which one you want to take up first.

16  THE COURT: Probably the status conference first.

17  MR. GRAVELINE: Okay.  The reason we asked for this

18  status conference, Your Honor, is there's been a continuance in

19  Trial Group's One trial from October 10th to January 23rd.  I

20  think that's going to impact this Trial Group's trial date as

21  well.

22  The basis for that continuance was the amount of discovery

23  that had been produced to the lawyers for Trial Group One and

24  for Trial Group Two as well.  So as I explained with the Trial

25  Group One, a lot of this information, including evidence off of

1    co-defendants' cell phones or Facebook accounts had to be

2    sifted through and as we started putting together our exhibit

3    lists, we were handing over anywhere between 500 to a thousand

4    pages worth of materials from various different co-defendants'

5    Facebooks and/or cell phones that will be used against all of

6    the Defendants in the trials; that information being provided

7    to Trial Group Two at the same time it's being provided to

8    Trial Group One.  The lawyers for Trial Group One asked for

9    additional time to process that material and that's what led to

10   the continuance in the other trial.  But because that trial

11   starting January 23rd, I do not believe we'll be in a position

12   to start this trial on February 5th as originally scheduled.

13       So I asked the lawyers and the Court to schedule a status

14   conference so we can discuss a realistic trial date for this

15   particular Trial Group based upon what's been going on within

16   the case itself.

17           THE COURT: And in your view do you have the earliest

18   time that you -- do you have in mind a date by which to start?

19           MR. GRAVELINE:  Well, based upon the first trial I

20   think if we start on January 23rd, we will be done I believe by

21   the end of March with that case.

22       Based upon conversations with your Case Manager, we began

23   to look into May, but more realistically June 5th as being a

24   realistic trial date for this particular Trial Group.  And so

25   that's what I was going to propose to the Court and to Defense

UNITED STATES OF AMERICA v. ARLANDIS SHY
Status Conference

1    Counsel as the proposed new trial date for this group,

2    essentially moving this Trial Group back approximately four

3    months from when it was originally scheduled.

4         THE COURT: Okay, thanks.  Input from Defense Counsel?

5         MR. FEINBERG: On behalf of Mr. Brown, Mr. Brown has

6    been in jail since -- for a long, long time and is quite upset

7    that he is not going to be going to trial as it originally was

8    scheduled.  He understands that the mitigation petition has not

9    been filed yet and we're still -- Mr. Martin is still in the

10   process.  So I'm just indicating to you Mr. Brown objects to

11   any extension, so I don't know how the Judge wants to play

12   that, but he's not in the first group so therefore, the Court

13   will set whatever date it desires, but Mr. Brown is objecting.

14        MR. STEVEN SCHARG: Judge, on behalf of Mr. Porter I

15   agree with Mr. Feinberg.  We believe that the delay is very

16   prejudicial for Mr. Porter.  He's objecting to the adjournment.

17        THE COURT: Okay, thank you.

18        MR. SPIELFOGEL: Your Honor, Keith Spielfogel.  Corey

19   Bailey also objects to any continuance at this point.  He has

20   been in custody for quite some time preparing for this trial.

21   We don't want it continued three months, Judge.

22        THE COURT: Thank you.  Anyone else?

23        MR. MAGIDSON: Mr. Shy has been locked up for 19

24   months, Your Honor.  The Courts aware of prior motions that

25   have been filed on his behalf regarding speedy trial, so he

UNITED STATES OF AMERICA v. ARLANDIS SHY
Status Conference

1   does object.

2         THE COURT:  Thank you.  Mr. Swor?

3         MR. SWOR: Mr. Swor -- no, I'm Mr. Swor.  Mr. Robinson

4   objects to the continuance, Your Honor.

5         THE COURT: Thank you, Mr. Swor. Mr. Scharg?

6         MR. HENRY SCHARG: We take no position on this.

7         THE COURT: Thank you.  Well, there's only one Court

8   to try these cases and following the conclusion of an

9   eight-week trial, there are going to be undoubtedly issues

10  raised that will still need to be resolved before the second

11  group can go to trial, so there really is no viable option to

12  undertaking an adjournment of the case if this motion is --

13  there's a pending motion from one of the Defendants by Counsel

14  to withdraw, that preparation that's going to have to be

15  undertaken by a replacement if that motion is granted is going

16  to put everybody back.  That's all there is to it.

17        MR. FEINBERG: Judge, can I offer a suggestion?  If

18  Mr. Brown is released on some kind of a bond, we will not

19  object to a delay.

20        THE COURT: All right.

21        MR. SWOR: I would join in that comment.

22        MR. MAGIDSON: As would I.

23        MR. STEVEN SCHARG: We all too, Your Honor.

24        THE COURT: Not a surprise, but I think there would

25  have to be other reasons to support considering that than the

1    delay because the --

2              MR. FEINBERG: (Interjecting) Due process certainly is

3    a reason.  There's also a presumption of innocence.

4              THE COURT: All right.  Well, we're going to have to

5    adjourn and the question is the date.  So the question for

6    Defense Counsel is whether the date is as early as -- you said

7    the end of May or as late as June 4th, right?

8              MR. GRAVELINE: That's what we were looking at.  So

9    just based upon your schedule, it looked like maybe the

10   earliest possible could be May 21st.  However, that is the week

11   right before Memorial Day, and so what we looked at then was

12   just making it June 5th, it's the first Tuesday in June.  It is

13   approximately 120 days from the original trial date in the

14   case.

15       I would also add that this would also push all the other

16   deadlines in the case back as well, so I believe right now

17   there's a motion cutoff date.  That would get pushed back as

18   well to give the attorneys additional time for motions as well

19   as the mitigation now.  I'll defer to Defense Counsel when they

20   want to submit the mitigation packets, but I was going to

21   propose by no later than December 1st, but if they want to

22   submit them earlier or if they have some inclination to submit

23   them later, but that was going to be my proposal today.

24             THE COURT: So as it relates to mitigation?

25             MR. SPIELFOGEL: Yes, two things.  First of all,

UNITED STATES OF AMERICA v. ARLANDIS SHY
Status Conference

1  Judge, I don't think there is a cut-off date set for motions in

2  this case.

3        MR. GRAVELINE: I thought -- and I ordered the

4  transcript. I didn't do a good job of note-taking the last

5  time, but I thought the last time we talked it was October 1st

6  and for this Trial Group based upon the others, but if that's

7  not the case, that's not the case and we can set whatever

8  motion date we want then.

9        MR. SPIELFOGEL: Also the second thing is on December

10  1st date for mitigation packet, my understanding was that we

11  were not to submit a mitigation packet other than the first

12  Defendant in this case, Mr. Arnold, so we have ceased to

13  continue putting that together because we were on hold.

14        MR. GRAVELINE: Well, I can tell you the status is

15  this is it's in Washington, D.C. now.  The decision has not

16  been made on Mr. Arnold to date.  We have not been asked to go

17  to Washington, D.C. as of yet, which usually indicates

18  potentially not -- I'm not -- no information has been given me

19  one way or the other in terms of that, but I'm just saying

20  stating as a fact we have not been asked prior to the October

21  10th trial date.  Washington, D.C. now knows they have until

22  January 23rd, but that's the most I can share right now.

23      In terms of yes -- well, what I was hoping to do was find

24  out what Washington -- how Washington, D.C. stood on Mr. Arnold

25  in this case and that would help inform everyone as to their

UNITED STATES OF AMERICA v. ARLANDIS SHY
Status Conference

1   particular clients.  If I gave the estimation (sic) that no

2   packet was necessary for any of their clients, then that's on

3   me and that's a mistake.  People should be preparing mitigation

4   packets for each of their Defendants.  Now that might be

5   informed by whether somebody -- whether Mr. Arnold is either

6   sought or not sought against because that goes to one of the

7   factors in the death penalty protocol, but that doesn't mean

8   that no mitigation package should be prepared in the case and

9   if I gave that impression the last time, I apologize, but that

10  was not my intention.  I think anyone who is facing a

11  death-eligible charge should be preparing a mitigation packet

12  for their particular client.

13          MR. SPIELFOGEL: Then there was a total

14  miscommunication, so we will start moving again on that.

15          THE COURT: Undertake -- and do you have --

16          MR. SPIELFOGEL: December lst is fine.

17          MR. FEINBERG: Mr. Martin has indicated to me that he

18  would like until the beginning of January; that he's having

19  problems getting certain information specifically from Social

20  Security and without getting all of the information, he's not

21  going to be able to -- he and the mitigation specialists are

22  not going to be able to comply at least by December because I

23  spoke to him yesterday and he said beginning of January.

24          THE COURT: Okay.  So beginning of January, the first

25  week or two?

UNITED STATES OF AMERICA v. ARLANDIS SHY
Status Conference

1          MR. FEINBERG: Yes, for the deadline for the

2    mitigation.

3          THE COURT: Any objection to that?

4          MR. GRAVELINE: No, Your Honor.  Then if we're going

5    to do that for Mr. Brown, I think we do that for everybody

6    then.

7          MR. SPIELFOGEL: I was just going to ask that, Judge.

8          MR. GRAVELINE: So let's not make it January 1st -- I

9    think that's unrealistic,  but --

10          THE CLERK OF THE COURT:  (Interjecting) January 5th

11    is a Friday.

12          MR. GRAVELINE:  Let's do that.  January 5th.

13          THE COURT: Any other deadlines that need to be

14    considered?

15          MR. GRAVELINE: I think -- well, just the trial date

16    and then the motion cutoff and motion cutoff would be driven by

17    the trial date.

18          THE COURT: Right.  Okay, so trial we have the last

19    couple of weeks of May potentially and the first week of June

20    as possible start dates.

21          MR. STEVEN SCHARG: Judge, may I?  I informed Mr.

22    Graveline I'm on the Latin Count case and we are scheduled for

23    trial now in April.  They just adjourned our case to April

24    because I thought this case was going in January.  I don't know

25    how long that case will take.  Right now there's two

UNITED STATES OF AMERICA v. ARLANDIS SHY
*Status Conference*

1  Defendants.  It might just be my client, but I don't know how

2  long the Government plans on taking.  I don't know if that will

3  run into a May or June trial date.

4          THE COURT: Have they previously given you an idea how

5  long they think the trial will last?

6          MR. STEVEN SCHARG: Not that I recall, Your Honor.

7          THE COURT: What Judge has that case?

8          MR. STEVEN SCHARG:  Judge Levy.

9          THE COURT: Do you know anything about it?

10          MR. GRAVELINE: I do.  I think realistically I would

11  say it's going to be a four-week long trial.

12          THE COURT: So that would be --

13          MR. GRAVELINE: If it's just Mr. Scharg's client that

14  goes, I think it's probably going to be a two-week long trial.

15          MR. STEVEN SCHARG: Just a note.

16          THE COURT: Obviously there's a lot more flexibility

17  left to the Judge in that case if there are only one or two

18  Defendants who are going than we have in ours.  Mr. Swor.

19          MR. SWOR: Your Honor, we may have a conflict with a

20  drug case I have with Judge Cohn.  I don't know yet.  That

21  trial may start January 29th, but if it doesn't, then we have a

22  conflict, but this is an older case and this has more

23  Defendants and --

24          THE COURT: Judge Cohn is so easy to deal with, isn't

25  he?

UNITED STATES OF AMERICA v. ARLANDIS SHY
*Status Conference*

 1            MR. SWOR:  Yes.  Just thought you'd want to know.

 2            THE COURT: Okay.  All right.  So I guess I still

 3    haven't had anybody identify what would work best.  I gather

 4    for -- is it Mr. Scharg who has the start --

 5            THE CLERK OF THE COURT: April trial.

 6            THE COURT: In April?  So probably the earlier the

 7    better for you?

 8            MR. STEVEN SCHARG:  No, a later date.  June.

 9            THE CLERK OF THE COURT: No, later.  June 5th?

10            THE COURT: Okay.  That would argue for June 5.

11    Anybody have any particular issue with June 5?  Hearing no

12    problems, we'll set it for June 5 and then plea cutoff, what

13    would you suggest?

14            MR. GRAVELINE: Well, everyone at that point will have

15    the Jencks material, so I think we could probably set it for a

16    month out from the trial.  That way we'll know one way or the

17    other who will be going to trial.  There won't be anything in

18    terms of reviewing the Jencks.  When we release the Jencks for

19    the first trial group, we'll be giving it to everyone.

20            THE COURT: Good.

21            THE CLERK OF THE COURT: Maybe June 4th?  Is that

22    enough time?

23            MR. GRAVELINE:  May 4th you mean?

24            THE CLERK OF THE COURT: Oh, May.  I'm sorry.

25            THE COURT: I think we were trying to avoid the

UNITED STATES OF AMERICA v. ARLANDIS SHY
*Status Conference*

1    potential conflict with Mr. Scharg, so he was asking --

2              MR. GRAVELINE:  (Interjecting) No, for the plea

3    cutoff.

4              THE CLERK OF THE COURT: It's just a plea cutoff.

5    Maybe the afternoon of April 30th?

6              MR. GRAVELINE: That's fine with the Government.

7              THE CLERK OF THE COURT:  A Monday?

8              MR. SPIELFOGEL: So, Your Honor, can we put down a

9    motion cutoff date?

10             THE COURT: Yes.

11             THE CLERK OF THE COURT: At least a month before that.

12             MR. GRAVELINE: I would think we probably want to set

13   that maybe even two months beforehand.  That way there's

14   motion, response, potentially even hearing, maybe resolution of

15   motions before the plea cutoff date.  So if I could propose if

16   it's April 30th, maybe like a February 15th motion cutoff or

17   something along those lines.  Then we'll be responding in March

18   and then if the Court needs to have hearings and then have --

19   issue opinions, that's in April and everybody kind of knows

20   where the evidence is and Jencks material and all of that

21   beforehand.

22             THE COURT:  Right.

23             THE CLERK OF THE COURT:  February 15 for motion

24   cutoff?

25             MR. SPIELFOGEL: February 15 for motion cutoff would

*UNITED STATES OF AMERICA v. ARLANDIS SHY*
*Status Conference*

1    be fine, Judge.

2              THE COURT: Okay.

3              MR. STEVEN SCHARG: Could we have a date for Jencks

4    material to be released by the first group?

5              MR. GRAVELINE: It's going to be a month before trial

6    which is January 23rd.  If you take a look at the calendar,

7    January 24th and 25th are on the holiday and it's on a weekend,

8    so I'll be releasing it December 26th, the day after Christmas.

9              MR. FEINBERG: Is that Jencks just for the first

10   group?

11             MR. GRAVELINE: It will be Jencks for everyone.

12             THE COURT: For everybody.  So include witness

13   statements.

14             MR. GRAVELINE: Yes.

15             THE COURT: So that will facilitate your preparation

16   for the trial significantly.  Mr. Swor?

17             MR. SWOR: I think we want to -- I'd like to hear the

18   Government's belief of what that -- how that impacts the

19   Protective Order and our ability to share the information with

20   our clients so that we can prepare both for trial and for

21   motions.

22             MR. GRAVELINE: So this is what we worked out with

23   Trial Group One and I emailed all Counsel in the case to

24   include this Trial Group and Trial Group Three.

25        What we've already done is we've given the Jencks material

*UNITED STATES OF AMERICA v. ARLANDIS SHY*
*Status Conference*

1  for Special Agent Ruiz and Sergeant Branick (phonetic) to all

2  Defense Counsel in the case, with the agreement that this is

3  for Counsel's purposes right now only; that is, they can read

4  it themselves, but not to share with their clients at this

5  point.  There have been some questions about that, about how

6  much they could share a particular fact or a particular type of

7  information based upon what Agent Ruiz might have testified in

8  front of the Grand Jury with their clients. I had a

9  conversation with Mr. Minock about that.  I believe the Defense

10 Counsel met about that prior to this hearing.

11      My only request, since it's simply an agreement between

12 Counsel at this point, is if they have a question about whether

13 they could release or discuss certain pieces of information

14 that's contained in that Jencks material that I've already

15 given out, please call me and we will work it out and it'll

16 either be a yes or a no and by the time December 26th rolls

17 around and we release our Jencks material, it is going to be

18 the Government's intention that we release it pursuant to the

19 Protective Order that's already in place in the case; that is

20 that Counsel can share it with their clients at that point, but

21 not let them have copies and have copies within the jail and

22 what-not at that point.  You can share, but not give that

23 material to the clients.  That's going to be the Government's

24 intention.  If we don't obtain an agreement with all parties on

25 that, I will file a motion to that effect and then the Court

UNITED STATES OF AMERICA v. ARLANDIS SHY
*Status Conference*

1    will decide exactly how we distribute it.  But that's the

2    Government's intention in terms of how to proceed with the

3    Jencks now and the Jencks on December 26th.

4            THE COURT: Thank you.

5            MR. SWOR: I understand.  We -- at this point I think

6    we can live with those parameters.

7            THE COURT: Thank you. Anything else?

8            MR. GRAVELINE: The only thing else I would add just

9    in terms of timing or anything, if we are able to work out any

10   pleas in Trial Group One, I will communicate to Trial Group Two

11   that we might have open spots in Trial Group One.  So if

12   somebody wants to raise their hand and say yes, I'd rather go

13   in Trial Group One as opposed to Trial Group Two, if that

14   develops I will let everybody know and that way if the Defense

15   Counsel and Defendant agree that they would rather be in that

16   group, we'll try to keep it at six.  We won't go above six, but

17   if there's an opening in that and they volunteer, then I'll let

18   that be known.

19           THE COURT: I'd want to know first.

20           MR. GRAVELINE: Correct.

21           THE COURT: And have the opportunity to think about

22   whether that is a good way to go or not.

23           MR. GRAVELINE: Okay.

24           THE COURT: Part of the reason for that is we're

25   having difficulty plotting the placement of tables and places

UNITED STATES OF AMERICA v. ARLANDIS SHY
*Status Conference*

1    for the security questions raised by the Marshals we're trying

2    to deal with, and six is a large number for a group trial it

3    seems to me.  So I'd want to pass judgment on that before you

4    invite somebody else into that.

5              MR. GRAVELINE: I will also add that if the mitigation

6    submissions aren't due by January 5th, any Defendant in that

7    position probably would not be really ready to be moved up into

8    that Trial Group as well, but I just wanted to put that out

9    there.  There's a potential for that.  I mean we haven't had a

10   plea cutoff date yet for that first group.

11             MR. HENRY SCHARG: May I ask a hypothetical?

12             THE COURT: Yep.

13             MR. HENRY SCHARG: If the death penalty is authorized

14   against someone in Group One, how will that affect the rest of

15   the trials?

16             THE COURT: Well, there's only one possible and that

17   would be Mr. Arnold.

18             MR. HENRY SCHARG: Right.  So how that impact?

19             MR. GRAVELINE: I don't it would impact anything that

20   we've done today.  I think Mr. Arnold's trial would go a pretty

21   good distance into the future then.  I would imagine it would

22   be far more litigation to go on that then, or for any Defendant

23   who possibly could be authorized.

24             THE COURT: Okay.  Anything else that needs to be

25   addressed?

UNITED STATES OF AMERICA v. ARLANDIS SHY
Status Conference

1        MR. SWOR: If Washington -- not George -- authorizes

2   against Mr. Arnold, so be it.  But if Washington authorizes, I

3   think the Court needs to be mindful of this.  If Washington

4   authorizes against anyone in Group Two, then I have some

5   concerns about my client being tried at the same time.

6        THE COURT: It won't happen.  It won't happen if we

7   have somebody is death eligible in the group who is -- where

8   the notice is not withdrawn.  As long as the -- all of our

9   scheduling was premised on the idea that the death eligible

10  Defendants would be tried separately, so --

11       MR. SWOR:  The other thing is that I'm concerned that

12  some of the discovery and certainly some of the Jencks material

13  may be necessary or useful in motion practice, and shall we

14  submit then under seal?

15       THE COURT: Well, I would think if it's subject to

16  this --

17       MR. GRAVELINE: (Interjecting) I think probably the

18  best practice on that is just to consult with us prior to

19  filing and we'll discuss -- at that point there will be a

20  witness list out.  We'll already been into trial one.  There

21  will be -- people already have been identified.  There will be

22  statements out.  There will be -- so I think the best practice

23  is if it's still a question, Counsel can either agree or

24  disagree about the best way to go under seal.

25       MR. SWOR: We'll talk about it because with the

*UNITED STATES OF AMERICA v. ARLANDIS SHY*
*Status Conference*

```
 1   materials that we currently have, I may be filing a motion.
 2              MR. GRAVELINE: If it's Grand Jury material then I
 3   would probably say yes, under seal.  That would be the
 4   Government's position if it's Grand Jury material.  If it's
 5   other types of Jencks because it's a FBI report or something
 6   like that, then maybe we can talk about the best way to handle
 7   that.
 8              THE COURT: All right. Anything else?
 9              MR. FEINBERG: Judge, my client, Mr. Brown, would like
10   verification that on December 26th, 2017 that the Government
11   will be giving us, the attorneys in Group Two, the entire
12   Jencks material subject to the Protective Order.
13              MR. GRAVELINE: That's correct.
14              THE COURT: We have a matter with Mr. Corey Bailey to
15   address.  The other Defendants could be taken down, but if
16   you'd rather take them all as a group, they could sit through
17   the hearing on Mr. Corey Bailey anyway.
18              UNIDENTIFIED U.S. MARSHAL:  Your Honor,  we'll take
19   the others.
20              THE COURT: We have a motion filed by Mr. Minock to
21   withdraw as counsel.  Mr. Minock.
22              MR. MINOCK: Judge, Mr. Bailey wrote to you recently.
23   I sent you a letter.  He also sent you a proposed pro se motion
24   asking to discharge me from the case because he felt the
25   relationship, the attorney/client relationship was broken and
```

*UNITED STATES OF AMERICA v. ARLANDIS SHY*
*Status Conference*

1    that he frankly does not trust me.  I filed a short motion to

2    withdraw from the case which I think speaks for itself.  You

3    are familiar with the letter and his pro se motion, and I had a

4    conversation with him this morning and he said yes, he wanted

5    me to pursue the Motion to Withdraw.  I think he needs to be

6    appointed a different attorney.

7         THE COURT: All right.  Mr. Spielfogel, did you have

8    anything to offer in connection with this request?

9         MR. SPIELFOGEL: I have nothing to add to the motion

10   that's been filed, Judge. In that motion he did not ask that I

11   be removed.  I don't know what is going to happen now.

12        THE COURT: So, Mr. Graveline, does the Government

13   have a position?

14        MR. GRAVELINE: I only have a position inasmuch as

15   this might affect the other Defendants' trial date.  If it's

16   the Court's -- if the Court grants this, I would simply ask

17   that it make Mr. Bailey aware that we're going to trial June

18   5th and that a new attorney might be hampered in getting up to

19   speed by then, and that it won't effect the fact that he's in

20   Trial Group Two or the date of Trial Group Two's current trial.

21        MR. BAILEY:  Excuse me, Your Honor.  We can go to

22   trial today.

23        THE COURT: Do you want to go to trial today with Mr.

24   Minock?

25        MR. BAILEY:  We can go to trial today.  Like I've

UNITED STATES OF AMERICA v. ARLANDIS SHY
*Status Conference*

1    been locked up going on four years.  So I mean at the end of

2    the day, I had him going on two years.  He haven't (sic) done

3    nothing for me.  He ain't filed no motions on my behalf. He

4    haven't -- he tell me --

5              THE COURT: (Interjecting) Actually we have a motion

6    that was recently filed for suppression.

7              MR. BAILEY:  He filed that.  He filed that after the

8    fact.  I'm quite sure you see the dates on it from when I sent

9    you the letters which was filed in August.  He did that in

10   September or late August.  That was after the fact.  In fact,

11   it was September.  Like you know what I mean?  As I was saying,

12   I know he been deceiving me on stuff that is issues that I've

13   been bringing up to him that he haven't tooken (sic) care of.

14   Them (sic) motions was filed only because I acknowledged that.

15   Other than that, he wouldn't have sent them.  It's in black and

16   white.  It's something that you can't miss.  I've been sitting

17   around being drug through the mud even still.  They just pushed

18   our case.  I mean we ready for trial in February.  He talking

19   about a new attorney.  Like my attorney, he don't know nothing

20   about my case it's from when we started. (sic)  Since I've been

21   indicted, it's the same thing.  We at ground zero.  Haven't

22   gotten nowhere.  I've been asking for evidence on my behalf.

23   He haven't (sic) went and got it. I've been asking for video

24   footages he haven't(sic) went and got.  He haven't (sic) done

25   nothing for me.

UNITED STATES OF AMERICA v. ARLANDIS SHY
Status Conference

1           THE COURT: Most of those issues aren't up to Mr.

2      Minock individually to undertake.  That is, the Government has

3      disclosure obligations that don't kick in until certain points

4      in the litigation.  The Court has a schedule to maintain, this

5      case along with a lot of other cases and the bottom line is you

6      want to replace Mr. Minock because you don't trust him, and

7      you've apparently threatened filing a grievance and under those

8      circumstances, you make it difficult for any defense lawyer to

9      continue and you want new counsel knowing that it may delay

10     your trial substantially?

11           MR. BAILEY:  Trial already been delayed.

12           THE COURT:  May not -- may not delay it at all based

13     on what's happening with a lot of other people who are also

14     charged in this case.

15        So you're asking the Court to replace Mr. Minock, is that

16     right?

17           MR. BAILEY:  Yes, I definitely am asking for a

18     replacement.

19           THE COURT: All right.  The Court will grant the

20     motion and will wait to hear from successor counsel.  We will

21     appoint new counsel to represent the Defendant and wait to hear

22     from successor counsel with respect to what that person needs

23     in terms of preparation and whether the current trial date now

24     can be retained.  Anything else that we need to address?

25           MR. GRAVELINE: Nothing from the Government, Your

UNITED STATES OF AMERICA v. ARLANDIS SHY
Status Conference

1     Honor.

2              MR. SPIELFOGEL: Your Honor, we probably should

3     discuss whether staying on the case at this point in order to

4     complete at least the mitigation submission and there have been

5     cases -- there was actually one case here where I then stayed

6     on for trial, but we're not at that situation at this point,

7     but I do need some clarification.

8              THE COURT: Well, I think unless or until the Death

9     Penalty Notice is withdrawn, you should remain and undertake

10    your mitigation.  I recognize you're doing that pretty much on

11    your own.  That may take him out of the queue for trial.

12             MR. SPIELFOGEL: Judge, it's my hope he will go to

13    trial on the --

14             MR. BAILEY:  (Interjecting) Excuse me, Your Honor,

15    but I mean as we said earlier he just said the reason for us

16    pushing it back to May was one of the reasons because of me

17    getting a new counsel and now he talking about it might not be

18    before June.  That was the same excuse he just said when I was

19    sitting over there if I didn't misunderstand what he said, was

20    well, we ain't going to be ready in February if they get a new

21    counsel, so we going to need to push it back to June. (sic)

22    Everybody on my -- everybody that's in my group is ready to go

23    to trial in February.  So like it's him dragging his feet, so

24    it ain't -- ya'll don't even know who my lawyer is.  You don't

25    know who going to be appointed.  How you know he ain't going to

UNITED STATES OF AMERICA v. ARLANDIS SHY
Status Conference

1    get in here and get straight to the point and be ready in June?

2    How you going to make that decision for him?

3            THE COURT:  We don't know.  Until new counsel is

4    appointed, we really don't know.

5            MR. BAILEY:  'Cause clearly he been on my case for

6    two years and he still ain't ready for trial.  So how ya'll

7    going to make that decision for somebody else?

8            THE COURT: Well, the lawyer knows his craft and the

9    lawyer knows when he's got what he needs and when he doesn't.

10           MR. BAILEY:  Don't seem like nobody got what they

11   need.

12           THE COURT: Well, we'll contact the Federal Defender's

13   Office to secure a panel lawyer to represent the Defendant and

14   we'll see where it goes.  Thanks.

15           THE CLERK OF THE COURT: Please rise. Court is in

16   recess.

17           **(Proceedings adjourned at about 1:44 p.m.)**

18                         - - -

19

20

21

22

23

24

25

*UNITED STATES OF AMERICA v. ARLANDIS SHY*
*Status Conference*

| | |
|---|---|
| 1 | |
| 2 | <u>**COURT REPORTER'S CERTIFICATION**</u> |
| 3 | |
| 4 | |
| 5 | STATE OF MICHIGAN) |
| 6 | )  SS. |
| 7 | COUNTY OF WAYNE  ) |
| 8 | |
| 9 | I, Janice Coleman, Federal Official Court Reporter, in and |
| 10 | for the United States District Court for the Eastern District |
| 11 | of Michigan, do hereby certify that pursuant to Section 753, |
| 12 | Title 28, United States Code, that the foregoing is a true and |
| 13 | correct transcript of the stenographically reported proceedings |
| 14 | held in this matter and that the transcript page format is in |
| 15 | conformance with the regulations of the Judicial Conference of |
| 16 | the United States. |
| 17 | |
| 18 | <u>/S/ JANICE COLEMAN</u> |
| 19 | JANICE COLEMAN, CSR NO. 1095, RPR |
| 20 | FEDERAL OFFICIAL COURT REPORTER |
| 21 | |
| 22 | DATED:  December 12, 2019 |
| 23 | |
| 24 | |
| 25 | |